1  Lenard E. Schwartzer, Esq., NV Bar No. 0399
2  Jeanette E. McPherson, Esq., NV Bar No. 5423
   Schwartzer & McPherson Law Firm
3  2850 South Jones Blvd., Suite 1
   Las Vegas, Nevada 89146-5308
4  Phone:  702-228-7590 / Fax:  702-892-0122
   E-Mail:     bkfilings@s-mlaw.com
5  *Attorneys for Russell L. Nype and Revenue Plus, LLC*

6                    **UNITED STATES BANKRUPTCY COURT**

7                           **DISTRICT OF NEVADA**

8  In re                                    Case No.  BK-S-19-15333-MKN

9  LAS VEGAS LAND PARTNERS, LLC,            Chapter 7

10                          Debtor.         **OPPOSITION TO MOTION FOR ORDER
                                            GRANTING DEBTOR AN EXTENSION OF
11                                          TIME WITHIN WHICH TO FILE
                                            SCHEDULES AND STATEMENTS**
12
                                            Hearing Date:  October 9, 2019
13                                          Hearing Time:  2:30 p.m.

14        Russell L. Nype and Revenue Plus, LLC (collectively, "Nype"), by and through their

15  counsel Schwartzer & McPherson Law Firm, hereby file their Opposition To Motion For Order

16  Granting Debtor An Extension Of Time Within Which To File Schedules And Statement

17  ("Opposition").  This Opposition is made and based upon 11 U.S.C. § 105(a) and § 521,

18  Fed.R.Bankr. P. 1007, LR 1007, the Points and Authorities set forth herein, the pleadings on file

19  of which Nype respectfully requests that this Court take judicial notice, and any argument

20  entertained at the time of the hearing on this matter.

21                               **INTRODUCTION**

22        The Debtor's request to have a total of 44 days from the date of its petition to file the

23  required schedules and statement of financial affairs must be denied.  This bankruptcy filing is

24  merely a further tactic in the Debtor's ongoing attempts to delay litigation pending since 2016 in

25  Clark County, Nevada.  While the Debtor's bankruptcy filing certainly stayed the state court

26  litigation against it, the Debtor was not successful in delaying the pending state court litigation

27  against the numerous related non-debtor defendants.  The Debtor's goal was to stay the whole

28  state court litigation, and now it finds itself stuck with this bankruptcy case, requiring that it

*SCHWARTZER & McPHERSON LAW FIRM*
*2850 South Jones Boulevard, Suite 1*
*Las Vegas, Nevada 89146-5308*
*Tel: (702) 228-7590 · Fax: (702) 892-0122*

Objection to Motion To Extend.doc

1

1    disclose financial information about itself under penalty of perjury, and it really doesn't want to do

2    so.

3                              **POINTS AND AUTHORITIES**

4                              <u>**Factual Background**</u>

5    **A.    State Court Litigation**

6          1.    On July 26, 2016, Nype filed a complaint (the "Complaint") initiating an action in

7    the Clark County District Court in Nevada ("State Court"), Case No. A-16-740689-B ("State

8    Court Litigation").    LVLP is a defendant in the State Court Litigation, along with related

9    defendants David J. Mitchell, Meyer Property, Ltd., Zoe Property, LLC, Leah Property, LLC,

10   Wink One, LLC, Live Work, LLC, Live Work Manager, LLC, Aquarius Owner, LLC, LVLP

11   Holdings, LLC, Mitchell Holdings, LLC, Live Works Tic Successor, LLC (hereinafter collectively

12   referred as to the "Mitchell Defendants") and defendants Barnet Liberman, 305 Las Vegas, LLC,

13   and Casino Coolidge, LLC.

14         2.    The State Court Litigation stems from a 2015, multi-million-dollar judgment (the

15   "Judgment") that Russell Nype and Revenue Plus, LLC ("collectively, "Nype") obtained against

16   Defendant Las Vegas Land Partners, LLC ("LVLP"), for services Nype provided to LVLP—in

17   <u>2006</u>—but for which LVLP refused to pay.  The Judgment was entered in Case No. A-07-551073

18   after nearly 8 years of unbelievably expensive litigation.

19         3.    In the Complaint, Nype alleges, in general, that LVLP transferred assets worth

20   millions of dollars from 2006 to the present to prevent Nype from executing on the Judgment, and

21   also that the named defendants are alter egos and/or received fraudulent transfers.

22         4.    LVLP has sought to delay the State Court Litigation. In fact, on May 30, 2019, the

23   State Court entered an Order Compelling Discovery and Awarding Sanctions, which briefly

24   extended discovery for limited purposes.

25         5.    LVLP and the Mitchell Defendants failed to comply with the Order Compelling

26   Discovery.  As a result, Nype filed a Motion for Discovery Sanctions Pursuant to NRCP 37(b)

27   ("Sanctions Motion") which was heard on June 24, 2019.    At this hearing, the State Court

28   expressly found that sanctions were appropriate, and as such, the only unresolved question would

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Objection to Motion To Extend.doc

1    be the degree of sanctions.

2        6.      Consequently, the State Court scheduled an evidentiary hearing to commence June

3    27, 2019, the first of three evidentiary hearing dates relevant to a determination of Nype's

4    Sanctions Motion.

5        7.      LVLP and the Mitchell Defendants filed no opposition to Nype's Motion for

6    Sanctions, nor did LVLP and the Mitchell Defendants personally appear in court at either of the

7    first two days of the evidentiary hearing, i.e., June 27, 2019 and July 9, 2019. The third

8    evidentiary hearing date was set for September 3, 2019.

9        8.      On or about August 28, 2019, LVLP filed a Notice of Bankruptcy, notifying the

10   State Court of an August 19, 2019 bankruptcy petition filed solely by LVLP.  In addition, LVLP

11   filed an Emergency Motion to Stay in the State Court Litigation on September 2, 2019, requesting

12   that the State Court Litigation be completely stayed, not just with respect to LVLP.  See attached

13   **Exhibit 1**.

14       9.      Despite LVLP's misdirected effort to stay the whole State Court Litigation by

15   filing a bankruptcy petition, the State Court determined that the LVLP Chapter 7 petition did not

16   stay actions against the non-debtor defendants in the State Court Litigation.[1]   At the hearing on

17   September 3, 2019, the State Court held the Mitchell Defendants in contempt and awarded

18   sanctions of over $160,000.00 to Nype.

19   **B.    Bankruptcy Filing by LVLP**

20       10.     On August 19, 2019, LVLP filed a voluntary petition for relief under Chapter 7 of

21   the Bankruptcy Code (the "Petition").  The § 341(a) meeting of creditors was scheduled for

22   September 25, 2019.

23       11.     A Notice of Incomplete and/or Deficient Filing was filed on August 20, 2019 [ECF

24   4].  The Petition was filed without schedules and the statement of financial affairs and related

25   documents.

26

27   ───────────────

28   [1] At the time of the continued evidentiary hearing on September 3, 2019, Nype noted on the record that in light of
     LVLP's bankruptcy filing, they were no longer going to be proceeding as of the final hearing date with respect to the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

12.     On September 3, 2019, the Debtor filed its Motion For Order Granting Debtor An Extension Of Time Within Which To File Schedules And Statements (the "Extension Motion") [ECF 8]. In support of the Extension Motion, the Debtor filed a Declaration of its counsel, H. Stan Johnson, Esq. [ECF 9].

13.     The Extension Motion requests an additional 30 days from the date of the Extension Motion, or 44 days from the date the Petition was filed. The asserted reason for the extension is that LVLP is in the process of compiling the information needed for the bankruptcy filing but finalization of this information will extend past the current deadline. The Debtor asserts that it "is involved in complex state court litigation, which has had a number of recent hearings and issues. Due to these circumstances, Debtor's manager and accountant have been unable to assemble the information needed to complete the bankruptcy schedules." Extension Motion at p. 2.

14.     LVLP's contentions that it has been too involved in the State Court Litigation to comply with its obligations under the Bankruptcy Code, which are not supported by admissible evidence, must not be given any weight. Notably, LVLP has been protected by the automatic stay and during this time it has not been participating in the State Court Litigation, not been providing discovery, not opposing Nype's Sanctions Motion, nor even attending the evidentiary hearings, giving the Debtor ample time to assemble the required information.

15.     LVLP and the Mitchell Defendants are all represented by the same counsel, Cohen Johnson Parker Edwards, in the State Court Litigation, and this counsel also filed LVLP's Chapter 7 bankruptcy petition.

## Memorandum of Law

### A.     "Cause" Has Not Been Established Under Fed.R.Bankr. P. 1007(a)(5) and 1007(c)

The filing deadlines in Fed.R.Bankr. P. 1007 are mandatory and require strict adherence. *In re Greene*, 127 B.R. 805 (Bankr. N.D.Ohio 1991). The schedules and statements, are designed to obtain information necessary to the proper administration and adjudication of the case. *In re*

discovery issues against LVLP.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

*Weldon*, 184 B.R. 710, 715 (Bankr. D.S.C. 1995).

Bankruptcy Rules 1007(a)(5)[2] and 1007(c),[3] by their respective terms, authorize courts, upon a showing of "cause," to grant extensions of the time periods applicable to various filings a debtor is required to make. "Extensions of time under Rule 1007(c) are not handed out as a matter of course, but only upon a showing of cause." *See Tillman v. Danielson (In re Tillman)*, 2008 WL 8462961 at *4 (9th Cir. BAP July 17, 2008)(citing mandate set forth in the lower court's local rules for the proposition that requests for extension of time under Fed.R.Bankr. P. 1007 must be supported by admissible evidence); *McInnis v. Santa Cruz County Tax Collector*, 2018 WL 6565413 at *7 (9th Cir. BAP Dec. 10, 2018).

Here, the Debtor has not shown evidence of "cause." The Debtor's attorney filed a declaration, not the Debtor's managing member who signed the petition (David Mitchell). "A declarant must show personal knowledge and competency to testify by the facts stated." *Boyd v. City of Oakland*, 458 F.Supp.2d 1015, 1023 (N.D. Cal. 2006). "The matters must be known to the declarant personally, as distinguished from matters of opinion or hearsay." *Id.* "A declarant's mere assertions that he or she possesses personal knowledge and competency to testify are not sufficient." *Id.* The declaration made by Debtor's counsel is based on being "familiar with the facts of this case" but does not provide that he possesses personal knowledge regarding the matters set forth therein, including the basis for the requested extension. In addition, Debtor's counsel is also counsel for the Mitchell Defendants in the State Court Litigation, demonstrating that there is a concerted and collective effort on the part of the Mitchell Defendants in the State Court Litigation

---

[2] Rule 1007(a)(5) provides:
> Any extension of time for the filing of the lists required by this subdivision may be granted only on motion for cause shown and on notice to the United States trustee and to any trustee, committee elected under §705 or appointed under §1102 of the Code, or other party as the court may direct.

[3] Rule 1007(c) provides, in relevant part:
> (c) *Time Limits.* ... Any extension of time for the filing of the schedules and statements may be granted only on motion for cause shown and on notice to the United States trustee and to any committee elected under Sec. 705 or appointed under Sec. 1102 of the Code, trustee, examiner, or other party as the court may direct. Notice of an extension shall be given to the United States trustee and to any committee, trustee, or other party as the court may direct.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  to delay. Further, there is no evidence from the Debtor's representatives itself. As a result, the

2  Debtor has not established "cause" for its lengthy extension.

3  **B.    The Debtor Has Had More Than Sufficient Time To File The Required Schedules
   And Statement Of Financial Affairs**

4

5      The Debtor has been in possession of the information needed to complete and file

6  schedules, statements, and other documents required under § 521 and Fed.R.Bankr. P. 1007 for

7  quite some time. Much of this information was required to be produced by them in connection

8  with the State Court Litigation and the requests for discovery in that action. An extension of time

9  for the Debtor to make the filings required by § 521 and Fed.R.Bankr. P. 1007 in a timely manner

10  is, therefore, unnecessary. Furthermore, the Debtor has requested 44 additional days from the

11  Petition date to file this information. This is an excessive amount of time given the circumstances.

12                                   **CONCLUSION**

13      Based upon the foregoing, Nype respectfully requests that the Debtor's Motion For Order

14  Granting Debtor An Extension Of Time Within Which To File Schedules And Statement be

15  denied and that Nype be granted other relief as is appropriate.

16      Dated:  September 23, 2019.

17

18                          /s/ Jeanette E. McPherson
                            Lenard E. Schwartzer, Esq.
19                          Jeanette E. McPherson, Esq.
                            Schwartzer & McPherson Law Firm
20                          2850 South Jones Blvd., Suite 1
                            Las Vegas, Nevada 89146-5308
21                          *Attorneys for Russell L. Nype and Revenue Plus, LLC*

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Objection to Motion To Extend.doc

# EXHIBIT 1

ELECTRONICALLY SERVED
9/2/2019 2:01 PM

1    **COHEN | JOHNSON | PARKER | EDWARDS**
2    H. STAN JOHNSON, ESQ.
    Nevada Bar No. 00265
3    sjohnson@cohenjohnson.com
    JAMES L. EDWARDS, ESQ.
4    Nevada Bar No. 4256
    jedwards@parkeredwardslaw.com
5    375 East Warm Springs Road, Ste. 104
6    Las Vegas, Nevada 89119
    Telephone:  (702) 823-3500
7    Facsimile:  (702) 823-3400
    *Attorneys for Mitchell Defendants*
8

9            **EIGHTH JUDICIAL DISTRICT COURT**

10              **CLARK COUNTY, NEVADA**

| | |
|---|---|
| RUSSELL L. NYPE; REVENUE PLUS, LLC, DOES I through X; DOE CORPORATIONS I through X; and DOE PARTNERSHIPS I through X; | Case No.:  A-16-740689-B<br>Dept. No.:    11 |
|                    Plaintiffs, | |
| vs. | |
| DAVID J. MITCHELL; BARNET LIBERMAN; LAS VEGAS LAND PARTNERS, LLC; MEYER PROPERTY LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; LIBERMAN HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I THROUGH III, inclusive; and ROE CORPORATIONS I THROUGH III, inclusive, | |
|            Defendants. | |

**EMERGENCY MOTION TO STAY THESE STATE COURT PROCEEDINGS
ON AN ORDER SHORTENING TIME**

*(left margin, vertical text)*
COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

1    COMES NOW Defendants, David J. Mitchell, Las Vegas Land Partners,

2  LLC, Meyer Property, Ltd., Zoe Property, LLC, Leah Property, LLC, Wink One,

3  LLC, Live Work, LLC, Live Work Manager, LLC, Aquarius Owner, LLC, LVLP

4  Holdings, LLC, Mitchell Holdings, LLC, and Live Works Tic Successor, LLC, (the

5  "Mitchell Defendants") by and through its counsel of record, H. Stan Johnson, Esq.

6  and James L. Edwards, Esq., of Cohen Johnson Parker Edwards, hereby files this

7  *Emergency Motion to Stay These State Court Proceedings on an Order Shortening*

8  *Time*. Plaintiffs are continuing to litigate the case before this court against LVPG,

9  LLC and to recover a judgment in violation of the automatic stay imposed as a

10  result of the Chapter 7 Bankruptcy filing of Defendant Las Vegas Land Partners,

11  LLC. The Mitchell Defendants request that this Court stay this State Court

12  proceeding, case A-16-740689-B.

13    This Motion is based on the following memorandum and the pleadings and

14  filings submitted thus far herein, the Declaration of H. Stan Johnson, Esq.

15  attached hereto, and any oral argument at the hearing on this matter.

16    Dated this 2nd day of September 2019.

17                    **COHEN JOHNSON PARKER EDWARDS**

18                    */s/ H. Stan Johnson, Esq*

19                    H. STAN JOHNSON, ESQ.
                      Nevada Bar No. 00265
20                    JAMES L. EDWARDS, ESQ.
                      Nevada Bar No. 4256
21                    375 East Warm Springs Road, Ste. 104
22                    Las Vegas, Nevada 89119
                      Telephone:  (702) 823-3500
23                    Facsimile:   (702) 823-3400
                      *Attorneys for Mitchell Defendants*
24

25

26

27

28

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## DECLARATION OF H. STAN JOHNSON, ESQ.

I, H. Stan Johnson, do hereby affirm under penalty of perjury, that the assertions in this Declaration are true, as follows:

1.      I am an attorney at law admitted to practice before the Courts of the State of Nevada and am counsel of record for the Mitchell Defendants, in the case of Russell L. Nype and Revenue Plus, LLC v. the David J. Mitchell et. al., Eighth Judicial District Court Case No. A-16-740689-B before Department 11.

2.      This Declaration is submitted in support of the Mitchell Defendants' EMERGENCY MOTION TO STAY THESE STATE COURT PROCEEDINGS ON AN ORDER SHORTENING TIME.

3.      If called upon to testify to the contents of this Declaration, I could and would competently do so under oath.

4.      Attached hereto as Exhibit "A" is a true and correct copy of Plaintiffs' Amended Complaint ("Complaint") filed in EJDC Case No. A-16-740689-B, pending in Department 11, filed on August 21, 2017.

5.      Attached hereto as Exhibit "B" is a true and correct copy of the Decision of the 9th Circuit's Bankruptcy Appellate Panel in *Capriati Construction Corporation, Inc., v. Sper, Inc.*, BAP No. NV-17-1200-BHTa.

6.      On the 19th day of August, 2019, Las Vegas Land Partners, LLC filed for Chapter 7 Bankruptcy protection in the United States Bankruptcy Court for the District of Nevada, case no. 19-15333-mkn.  Attached hereto as Exhibit "C" is a true and correct copy of the bankruptcy petition of Las Vegas Land Partners, LLC.

*Left margin (vertical text):*
COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

7.      Despite being served with a *Notice of Bankruptcy Filing*, Plaintiffs have continued their attempts to collect a judgment against the Mitchell Defendants in violation of the automatic stay.

8.      It is respectfully submitted that the above and foregoing establishes good cause to grant the Order Shortening Time on the Mitchell Defendants' Motion to Stay these State Court Proceedings.

### ORDER SHORTENING TIME

GOOD CAUSE appearing therefore, **IT IS HEREBY ORDERED** that the time for the hearing on the Mitchell Defendants' *Emergency Motion to Stay State Court Proceedings on an Order Shortening Time* shall be shortened to the _____ day of _____ 2019 at ____:____ a.m/p.m. Any opposition shall be filed and served by the _____ day of _____ 2019 at _____:_____ a.m/p.m. and any reply is support thereof shall be filed by oral argument.

Dated this _____ day of _____ 2019.

_____
DISTRICT COURT JUDGE

Respectfully Submitted by:

*/s/ H. STAN JOHNSON*
H. STAN JOHNSON, ESQ.
Nevada Bar No. 00265
JAMES L. EDWARDS, ESQ.
Nevada Bar No. 4256
375 East Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
Telephone:   (702) 823-3500
Facsimile:   (702) 823-3400
*Attorneys for Mitchell Defendants*

**COHEN|JOHNSON|PARKER|EDWARDS**
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

On or about April 10, 2015, Judgment was entered in favor of Plaintiffs and against Defendant, Las Vegas Land Partners, LLC (hereinafter "LVLP") in the amount of $2,608,797,50. Since 2015, Plaintiffs have aggressively pursued collection on the Judgment against LVLP. On or about July 26, 2016, Plaintiffs, Russell L. Nype and Revenue Plus, LLC (hereinafter "Plaintiffs") filed their Complaint for constructive trust, fraudulent Conveyance, civil conspiracy, declaratory relief and alter ego against Defendants,

In their Complaint, Plaintiffs generally allege that LVLP transferred real property and millions of dollars to asset protection entities from 2006 to the present to prevent Plaintiffs from executing on the judgment. Plaintiffs allege that Defendants' were either fraudulent transferees or are alter egos of LVLP and Defendants, David J. Mitchell and Barnet Liberman.

An evidentiary hearing was set for September 3rd. However, Las Vegas Land Partners, LLC filed for chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Nevada, Case No. 19-15333-mkn on August 19, 2019 which imposed the automatic stay on the present proceedings. Attached hereto is a copy of the petition filed by LVPG as Exhibit C. Plaintiffs were served with a Notice of Bankruptcy Filing on August 28, 2019. However, Plaintiffs are violating the automatic stay by continuing their efforts to prosecute the State Court action and collect a judgment against Las Vegas Land Partners, LLC.

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## II.

## LEGAL ARGUMENT

### A. NYPE'S STATE COURT ACTION IS IN VIOLATION OF THE AUTOMATIC STAY

Plaintiffs have attempted to recover their debt throughout the state court litigation from the judgment debtor Las Vegas Property Group, LLC ("LVPG") and from other defendants under the dependent and derivative liability theories of:

1. Constructive Trust

2. Fraudulent Conveyance

3. Civil Conspiracy

4. Declaratory Relief

5. Alter Ego

Plaintiffs acknowledge that only LVPG is the judgment debtor and that all the causes of action involve an alleged fraudulent conveyance or claim of alter ego from LVPG to the subsequent transferees or dependent entities. See, Amended Complaint attached hereto as Exhibit A.

All these causes of action are derivative from alleged actions of LVPG and cannot be litigated in any manner without litigating these causes of action against LVPG to establish the fraudulent conveyance from LVPG to the other defendants or to any subsequent transferees.

The same applies to the claims of alter ego, constructive trust or civil conspiracy. None of these claims can be litigated without directly involving LVPG in each of the causes of actions, which will violate the automatic stay.

The cases cited by Plaintiffs in their Trial Brief are easily distinguished from

the case before this court are not applicable:

1.    In re Advanced Ribbons and Office Products, Inc., 125 B.R. 259, 263

(9th Cir. BAP 1991).

(A foreclosure sale against a non-debtor's property that secured a debt
of the debtor did not violate automatic stay.)

2.    In re Rohnert Park Auto Parts, Inc., 113 B.R. 610, 614 (9th Cir. BAP
1990)

(Objection to plan confirmation that contained provisions barring suits
against co-debtors for five years)

3.    In re Condel, Inc., (91 B.R. 79, 82 (9th Cir. BAP 1988);

(Objection to plan confirmation that included provisions that the IRS
could not pursue enforcement activities against debtor's officers that
had personal liability for trust fund taxes)

4.    In re Casgul of Nevada, Inc., 22 B.R. 65, 66-67 (9th Cir. BAP 1982).

(Involved relief from the stay to foreclose on debtor's officers' property.
The stay did not apply to debtor's officers' property)

None of the cases cited by Plaintiffs are remotely on point involving litigation

for fraudulent conveyance and alter ego causes of action directly against the debtor

and derivative actions against the other defendants.  It is obvious that an action

directly against the debtor LVPG for fraudulent conveyance and alter ego cannot be

litigated without violating 11 USC § 362.  11 USC § 362 provides:

(a)Except as provided in subsection (b) of this section, a petition filed
under section 301, 302, or 303 of this title, or an application filed under
section 5(a)(3) of the Securities Investor Protection Act of 1970, operates
as a stay, applicable to all entities, of—

COHEN|JOHNSON|PARKER|EDWARDS

375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

(1)     the commencement or **continuation**, including the issuance or employment of process, **of a judicial**, administrative, or other **action or proceeding against the debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) **the enforcement, against the debtor or against property of the estate, of a judgment** obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

There is no question that the state court litigation involves the continuation of a judicial action against the debtor and that it is an effort to enforce a judgment against the debtor or against property of the estate.

## B. PLAINTIFFS NO LONGER HAVE STANDING TO PURSUE ANY CLAIM FOR FRAUDULENT TRANSFER AND ALTER EGO CLAIMS.

### 1.   Fraudulent Conveyance Actions Are Property of the Estate.

It is well established under applicable law that fraudulent transfer claims and alter ego claims are property of the bankruptcy estate pursuant to USC § 541. The causes of action asserted by the Plaintiffs belong exclusively to the debtor's estate and as such can only be brought or prosecuted by the bankruptcy trustee.

Section 548(a) of the Code expressly authorizes a "trustee" to avoid any pre-petition "fraudulent transfers". 11 U.S.C. §548(a)(1). Section 544(b) further authorizes the "trustee" to avoid any pre-petition transfer of the debtor's property if the transfer could be avoided under applicable law by an unsecured creditor holding

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

an allowable claim. "Applicable law" within the purview of 544(b)(1) includes state fraudulent transfer law, including Nevada's enactment of the Uniform Fraudulent Transfer Act ("UFTA") as codified in NRS Chapter 112. *Decker v. Tramiel* (In re JTS Corp.), 617 F.3d 1102, 1111 (9th Cir.2015).

A debtor's "causes of action" are "property of the estate." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (Citing *United States v. Whiting Pools, Inc.,* 462 US 198, 205 (1983)). Thus, the trustee stands in the shoes of the debtor and has the standing to bring any suit that the debtor could have instituted had it not filed for bankruptcy relief. The Trustee's standing to sue on behalf of the estate is exclusive; a debtor's creditors cannot prosecute such claims belonging to the estate absent abandonment. *Estate of Spirtos v. One San Bernardino City Super. Ct.,* 443 F.3d 1172, 1175 (9th Cir. 2006).

Moreover, courts have universally held that a trustee has the exclusive standing to bring fraudulent transfer actions; and absent court order otherwise, individual creditors lack standing to prosecute fraudulent transfers in their own right and for their own benefit, even if said creditor would have standing to do so outside of the bankruptcy. *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir.2010) (noting that rights of action properly brought by the trustee including fraudulent transfer actions); *CarrAmerica Realty Corp. v. Nvidia Corp.* (*In re 3dfx Interactive, Inc.*), 302 Fed. Appx. 514, *1-2 (9th Cir.2008) (affirming the district court's decision that because the substance of the creditors' claims involved a debtor's fraudulent transfer of assets, thereby depleting the assets available for the bankruptcy estate, it was an injury to the debtor corporation, not to individual

Page 9 of 15

creditors of that corporation, and thus, the trustee had exclusive standing to sue with respect to all such claims [Emphasis added.]); *In re Howrey LLLP*, 2014 WL 3899309 at *4 (N.D.Cal. Aug. 8, 2014) (holding that the "[t]rustee has the exclusive power to bring the claim brought by [a creditor] predicated on a fraudulent transfer theory." [Emphasis added.]); *In re Pac. Gas & Elec. Co.*, 281 B.R. 1, 13 (Bankr.N.D.Cal.2002) ("Absent court approval, only a trustee or debtor in possession has standing to assert a fraudulent transfer action." [Emphasis added.]).

In its State Court Action, Plaintiffs alleged, in pertinent part, that "In that context, various real property and ownership equity transfers took place between LVLP and/or Leah Property, LLC during the operative time …." The same phase was used for transfers from LVLP to any of the named derivative defendants.

Plaintiffs' own State Court allegations demonstrate that Plaintiffs' Fraudulent Transfer claims are expressly within the purview of the claims that the bankruptcy trustee alone is empowered to pursue. 11 U.S.C. §548; *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir.2010); *CarrAmerica Realty Corp. v. Nvidia Corp. (In re 3dfx Interactive, Inc.)*, 302 Fed. Appx. 514, *1-2 (9th Cir.2008); *In re Howrey LLLP*, 2014 WL 3899309 at *4 (N.D.Cal. Aug. 8, 2014); and *In re Pac. Gas & Elec. Co.*, 281 B.R. 1, 13 (Bankr.N.D.Cal.2002). Moreover, in the event that any fraudulent transfer claim prevails, the recovered assets would unequivocally be "property of the estate". Thus, Plaintiff's usurpation and prosecution of these alleged Fraudulent Transfer claims (which are property of the estate clearly violates the Automatic Stay.

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

In a very similar case to the one before this court the 9th Circuit's

Bankruptcy Appellate Panel reversed the Nevada Bankruptcy Court and stated:

> We conclude that SPER's fraudulent transfer claim asserted in the state court action was property of Capriati's bankruptcy estate by virtue of § 544 (b) once Capriati filed its bankruptcy petition, and such claim could only be pursued by Capriati. § 548 (a); *The Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253, 261 (5th Cir. 2010) (fraudulent transfer claims become estate property "once bankruptcy is under way" by virtue of trustee's successor right under § 544 (b)); *Nat'l tax Credit Partners, LP v Havlik*, 20 F.3d 705, 708-09 (7th Cir. 1994). See also *Whiting Pools, Inc.*, 462 US at 205 ("Section 541 (a) (1) is intended to include in the estate any property made available to the estate by other provisions of the bankruptcy Code," which would include property made available through § 544). We reject SPER's argument that it could pursue a direct claim against Rocchio as the "transferee" of a fraudulent transfer under Nevada law, namely NRS 112.220, which provides for recovery of the value of the asset transferred from the transferee, during the chapter 11 case. That statute does not consider the effect of a corporate debtor's bankruptcy filing and the fact that a prepetition claim for injury to the debtor by an insider's fraudulent transfers is property of the corporate debtor's estate. *Capriati Construction Corporation, Inc., v. Sper, Inc.*, BAP No. NV-17-1200-BHTa; (unpublished but maybe cited for persuasive value it may have. (9th Cir. BAP Rule 8024-1) A copy of the decision is attached hereto as Exhibit B.

## 2.   Alter Ego Claims Are Property of the Estate.

Property of the estate pursuant to Section 541(a)(1) of the Code includes "all

legal or equitable interests of the debtor in property as of the commencement of the

case." 11 U.S.C. § 541(a)(1). A cause of action in which the debtor has a legal

interest on the petition date constitutes property of the debtor's bankruptcy estate.

*Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir.2005); *Sierra*

*Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir.1986);

*Schnelling v. Thomas (In re Agribiotech, Inc.)*, 319 B.R. 216, 219 (D.Nev.2004). A

bankruptcy trustee has the exclusive capacity to sue on behalf of the bankruptcy

estate and has the exclusive right to sue on claims belonging to the estate. 11 U.S.C. §323(a); *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir.2010) (citing *Estate of Spirtos v. San Bernadino County Superior Court (In re Spirtos*), 443 F.3d 1172, 1175 (9th Cir.2006); 11 U.S.C. § 704(a)(1) (the trustee shall "collect and reduce to money property of the estate for which such trustee serves").

Whether a cause of action is property of the bankruptcy estate, such that the trustee has exclusive standing to pursue the claim, or whether the claim belongs to individual creditors is a question of state law. *AE Rest. Assocs., LLC v. Giampietro (In r Giampietro)*, 317 B.R. 841, 845 n.4 (Bankr.D.Nev.2004)(quoting *Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.*, 153 F.Supp.2d 1211, 1213 (D.Nev.2001).) Where state law permits an alter ego claim to be asserted by a corporation in its own name, such a right is property of the estate, assertible only by the bankruptcy trustee or the debtor-in-possession, and a claim by a creditor against the debtor's affiliate based solely on an alter ego theory is therefore barred for lack of standing and under the automatic stay. *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Vasquesz*, 2011 WL 4549228 at *2 (D.Nev.Sept.29, 2011) [Emphasis added]. See also, *In re AgriBioTech, Inc.*, 319 B.R. 216, 220 (2004) ("Where the injury alleged is primarily to the corporation, and is injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee.

Here, Nevada state law clearly permits and authorizes an alter ego claim to be asserted by a corporation in its own name ("self-piercing"). *Vasquez* at 2011 WL

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

4549228 at *2 ("Nevada law is identical to Texas law in permitting a corporation to bring an alter ego claim in its own name"). See also generally, *In re Western World Funding, Inc.*, 52 B.R. 743, 783¬84 (Bankr.D.Nev. 1985) ("Under the Nevada alter ego doctrine, the corporation has, in some sense, and equitable interest in the assets of its alter ego, because the corporation and the alter ego are identical.); and *In re AgriBioTech, Inc.*, 391 B.R. 216, 219 (D.Nev.2004) ("The debtor's estate therefore includes any causes of action of the debtor at the commencement of the bankruptcy proceedings."). Moreover, when an entity is the alter ego of the debtor, the debtor "has an equitable interest in the assets of its alter ego," *Western World*, 52 B.R. at 784, and the right to assert an alter ego claim against said entity is property of the bankruptcy estate. *Vasquez,* 2011 WL 4549228 at *2 [Emphasis added].

As such, it is evident that the Alter Ego asserted by Plaintiffs in the State Court Action, is clearly property of the estate. Therefore, Plaintiffs' State Court Action, seeking to prosecute and benefit from an Alter Ego claim that belongs to the estate usurps and converts property of the estate.  Plaintiffs' actions are also acts "to obtain possession of property of the estate or of property from the estate" in violation of §362(a)(3). See, *Vasquez* at *2.

III.

<u>CONCLUSION</u>

Wherefore based on the foregoing it is respectfully requested that this Court enter an order staying this case and vacating any further proceedings, as any further proceedings would be in violation of the automatic stay.

Dated this 2rd day of September 2019.

<div style="margin-left:40%;">

COHEN JOHNSON PARKER EDWARDS

By:  */s/ H. Stan Johnson*
H. STAN JOHNSON, ESQ.
Nevada Bar No. 00265
JAMES L. EDWARDS, ESQ.
Nevada Bar No. 4256
375 East Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
Telephone:  (702) 823-3500
Facsimile:  (702) 823-3400
*Attorneys for Mitchell Defendants*

</div>

1

## INDEX OF EXHIBITS

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | Plaintiff's Amended Complaint in A-16-740689-B | 36 |
| B | Decision of the 9th Circuit's Bankruptcy Appellate Panel in Capriati Construction Corporation, Inc., v. Sper, Inc., BAP No. NV-17-1200-BHTa. | 25 |
| C | Bankruptcy Petition of Las Vegas Land Partners, LLC | 8 |

COHEN|JOHNSON|PARKER|EDWARDS
375 E. Warm Springs Road, Ste. 104
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

# EXHIBIT A

# EXHIBIT A

Electronically Filed
8/21/2017 6:11 PM
Steven D. Grierson
CLERK OF THE COURT

**ACOMP**
JOHN W. MUIJE & ASSOCIATES
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:     (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiffs*

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

### DISTRICT COURT

### CLARK COUNTY, NEVADA

RUSSELL L. NYPE; REVENUE PLUS, LLC,
DOES I through X; DOES I through X; DOE
CORPORATIONS I through X; and DOES
PARTNERSHIPS I through X,

                                    Plaintiffs,

vs.

DAVID J. MITCHELL; BARNET LIBERMAN;
LAS VEGAS LAND PARTNERS, LLC; MEYER
PROPERTY, LTD.; ZOE PROPERTY, LLC;
LEAH PROPERTY, LLC; WINK ONE, LLC;
LIVE WORK, LLC; LIVE WORK MANAGER,
LLC; AQUARIAS OWNER, LLC; LVLP
HOLDINGS, LLC; MITCHELL HOLDINGS,
LLC; LIEBERMAN HOLDINGS, LLC; 305 LAS
VEGAS; LIVE WORKS TIC SUCCESSOR,
LLC; FC/LIVE WORK VEGAS, LLC; CASINO
COLLIDGE, LLC; DOES I through III, and ROE
CORPORATIONS I through III, inclusive,

                                    Entity Defendants.

CASE NO:    A-16-740689-B

DEPT. NO:   XV

**AMENDED COMPLAINT FOR**:

1.   CONSTRUCTIVE TRUST;
2.   FRAUDULENT CONVEYANCE;
3.   CONSPIRACY TO DEFRAUD;
4.   DECLARATORY RELIEF; AND
5.   ALTER EGO

**ARBITRATION EXEMPT
(EQUITABLE RELIEF)**

        COMES NOW, Plaintiffs, RUSSELL L. NYPE and REVENUE PLUS, LLC, as and for

causes of action against the Entity Defendants, DAVID J. MITCHELL; BARNET LIBERMAN;

LAS VEGAS LAND PARTNERS, LLC; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC;

LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER,

LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC;

LIEBERMAN HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR,

LLC; FC/LIVE WORK VEGAS, LLC, and CASINO COLLIDGE, LLC alleges and shows as follows:

<p style="text-align:center"><strong><u>GENERAL FACTUAL ALLEGATIONS</u></strong></p>

1.  Plaintiffs, RUSSELL L. NYPE and REVENUE PLUS, LLC (hereinafter "NYPE"), a New York Limited Liability Company.

2.  Defendant, DAVID J. MITCHELL (hereinafter "Mitchell), is an adult resident of New York.

3.  Defendant, BARNETT LIBERMAN (hereinafter "Liberman"), is an adult resident of New York.

4.  LAS Vegas Land Partners (hereinafter "LVLP") is a Delaware limited liability company registered to do business in Nevada, but currently in default status.

5.  Aquarius Owner, LLC is or was a Delaware limited liability company registered to do business in the State of Nevada in November, 2004, and maintained its registration through and including approximately November, 2009.

6.  On information and belief, Aquarius Owner LLC was owned and directed by Mitchell, Liberman, and/or LVLP.

7.  In that context, various real property and ownership equity transfers took place between LVLP and/or Aquarius Owner, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Aquarius Owner LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

8.  In that context, various real property transfers and ownership equity took place between LVLP and/or Aquarius Owner, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Aquarius, LLC and its principals on a recurring basis, most of which were never

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9155

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1  disclosed in publicly available records or documents, is a Delaware limited liability

2  that first registered to do business in Nevada in approximately February, 2011, and

3  continues to operate and do business, in good standing, through and including this

4  date. FC/LW Vegas is or was a Delaware limited liability company registered to do

5  business in the State of Nevada in February 2011 which has maintained registration

6  through the present.

7  9.  FC/LW VEGAS, LLC, on information and belief, is an entity jointly owned and

8  operated by Liberman, Mitchell, LVLP, and non-party Forest City Enterprises, for

9  purposes of developing and managing various real property interest in Southern

10  Nevada.

11  10  In that context, various real property and ownership equity transfers took place

12  between LVLP and/or FC/LW, LLC,  during the operative time, and on information

13  and belief, financial distributions and transactions occurred between Aquarius Owner

14  LLC and its principals on a recurring basis, most of which were never disclosed in

15  publicly available records or documents.

16  11.  In that context, various real property and ownership equity transfers took place

17  between LVLP and/or FC/LW, LLC during the operative time, and on information

18  and belief, financial distributions and transactions occurred between

19  12.  Aquarius, LLC and its principals on a recurring basis, most of which were never

20  disclosed in publicly available records or documents, is a Delaware limited liability

21  that first registered to do business in Nevada in approximately February, 2011, and

22  continues to operate and do business, in good standing, through and including this

23  date.

24  13.  In that context, various real property and ownership equity transfers took place

25  between LVLP and/or Leah Property, LLC during the operative time, and on

26  information and belief, financial distributions and transactions occurred between

27  14.  Aquarius, LLC and its principals on a recurring basis, most of which were never

28  disclosed in publicly available records or documents, is a Delaware limited liability

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9155

1    that first registered to do business in Nevada in approximately February, 2011, and

2    continues to operate and do business, in good standing, through and including this

3    date.

4    15.    Leah Property, LLC is a Delaware limited liability that first registered to do business

5    in Southern Nevada in approximately February, 2005, and continued to be active and

6    operate in the Southern Nevada area through and including February, 2015.

7    16.    On information and belief, Leah Property LLC is owned, managed, and operated by

8    Liberman, at all relevant times.

9    17.    In that context, various real property and ownership equity transfers took place

10    between LVLP and/or Leah Property, LLC, during the operative time, and on

11    information and belief, financial distributions and transactions occurred between Leah

12    Property, LLC and its principals on a recurring basis, most of which were never

13    disclosed in publicly available records or documents.

14    18.    In that context, various real property and ownership equity transfers took place

15    between LVLP and/or Live Work, LLC, during the operative time, and on information

16    and belief, financial distributions and transactions occurred between Leah Property,

17    LLC and its principals on a recurring basis, most of which were never disclosed in

18    publicly available records or documents.

19    19.    Live Work LLC is a Delaware limited liability company who first became active in

20    Southern Nevada in or about April, 2015, and in fact was a plaintiff in the original

21    underlying lawsuit with LVLP versus the plaintiffs herein.  Live Work, LLC, on

22    information and belief, continued to be active and operating in Southern Nevada

23    through and including approximately April, 2012.

24    20.    On information and belief, Live Work, LLC was owned, operated, and managed by

25    Liberman, Mitchell, LVLP, Live Work Manager, LLC, and/or Mitchell Holdings, and

26    was an active participant in various real property transactions involving non-party

27    Forest City Enterprises.

28

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9155

21. In that context, various real property and ownership equity transfers took place between LVLP and/or Live Work, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Live Work, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

22. In that context, various real property and ownership equity transfers took place between LVLP and/or Live Work, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Live Work Manager, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

23. Livework Manager, LLC was a Delaware Limited Liability that first registered to do business in the State of Nevada in approximately April, 2005, and continued active and in business in Southern Nevada through approximately February, 2012.

24. Live Work Manager, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

25. In that context, various real property and ownership equity transfers took place between LVLP and/or Live Work Manger, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Livework Manager, LLC and its principals on a recurring basis, most of which were In that context, various real property transfers and ownership equity took place between LVLP and/or Live Work, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Live Work, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents, is a Delaware limited liability that first registered to do business in Nevada in approximately February, 2011, and continues to operate and do business, in good standing, through and including this date. FC/LW Vegas is or was a Delaware limited liability company registered to do business in the State of Nevada in February 2011 which has maintained registration through the present.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9155

never disclosed in publicly available records or documents.

26.   Zoe Property, LLC is a Delaware Limited Liability Company that first registered and became active in Southern Nevada in or about November 2004, and in fact was one of the original plaintiffs along with Live Work, LLC and LVLP versus the plaintiffs herein.  On information and belief, Zoe Property, LLC operated and continued to be active in Southern Nevada through approximately November, 2007.

27.   Zoe Property, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

28.   In that context, various real property and ownership equity transfers took place between LVLP and/or Zoe Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Zoe Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

29.   In that context, various real property and ownership equity transfers took place between LVLP and/or Zoe Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Zoe Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

30.   Wink One, LLC is a Delaware limited liability company that registered to do business in the State of Nevada in approximately April, 2008, and remained active, according to Secretary of State records, through and including approximately April, 2009.  Wink One, LLC, on information and belief, was owned, operated and managed by Liberman, Mitchell, and/or LVLP.

31.   Wink One, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

32.   In that context, various real property and ownership equity transfers took place between LVLP and/or Wink One, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Wink One, LLC

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

33. In that context, various real property and ownership equity transfers took place between LVLP and/or Wink One, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Wink One, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

34. Casino Coolidge, LLC is a Delaware limited liability company that first registered to do business in Southern Nevada in or about October, 2014.

35. On information and belief, Casino Coolidge, LLC is owned, operated and managed by Liberman, Mitchell, LVLP, and/or LVLP..

36. In that context, various real property and ownership equity transfers took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

37. In that context, various real property and ownership equity transfers took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

38. 305 Las Vegas. LLC is a Delaware limited liability company that first registered and qualified to do business in Southern Nevada in approximately April, 2007, and remains active and doing business in Southern Nevada through the present.

39. On information and belief, 305 Las Vegas, LLC was originally owned, operated and managed by Liberman, Mitchell, and/or LVLP.

40. In that context, various real property and ownership equity transfers took place

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

between LVLP and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

41.    In that context, various real property and ownership equity transfers took place between LVLP and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

42.    On information and belief, unbeknownst to Plaintiffs, in approximately 2012 305 Las Vegas, LLC engaged in an internal transaction resulting in the acquisition of the beneficial interest of Mitchell by a Mr. Win Churchill, and a monetary distribution benefitting Mitchell to the tune of $7.5 million, all of which Plaintiff has only learned at very recent times.

43.    On information and belief, MEYER PROPERTY, LTD., is fictitious entity that was involved for a relatively short period of time with LEAH PROPERTY, LLC, and in the context thereof participated in real estate transactions resulting in net financial gain to Leah and/or Liberman, Mitchell, and/or LVLP, the specifics of which financial gains were never disclosed nor reasonably discoverable by Plaintiffs herein.

44.    In that context, various real property transfers took place between LVLP and/or Meyer Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Meyer Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

45.    In that context, various real property transfers and ownership equity took place between LVLP and/or Meyer Property, LLC during the operative time, and on

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1   information and belief, financial distributions and transactions occurred between

2   Meyer Property, LLC and its principals on a recurring basis, most of which were never

3   disclosed in publicly available records or documents, is a Delaware limited liability

4   that first registered to do business in Nevada in approximately February, 2011, and

5   continues to operate and do business, in good standing, through and including this

6   date. FC/LW Vegas is or was a Delaware limited liability company registered to do

7   business in the State of Nevada in February 2011 which has maintained registration

8   through the present.

9   46.   On information and belief, Mitchell Holdings, LLC is a Delaware limited liability

10      company that never qualified to do business within the State of Nevada, but was used

11      by Defendant Mitchell for purposes of owning Mitchell's equity or beneficial interest

12      in various other defendants, and fuddling money back and forth between such entities,

13      in a matter that would not be detectable or readily discoverable by Plaintiffs or other

14      creditors.

15   47.   In that context, various real property and ownership equity transfers took place

16      between LVLP and/or Mitchell Holdings, LLC during the operative time, and on

17      information and belief, financial distributions and transactions occurred between

18      Mitchell Holdings, LLC and its principals on a recurring basis, most of which were

19      never disclosed in publicly available records or documents, is a Delaware limited

20      liability that first registered to do business in Nevada in approximately February,

21      2011, and continues to operate and do business, in good standing, through and

22      including this date.

23   48.   In that context, various real property transfers and ownership equity took place

24      between LVLP and/or Mitchell Holdings, LLC during the operative time, and on

25      information and belief, financial distributions and transactions occurred between

26      Mitchell Holdings, LLC and its principals on a recurring basis, most of which were

27      never disclosed in publicly available records or documents, is a Delaware limited

28      liability that first registered to do business in Nevada in approximately February,

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

2011, and continues to operate and do business, in good standing, through and including this date. FC/LW Vegas is or was a Delaware limited liability company registered to do business in the State of Nevada in February 2011 which has maintained registration through the present.

49.    On information and belief, Liberman Holdings, LLC is a Delaware limited liability company that never qualified to do business within the State of Nevada, but was used by Defendant Liberman Holdings, LLC for purposes of owning Liberman's equity or beneficial interest in various other defendants, and fuddling money back and forth between such entities, in a matter that would not be detectable or readily discoverable by Plaintiffs or other creditors.

50.    On information and belief, Liberman Holdings, LLC was owned and directed by Mitchell, Liberman, and/or LVLP.

51.    In that context, various real property and ownership equity transfers took place between LVLP and/or Liberman Holdings, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Liberman and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents, is a Delaware limited liability that first registered to do business in Nevada in approximately February, 2011, and continues to operate and do business, in good standing, through and including this date.

52.    Live Works TIC Successor, LLC, on information and belief, is a fictitious entity in which Liberman, Mitchell, and/or Las Vegas Land Holdings had substantial equity or beneficial interest, and was the ultimate recipient of financial proceeds, monies, emoluments and benefits deriving from Live Work LLC, and a tendency and common agreement entered into between Live Work, LLC and non-party Forest City Enterprises, through contractual and financial arrangements, referred to as the tenancy in common agreement, and numerous subsequent amendments thereto.

53.    In that context, various real property and ownership equity transfers took place

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1    between LVLP and/or Live Works TIC Successor, LLC, during the operative time,

2    and on information and belief, financial distributions and transactions occurred

3    between Live Works TIC Successor, LLC and its principals on a recurring basis, most

4    of which were never disclosed in publicly available records or documents and

5    continues to operate and be active in Southern Nevada through the present.

6    54.    In that context, various real property and ownership equity transfers took place

7    between LVLP and/or Live Works TIC Successor, LLC during the operative time, and

8    on information and belief, financial distributions and transactions occurred between

9    Live Works TIC Successor, LLC and its principals on a recurring basis, most of which

10    were never   disclosed in publicly available records or documents, is a Delaware

11    limited liability that first registered to do business in Nevada in approximately

12    February, 2011, and continues to operate and do business, in good standing, through

13    and including this date.

14    55.    Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH

15    PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK

16    MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC;

17    MITCHELL HOLDINGS, LLC; LIEBERMAN HOLDINGS, LLC; 305 LAS VEGAS,

18    LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LIVE WORK VEGAS, LLC, are

19    believed to be Delaware limited liability companies and/or corporations which have

20    conducted business in the State of Nevada, and are alleged on information and belief

21    to be owned and/or controlled  by Defendants, LAS VEGAS LAND PARTNERS,

22    LLC, DAVID MITCHELL and BARNET LIBERMAN.

23    56.    LVLP, LLC, Mitchell, and Liberman, created the various Entity Defendants,  LAS

24    VEGAS LAND PARTNERS, LLC; MEYER PROPERTY, LTD.; ZOE PROPERTY,

25    LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE

26    WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC;

27    MITCHELL HOLDINGS, LLC; LIEBERMAN HOLDINGS, LLC; 305 LAS VEGAS,

28    LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LIVE WORK VEGAS, LLC, on

1    information and belief, and used multiple sophisticated counsel for purposes of

2    secreting, hiding, and conveying away valuable assets that were available to satisfy

3    creditors such as Plaintiffs as alleged more specifically hereinafter (hereinafter

4    referred to as the "Asset Protection Scheme").

5    57.   That Plaintiffs do not at present know the true names and identities of those Entity

6    Defendants, both corporate and individual, herein joined by fictitious names, but is

7    informed and believes and therefore alleges that said Entity Defendants, are agents,

8    employees, servants and representatives of the named Entity Defendants, or persons

9    and entities acting in concert with the named Entity Defendants with respect to the

10   premises herein plead, who are liable to the Plaintiffs by reason thereof, and the

11   Plaintiffs pray leave to amend this Complaint to insert their true names and identities

12   with appropriate allegations when the same becomes known.

13   58.   Upon information and belief, part of the Asset Protection Scheme contemplated that

14   the majority of the purported equity interests in the asset protection entities referred

15   to two paragraphs above be held in the name of LAS VEGAS LAND PARTNERS,

16   LLC, or an associated entity, all of which were and are in reality controlled by DAVID

17   J. MITCHELL and BARNET LIBERMAN.

18   59.   Upon information and belief, LAS VEGAS LAND PARTNERS, LLC received its

19   equity interests in the asset protection entities gratuitously, or for wholly inadequate

20   consideration.

21   60.   Upon information and belief, LAS VEGAS LAND PARTNERS, LLC is the nominal

22   holders of the alleged interests, in the entity defendants, and takes its direction from

23   DAVID J. MITCHELL and BARNET LIBERMAN, in managing and operation in the

24   asset protection entities, which exist merely to help Entity Defendants, LAS VEGAS

25   LAND PARTNERS, LLC, DAVID J. MITCHELL and BARNET LIBERMAN

26   protect the assets of LAS VEGAS LAND PARTNERS, LLC from judgment creditors

27   such as Plaintiffs.

28   61.   Plaintiff is informed and believes, that the Entity Defendants are the recipients of

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1    fraudulent transfers of real property, monies, and other valuable assets as hereinafter

2    alleged.

3    62.    Nype obtained a judgment against LVLP on or about April 10, 2015, and initiated

4         post-judgment collection and discovery efforts during the Summer of 2015.

5    63.    The first post-judgment discovery documentation received by NYPE were various tax

6         returns and limited related information for LVLP, subsequently followed by various

7         bank statements and financial ledger documentation, which production occurred from

8         approximately late August, 2015 through and including November 2015.

9    64.    Most of the documentation so produced was already stale dated even when produced,

10        (for example, the bank statements only being current through early 2014, despite

11        producing documentation in late 2015.

12   65.    While the documentation produced in the latter half of 2015 disclosed some

13        suspicious circumstances and questionable transactions, it became clear that

14        substantial additional source documents would be required to flesh out and understand

15        precisely what had occurred.

16   66.    Based on a preliminary review of the newly disclosed bank statements and ledgers, it

17        was noted that there was a  comingling of funds related to various payments that

18        appear to be made on behalf of other entities.  Although not all of the canceled checks

19        were provided, the bank statements of Las Vegas Land Partners, LLC located at Bates

20        LVLP01-00001 to LVLP 08-00016 are indicative of usage by numerous related party

21        entities.  An example of the comingling can be found at LVLP 07-00047, more

22        specifically checks number 1287, 1288 and 1289 payable to the Clark County

23        Treasurer for parcels that do not appear to be recorded in the name of Las Vegas Land

24        Partners, LLC and LVLP07-00048 more specifically checks number 1292 and 1293

25        payable to Delaware Secretary of State to register other entities.

26   67.    Documents provided by Las Vegas Land Partners, LLC consisting of a simple check

27        register covering the period 1/13/11 to 4/27/15 also supports that conclusion with the

28        same date, payee and dollar amount information found on the checks.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E SAHARA AVE #106
LAS VEGAS, NEVADA 88104
Phone: (702) 386-7002    Fax: (702) 386-9135

68.   A review of the full tax returns of LVLP Holdings, LLC provided at Bates LVLP09-00001 to LVLP17-0064 Forms 1065 for calendar years 2005 to 2013 was first possible in the late fall of 2015 as well. The tax returns are indicative of a combination and consolidation of several related party Limited Liability Companies.

69.   The organizational documents located at Bates LVLP18-00001 to LVLP19-00202 indicate that Las Vegas Land Partners, LLC is the single equity member of Wink One, LLC and Livework Manager, LLC (who is the sole equity member of Livework, LLC).

70.   The members of Las Vegas Land Partners, LLC are Barnet Liberman and David Mitchell (Bates LVLP19-00033-35).

71.   There is no explanation for the usage of "LVLP Holdings, LLC" as the filing entity for the tax returns. There are numerous real estate parcels, equity interests and sources of income arising from the various consolidated entities listed on the tax returns of LVLP Holdings, LLC that are not traceable to the ledgers provided by Las Vegas Land Partners, LLC.

72.   Additionally there are numerous known sources of cash flow for example arising from Wink One, LLC related to the RTC Lease that are not traceable to the accounting records.

73.   During the Summer of 2016, NYPE again promulgated detailed specific written discovery requests to LVLP, which requests were partially complied with in the form of additional tax returns and ledger documentation, but mostly objected to.

74.   NYPE found it necessary to file a Motion to Compel discovery, and an Order resulting from many months of contested discovery disputes was finally entered by the Court on or about February 2, 2017.

75.   A substantial volume of additional documentation was ultimately produced, after repeated efforts by NYPE, which disclosed additional improprieties, misconduct, and transactions by LVLP and its principals designed to effectively render LVLP insolvent

. . .

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

and unable to respond in damages, which transactions will be discussed, in part, hereinafter.

76. To date, however, the Order Compelling Discovery of February 2, 2017 has only been partially complied with and there remain substantial deficiencies and blocks of documentation that could and should have been produced, but was not. NYPE intends to seek the missing documentation and discovery information required to fully flesh out NYPE's allegations and complaint through supplemental discovery proceedings in the original case, as well as through discovery activity in this newer case.

77. Even the documents produced from January through March, 2017, are inherently contradictory and do not match the data reported on the tax returns.

78. As one key example, however, of the importance of having accurate and complete source records, attached hereto as Exhibit "1" and by this reference incorporated herein is a certification by LVLP's New Jersey CPA for the first time disclosing that various affiliated and associated entities are disregarded for tax and accounting purposes, and are all reported through LVLP Holdings, LLC's business tax return.

79. The partial and incomplete documentation produced in both the fall of 2015, and 2017, does show extensive co-mingling, a failure to keep separate and adequate accounting records for various affiliates and associated companies, a decided lack of concrete detail, and an absolute failure to account for and explain various cash flow entries.

80. Gain the incomplete documentation produced to date, Plaintiff is unable to determine where LVLP's cash flow is coming from, or where the resulting cash flow is being applied.

81. On information and belief, the documentation available shows that LVLP, its affiliates and associated entities are shifting money between one entity and the other to pay bills and cover expenses as needed, and not in any coherent or recurring logical form.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

82. The data that has been provided does not match LVLP tax returns, for example failing to disclose substantial income.

83. Part of the data provided appears to account for, in part, the financial transactions and relationship between LVLP and its joint venture partner (the entity which Nype procured to provide financing for LVLP's projects), Forest City Enterprises.

84. The data available to date appears to show that arrangements were made with Forest City to utilize LVLP's share of revenue and cash flow to reduce debt and build equity, resulting in an absence of actual cash receipt by LVLP.

85. Despite what those records are showing, however, the tax returns are wholly silent and fail to disclose the accrual of any imputed income or equity with respect to the Forest City Joint Ventures, despite the fact that the joint venture documents suggest that LVLP's share of revenue is being used to pay down debt and build equity, which would legally result in the accrual of taxable income which the law requires to be accurately reported    .

86. Indeed, until the preliminary information was received in the Fall of 2015 as supplemented by the early 2017 production, LVLP, based on the tax returns and documentation it had previously supplied, continued to operate, appeared to have assets, appeared to be paying taxes as accrued, and continued to vigorously defend itself.

87. One particular item first disclosed in the late Winter of 2017 is a statement by the acknowledged accountant for LVLP that numerous of the other defendant entities herein are "disregarded for tax purposes", meaning, on information and belief, that their revenue and expenses, as well as income and liabilities, while being nominally contained in a separate legal entity, are a practical matter, and as recognized by Federal Taxing Authorities, one and the same as LVLP.

88. Additional discovery information fleshed out in 2016 and early 2017 includes the fact that LVLP is at the present time effectively insolvent, despite showing millions of

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

dollars of networth on its tax returns, and has been forced to pay its attorneys in both the prior litigation and the present litigation through personal checks and credit cards of Mitchell and/or Liberman, or through affiliate entities.

89.  Much of the newly received financial data also discloses that corporate filing fees for numerous of the defendants herein had been paid, *ad hoc,* from LVLP bank accounts, interchangeably, despite said entities nominally maintaining or claiming separate legal status.

90.  Plaintiffs RUSSELL L. NYPE and the REVENUE PLUS, LLC (hereinafter collectively referred to as "Nype") were Defendants in a case originally initiated by current Defendants, LAS VEGAS LAND PARTNERS, LLC, LIVE WORK, LLC and ZOE PROPERTIES, LLC in the Eighth Judicial District Court in Clark County, Nevada under Case No. A551073, which case commenced on or about November 2, 2007 (hereinafter the "First Case").

91.  Nype counterclaimed in that case with regard to his prior business dealings with LAS VEGAS LAND PARTNERS, LLC, its associate entities, and its principals, BARNET LIBERMAN (hereinafter "Liberman") and DAVID J. MITCHELL (hereinafter "Mitchell"), seeking compensation which he had been promised and which he had earned during the course of the parties ongoing business dealings regarding the development of numerous Las Vegas real estate holdings.

92.  On information and belief, during the pendency of those proceedings, and after defaulting on their obligations to Nype, Liberman and Mitchell undertook the process of creating various affiliated and associate entities, including but not limited to several of the asset protection entities alleged hereinabove, utilizing sophisticated corporate and asset protection counsel.

93.  After years of protracted litigation, Nype ultimately obtained a judgment against LAS VEGAS LAND PARTNERS, LLC on or about April 10, 2015 in the principal amount of $2,608,797.50.

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA  89104
Phone: (702) 386-7002    Fax: (702) 386-9155

94.   As alleged hereinabove, upon information and belief, pursuant to the Asset Protection Scheme, on  various dates spanning 2007 through the present,  Defendant LAS VEGAS LAND PARTNERS, LLC commenced multiple real property and equity ownership transfers to convey its valuable  property interests, to one or more the asset protection entities which asset protection entities continue to hold the subject property or which have subsequently transferred such to additional entities in which Liberman, Mitchell, and or LVLP hold substantial beneficial interests.

95.   In addition to the numerous real property conveyances alleged hereinabove, and totally unbeknownst to Nype at the time LAS VEGAS LAND PARTNERS, LLC transferred literally millions of dollars in monies and liquidated funds to its principals, LIBERMAN and MITCHELL, during a time that LAS VEGAS LAND PARTNERS, LLC, knew or reasonably should have known of Nype's substantial monetary claims against it.

96.   The real estate and monetary transfers alleged hereinabove effectively rendered LAS VEGAS LAND PARTNERS insolvent, and unable to pay its debts on a regular basis as they matured, including but not limited to the monies that the Eighth Judicial District Court has determined are owed to Nype.

97.   Upon information and belief, the aforesaid actions of all Defendants were undertaken consciously, knowingly, willfully, and specifically in an effort to defeat and avoid Plaintiff's rights which were being pursued in the First Case.

98.   Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LIBERMAN AND MITCHELL** were and are the alter ego of LAS VEGAS LAND PARTNERS, LLC, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

which LAS VEGAS LAND PARTNERS, LLC used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being caught herein.

99.    Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, **MEYER PROPERTY, LLC** was and is the alter ego of MEYER PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of MEYER PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of MEYER PROPERTY, LLC entity is not disregarded and the said Defendant held liable for all relief being caught herein.

100.    Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of ZOE PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of **ZOE PROPERTY, LLC,** that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9155

will result if the theoretical separateness of **ZOE PROPERTY, LLC** entity is not disregarded and the said Defendant held liable for all relief being caught herein.

101.  Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of **LEAH PROPERTY, LLC**, that said Defendants did and still do dominate, influence and control of LEAH PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN use and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of **LEAH PROPERTY, LLC**, if entity is not disregarded and the said Defendant held liable for all relief being caught herein.

102.  Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **WINK ONE, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **WINK ONE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of **WINK ONE, LLC** if entity is not disregarded and the said Defendant held liable for all relief being caught herein

103.  Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS,

LLC were and are the alter ego of **LIVE WORK, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon

104.    Plaintiff will result if the theoretical separateness of **LIVE WORK, LLC** if entity is not disregarded and the said Defendant held liable for all relief being caught herein.

105.    Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LIVE WORK MANAGER, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK MANAGER, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of **LIVE WORK MANAGER, LLC** entity is not disregarded and the said Defendant held liable for all relief being caught herein.

106.    Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **AQUARIUS OWNER, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

existent; that each such entity was and remains a mere shell and naked framework which **AQUARIUS OWNER, LLC** used and still use to conduct their business affairs; that each such entity remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of **AQUARIUS OWNER, LLC** entity is not disregarded and the said Defendant held liable for all relief being caught herein.

107.    Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LVLP HOLDINGS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LVLP HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of LVLP HOLDINGS, LLC entity is not disregarded and the said Defendant held liable for all relief being caught herein.

108.    Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **MITCHELL HOLDINGS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **MITCHELL HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

1

2

**MITCHELL HOLDINGS, LLC** entity is not disregarded and the said Defendant held liable for all relief being caught herein.

3

4

5

6

7

8

9

10

11

12

13

14

109.   Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LIEBERMAN HOLDINGS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **MITCHELL HOLDINGS, LLC,** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of **MITCHELL HOLDINGS, LLC** entity is not disregarded and the said Defendant held liable for all relief being caught herein.

15

16

17

18

19

20

21

22

23

24

25

26

27

110.   Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **305 LAS VEGAS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework **which 305 LAS VEGAS, LLC,** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being caught herein.

28

111.   Upon information and belief, Plaintiff is informed and believes and thereon alleges

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9155

that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **LIVE WORKS TIC SUCCESSOR, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORKS TIC SUCCESSOR, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being caught herein.

112. Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **FC/LIVE WORK VEGAS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **FC/LIVE WORK VEGAS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being caught herein.

113. Upon information and belief, Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **CASINO COOLIDGE, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND

PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **CASINO COOLIDGE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being caught herein.

114. This New Case is effectively an extension and development of the first litigation, and is an effort by Plaintiffs to avoid the wrongful misconduct of Defendants and each of them, in attempting to avoid NYPE's creditor rights and protect the assets of LAS VEGAS LAND PARTNERS, LLC, which were, are, and should be available to satisfy Plaintiff's claims.

## FIRST CLAIM FOR RELIEF

### (Constructive Trust)

115. Plaintiff incorporates by reference paragraphs 1 through 114 as though fully set forth.

116. Pursuant to the pending litigation in the First Case,  it was understood that options or equity in various Real Estate parcels owned by LAS VEGAS LAND PARTNERS, LLC in or about 2006, as well as "Choses In Action" such as equity ownership in various affiliated entities, would be available to satisfy Plaintiff's judgment.

117. Defendants knew or reasonably should have known, that the subject property interests were valuable, and that the legitimate equity in the subject real property or beneficial ownership of the affiliate entities and limited liability ownership interest would be sufficient to satisfy Nype's claim, but for the fraudulent conveyances alleged herein.

118. Defendants transferred, hypothecated and encumbered the various property for improper purposes and inadequate consideration.

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

119. All of the foregoing facts make it just and equitable that this court impose and declare a constructive trust upon the subject property interests, and any proceeds therefrom, in favor of Plaintiffs.

120. The court can and should declare a lien against the subject properties, order the sale thereof, and/or order the payment of all rents or monies received from the subject property to Plaintiffs herein.

121. It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and Plaintiff is therefore entitled to an award of reasonable attorneys' fees

## SECOND CLAIM FOR RELIEF

### (Fraudulent Conveyance)

122. Plaintiff incorporates by reference paragraphs 1 through 121 as though fully set forth.

123. Plaintiff is informed and believes, and on that basis alleges that Defendants have taken numerous actions to avoid satisfying Plaintiff's claims against LAS VEGAS LAND PARTNERS, LLC.

124. Plaintiff alleges on information and belief that in order to avoid potential execution against real estate interests, *inter alia*, Defendants, LAS VEGAS LAND PARTNERS, LLC took steps to hypothecate and transfer said property interests and cash to the other Defendants herein.

125. Plaintiff is informed and believes, and on that basis alleges that such transfers by Defendants were undertaken in an effort to avoid the adverse financial consequences of Plaintiff's pending claims, as well as those of other creditors.

126. Plaintiff is informed and believes, and on that basis alleges that the aforementioned transfers were gratuitous, or for inadequate or disguised consideration, made without obligation, and made with an intent to deprive Plaintiff of its ability to recover such funds directly from LAS VEGAS LAND PARTNERS, LLC in connection with the monies owed to Plaintiff.

127. As a result of the aforementioned acts of Defendants, Plaintiff is entitled to a

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

Judgment against them, jointly and severally, in an amount in excess of $10,000.00.

128.    On or about August 14, 2015, during the course of proceedings initiated to enforce and collect upon the judgment in the First Case, Defendant LAS VEGAS LAND PARTNERS, LLC first provided tax returns and detail financial information which revealed to Nype, for the first time, that it had transferred its beneficial interest in numerous real estate parcels, and in the equity of its affiliates, as well as many millions of dollars, to the entity defendants and/or Liberman and Mitchell, during the ongoing pendency of the first case.  In making such transfers, Defendants LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN have acted with the actual intent to hinder delay and to defraud their creditors, including Nype, but fraudulently transferring assets to insiders and the entity defendants.

129.    Nype lacks an adequate remedy at law because, unless the relief sought in this complaint is granted, LAS VEGAS LAND PARTNERS, LLC with the aid of the other Defendants will have succeeded in fraudulently transferring its assets to insiders and/or related entities, depriving Nype of the opportunity to collect upon the judgment, and we see what is due and owing from LAS VEGAS LAND PARTNERS, LLC.

130.    Nype has an high probability of success on the merits in this action.

131.    The aforesaid transfer of assets to insiders and/or the entity defendants was made with actual intent to hinder, delay or defraud creditors, most significantly Nype, and these transfers therefore constitute fraudulent transfers in violation of NRS 112.180.

132.    LAS VEGAS LAND PARTNERS, LLC did not receive reasonably equivalent value for the transfers herein alleged.

133.    Defendant, LAS VEGAS LAND PARTNERS, LLC intended to incur or reasonably should have believed they would incur debts beyond its ability to pay the same as they become due, and thus the transfers at issue are far from transfers in violation of Nevada law.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

134.    Because of the special circumstances of this case, in which LAS VEGAS LAND PARTNERS, LLC is liable for a judgment it has consistently ignored and avoided, having committed fraud to avoid the judgment and their debts to Nype, and the hiding assets and also constituting a risk of further affirmative frustration of valid efforts by Nype to collect upon his judgment, Nype is entitled to:

(1)    The appointment of receiver to take possession of the assets of LVLP, LLC;

(2)    An injunction against further dissipation, disposition, or assignment of any and all assets and property owned by LAS VEGAS LAND PARTNERS, LLC;

(3)    Any other relief that the circumstances may require, including a declaration that the transfers in question are void, and that the assets in question are subject to execution by Nype.

135.    It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is, therefore, entitled to reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

### (Civil Conspiracy)

136.    Plaintiff incorporates by reference paragraphs 1 through 135 as though fully set forth.

137.    As alleged hereinabove, and upon information and belief, the transfer of the subject real estate and equity ownership interests and substantial monetary amounts  were undertaken by Defendants with full knowledge as to the relevant circumstances and in an effort to participate in transactions in derogation of the rights of Plaintiff.

138.    The knowing and willful conduct of the entity Defendants in agreeing to receive the subject real property and act as a nominee for said LAS VEGAS LAND PARTNERS. LLC, LIBERMAN and MITCHELL constitute acts of civil conspiracy.

139.    The Defendants, and each of them worked together in concerted actions with the intent to accomplish an unlawful purpose, vis a vis Plaintiff.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

140. The purpose of the unlawful, concerted actions of Defendants was intended to, or would likely result in direct harm to Plaintiff.

141. As a direct and proximate result of the aforesaid civil conspiracy, undertaken between the Defendants, Plaintiff has been damaged in an amount in excess of $10,000.00.

142. As alleged hereinabove, upon information and belief, Defendants' conduct was willful, knowing, intentional, and malicious, as a matter of law, entitling Plaintiff to recover exemplary damages in an amount in excess of $10,000.00.

143. That it has been necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

144. Plaintiff incorporates by references Paragraphs 1 through 143 as though fully set forth herein.

145. A true and ripe controversy exists as to the dispute, and declaratory relief pursuant to NRS 30.040 is necessary to declare the respective rights, responsibilities, and obligations between the parties as a consequence of Plaintiff's judgment against LAS VEGAS LAND PARTNERS, LLC, and as relates to the various transactions undertaken by Defendants, including but not limited to transactions involving various parcels of valuable Las Vegas Real Estate and the transfer of valuable equity ownership interests as regards LVLP's affiliated entities.

146. For all of the reasons set forth hereinabove, Defendants have acted wrongfully and in violation of Plaintiffs rights as a Creditor, and a direct declaration as to the invalidity of Defendants' transfers, and the viability of Plaintiff's Judgment Lien against real estate as a priority lien (subject only to legitimate preexisting senior encumbrance), and as a valid perfected security interest as regards valuable personal property interests is appropriate, and should be determined and declared by the court.

LAW OFFICES
**JOHN W. MUJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

147.  That it has been necessary for the Plaintiff to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

## FIFTH CLAIM FOR RELIEF

### (Alter Ego)

148.  Plaintiff incorporates by references Paragraphs 1 through 147 As though fully set forth herein.

149.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, DAVID J. MITCHELL; BARNET LIBERMAN; LAS VEGAS LAND PARTNERS, LLC; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIAS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; LIEBERMAN HOLDINGS, LLC; 305 LAS VEGAS LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LIVE WORK VEGAS, LLC, CASINO COOLIDGE, LLC, and each of them, were and remain the alter-egos of each other; that said Defendants did and still do dominate, influence and control each other; that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which the other Defendants used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon Plaintiff will result if the theoretical separateness of the Defendant entities is not disregarded and each such Defendant held liable for all relief being sought herein.

150.  Upon information and belief, to the extent that one or more of the Defendant entities is nominally owned or operated by or through LAS VEGAS LAND PARTNERS, LIBERMAN or MITCHELL with respect to one or more of the Defendant entities, which entities as a practical matter exist with functional unity of ownership in said Defendants, LAS VEGAS LAND PARTNERS, LIBERMAN or

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

MITCHELL, the true and factual individuality and separateness of each such entity was and remains non-existent; each such entity was and remains a mere shell and naked framework, which Defendants LAS VEGAS LAND PARTNERS, LIBERMAN or MITCHELL utilize, through the offices of said Defendants LAS VEGAS LAND PARTNERS, LIBERMAN or MITCHELL and/or through nominees and others to conduct their business affairs. Each such entity is, upon information and belief, merely another nominal manifestation of the business and financial affairs of Defendants LAS VEGAS LAND PARTNERS, LIBERMAN or MITCHELL, and to recognize any such separate entity would work as separate and distinct from Defendants LAS VEGAS LAND PARTNERS, LIBERMAN or MITCHELL, an injustice and fraud upon Plaintiff, to the extent the theoretical or putative separateness of such entity is not disregarded and said nominal Defendants held liable for all the relief being sought herein.

151. As a matter of both statutory common law, and prior declarations of the Eighth Judicial District Court, it is appropriate that the Court further determine and declare that all of the aforesaid entities be held to be the Alter Egos of Defendants LAS VEGAS LAND PARTNERS, LIBERMAN or MITCHELL, and that therefore the various Defendants named herein can and should be jointly and severely liable to the Plaintiff with regard to all claims asserted.

152. That it has been necessary for the Plaintiff to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. For a sum in excess of $10,000.00;

2. For exemplary damages in an amount in excess of $10,000.00;

3. For the imposition of a constructive trust upon the various parcels of real property and valuable equity ownership interests formerly owned by LAS VEGAS LAND

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

PARTNERS, LLC for the benefit of Plaintiff;

4. For an order requiring the sale of the parcels of real estate and valuable ownership interest and an order directing the payment of all rents with regard to the subject real property be made to the order of Plaintiff herein;

5. For the Appointment of a Receiver;

6. For interest upon all damages which Plaintiff recovers at the Nevada Statutory rate.

7. For a declaration as to the invalidity of Defendants' transactions as regards to the various valuable real estate interests and equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC, and a further declaration that Plaintiff's Judgment Lien is valid and stands as a priority lien, subject only to legitimate senior encumbrances.

7. For a determination that the Defendants are the alter egos of each other , and should all be held liable to Plaintiff, jointly and severally, for the damages sought herein.

8. The actions by Defendant, LAS VEGAS LAND PARTNERS, LLC, in conjunction with the other Defendants, to convey valuable property and monies to other Defendants with the intent to deprive Plaintiff of its ability to recover funds was undertaking in a knowing, willful, intentional, and malicious manner, which under Nevada law constitute malice and is sufficient grounds to invoke the availability of exemplary damages against Defendants, and each of them.

9. As a consequence of the willful malicious and intentional misconduct of the Defendants and each of them, Nype is entitled to recover exemplary damages from each Defendant in accordance with Nevada Law, in an amount in excess of $10,000.00, the precise amount to be proven at time of trial;

. . . .

. . . .

. . . .

. . . .

10.    For reasonable attorneys' fees for the prosecution of this suit; and

11.    For such other and further relief as the Court may deem just and proper.

DATED this 21 st day of August, 2017.

JOHN W. MUIJE & ASSOCIATES

By: _____

JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:    (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiffs*

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of JOHN W. MUIJE & ASSOCIATES, and that on the 31st day of August, 2017, I caused to be served a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT FOR: (1) CONSTRUCTIVE TRUST; (2) FRAUDULENT CONVEYANCE; (3) CONSPIRACY TO DEFRAUD; (4) DECLARATORY RELIEF; AND (5) ALTER EGO**, in the following manner:

☐      by placing a copy of the same for mailing in the United States mail, with first class postage prepaid addressed as follows; and/or

☒      by electronically filing with the Clerk of the Court via the Odyssey E-File and Serve System;

☐      by placing a copy of the same for mailing in the United States mail, with first class postage prepaid marked certified return receipt requested addressed as follows: via facsimile at the facsimile number listed below; and/or

☐      pursuant to EDCR 7.26, by causing a copy to be sent via facsimile at the number(s) listed below; and/or

☐      by hand-delivering a copy to the party or parties as listed below:

Garry L. Hayes, Esq.
**HAYES & WELSH**
199 Arroyo Grande, #200
Henderson, Nevada 89074
Telephone: (702) 434-3444
Facsimile: (702) 434-3739
E-Mail: ghayes@lvlaw.com
*Attorneys for Defendants*

Micah S. Echols, Esq.
**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89134
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
E-Mail: mechols@maclaw.com
*Attorneys for Plaintiffs/Counter-Defendant*

_Fern M. Vitman_

An employee of JOHN W. MUIJE & ASSOCIATES

R:\J Files\Nype vs Las Vegas Land Parnters,J3792H\2016---05 - Alter Ego SUIT\Pleadings\8.21.17 First Amended Complaint.wpd

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9155

# EXHIBIT B

# EXHIBIT B

FILED

MAR 20 2018

**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:                              )   BAP No.   NV-17-1200-BHTa
                                    )
CAPRIATI CONSTRUCTION               )   Bk. No.   2:15-BK-15722-ABL
CORPORATION, INC.,                  )
                                    )
              Debtor.               )
_____)
                                    )
CAPRIATI CONSTRUCTION               )
CORPORATION, INC.,                  )
                                    )
              Appellant,            )
                                    )
v.                                  )   **AMENDED MEMORANDUM**[1]
                                    )
SPER, INC.,                         )
                                    )
              Appellee.             )
_____)

Argued and Submitted on December 1, 2017,
at Las Vegas, Nevada

Filed - March 20, 2018

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable August B. Landis, Bankruptcy Judge, Presiding

─────────────

Appearances:   Aj Kung argued for appellant Capriati Construction
               Corporation, Inc.; H. Stan Johnson of Cohen-
               Johnson, LLC argued for appellee SPER, Inc.

─────────────

Before:   BRAND, HOULE[2] and TAYLOR, Bankruptcy Judges.

─────────────

[1]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value.  See 9th
Cir. BAP Rule 8024-1.

[2]   Hon. Mark D. Houle, Bankruptcy Judge for the Central
District of California, sitting by designation.

1    Reorganized debtor Capriati Construction Corp., Inc. appeals

2 an order denying its motion for contempt against SPER, Inc., for

3 SPER's alleged violations of the automatic stay and discharge

4 and/or plan injunction.  Capriati alleged that the fraudulent

5 transfer and alter ego claims SPER was prosecuting in state court

6 against the non-debtor principal of Capriati were property of

7 Capriati's bankruptcy estate or of the reorganized debtor;

8 therefore, SPER's pursuit of those claims prior to confirmation of

9 Capriati's chapter 11[3] plan violated the automatic stay and

10 violated the discharge and/or plan injunction once Capriati's plan

11 was confirmed.  Capriati also appeals the court's order denying

12 reconsideration.  We VACATE and REMAND.

13                **I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

14 **A.    The parties**

15    Capriati is a construction company that historically

16 generated average annual income of $55-$65 million, primarily from

17 public work projects.  The recent recession ultimately led

18 Capriati to file for bankruptcy relief.  David Rocchio, Sr. is the

19 owner, sole shareholder and person in control of Capriati.

20    SPER is a corporate entity owned by Susan Frankewich, Esq.,

21 through which she conducts her law practice.  Frankewich has

22 practiced bankruptcy law for over 30 years.  Frankewich was the

23 attorney for Rocchio and his various entities from 2003 to mid

24 2015.  Rocchio did not sign any retention agreements with

25 SPER/Frankewich individually and was not a guarantor for any

26 ─────────────

27    [3]  Unless specified otherwise, all chapter, code and rule
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The
28 Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

1  unpaid legal fees owed by his various entities, including

2  Capriati.

3  **B.    Capriati's bankruptcy filing, the state court action and the**
   **chapter 11 plan**

4

5      Capriati filed its chapter 11 bankruptcy case on October 7,

6  2015.  The court subsequently approved Capriati's application to

7  employ Kung & Brown as its bankruptcy counsel.  SPER later filed

8  an unsecured proof of claim for Capriati's unpaid legal fees of

9  $109,459.50.

10     One week later, SPER, represented by Frankewich, sued Rocchio

11 and his entities in state court for Capriati's unpaid legal fees,

12 alleging breach of contract, monies owed, quantum meruit,

13 misrepresentation, alter ego, and fraudulent transfer.  SPER did

14 not name Capriati as a defendant, but SPER's claims for alter ego

15 and fraudulent transfer alleged that Rocchio (and the other

16 defendants) manipulated and transferred assets and funds between

17 Capriati and themselves to avoid payment of creditors, including

18 SPER.  SPER requested that Rocchio be declared the alter ego of

19 Capriati and be held liable for any judgment.

20     Rocchio retained Capriati's bankruptcy counsel, Kung & Brown,

21 to file a motion to dismiss the state court action as to all

22 defendants.  Rocchio argued that, because SPER's fraudulent

23 transfer claim alleged that Capriati fraudulently conveyed assets

24 prior to its filing bankruptcy, such claim had to be heard by the

25 bankruptcy court.  In opposition to SPER's later summary judgment

26 motion, Rocchio argued that SPER could not recover Capriati's debt

27 from him or his entities under an alter ego theory, because

28 Capriati had to be named as a necessary and indispensable party

-3-

but could not be due to the bankruptcy stay.  Rocchio also argued
that, to the extent any alleged transfers from Capriati to Rocchio
were avoidable, they would be reclaimed as property of Capriati's
bankruptcy estate; thus, SPER was impermissibly seeking recovery
against property of the estate.

Kung & Brown thereafter filed a supplement to its employment
application, disclosing to the bankruptcy court that the firm had
represented Rocchio in the state court action.  Kung & Brown
asserted that its limited representation of Rocchio and his
entities did not create a conflict of interest in Capriati's
pending bankruptcy but rather preserved estate assets and
prevented further violation of the automatic stay.  Kung & Brown
maintained that any alleged claims of alter ego and fraudulent
transfers by Capriati to Rocchio and his entities were claims
belonging to Capriati's bankruptcy estate, and so the firm had to
act quickly to ensure that SPER did not usurp estate assets.  Both
Kung & Brown and Rocchio represented that Rocchio had no adverse
interests to the Capriati estate.

Capriati filed various reorganization plans and disclosure
statements.  SPER was the only party to oppose confirmation of
Capriati's third amended plan of reorganization, which ultimately
became the confirmed plan ("Plan").  In each of its objections to
Capriati's disclosure statements, proposed plans and Plan
confirmation, SPER alleged that Capriati was not accounting for
avoidable fraudulent transfers involving Capriati, Rocchio, his
other entities and his family members.  In response to one of
SPER's objections, Capriati's financial expert opined that either
the transfers alleged by SPER were not avoidable fraudulent

-4-

1 transfers, or, to the extent that any were avoidable, no benefit

2 existed for the estate and creditors because any amount recovered

3 would not be collectible.  In short, the cost of pursuing such

4 claims exceeded any likely recovery.

5      After a two-day confirmation trial, at which the bankruptcy

6 court considered SPER's allegations of fraudulent transfers

7 involving Capriati, the court entered an order confirming the

8 Plan.  The Plan provisions relevant here are:

9         **9.1.    Vesting of Assets.**  Subject to the provisions of
        this Plan and as permitted by Section 1123(a)(5)(B) of the
10        Bankruptcy Code, the Assets, **including the Litigation
        Claims[4]** and right, title, and interest being assumed by
11        Reorganized Debtor in the assumed Executory Contracts,
        **shall be transferred to Reorganized Debtor on the
12        Effective Date.**

13        **9.2.    Preservation of Litigation Claims.**  In accordance
        with Section 1123(b)(3) of the Bankruptcy Code, and except
14        as otherwise expressly provided herein, **all Litigation
        Claims shall be assigned and transferred to Reorganized
15        Debtor.  Reorganized Debtor,** as the successor in interest
        to Debtor and the Estate, **may and shall have the exclusive
16        right to sue on, settle, or compromise any and all
        Litigation Claims, including derivative actions existing
17        against Debtor on the Effective Date.**

18        **9.4.    Injunction.**  From and after the Effective Date . . .
        **all entities that have held, currently hold, or may hold
19        a Claim** . . . that is terminated pursuant to the terms of
        this Plan **are permanently enjoined from** taking any of the
20        following actions on account of any such Claims . . . :
        (I) **commencing or continuing in any manner any action** or
21        other proceeding **against Reorganized Debtor or its
        property**[.]
22
23 (Emphasis added).

24 _____

25      [4]  Section 1.1.41 of the Plan defined "Litigation Claims" as
   "[a]ll rights, claims, torts, liens, liabilities, obligations,
26 actions, causes of action, Avoidance Actions [including under
   §§ 544, 548, 550 & 551] derivative actions, proceedings, debts,
27 contracts, judgments, damages and demands whatsoever in law or in
   equity, whether known or unknown, contingent or otherwise, that
28 Debtor or the Estate may have against any Person."

                          -5-

C.   **Capriati's motion for contempt**

     More than a year after SPER was on notice that the fraudulent
transfer and alter ego claims alleged in the state court action
were property of the estate or of the Reorganized Debtor, SPER
filed another amended complaint in the state court action, this
time asserting claims against just Rocchio for Capriati's unpaid
legal fees, including claims for fraudulent transfer and alter
ego.  Capriati was not named as a defendant, but SPER alleged that
Rocchio had caused Capriati to transfer its assets to him to avoid
paying creditors, including SPER.  SPER again requested that
Rocchio be declared the alter ego of Capriati.

     In response, Capriati filed a motion for contempt in the
bankruptcy court, seeking sanctions against SPER for its alleged
violations of the automatic stay and the discharge and/or Plan
injunction ("Contempt Motion").  Capriati argued that SPER's
fraudulent transfer and alter ego claims, which alleged only
general claims of injury to all creditors of Capriati, were
property of the estate that could only be pursued by Capriati and
which revested in the Reorganized Debtor upon confirmation; thus,
SPER's state court action pursuing those claims after Capriati's
bankruptcy filing and prior to Plan confirmation violated the
automatic stay under § 362(a)(3) and violated the Plan injunction
after confirmation.  Capriati requested sanctions against SPER of
$25,000 plus attorney's fees.

     In opposition, SPER argued that Capriati was judicially
estopped from claiming that the fraudulent transfer and alter ego
claims were estate assets:  Capriati never disclosed any possible
avoidance actions against Rocchio in its schedules or statements

-6-

of financial affairs; at no time prior to confirmation did
Capriati ever amend its schedules or statements of financial
affairs to disclose the fraudulent transfer and alter ego claims;
neither the Plan nor confirmation order reserved or disclosed the
claims as a "litigation asset" of the estate; the expert report
minimized the value of any fraudulent transfer claim; and the
approved disclosure statement disavowed the existence of any such
claim.  Therefore, argued SPER, Capriati could not now assert that
the fraudulent transfer and alter ego claims were estate assets,
when Capriati had previously and successfully asserted before the
bankruptcy court in connection with Plan confirmation that no such
claims existed.

    Next, SPER argued that Rocchio, a non-debtor, was not
protected by the automatic stay or Capriati's discharge.  SPER
maintained that the claims against Rocchio in the state court
action were "direct" claims against him under Nevada law, not
derivative corporate claims.  SPER argued that at least $1,285,500
in Capriati distributions to Rocchio were recoverable for
unsecured creditors, which was more than double what they were
getting under the Plan.

    In reply, Capriati maintained that it did not list any
avoidance actions against Rocchio in its schedules or statements
of financial affairs because it never believed that any such
claims existed.  Moreover, the alleged excessive salary payments
to Rocchio were the subject of SPER's many objections and the crux
of its objection to Plan confirmation, which SPER fully litigated
at the confirmation trial.  Capriati maintained that SPER's
allegations of fraudulent transfers were without merit or support

in fact or law; SPER presented no witnesses at the confirmation
trial and entered only one document into evidence — Capriati's
financial expert's report — which concluded that no viable
fraudulent transfer or avoidance actions against Rocchio existed.

At the Contempt Motion hearing, counsel for SPER conceded
that SPER had no "direct" claim against Rocchio individually and
independent from Capriati, but then argued that SPER had a direct,
in personam claim against Rocchio as "transferee" of a fraudulent
conveyance.  Counsel maintained that such claim did not violate
the automatic stay or the Plan injunction, because it was not an
action to recover the asset for the benefit of Capriati's estate.

**D.    The bankruptcy court's ruling on the Contempt Motion**

The bankruptcy court first determined that the Contempt
Motion failed on the basis of judicial estoppel.  The court
focused on Capriati's prior statement that it did not believe any
fraudulent transfer and alter ego claims against Rocchio existed
and was unaware of any such claims.  To the extent Capriati
believed otherwise, Capriati never disclosed the claims in its
bankruptcy papers filed under oath.  Thus, because of its failure
to disclose and outright denial of the existence of any such
claims against Rocchio, the court reasoned that Capriati was
judicially estopped from now taking the inconsistent position that
such claims were estate assets revested in the Reorganized Debtor
upon confirmation of the Plan.

Alternatively, the court held that the Contempt Motion failed
because neither the automatic stay nor the discharge injunction
applied to Rocchio, a non-debtor Capriati officer and insider.
Sections 9.4 and 9.5 of the Plan prohibited post-confirmation and

-8-

post-discharge actions against the Reorganized Debtor or its
property but excepted direct liability claims against Capriati's
officers and other insiders.  The court summarily concluded that
SPER's claims for fraudulent transfer and alter ego were "direct"
claims against Rocchio individually and therefore not protected by
the automatic stay or the discharge and/or Plan injunction.

Finally, the court found that Capriati failed to meet its
burden of proving either a willful violation of the automatic stay
or the discharge injunction; SPER legitimately believed that its
claims in the state court action were against Rocchio
individually.

**E.   Capriati's motion for reconsideration**

Capriati timely moved for reconsideration of the Contempt
Order.  The bankruptcy court denied the motion, determining that
Capriati had not presented any grounds for reconsideration.

This timely appeal followed.

### II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334
and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

### III. ISSUES

1.   Did the bankruptcy court err by determining that SPER had not
willfully violated the automatic stay or the Plan injunction
without determining first whether the fraudulent transfer and
alter ego claims were either property of the estate or property of
the Reorganized Debtor?

2.   Did the bankruptcy court err in determining that SPER had not
willfully violated the automatic stay or the Plan injunction and
therefore abused its discretion by not holding SPER in contempt?

-9-

3.    Did the bankruptcy court abuse its discretion by invoking
judicial estoppel to deny the Contempt Motion?
4.    Did the bankruptcy court abuse its discretion in denying the
motion to reconsider?

## IV. STANDARDS OF REVIEW

Determining whether the bankruptcy court applied the correct
legal standard is a question of law reviewed de novo.  Emmert v.
Taggart (In re Taggart), 548 B.R. 275, 286 (9th Cir. BAP 2016).
An erroneous view of the law may induce the bankruptcy court to
make a clearly erroneous finding of fact.  Ozenne v. Bendon (In re
Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006) (citing Power v.
Union Pac. R.R. Co., 655 F.2d 1380, 1382-83 (9th Cir. 1981)).

Whether property is included in a bankruptcy estate is a
question of law subject to de novo review.  Cisneros v. Kim (In re
Kim), 257 B.R. 680, 684 (9th Cir. BAP 2000).

We review for abuse of discretion the bankruptcy court's
decision to apply judicial estoppel, or preclusion of inconsistent
positions, to the facts of a case.  Hamilton v. State Farm Fire &
Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001); Diamond Z Trailer,
Inc. v. JZ L.L.C. (In re JZ L.L.C.), 371 B.R. 412, 416 (9th Cir.
BAP 2007).

We review for an abuse of discretion the bankruptcy court's
decision whether to hold a party in civil contempt.  Knupfer v.
Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003);
Rediger Inv. Servs. v. H. Granados Commc'ns, Inc. (In re H
Granados Commc'ns, Inc.), 503 B.R. 726, 731 (9th Cir. BAP 2013).
The underlying factual findings are reviewed for clear error.
In re Dyer, 322 F.3d at 1191; In re H Granados Commc'ns, Inc.,

-10-

1  503 B.R. at 731-32.  A finding is clearly erroneous when it is
2  illogical, implausible or without support in the record.  United
3  States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

4      We review for an abuse of discretion the bankruptcy court's
5  decision to deny a reconsideration motion under Civil Rule 59.
6  Ybarra v. McDaniel, 656 F.3d 984, 998 (9th Cir. 2011); Cruz v.
7  Stein Strauss Tr. # 1361, PDQ Invs., LLC (In re Cruz), 516 B.R.
8  594, 601 (9th Cir. BAP 2014).

9      A bankruptcy court abuses its discretion if it applies the
10 wrong legal standard, misapplies the correct legal standard, or if
11 it makes factual findings that are illogical, implausible or
12 without support in inferences that may be drawn from the facts in
13 the record.  TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d
14 820, 832 (9th Cir. 2011).

15                          **V. DISCUSSION**

16 **A.   The bankruptcy court's failure to determine ownership of the**
17 **fraudulent transfer and alter ego claims led to error.**

18      The bankruptcy court denied the Contempt Motion in the first
19 instance based on its determination that judicial estoppel barred
20 the relief sought by Capriati, and second, summarily, on the
21 alternative grounds that the automatic stay and discharge and/or
22 Plan injunction did not apply to preclude SPER's filing and
23 pursuit of its "direct" claims for fraudulent transfer and alter
24 ego against Rocchio, a non-debtor third party and Capriati
25 insider.  The bankruptcy court never determined whether the
26 fraudulent transfer and alter ego claims were property of the
27 estate or property of the Reorganized Debtor.  This approach puts
28 the cart before the horse.  The omission led to the erroneous or

                              -11-

1  incomplete finding that SPER's claims for fraudulent transfer and

2  alter ego were exclusively "direct" claims against Rocchio; the

3  record and the law are to the contrary.  And this conclusion

4  improperly colored the determinations that followed.

5      Property of the estate includes "all legal or equitable

6  interests of the debtor in property as of the commencement of the

7  case."  § 541(a)(1).  A debtor's "causes of action" are "property

8  of the estate."  Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002

9  (9th Cir. 2005) (citing United States v. Whiting Pools, Inc.,

10 462 U.S. 198, 205 n.9 (1983)).  Thus, the trustee, or in this case

11 the debtor-in-possession, stands in the shoes of the debtor

12 corporation and has standing to bring any suit that the debtor

13 corporation could have instituted had it not filed for bankruptcy

14 relief.  Id.  The trustee's standing to sue on behalf of the

15 estate is exclusive; a debtor's creditors cannot prosecute such

16 claims belonging to the estate absent abandonment.  Estate of

17 Spirtos v. One San Bernardino Cty. Super. Ct., 443 F.3d 1172, 1175

18 (9th Cir. 2006).

19      Furthermore, § 1141(b) "vests **all** of the property of the

20 estate, scheduled and unscheduled, in the debtor upon plan

21 confirmation, unless the court or plan provides otherwise."  In re

22 JZ L.L.C., 371 B.R. at 418 (emphasis in original).  Hence, because

23 of § 1141(b), the general rule under § 554(d) — that property of

24 the estate that is not scheduled and not otherwise administered

25 before the case is closed and is not abandoned to the debtor at

26 the time of closing, but rather remains property of the estate,

27 forever — does not apply.  Id.  Thus, even undisclosed assets in a

28 chapter 11 case vest in the debtor under § 1141(b), unless the

-12-

1  plan provides otherwise.  Id. at 419.  Section 9.1 of the Plan

2  provides that all Litigation Claims, including all known or

3  unknown causes of action, Avoidance Actions and derivative

4  actions, vested in the Reorganized Debtor on the effective date.

5  This is not inconsistent with § 1141(b).

6      **1.    The fraudulent transfer claim**

7      The crux of SPER's fraudulent transfer claim was Capriati's

8  alleged over-payment of salary to Rocchio, which SPER argued was a

9  transfer in fraud of all creditors and harmful to Capriati.  In

10  other words, SPER's complaint alleged a direct injury to Capriati,

11  from which an injury to SPER was derived.  "If a cause of action

12  alleges only indirect harm to a creditor (i.e., an injury which

13  derives from harm to the debtor), and the debtor could have raised

14  a claim for its direct injury under the applicable law, then the

15  cause of action belongs to the estate."  Schertz-Cibolo-Universal

16  City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health

17  Tr.), 25 F.3d 1281, 1284 (5th Cir. 1994).

18      We conclude that SPER's fraudulent transfer claim asserted in

19  the state court action was property of Capriati's bankruptcy

20  estate by virtue of § 544(b) once Capriati filed its bankruptcy

21  petition, and such claim could only be pursued by Capriati.

22  § 548(a); The Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 261

23  (5th Cir. 2010) (fraudulent transfer claims become estate property

24  "once bankruptcy is under way" by virtue of trustee's successor

25  rights under § 544(b)); Nat'l Tax Credit Partners, L.P. v. Havlik,

26  20 F.3d 705, 708-09 (7th Cir. 1994) (same).  See also Whiting

27  Pools, Inc., 462 U.S. at 205 ("Section 541(a)(1) is intended to

28  include in the estate any property made available to the estate by

-13-

1  other provisions of the Bankruptcy Code," which would include
2  property made available through § 544).

3      We reject SPER's argument that it could pursue a direct claim
4  against Rocchio as the "transferee" of a fraudulent transfer under
5  Nevada law, namely NRS 112.220, which provides for recovery of the
6  value of the asset transferred from the transferee, during the
7  chapter 11 case.  That statute does not consider the effect of a
8  corporate debtor's bankruptcy filing and the fact that a
9  prepetition claim for injury to the debtor by an insider's
10  fraudulent transfers is property of the corporate debtor's estate.

11  '   **2.   The alter ego claim**

12      Whether the alter ego claim was property of the estate or of
13  the Reorganized Debtor is not as easy to determine.  The alter ego
14  doctrine is used to establish the direct liability of a
15  shareholder when that shareholder improperly uses the corporate
16  entity to commit acts which harm the corporation.  Here, SPER
17  alleged a traditional veil-piercing (alter ego) claim, whereby a
18  creditor attempts to place liability for a debtor-corporation's
19  obligations on its shareholders.

20      Whether an alter ego claim is property of the bankruptcy
21  estate depends on two things:  (1) whether under state law where
22  the corporate debtor is incorporated, the debtor is permitted to
23  pierce its own corporate veil; and (2) whether the claim is a
24  general one, of the type that could be brought by any creditor of
25  the debtor.  Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130,
26  132-33 (2d. Cir. 1993); S.I. Acquistion, Inc. v. Eastway Delivery
27  Serv., Inc., 817 F.2d 1142, 1152-53 (5th Cir. 1987); CBS, Inc. v.
28  Folks (In re Folks), 211 B.R. 378, 384, 387 (9th Cir. BAP 1997),

-14-

1  rev'd on other grounds by Ahcom, Ltd. v. Smeding, 623 F.3d 1248

2  (9th Cir. 2010); Murray v. Miner, 876 F. Supp. 512, 516 (S.D.N.Y.

3  1995); In re Davey Roofing Inc., 167 B.R. 604, 608 (Bankr. C.D.

4  Cal. 1994), rev'd on other grounds by Ahcom, Ltd. v. Smeding,

5  623 F.3d 1248 (9th Cir. 2010).  If the answer to both of these

6  questions is yes, then the alter ego claim is property of the

7  estate, belongs to the trustee or debtor-in-possession, and cannot

8  belong to any individual creditor.  In re Folks, 211 B.R. at 387

9  (citing Davey Roofing, Inc., 167 B.R. at 606).  "This rule ensures

10 that all of a debtor's creditors receive equal treatment:

11 otherwise, those who asserted alter ego claims first would obtain

12 payment of the claims in preference to and to the detriment of

13 other creditors, despite having no greater claim on the alter

14 ego's assets." Murray, 876 F. Supp. at 516 (internal quotation

15 marks and citation omitted).

16      Despite SPER's assertion and the bankruptcy court's finding

17 to the contrary, the alter ego claim alleged here was a general,

18 as opposed to a personal or individualized, claim.  "A cause of

19 action is personal if the claimant himself is harmed and no other

20 claimant or creditor has an interest in the cause." In re Folks,

21 211 B.R. at 387 (internal quotation marks and citation omitted).

22 "A general claim exists if the liability is to all creditors of

23 the corporation without regard to the personal dealings between

24 such officers and such creditors." Id. (internal quotation marks

25 and citation omitted).  In other words, if the alter ego claim

26 alleges acts that harmed the financial condition of the

27 corporation as a whole and all creditors equally, such claims are

28 general alter ego claims.  Id.  See Kalb, Voorhis & Co., 8 F.3d at

-15-

1 | 133; <u>In re Davey Roofing, Inc.</u>, 167 B.R. at 608.

2 |     SPER's alter ego claim alleging that Rocchio (1) had failed
3 | to observe corporate formalities with respect to Capriati,
4 | (2) used corporate funds for his own personal use, and (3) had
5 | manipulated Capriati's assets and funds to avoid payment of
6 | creditors was a general claim because all creditors are affected;
7 | no particularized injury to SPER existed that could not be brought
8 | by other Capriati creditors harmed by Rocchio's alleged bad acts.
9 | Accordingly, the bankruptcy court clearly erred to the extent that
10 | it found SPER had a "direct" or personal alter ego claim against
11 | Rocchio that was not an asset of the chapter 11 estate.

12 |     As for the question of whether Capriati could pierce its own
13 | corporate veil, the parties have been operating under the
14 | assumption that Nevada alter ego law applies.  However, Capriati
15 | is a Rhode Island corporation.  Thus, as noted above, Rhode Island
16 | alter ego law applies.

17 |     Rhode Island recognizes the equitable doctrine of alter ego.
18 | <u>McFarland v. Brier</u>, 769 A.2d 605, 613 (R.I. 2001) (alter ego
19 | doctrine permits creditors of a corporation to reach assets of
20 | individual(s) that control the corporation).  However, we could
21 | not locate any Rhode Island Supreme Court case answering the
22 | question of whether a corporation may pierce its own veil.

23 |     In any event, the general rule in most (if not all) states is
24 | that "alter ego" is not an independent cause of action, but is an
25 | equitable remedy — a legal theory or doctrine used to impose
26 | liability against the alter ego defendant under another cause of
27 |
28 |

-16-

1  action.[5]  We could not locate a Rhode Island Supreme Court case
2  stating whether this is the law in Rhode Island, but based on that
3  Court's use of the terms "equitable" and "doctrine" in cases
4  discussing alter ego, we can assume that Rhode Island follows this
5  general rule.  See Heflin v. Koszela, 774 A.2d 25, 30 (R.I. 2001)
6  ("To invoke the equitable alter ego doctrine . . . .").

7      Thus, we question what value SPER's alter ego claim has as a
8  remedy absent the ability to pursue the fraudulent transfer claim.

9      **3.    SPER violated the automatic stay**

10      The bankruptcy court determined that SPER could not have
11  violated the automatic stay by filing and pursuing its "direct"
12  claims for fraudulent transfer and alter ego against Rocchio
13  individually in the state court action.  We do not argue the point
14  that generally a non-debtor is not protected by the automatic
15  stay.  However, as we have determined, SPER's fraudulent transfer
16  claim was not a "direct" claim against Rocchio, because it became
17  property of the estate once Capriati filed its bankruptcy case.

18      The automatic stay continues to protect property of the
19  estate so long as it retains that status.  § 362(c)(1).  While the
20  automatic stay did not apply to Rocchio, it did apply to claims
21  against property of the estate prior to confirmation under

22

23  _____

24      [5]  For example, in California "[a] claim against a defendant,
    based on the alter ego theory, is not itself a claim for
25  substantive relief, e.g., breach of contract or to set aside a
    fraudulent conveyance, but rather, procedural . . . " Hennessey's
26  Tavern, Inc. v. Am. Air Filter Co., 204 Cal. App. 3d 1351, 1359
    (1988).  "Alter ego is merely a legal theory, or doctrine,
27  employed to make a substantive cause of action applicable to the
    'alter ego defendant' where otherwise that claim could only be
28  stated against the corporate entity."  Id.

-17-

1   § 362(a)(3).[6]  As a result, SPER violated the automatic stay when

2   it asserted the fraudulent transfer and related alter ego claims

3   in its state court complaint.  And acts in violation of the stay

4   are void, absent an annulment of the stay.  SPER cannot rely on

5   those claims for relief either as initially pled or as amended.

6   Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th

7   Cir. 1992) (actions taken in violation of the automatic stay are

8   void).

9        Whether SPER has a post-Plan confirmation "direct" claim is

10  an issue for further consideration, but it must assert such a

11  claim as a new matter after confirmation and without reliance on

12  void assertions during the course of the case.  However, SPER's

13  new attempt would remain subject to potentially successful attack

14  based on the discharge and Plan injunction and subject to defenses

15  such as the statute of limitations, as applicable.

16       Section 362(k) permits the recovery of damages resulting from

17  a stay violation.  This subsection, however, applies only to

18  individuals, not corporations.  In re H Granados Commc'ns, Inc.,

19  503 B.R. at 733.  Nonetheless, a corporation may be entitled to

20  recovery for a stay violation under § 105(a) as a sanction for

21  civil contempt.  Id.

22       To find a party in civil contempt for a stay violation, the

23  threshold inquiry focuses on a finding of "willfulness."  Id.

24  (citing In re Dyer, 322 F.3d at 1191).  The bankruptcy court must

25  find that:  (1) the party knew of the automatic stay; and (2) the

26  _____

27       [6]  Under § 362(a)(3), the automatic stay prohibits "any act
    to obtain possession of property of the estate or of property from
28  the estate or to exercise control over property of the estate."

-18-

1  party's actions that violated the stay were intentional.  Id.
2  Whether the party exhibited bad faith or had a subjective intent
3  to violate the stay is irrelevant.  Id.  The movant bears the
4  burden of showing by clear and convincing evidence that the party
5  violated the stay.  Id.

6       SPER has never claimed that it did not receive notice of
7  Capriati's bankruptcy filing.  Indeed, it was careful not to
8  include Capriati as a defendant in the state court action, filed
9  just one week after Capriati filed its chapter 11 case.  Further,
10  Frankewich, a bankruptcy attorney of over 30 years, is certainly
11  familiar with the rules of the automatic stay and knew or should
12  have known that usurping property of the bankruptcy estate is a
13  willful violation of the automatic stay.  Her subjective belief
14  that the claims in the state court action were against Rocchio
15  only and not Capriati makes no difference for purposes here,
16  despite the bankruptcy court's ruling to the contrary.  Because
17  the court applied an incorrect legal standard, its finding that
18  SPER had not willfully violated the automatic stay is clearly
19  erroneous.  In re Ozenne, 337 B.R. at 218.

20       The record supported a determination that SPER willfully
21  violated the automatic stay by filing and continuing to pursue the
22  fraudulent transfer claim against Rocchio in the state court
23  action after Capriati filed its bankruptcy case and prior to
24  confirmation of the Plan.  Therefore, the bankruptcy court abused
25  its discretion by not holding SPER in contempt.

26       **4.    Whether SPER violated the discharge and/or Plan
           injunction can be determined on remand.**
27

28       Per § 1141(b) and Sections 1.1.41, 9.1, 9.2 and 9.4 of the

                                -19-

1  Plan, the fraudulent transfer claim (and maybe the alter ego claim
2  if viable under Rhode Island law and if it was property of the
3  estate) appears to be a "Litigation Asset" that reverted to the
4  Reorganized Debtor upon confirmation of the Plan, gave the
5  Reorganized Debtor exclusive right to sue on, settle or compromise
6  that claim, and permanently enjoined any other parties from
7  commencing or continuing any action regarding that claim.
8  Capriati argues that the bankruptcy court erred by not holding
9  SPER in contempt for willfully violating the Plan injunction and
10 confirmation order, when it was clear that SPER was attempting to
11 take control over claims belonging to the Reorganized Debtor.
12     The contempt remedy is also available with respect to
13 violations of the discharge injunction under § 105(a).  ZiLOG,
14 Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir.
15 2006); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th
16 Cir. 2002); In re Taggart, 548 B.R. at 286.  The party seeking
17 contempt sanctions has the burden of proving, by clear and
18 convincing evidence, that the alleged contemnor "(1) knew the
19 discharge injunction was applicable and (2) intended the actions
20 which violated the injunction."  In re ZiLOG, Inc., 450 F.3d at
21 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th
22 Cir. 2002) ("The moving party has the burden of showing by clear
23 and convincing evidence that the contemnors violated a specific
24 and definite order of the court.").  Knowledge of the injunction
25 is a question of fact that can normally be resolved only after an
26 evidentiary hearing.  In re ZiLOG, Inc., 450 F.3d at 1007.
27 However, where the facts are not in dispute, no hearing need be
28 held.  Id. at 1007 n.11 (citing In re Dyer, 322 F.3d at 1191-92).

-20-

1       Here, the bankruptcy court applied the correct legal standard
2   for a willful violation of the discharge or Plan injunction.  It
3   is undisputed that SPER knew of the Plan injunction and
4   confirmation order given its objections to Plan confirmation,
5   which were overruled at the confirmation trial, and that SPER
6   continued to pursue the state court action post-confirmation.
7   However, it is not clear on this record whether SPER was aware
8   that the Plan injunction **applied** to its claims against Rocchio for
9   fraudulent transfer and alter ego.  The bankruptcy court may need
10  to conduct an evidentiary hearing on remand to make that
11  determination.

12  **B.   We need not decide whether the bankruptcy court abused its**
13       **discretion by invoking judicial estoppel to deny the Contempt**
        **Motion.**

14      Capriati argues that the bankruptcy court misapplied and
15  grossly over-extended the doctrine of judicial estoppel.  We do
16  not fault the court for wanting to apply some sort of equitable
17  doctrine in this case to deny Capriati's request for monetary
18  damages for contempt, which is all it requested.  Like the
19  bankruptcy court, we question why a corporate debtor like Capriati
20  would concern itself with a creditor's pursuit of a third party,
21  albeit a corporate insider, in state court.  The fairly obvious
22  reason Capriati was seeking monetary damages for contempt in the
23  bankruptcy court was to protect and benefit Rocchio, Capriati's
24  principal and sole shareholder.

25      Judicial estoppel is an equitable doctrine that precludes a
26  party from gaining an advantage by asserting one position, and
27  then later seeking an advantage by taking a clearly inconsistent
28  position, either in the same or different actions.  <u>Hamilton</u>,

270 F.3d at 782-83.  The court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, "but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts."  Id. (internal quotation marks and citation omitted).

Although Capriati as a chapter 11 debtor-in-possession and revested debtor had exclusive standing to sue on causes of action that were property of the estate, that right is subject to certain equitable constraints.  In re JZ, L.L.C. 371 B.R. at 418; § 1107.[7] As the Panel has noted:

> Section 1141(b) vesting does not mean that a debtor
> necessarily has unfettered control over property of the
> estate.  It neither authorizes nor condones mischief, such
> as omitting to schedule property.  For that reason,
> equitable constraints may be imposed in order to preserve
> the integrity of the system.  In principle, the full
> panoply of equitable remedies, from constructive trust
> through equitable and judicial estoppel, are available to
> assure that debtors do not overreach.

In re JZ L.L.C., 371 B.R. at 420.  Accordingly, as JZ L.L.C. instructs, the bankruptcy court had discretion to apply an equitable doctrine like judicial estoppel to deny Capriati contempt damages.  We simply disagree that applying the doctrine without recognizing that a stay violation occurred and that SPER continues to rely on void claims for relief is appropriate.

On remand, the bankruptcy court may certainly revisit any equitable doctrine it deems appropriate to deny contempt damages

---

[7]  Under § 1107(a), the debtor in possession is vested with the rights, powers, and duties of a trustee, including the right to sue and be sued.  See § 323(b) (trustee has capacity to sue and be sued).

1  to Capriati.

2  **C.    The bankruptcy court abused its discretion in denying the**
3  **motion to reconsider.**

4      A motion under Civil Rule 59(e) should not be granted unless

5  the court is presented with newly discovered evidence, committed

6  clear error, or if there is an intervening change of controlling

7  law.  389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th

8  Cir. 1999).  Capriati asked the bankruptcy court to reconsider its

9  ruling on the Contempt Motion, arguing that the court had erred

10  when it determined that (1) SPER had a direct claim against

11  Rocchio, (2) that judicial estoppel authorized the court to allow

12  a single creditor to bring postpetition and post-confirmation

13  fraudulent transfer and alter ego claims, which were property of

14  the estate and of the Reorganized Debtor, for the creditor's sole

15  benefit, and that (3) SPER had not willfully violated the

16  automatic stay or Plan injunction.  Because we have determined

17  that the court applied incorrect standards of law and made clearly

18  erroneous findings of fact based on its erroneous view of the law,

19  it abused its discretion by not granting Capriati's motion to

20  reconsider.[8]

21                          **VI. CONCLUSION**

22      For the foregoing reasons, we VACATE and REMAND the Contempt

23  Order for the bankruptcy court to determine what sanctions are

24  _____

25      [8]  SPER requests sanctions against Capriati for filing a
   frivolous appeal.  First, Capriati has prevailed in this appeal.
26  In addition, we deny SPER's request because it fails to comply
   with Rule 8020, which requires a party to request sanctions for a
27  frivolous appeal by separate motion.  State of Cal. Emp't Dev.
   Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1154 (9th
28  Cir. 1996).

                              -23-

1  appropriate for SPER's willful violation of the automatic stay and
2  perhaps willful violation of the Plan injunction.  We leave to the
3  court's discretion as to whether any further proceedings are
4  necessary for it to make that determination.

-24-

# EXHIBIT C

# EXHIBIT C

| Fill in this information to identify your case: |
| --- |

United States Bankruptcy Court for the:

DISTRICT OF NEVADA

Case number *(if known)* _____    Chapter    **7**

☐ Check if this an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy        4/19

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| 1. | Debtor's name | **Las Vegas Land Partners, LLC** |
| --- | --- | --- |

**2.** All other names debtor used in the last 8 years

Include any assumed names, trade names and *doing business as* names

**3.** Debtor's federal Employer Identification Number (EIN)        **20-1506231**

**4.** Debtor's address

**Principal place of business**

**375 E Warm Springs Road, Suite 104
Las Vegas, NV 89119**
Number, Street, City, State & ZIP Code

**Clark**
County

**Mailing address, if different from principal place of business**

_____
P.O. Box, Number, Street, City, State & ZIP Code

**Location of principal assets, if different from principal place of business**

_____
Number, Street, City, State & ZIP Code

**5.** Debtor's website (URL)        _____

**6.** Type of debtor

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor    **Las Vegas Land Partners, LLC**                                                    Case number (*if known*) _____
        Name

**7.  Describe debtor's business**    A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.
\_\_\_\_

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**    *Check one:*

■ Chapter 7

☐ Chapter 9

☐ Chapter 11. *Check all that apply:*

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

■ No.

☐ Yes.

If more than 2 cases, attach a separate list.

District _____    When _____    Case number _____

District _____    When _____    Case number _____

**10.  Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

■ No

☐ Yes.

List all cases. If more than 1, attach a separate list

Debtor _____    Relationship _____

District _____    When _____    Case number, if known _____

| Debtor | **Las Vegas Land Partners, LLC** | | Case number *(if known)* | |
|---|---|---|---|---|
| | Name | | | |

---

**11. Why is the case filed in this district?**

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.  Insurance agency _____

Contact name _____

Phone _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds** .

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

■ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

Debtor  __Las Vegas Land Partners, LLC__                           Case number (if known) _____
  Name

▌ **Request for Relief, Declaration, and Signatures**

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __August 19, 2019__
              MM / DD / YYYY

X **/s/ David Mitchell**                                    **David Mitchell**
  Signature of authorized representative of debtor           Printed name

Title  **Managing Member**

**18. Signature of attorney**

X **/s/ H. Stan Johnson, Esq.**                    Date  **August 19, 2019**
  Signature of attorney for debtor                         MM / DD / YYYY

**H. Stan Johnson, Esq.**
Printed name

**Cohen|Johnson|Parker|Edwards**
Firm name

**375 E Warm Springs Road, Ste 104**
**Las Vegas, NV 89119**
Number, Street, City, State & ZIP Code

Contact phone  _____   Email address  _____

**0265 NV**
Bar number and State

Las Vegas Land Partners, LLC
375 E Warm Springs Road, Suite 104
Las Vegas, NV 89119

H. Stan Johnson, Esq.
Cohen|Johnson|Parker|Edwards
375 E Warm Springs Road, Ste 104
Las Vegas, NV 89119

Clark County Assessor
500 South Grand Central Pkwy
2nd Floor
Las Vegas, NV 89155

Clark County Treasurer
c/o Bankruptcy Clerk
500 S. Grand Central Pkwy
Box 551220
Las Vegas, NV 89155-1220

Dept. of Employment Train Rehabilitation
500 E. Third St.
Carson City, NV

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114-0326

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
100 Cambridge Street, 7th Floor
Boston, MA 02114-9564

Nevada Department of Taxation
1550 College Parkway, Ste. 115
Carson City, NV 89706-7937

State of Nevada Dept. of Motor Vehicles
Attn: Legal Division
555 Wright Way
Carson City, NV 89711-0725

United States Trustee
300 Las Vegas Blvd. South #4300
Las Vegas, NV 89101

Hayes & Welsh
199 N Arroyo Grande Blvd.
Henderson, NV 89074

Katsky Korins, LLP
605 Third Avenue
New York, NY 10158-0038

Piercy Bowler Taylor & Kern
6100 Elton Ave., Suite 1000
Las Vegas, NV 89107

Revenue Plus, LLC
c/o Muije & Associates
1840 E. Sahara Ave. #106
Las Vegas, NV 89104

Russell L. Nype
c/o Muije & Associates
1840 E. Sahara Ave. #106
Las Vegas, NV 89104

SKE Group, LLP
16 Village Court
Hazlet, NJ 07730

Veritex
2250 S Rancho Dr #195
Las Vegas, NV 89102

## United States Bankruptcy Court
### District of Nevada

In re   **Las Vegas Land Partners, LLC**

Debtor(s)

Case No. _____

Chapter   **7**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for   **Las Vegas Land Partners, LLC**   in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

**August 19, 2019**

Date

/s/ H. Stan Johnson, Esq.

**H. Stan Johnson, Esq.**
Signature of Attorney or Litigant
Counsel for   **Las Vegas Land Partners, LLC**
**Cohen|Johnson|Parker|Edwards**
**375 E Warm Springs Road, Ste 104**
**Las Vegas, NV 89119**