1  Lenard E. Schwartzer, NV Bar No. 0399
2  Schwartzer & McPherson Law Firm
   2850 South Jones Boulevard, Suite 1
3  Las Vegas, Nevada  89146-5308
   Telephone:  (702) 228-7590
4  Facsimile:  (702) 892-0122
   E-Mail:  bkfilings@s-mlaw.com
5  *Counsel for Russell Nype and Revenue Plus, LLC*

6                    **UNITED STATES BANKRUPTCY COURT**

7                          **DISTRICT OF NEVADA**

8  In re:                              Case No. BK-S-19-15333-MKN

9  LAS VEGAS LAND PARTNERS, LLC,       Chapter 7

10                          Debtor.    **MOTION TO ANNUL STAY TO**
                                       **VALIDATE STATE COURT**
11                                     **JUDGMENT**

12                                     Hearing Date:   April 13, 2022
13                                     Hearing Time:  2:30 p.m.

14      RUSSELL NYPE and REVENUE PLUS, LLC (collectively, "Nype""), by and

15  through their counsel, Lenard E. Schwartzer, (Nype is sometimes referred to as "Movant")

16  hereby move this Court to annul the automatic stay in this case to eliminate the question

17  whether the Amended Findings of Fact and Conclusions of Law ("Judgment") entered

18  January 17, 2020 by the Nevada District Court (the "State Court") in Case No. A-16-

19  740689-B (the "State Court Litigation") violated the automatic stay in this case. The reason

20  for annulling the automatic stay in this case is to eliminate an issue concerning the validity

21  and preclusive effect of the Judgment entered by the State Court.

22      It appears that all parties in this bankruptcy case and in the State Court case

23  assumed that the employment of counsel by the Trustee and the intervention of the Trustee

24  in the State Court Litigation *as a plaintiff* eliminated the need for an order lifting the stay

25  in this case. In the pending bankruptcy case of Liberman, one of the defendants in the State

26  Court Litigation, Nype filed a complaint objecting to the discharge of the judgment issued

27  in the State Court Litigation. The Bankruptcy Court for the Eastern District of New York

28  has taken the opposite position and questioned the validity of the Judgment issued by the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

State Court in favor of the Nype and the Shelley D. Krohn ("Trustee Krohn"), the Trustee in this bankruptcy case.

## FACTS

1. LVLP filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 19, 2019 (the "Petition Date"). [ECF 1]. Trustee Krohn is the duly appointed and acting Chapter 7 Trustee. [ECF 2].

2. Prior to the Petition Date, Russell Nype and Revenue Plus, LLC (collectively, "Nype") obtained a judgment dated April 10, 2015 against LVLP issued by the Eighth Judicial District Court in Case No.07-A-551073. After an appeal to the Nevada Supreme Court, on Amended and Final Judgment on Costs dated November 1, 2018 was issued. Currently, the amount due on the two judgments is approximately $4,500,000.

3. Prior to LVLP's Petition Date, on July 26, 2016, NYPE sued the Debtor, David J. Mitchell; Barnet Liberman; Las Vegas Land Partners, LLC; Meyer Property, LTD.; Zoe Property, LLC; Leah Property, LLC; Wink One, LLC; Live Work, LLC; Live Work Manager, LLC; Aquarias Owner, LLC; LVLP Holdings, LLC; Mitchell Holdings, LLC; Lieberman Holdings, LLC; 305 Las Vegas LLC; Live Works TIC Successor, LLC; PC/Live Work Vegas, LLC; Casino Collidge, LLC (collectively, the "Co-Defendants") in the State Court Litigation.

4. In the State Court Litigation and in the prior litigation, the Muije Firm represented Nype.

5. In the State Court Litigation, Nype alleged (a) he was entitled to a constructive trust on property of the Co-Defendants; (b) he was entitled to avoid fraudulent transfers of real property by the LVLP and Co-Defendants; (c) LVLP and Co-Defendants had conspired to defraud Nype; (d) he was entitled to a declaration that the transfers of real property by the LVLP and Co-Defendants were void; and (e) he was entitled to a declaration that the Co-Defendants were the alter egos of the LVLP and their assets could be used to pay the debt to Nype.

6. The filing of LVLP's petition automatically stayed the State Court Litigation

1   against the LVLP and the prosecution of the fraudulent transfer action and alter ego claim

2   which is property of the LVLP bankruptcy estate.

3          7.      In the LVLP Bankruptcy Case, Trustee Krohn filed the Application to

4   Employ John W. Muije & Associates as Special Counsel on a Contingent Fee Basis Under

5   11 U.S.C. §327(a).  [ECF 28].

6          8.      In this Application, the Nevada Bankruptcy Court was informed:

7          6.      The filing of the debtor's petition automatically stayed…(b)
           the prosecution of the fraudulent transfer action which is property of the
8          Debtor's bankruptcy estate.
                   ***
9          13.     The Muije Firm agrees to turn over to the trustee fifty percent
10         (50%) of all funds and assets collected or recovered from the defendants
           attributable to any claims litigated in the State court Litigation ….
11         14.     The professional services rendered by the Muije Firm will be
12         limited to representation of the trustee in recovering the fraudulent transfers
           as to which the Debtor's bankruptcy estate claims an interest and are claims
13         asserted in the pending State Court Litigation.

14

15         9.      In the LVLP Bankruptcy Case, the Declaration of John W. Muije in

16  Support of Application to Employ John W. Muije & Associates as Special Counsel

17  was filed.  [ECF 29].

18         10.     In this Declaration, Mr. Muije states:

19         12.     50% 0f any funds and assets collected or recovered from the Co-
           Defendants by the Muije Firm in the State Court litigation… will be turned
20         over to the Trustee.
21         13.     The professional services rendered by the Muije Firm will be limited
           to representation of the trustee in challenging the fraudulent conveyances as
22         to which the Debtor's bankruptcy estate claims an interest and are claims
           asserted in the pending State Court litigation.
23

24         11.     In the LVLP Bankruptcy Case, the Declaration of Shelley D. Krohn in

25  Support of Application to Employ John W. Muije & Associates as Special Counsel was

26  filed.  [ECF 30].

27  / / /

28  / / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

12.     In this Declaration, Trustee Krohn stated:

"13.   I have required that 50% of any funds and assets collected or recovered from the Co-Defendants by the Muije Firm in the State Court litigation (except for the previously awarded discovery sanction) will be turned over to me as trustee.

\*\*\*

17.     I have been informed that the Muije firm will continue to represent Nype with respect to all claims other than the recovery of fraudulent transfers, and because of the agreement between the trustee and Nype, 50% of the recovery and funds collected from the Co-Defendants will not belong to Debtor's estate ("Non-estate Property").

\*\*\*

23.     In my business judgment, it is in the best interests of the debtor's bankruptcy estate to employ the Muije Firm on a contingent fee basis to pursue the bankruptcy estate's claims against the Co-Defendants."

13.     Based upon these documents, this Court entered the Order Granting Application to Employ John W. Muije & Associates as Special Counsel on a Contingent Fee Basis Under 11 U.S.C. §327(a).  [ECF 35].

14.     The record of the State Court Litigation shows that the fraudulent transfer claims and alter ego claims belonging to the LVLP Bankruptcy Estate were prosecuted on behalf of Trustee Krohn.

15     Trustee Krohn moved to intervene in the State Court Litigation as a plaintiff. Shelley D. Krohn, Trustee's Motion to Intervene attached hereto as Exhibit "A".

16.     The State Court entered an Order Granting Trustee's Motion to Intervene attached hereto as Exhibit "B".

17.     Trustee Krohn filed her Complaint in Intervention attached hereto as Exhibit "C".

18.     The Complaint in Intervention shows that the alter ego allegations were prosecuted on behalf of Trustee Krohn and the LVLP Bankruptcy Estate.  See paragraphs 84 through 97 and 136-137 of the Complaint in Intervention.

19.     The Complaint in Intervention shows that the fraudulent conveyance allegations were prosecuted on behalf of Trustee Krohn and the LVLP Bankruptcy Estate.

4

1   See paragraphs 106 through 111 of the Complaint in Intervention.

2       20.    The pleadings filed by Trustee Krohn's counsel include Trustee Krohn as a

3   Proposed Plaintiff in Intervention in the caption.

4       21.    As a result of trial by the Nevada State Court, on January 17, 2020, the

5   Judgment was entered against Liberman and his co-defendants. A copy of that Judgment is

6   attached hereto as Exhibit "D".

7       22.    The Muije Firm collected approximately $400,000 from one of the Co-

8   Defendants-Casino Coolidge, LLC.

9       23.    Subsequently, the Muije Firm turned over 50% of the funds collected from

10  Casino Coolidge, LLC to Trustee Krohn[1], applied for fees and costs and was awarded fees

11  and costs by the Nevada Bankruptcy Court from the assets of the LVLP Bankruptcy

12  Estate.  See First Interim Fee Application Of John W. Muije & Associates For Allowance

13  of Compensation for Services Rendered As Special Litigation Counsel During Period

14  From November 1, 2019 Through April 30, 2020 And For Reimbursement Of Expenses

15  Pursuant To 11 U.S.C. §§330 And 331 And Federal Rule of Bankruptcy Procedure 2016,

16  [ECF 63], and Order Granting First Interim Fee Application Of John W. Muije &

17  Associates For Allowance of Compensation for Services Rendered As Special Litigation

18  Counsel During Period From November 1, 2019 Through April 30, 2020 And For

19  Reimbursement Of Expenses Pursuant To 11 U.S.C. §§330 And 331 And Federal Rule of

20  Bankruptcy Procedure 2016. [ECF 76].

21      24.    More than a year after the entry of the Judgment, on April 1, 2021, one of the

22  defendants in the State Court Litigation, Barnet Louis Liberman ("Liberman") filed a

23  petition for relief under Chapter 11 in the United States Bankruptcy Court for the Eastern

24  District of New York (the "NY Bankruptcy Court").

25      25.    Liberman's bankruptcy case was converted to a case under Chapter 7.

26      26.    In the NY Bankruptcy Court, Nype filed a Proof of Claim based on the debt

27  _____

28  [1] These are the only funds in the possession of the Trustee.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   awarded by the Judgment and filed an adversary objecting to the discharge of the debt

2   awarded by the Judgment.

3       27.     In the adversary, Nype filed a Motion for Partial Summary Judgment based

4   on the Judgment.

5       28.     The NY Bankruptcy Court has raised issues concerning the validity and

6   preclusive effect of the Judgment.  In its Memorandum Decision And Order Denying Motion For

7   Partial Summary Judgment, a copy of which is attached as Exhibit "E", that court stated:

8           "Based on the record before it today, the Court cannot give any
            preclusive effect to the Nevada Judgment. The Court cannot find, based on
9           the current record, that the Nevada Judgment is a valid and enforceable
10          judgment. The litigation commenced by Nype, which resulted in the Nevada
            Judgment, was commenced in aid of collecting on Nype's prior judgment
11          against LVLP, the LVLP Judgment ("Collection Litigation"). Subsequent to
            commencement of the Collection Litigation, but prior to entry of the Nevada
12          Judgment, LVLP filed for relief under chapter 7 of the Bankruptcy Code.
            LVLP was a named defendant in the Collection Litigation. Upon LVLP's
13          bankruptcy filing, the fraudulent conveyance claims asserted in the
14          Collection Litigation became property of the LVLP estate. The Collection
            Litigation continued as against all defendants except LVLP, and the LVLP
15          chapter 7 trustee intervened as a co-plaintiff with Nype as the proper party to
16          assert the fraudulent conveyance claims on behalf of the LVLP estate.

17          In a recent decision, the Bankruptcy Appellate Panel of the Ninth
            Circuit found that "postpetition prosecution of a fraudulent transfer claim
18          against nondebtor parties violates § 362(a)(1)." *Koeberer v. California Bank*
            *of Commerce et al. (In re Koeberer)*, BAP No. NC-21- 1078-FBS, Bk. No.
19          20-110514, 2021 WL 5371142 at *1 (B.A.P. 9th Cir. Nov. 18, 2021). If, in
20          fact, the Nevada Judgment was entered in violation of the stay imposed by
            the LVLP bankruptcy filing, when it cannot be given collateral estoppel
21          effect here.
22          The Motion is denied without prejudice.
23          ***"

24      28.     Nype and Trustee Krohn disagree with NY Bankruptcy Court's

25   analysis but have no economical means of review because there can be no appeal

26   from a denial of a motion for summary judgment.

27      29.      Subsequently, in a response to a Motion to Lift Stay Re Nevada

28   Bankruptcy seeking to lift the stay in the Liberman bankruptcy case, a copy of

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    which is attached as Exhibit "F", the NY Bankruptcy Court stated:

2            But to the extent the argument is it was stayed at the time, **I'm going
3        to rule there was no stay in place**, so therefore, he can go back to New
         York and that argument is off the table, which leaves us pretty much exactly
4        where we are today. Now if they want to do that, it's a free country, you
         know, okay.
5        ***
6    The only issue in Nevada is whether or not there was a stay in place; if there
     was, whether it was lifted. **And I don't know what that stay is on,
7    therefore, I can't tell them not to do it. I don't think there's a violation of
     the stay on the papers that's in front of me.** Now if somebody had raised
8    the question that the damages from the lifting of the stay that we had today,
     therefore a reason not to send it back, I'm not sure, but nobody raised it. The
9    trustee was the only one; he's not doing anything on this. So I don't see what
10   the issue is here. I really don't. I think there's a lot of energy, but you --
     you're good lawyers, you're all good lawyers. If you believe that there is no
11   stay, go back. I'm not finding it -- **I can't find any property of this
12   bankruptcy estate that you'd be stayed from going back to Nevada
     reaffirming the original judgment.**
13       ***
14   MR. SCHWARTZER: Your Honor, could you enter an order saying that the
15   motion is moot because the stay doesn't apply?
     THE COURT: Nope, because I don't have jurisdiction. I don't have
16   jurisdiction. **There's no stay--**

17

18   See transcript, pages 20-23, attached as Exhibit "G".  No order has been entered.

19                              **DISCUSSION**

20       Nype seeks an order annulling the automatic stay in this bankruptcy case in order to

21   eliminate any argument that the Judgment is not valid and that the Judgment is entitled to

22   be given collateral estoppel effect in other courts. In order to apply collateral estoppel to

23   the Nevada Judgment, the judgment must be valid and enforceable. *See In re Dabrowski*,

24   257 B.R. 394 (Bankr. S.D.N.Y. 2001). Actions taken in violation of the stay imposed by §

25   362 of the Bankruptcy Code are void, not merely voidable. *See Motors, Inc v. Hawaii*

26   *Auto. Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir. 1993). The Bankruptcy Appellate Panel

27   for the Ninth Circuit recently held that a creditor's continuation of a state court fraudulent

28   conveyance action against non-debtor entities was a violation of the automatic stay, even

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

though the debtor was separated out from the action. *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21-1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *5-6 (B.A.P. 9th Cir. Nov. 18, 2021) (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992)). There is no order granting relief from stay to allow the Collection Litigation to proceed. In light of this fact, the New York Bankruptcy Court could not find that the Nevada Judgment was a valid and enforceable judgment entitled to collateral estoppel effect.

Nype asserts that the prosecution of the fraudulent transfer claims and the alter ego claims by the Trustee, as co-plaintiff, in the State Court Litigation did not violate the automatic stay in the LVLP case.[2] In addition, the record in this case shows that this Court knew it was the intention of Trustee Krohn and Nype to prosecute the State Court Litigation against the remaining co-defendants.

This Motion seeks an order annulling the automatic stay in this bankruptcy case, to eliminate the question of the validity of the Judgment but not the other issues pending in the NY Bankruptcy Court.[3]

## **MEMORANDUM OF LAW**

### A.    **RULES FOR ANNULLING THE AUTOMATIC STAY**

11 U.S.C. §362(d) provides for **annulling** the automatic stay as well as terminating

---

[2] The automatic stay does not apply to actions by a debtor or trustee in an offensive posture. *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,* 892 F.2d 575, 577 (7th Cir.1989); *In re United States Abatement Corp.,* 157 B.R. 278, 279 (E.D.La.1993), *aff'd,* 39 F.3d 563 (5th Cir.1994); *Carley Cap. Grp. v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C. Cir. 1989).

> "[T]he automatic stay provision of Section 362 ' "by its terms only stays proceedings against the debtor," and "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." ' " *In re Fin. News Network Inc.,* 158 B.R. 570, 572 (S.D.N.Y. 1993) (quoting *Carley Capital Grp. v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C. Cir. 1989) (per curiam) (quoting *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982))) (emphasis in *St. Croix*).

*Tenas-Reynard v. Palermo Taxi Inc.,* No. 14 CIV. 6974 (PGG), 2016 WL 1276451, at *7 (S.D.N.Y. Mar. 30, 2016).

[3] Nype has voluntarily dismissed the dischargeability action against Liberman because it was not cost effective to retry the entire case against Liberman and because Liberman has no non-exempt assets and is unlikely to have a material amount of non-exempt assets in the future.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the automatic stay. The party seeking annulment must show "cause".[4] Section 362(d) expressly authorizes a bankruptcy court to annul the automatic stay in a bankruptcy case. "Bankruptcy courts have the power to annul an automatic stay retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in order to rehabilitate stay violations." *Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.),* 329 F.3d 948, 951–52 (8th Cir.2003). See also, *In re Schwartz*, 954 F.2d 569, 573 (9th Cir. 1992) ("If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay")

In deciding whether it should grant such relief, the Court looks at the circumstances of the case and balances the equities of the parties' respective positions. *In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997); *In re Fjeldsted*, 293 B.R. 12, 24 (9th Cir. BAP 2003).

> Several factors have been identified by Courts when determining whether circumstances are sufficiently compelling to warrant retroactive annulment of the stay. Such factors include (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing, (2) whether the debtor acted in bad faith, (3) whether grounds would have existed for modification of the stay if a motion had been filed before the violation, (4) whether the denial of retroactive relief would result in unnecessary expense to the creditor, and (5) whether the creditor has detrimentally changed its position on the basis of the action taken. *Id.* at 281.

*In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004). In *In re Schumann*, 546 B.R. 223, 228 (Bankr. D.N.M. 2016), the Court listed the factors as follows:

> 1.    Whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay.

---

[4] Bankruptcy Code 362(d)(1) provides:

(d) On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, *annulling*, modifying, or conditioning such stay—

(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest;

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2.    Whether the debtor filed the bankruptcy case in bad faith or otherwise acted in bad faith.

3.    Whether grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation.

4.    How quickly the creditor sought annulment of the automatic stay upon learning of the debtor's bankruptcy filing.

5.    Whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing.

6.    Whether the debtor remained 'stealthily silent' in the face of the creditor's unknowing violation of the automatic stay.

In *In re Lett,* 238 B.R. 167, 195 (Bankr.W.D.Mo.1999), and *In re Stockwell*, 262 B.R. 275, 281 (Bankr.D.Vt.2001), the bankruptcy judges also considered "if failure to grant retroactive relief would cause unnecessary expense to the creditor" and "if the creditor has detrimentally changed its position on the basis of the action taken."

The Bankruptcy Appellate Panel for the Ninth Circuit stated:

We conclude that a determination of whether or not to annul the automatic stay and thereby grant retroactive relief requires the court to balance the equities.

*In re Fjeldsted*, 293 B.R. 12, 15 (B.A.P. 9th Cir. 2003).

The most important analysis this Court should make is two-fold:

(1)    Whether the Court would have lifted the automatic stay if that had been requested before the trial in the State Court Litigation; and

(2)     Taking into consideration all of the circumstances, would annulling the stay be equitable.

**B.    EFFECT OF ANNULLING THE AUTOMATIC STAY**

When the automatic stay is annulled it works retroactively to the date of a debtor's petition. *See Franklin Sav. Assn'v. Office of Thrift Supervision,* 31 F.3d 1020, 1023 (10th Cir.1994) (acknowledging that "bankruptcy courts have the authority to 'annul' a stay") (citing 11 U.S.C. § 362(d)); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 675 (11th Cir.1984) ("The word 'annulling' in ... [§ 362(d) ] evidently

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    contemplates the power of bankruptcy courts to grant relief from the stay which has

2    retroactive effect ..."). Annulment of the automatic stay retroactively validates post-

3    petition actions taken in violation of the automatic stay. *See In re Schwartz,* 954 F.2d 569,

4    573 (9th Cir.1992) (reasoning that "[i]f a creditor obtains retroactive relief under section

5    362(d), there is no violation of the automatic stay"); *In re Am. Spectrum Realty, Inc.,* 540

6    B.R. 730, 743 (Bankr. C.D. Cal. 2015) ("Section 362(d) provides authorization to annul

7    the automatic stay, which, in effect, retroactively ratifies or validates acts that otherwise

8    violated the stay."); *In re Boni,* 240 B.R. 381, 384 (B.A.P. 9th Cir. 1999) ("By annulling

9    the automatic stay, the bankruptcy court may validate an act that would otherwise be void

10   as a violation of the automatic stay.").

11           In this case, Duwaik seeks the annulment of the automatic stay
12           retroactively. The Eleventh Circuit Court of Appeals has explained the
              distinction between annulling the stay retroactively, as requested by Duwaik,
13           and modifying the stay prospectively to permit a creditor to take an action in
              the future.
14               It is true that acts taken in violation of the automatic stay are generally
15           deemed void and without effect. (Citations *598 omitted). Nonetheless, §
              362(d) expressly grants bankruptcy courts the option, in fashioning
16           appropriate relief, of "annulling" the automatic stay, in addition to merely
              "terminating" it. The word "annulling" in this provision evidently
17           contemplates the power of bankruptcy courts to grant relief from the stay
18           which has retroactive effect; otherwise its inclusion, next to "terminating,"
              would be superfluous.
19               . . . . .
20               Accordingly, we hold that § 362(d) permits bankruptcy courts, in
21           appropriately limited circumstances, to grant retroactive relief from the
              automatic stay.
22               *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir.1984).
23           Consequently, § 362(d) authorizes the annulment of the stay nunc pro tunc to
              the date of the petition, provided that the circumstances of the particular case
24           warrant such relief. "Bankruptcy courts have the power to annul an
25           automatic stay retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in
              order to rehabilitate stay violations." *In re Webb,* 294 B.R. 850, 853
26           (Bankr.E.D.Ark.2003)(quoting *In re Hoffinger Indus.,* 329 F.3d 948, 951–52
              (8th Cir.2003)).
27

28   *In re Barr*, 318 B.R. 592, 597–98 (Bankr. M.D. Fla. 2004).

Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* ——

2  U.S. ——, 140 S. Ct. 696, 206 L. Ed. 2d 1 (2020) ("Acevedo"), the United States Supreme

3  Court limited a federal court inherent authority to issue *nunc pro tunc* orders. This decision

4  does not limit a federal court from exercising statutorily granted authority to issue orders

5  which have retroactive effect.

6    In this Circuit, the rule was stated by a BAP Panel:

7  **E. The Supreme Court's *Acevedo* opinion does not preclude retroactive relief from stay.**

8       During the pendency of this appeal, the Supreme Court

9  decided *Acevedo*, 140 S. Ct. 696, in which it held that a United States
   District Court's nunc pro tunc order remanding a removed lawsuit to state

10 court was not effective to retroactively confer jurisdiction so as to validate
   the state court's orders entered before remand. *See id.* at 699-701.[9] At least

11 one bankruptcy court has interpreted *Acevedo* as prohibiting a grant of
   retroactive or nunc pro tunc relief from stay. *In re Telles*, No. 8-20-70325-

12 reg, 2020 WL 2121254 (Bankr. E.D.N.Y. Apr. 30, 2020).

13      **We do not believe that the ruling in *Acevedo* prohibits a
   bankruptcy court's exercise of the power to grant retroactive relief from**

14 **stay.** But this court should always carefully consider the scope and reach of
   Supreme Court opinions; and in light of our disagreement with *Telles*–

15 that *Acevedo* is directly relevant to requests to terminate or annul the stay
   retroactively–we consider the issue here and at some length.

16

17

18  *In re Merriman*, 616 B.R. 381, 391–92 (B.A.P. 9th Cir. 2020) (emphasis added), *appeal*

19  *dismissed,* No. 20-60036, 2021 WL 3610895 (9th Cir. Feb. 26, 2021). This rule has been

20  followed by this Court.  *In re Sorelle*, No. BK-S-19-17870-MKN, 2020 WL 8551788, at

21  *8 (Bankr. D. Nev. Dec. 2, 2020) and other bankruptcy courts.  See *In re Miller*, 620 B.R.

22  637, 641 (Bankr. E.D. Cal. 2020); *In re Wellington*, No. 20-10080, 2021 WL 1963933

23  (Bankr. M.D.N.C. Mar. 9, 2021) (following and quoting *Merriman*); *In re Grinding*

24  *Specialists, LLC*, 625 B.R. 6, 14 (Bankr. D.S.C. 2021). See also *In re SS Body Armor I,*

25  *Inc.,* No. 10-11255(CSS), 2021 WL 2315177, at *3 (Bankr. D. Del. June 7, 2021)

26  ("The *Acevedo* case prohibits courts from using *nunc pro tunc* orders to cure jurisdictional

27  defects arising under 28 U.S.C. § 1445(d), which governs nonremovable

28  actions. *Acevedo* does not prohibit courts from entering *nunc pro tunc* orders where there

are no jurisdictional defects.").

Movants are aware that Judge Grossman (the presiding judge in the Liberman

Bankruptcy Case) has taken the opposite position. He has held:

> The landscape of the law is different post-*Acevedo,* and this Court is bound
> to follow the precedent set by the Supreme Court. The Supreme Court has
> clarified that *nunc pro tunc* relief cannot be used to confer jurisdiction where
> none existed. *Acevedo,* 140 S.Ct. at 700-01. Once a debtor files for
> bankruptcy, the state court is divested of jurisdiction over property of the
> estate, and any action taken by the state court with respect to the debtor's
> property is void.

*In re Telles*, No. 8-20-70325-REG, 2020 WL 2121254, at *4 (Bankr. E.D.N.Y. Apr. 30,

2020).

This Court should find *Merriman* more persuasive than *Telles.*

## C.    RULES FOR LIFTING STAY FOR PENDING LITIGATION

11 U.S.C. § 362 pertains to the lifting of the automatic stay and provides that a

Court may grant the request of a moving party to modify the automatic stay for cause. *See*

11 U.S.C. § 362(d)(1). Although the Bankruptcy Code does not define "cause," courts in

the Ninth Circuit have granted relief from stay under § 362(d0(1) when necessary to permit

pending litigation to be concluded in another forum if the nonbankruptcy suit involves

multiples parties or is ready for trial. *See In re John Smith (In re Smith)*, 389 B.R. 902,

917-18 (D.Nev. 2008) (citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates,*

*Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990)).

> Stay relief shall be granted upon a showing of "cause," which "has no clear
> definition and is determined on a case-by-case basis." *Benedor Corp. v.*
> *Conejo Enters., Inc. (In re Conejo Enters., Inc.),* 96 F.3d 346, 352 (9th
> Cir.1996), quoting *Christensen v. Tucson Estates, Inc. (In re Tucson Estates,*
> *Inc.),* 912 F.2d 1162, 1166 (9th Cir.1990). The decision whether to grant or
> deny relief from the automatic stay "is committed to the sound discretion of
> the bankruptcy court." *Conejo,* 96 F.3d at 351.
> Especially when litigation in a nonbankruptcy court is ready for trial or has
> already been tried and is ready for judgment, it is not uncommon for
> bankruptcy courts to find cause to lift the automatic stay, at least to permit
> entry of judgment to liquidate the amount of a claim asserted against a

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    debtor.

2    *In re Patel*, 291 B.R. 169, 172 (Bankr. D. Ariz. 2003). *See In re Plumberex Specialty*

3    *Products, Inc.,* 311 B.R. 551, 556–57 (Bankr.C.D.Cal.2004) ("Courts in the Ninth Circuit

4    have granted relief from the stay under § 362(d)(1) when necessary to permit pending

5    litigation to be concluded in another forum if the non-bankruptcy suit involves multiple

6    parties or is ready for trial.") (citations omitted); *In re Am. Spectrum Realty, Inc.*, 540 B.R.

7    730 (Bankr. C.D. Cal. 2015) ("cause" existed to lift automatic stay to allow state court

8    litigation that had been pending against Chapter 11 debtor for more than two years to

9    proceed before court that was very familiar with issues and parties).

10    The burden of proof on a motion to modify the automatic stay is a shifting one.  *See*

11    *In re Smith*, 389 B.R. at 918 (citations omitted).  Once the moving party establishes a

12    prima facie case that "cause" exists, the burden shifts to the debtor to show that relief from

13    the stay is unwarranted.  *See id.*  Courts have identified various factors relevant to

14    determining whether the stay should be lifted to allow a creditor to continue pending

15    litigation in a non-bankruptcy forum.   In particular, most courts analyze twelve

16    nonexclusive factors as issues a bankruptcy court should weigh in determining whether to

17    lift the stay.  *See In re Smith*, 389 B.R. at 918-9; *see in re Curtis*, 40 B.R. 795, 799-800

18    (Bankr.D. Utah 1984); *see Sonnax Indus., Inc. v. Tri Component Prods. Corp (In re*

19    *Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990).   These factors (the

20    "*Sonnax/Curtis* factors") are as follows:

21    (1)    Whether the relief will result in a partial or complete resolution of the
22           issues;

           (2)    The lack of any connection with or interference with the bankruptcy
23                  case;

24    (3)    Whether the foreign proceeding involves the debtor as a fiduciary;

25    (4)    Whether a specialized tribunal has been established to hear the
26           particular cause of action and whether that tribunal has the expertise
             to hear such cases;

27    (5)    Whether the debtor's insurance carrier has assumed full financial
28           responsibility for defending the litigation;

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(6)    Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7)    Whether the litigation in another forum would prejudice the interests of other creditors, the creditors committee and other interested parties;

(8)    Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 5109(c);

(9)    Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

(10)    The interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)    Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)    The impact of the stay on the parties and the "balance of hurt."

*See In re Smith*, 389 B.R. at 918-19.

## ARGUMENT

### A.    STAY SHOULD BE ANNULLED TO VALIDATE THE STATE COURT JUDGMENT AFTER TRIAL ON THE MERITS

Nype is asking this Court to annul the automatic stay in this case to eliminate any question that the Judgment issued in the State Court Litigation was valid against the Co-Defendants, including Liberman. There was no bankruptcy stay of the action against Liberman and the Co-Defendants because they are not debtors and the automatic stay does not protect non-debtor co-defendants.[5] The New York Bankruptcy Court decided that because LVLP was originally named as a defendant in the State Court Litigation, that

---

[5] "[T]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991). *See also, e.g., Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); *Marcus, Stowell & Beye Government Securities, Inc. v. Jefferson Investment Corp.,* 797 F.2d 227, 230 n. 4 (5th Cir.1986) ("The well established rule is that an automatic stay of judicial proceedings against one defendant does not apply to proceedings against co-defendants.").

1   litigation was stayed even after Trustee Krohn intervened and made the LVLP bankruptcy

2   estate a plaintiff in that litigation.

3          It was and still is the position of Nype and Trustee Krohn that there was no

4   bankruptcy stay of the action for fraudulent transfers and alter ego because those actions

5   were being brought by Trustee Krohn on behalf of the LVLP Bankruptcy Estate.

6   Generally, the automatic stay enjoins actions against a debtor or debtor's property interests

7   but not actions for the benefit of the bankruptcy estate.

8          The application of the facts of this case to the *Barr/Schuman* factors is as follows:

9   1.     **Whether the creditor had actual or constructive knowledge of the**

10         **debtor's bankruptcy filing when it acted in violation of the**

11         **automatic stay.**   Trustee Krohn and Nype were aware of the LVLP

12         Bankruptcy Case.

13  2.     **Whether the debtor filed the bankruptcy case in bad faith or**

14         **otherwise acted in bad faith.**  The LVLP Bankruptcy Case was filed

15         on the eve of trial in the State Court causing a further delay until

16         Trustee Krohn could employ counsel and intervene. Filing to avoid

17         trial is an indicator of "bad faith".

18  3.     **Whether grounds for relief from the stay existed and a motion, if**

19         **filed, would likely have been granted prior to the automatic stay**

20         **violation.** The grounds for lifting the automatic stay existed at the

21         time this court authorized the employment of Special Counsel to

22         prosecute the LVLP Bankruptcy Estate's claims.

23  4.     **How quickly the creditor sought annulment of the automatic stay**

24         **upon learning of the debtor's bankruptcy filing.** Trustee Krohn and

25         Nype did not immediately seek relief from the stay because they were

26         under the impression that prosecution of the LVLP Bankruptcy

27         Estate's claims by the Trustee did not require the automatic stay to be

28         lifted.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

5. **Whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing.** Because neither the plaintiffs nor the defendants in the State Court Litigation believed that the automatic stay enjoined the Trustee's prosecution of claims belonging to the LVLP Bankruptcy Estate, no relief from stay was sought prior to the current motion.

6. **Whether the debtor remained 'stealthily silent' in the face of the creditor's unknowing violation of the automatic stay.** Neither Liberman nor the Co-Defendants raised the automatic stay in the State Court Litigation or in the pending NY Bankruptcy Case.  The issue was raised by Judge Grossman.

The application of the facts of this case to the *Sonnax/Curtis* factors is as follows:

1. **Whether the relief will result in a partial or complete resolution of the issues**: This Motion seeks relief concerning one issue: whether the automatic stay in the LVLP Bankruptcy Case (not in the Liberman Bankruptcy Case) enjoined the prosecution of the claims by the Trustee Krohn and Nype in the State Court Litigation. The annulment of the stay will make the State Court's Judgment a valid and preclusive judgment. **This factor favors annulling the stay**.

2. **The lack of any connection with or interference with the bankruptcy case**: The annulment of the stay will have no effect on the administration of the LVLP Bankruptcy Case (except to make the judgment in favor of the LVLP Bankruptcy estate against Liberman more likely to be determined to be non-dischargeable). The annulment of the stay will promote the administration of this bankruptcy estate. **This factor favors annulling the stay**.

3. **Whether the foreign proceeding involves the debtor as a fiduciary**: Not applicable. **This factor is neutral**.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

4. **Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases**: The State Court business court was created to hear business cases. It has already tried the case. But it has no more expertise than the bankruptcy court. **This factor favors annulling the stay**.

5. **Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation**: No. **This factor does not favor annulling the stay**.

6. **Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question**: No. The State Court Litigation obtained awards against non-debtor Co-Defendants as well as against Liberman. **This factor favors annulling the stay**.

7. **Whether the litigation in another forum would prejudice the interests of other creditors, the creditors committee and other interested parties**: No. The State Court Litigation to recover fraudulent transfers of the debtor's property will benefit the estate. **This factor favors annulling the stay.**

8. **Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c):** No. Equitable subordination is not involved in the State Court Litigation. **This factor favors annulling the stay**.

9. **Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)**: No. **This factor favors annulling the stay**.

10. **The interest of judicial economy and the expeditious and economical determination of litigation for the parties**: Yes. Two

years ago, the State Court, after 3 years, tried the case over several days. The State Court had jurisdiction over all of the defendants and the subject matter of the litigation. **This factor favors annulling the stay**.

11. **Whether the foreign proceedings have progressed to the point where the parties are prepared for trial**: Yes. The matter was set for trial just when LVLP filed its bankruptcy petition (to delay the State Court trial). The State Court, with the Trustee as a co-plaintiff, conducted the multi-day trial two years ago. **This factor favors annulling the stay**.

12. **The impact of the stay on the parties and the "balance of hurt"**: Since the issues have already been litigated, all parties benefit from annulling the stay to avoid the time and expense of a retrial. **This factor favors annulling the stay**.

Based on these factors, this Court should annul the stay to allow the Judgment to be a valid final judgment in favor of Nype and the Trustee to (a) to be used in the Liberman Bankruptcy Case and (b) to be used to collect awarded damages and property from the Co-Defendants.

**WHEREFORE**, the Russell Nype and Revenue Plus, LLC request that this Court enter an order:

1. Annulling the automatic stay in this case with regard to the State Court Litigation to eliminate any question concerning the validity of the Judgment entered in the State Court Litigation (a) to be used in the Liberman Bankruptcy Case and (b) to be used to collect awarded damages and property from the Co-Defendants; and (c) to allow the pending appeal to the Nevada Supreme Court from the Judgment issued by the State Court.

/ / /

/ / /

/ / /

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Nype Motion to Annul Stay 20220308 - Final

1    2.  For such further relief as this Court deems just and proper.

2 Dated this March 9, 2022

3

4            /s/  Lenard E. Schwartzer
              Lenard E. Schwartzer, Esq.

5              Schwartzer & McPherson Law Firm
              2850 S. Jones Blvd., Suite 1

6              Las Vegas, NV  89146
              *Counsel for Russell Nype and Revenue Plus, LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Nype Motion to Annul Stay 20220308 - Final

# EXHIBIT A

Electronically Filed
11/12/2019 5:00 PM
Steven D. Grierson
CLERK OF THE COURT

1  **MINV**
JOHN W. MUIJE & ASSOCIATES
2  JOHN W. MUIJE, ESQ.
Nevada Bar No: 2419
3  1840 East Sahara Avenue, Suite 106
4  Las Vegas, Nevada 89104
Telephone No: (702) 386-7002
5  Facsimile No:  (702) 386-9135
Email: Jmuije@muijelawoffice.com
6  *Attorneys for Proposed Plaintiff*
7  *In Intervention Shelley D. Krohn*

8                          DISTRICT COURT

9                      CLARK COUNTY, NEVADA

10

| | |
|---|---|
| 11 RUSSELL L. NYPE AND REVENUS PLUS, LLC | CASE NO:   A-16-740689-B |
| 12 | DEPT NO:   XI |
| 13                                    Plaintiffs, | |
| 14              vs. | |
| DAVID J. MITCHELL; BARNET LIBERMAN; LAS VEGAS LAND PARTNERS, LLC; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; LIBERMAN HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I through III, and ROE CORPORATIONS I through III, inclusive, | **SHELLEY D. KROHN, BANKRUPTCY TRUSTEE'S MOTION TO INTERVENE**  **DATE:**  **TIME:** |
| 21                    Mitchell Defendants. | |

22

23

24       COMES NOW, SHELLEY D. KROHN, Proposed Plaintiff-in-Intervention (hereinafter
25  "Plaintiff"), by and through the undersigned counsel, who hereby respectfully submits her Motion
26  to Intervene in this matter.  This Motion is supported by the following Memorandum of Points
27  . . . .
28

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

1

and Authorities, the exhibits attached hereto, the Court's file herein, and any evidence adduced at

the hearing to be held by the Court.

DATED this 12 day of November, 2019

JOHN W. MUIJE & ASSOCIATES

By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 East Sahara Avenue, #106
Las Vegas, Nevada 89104
Telephone:   702-386-7002
Facsimile:    702-386-9135
E-Mail: jmuije@muijelawoffice.com
*Attorneys for Proposed Plaintiff*
*In Intervention Shelley D. Krohn*

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Shelley D. Krohn  (hereinafter "Krohn") brings this Motion seeking to Intervene in this matter pursuant to NRCP 24(a) as Krohn, has an interest in the subject matter of this action and the disposition of this action affects Trustee's ability to recover, on behalf of the Bankruptcy of Las Vegas Land Partners, LLC, BK-S-19-15333-MKN, the funds which the original Plaintiff herein has sought to recover with regard to the alleged fraudulent conveyances involving the various named Defendants herein.

Krohn is familiar with the claims asserted in this litigation and has consulted with counsel for the original Plaintiff.   Krohn has obtained Bankruptcy Court approval to employ John W. Muije, Esq., attorney as Special Counsel for the purpose of pursuing the claims asserted herein, *inter alia*, from the various defendants already named.   See Exhibit "1." Under applicable Bankruptcy law, the Bankruptcy Trustee has two years from the date that a Bankruptcy Petition is filed, and a Trustee appointed, to assert and seek claims such as those already pending before this Court.  The Trustee respectfully represents that such is exactly what she wants to do, and that the appropriate forum for the same, in the exercise of the Trustee's sound business judgment, is the already pending matter before this Honorable Court.

## II.

## ARGUMENT AND AUTHORITIES

Shelley D. Krohn seeks the permission of this Court to intervene in this matter pursuant to NRS 12.130, which provides that before trial, "any person may intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest

3

against both." The intervention is to be made as provided for in the Nevada Rules of Civil Procedure. *Id.* NRCP 24(a) provides that:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the application claims an interest related to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

As there is no statute applicable in this matter that provides Shelley D. Krohn, an unconditional right to intervene, Shelley D. Krohn's application is governed by NRCP 24(a)(2), and allows a party to intervene if it meets the following four requirements: (1) that she have sufficient interest in the subject matter of the litigation, (2) that her ability to protect that interest may be impaired if she does not intervene; (3) that her interest is not adequately represented by existing parties, and (4) that is application is timely. *American Home Assurance Company v. Eighth Judicial District Court*, 122 Nev. 1229, 147 P.3d 1120, 1127 (2006).

The timeliness of an applicant's motion to intervene is "a determination that lies within the sound discretion of the trial court." *Lawler v. Ginochio*, 94 Nev. 623, 626, 584 P.2d 667 (1978) quoting *Cleland v. Eighth Judicial District Court*, 92 Nev. 454, 456. 552 P.2d 488 (1976). The timeliness requirement "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Id.* A copy of Shelley D. Krohn's proposed Complaint In Intervention is attached hereto as Exhibit "2".

The fraudulent transfer claims previously brought by the Plaintiff as creditors likely became property of the Bankruptcy Estate of LVLP, and the Trustee, as representative of that

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

Bankruptcy Estate of LVLP pursuant to Bankruptcy Code Section 323(a), has the authority to bring such actions.

11 U.S.C. Section 544 provides in part:

(a)    The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor.

Here, Shelley D. Krohn's application to intervene in this action meets all four requirements of NRCP 24(a)(2). Shelley D. Krohn has a sufficient interest in the subject matter of this litigation. Trustee has conducted reasonable discovery in the context of the Las Vegas Land Partners, LLC's bankruptcy proceeding, and is reasonably persuaded that meritorious claims exist against the various named defendants herein, to recoup and recover valuable assets that once belonged beneficially to the Debtor, Las Vegas Land Partners, LLC.

It is true that the Trustee could elect to start over from scratch and could independently invoke the jurisdiction before the State Court or before the Bankruptcy Court. Nevertheless, where and how to pursue the recovery of the claims asserted is unequivocally within the business judgment of a Bankruptcy Trustee, and the Trustee has elected to intervene in this case, with multiple defendants already active and present, as opposed to starting over from scratch.

Because of the overlapping claims, it is judicially economic to bring all the claims to trial at the same time. Having to literally reinvent the wheel would be inefficient, detrimental to judicial economy, and might very well impair the efficacy of the Trustee's attempt to recover the subject property for the benefit of the Estate. Given the nature of the underlying common law and state law claims, it is appropriate that the Trustee join with the existing Plaintiff, both of whom have legitimate interests in the anticipated proceeds of this litigation, and further, that the Trustee be present so as to protect the interests of the Bankruptcy Estate and the other creditors.

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

Finally, as noted hereinabove, Congress in its infinite wisdom has declared that a Bankruptcy Trustee has two years to evaluate, investigate, and develop theories to recover assets for the Bankruptcy Estate, and to initiate the pursuit of claims such as that sought in this litigation. Accordingly, Las Vegas Land Partners, LLC's bankruptcy having commenced a less than four months ago, the Trustee is well within the statutory time allowed.

<div align="center">III.</div>

<div align="center">**CONCLUSION**</div>

Therefore, Shelley D. Krohn respectfully requests that the Court grant her Motion to Intervene and order that Shelley D. Krohn be allowed to file her Complaint-in-Intervention in this matter, since Shelley D. Krohn's application meets the requirements of NRCP 24(a))2), and she should be heard in this matter.

DATED this /2ᵗʰ day of November, 2019

JOHN W. MUIJE & ASSOCIATES

By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 East Sahara Avenue, #106
Las Vegas, Nevada 89104
Telephone:  702-386-7002
Facsimile:  702-386-9135
E-Mail: jmuije@muijelawoffice.com
*Attorneys  for Proposed Plaintiff*
*In Intervention*

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

## **CERTIFICATE OF SERVICE**

I certify that I am an employee of JOHN W. MUIJE & ASSOCIATES and that on the _12TH_ day of November, 2019, I caused the foregoing document, **SHELLEY D. KROHN, BANKRUPTCY TRUSTEE'S MOTION TO INTERVENE,** to be served as follows:

☐       by placing a copy of the same for mailing in the United States mail, with first class postage prepaid addressed as follows; and/or

☒       by electronically filing and serving with the Clerk of the Court via the Odyssey E File and Serve System;

☐       by placing a copy of the same for mailing in the United States mail, with first class postage prepaid marked certified return receipt requested addressed as follows:

Elliot S. Blut, Esq.
**BLUT LAW GROUP, P.C.**
300 South Fourth Street, Suite 701
Las Vegas, Nevada 89101
Telephone: (702) 384-1050
Facsimile:   (702) 384-8565
E-Mail: eblut@blutlaw.com
*Attorneys for Defendants*
*Barnet Liberman and Casino Coolidge, LLC*

Brian W. Boschee, Esq.
**HOLLEY DRIGGS WALCH**
**FINE PUZEY STEIN & THOMPSON**
400 South Fourth Street, Third Floor
Las Vegas, Nevada 9101
Telephone: (702) 791-0308
Facsimile:   (702) 791-1912
E-Mail: bboschee@nevadafirm.com
*Attorneys for Defendant*
*305 Las Vegas, LLC*

James L. Edwards, Esq.
**COHEN JOHNSON PARKER**
    **& EDWARDS**
375 East Warm Springs Road, Suite 104
Las Vegas, Nevada 89119
Telephone:   (702) 823-3500
Facsimile:   (702) 823-3400
E-Mail: jedwards@parkeredwardslaw.com
*Attorneys for Mitchell Defendants*

_____
An Employee of JOHN W, MUIJE & ASSOCIATES

# Exhibit "1"

Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
October 31, 2019

SHELLEY D. KROHN
E-mail: Shelley@TrusteeKrohn.com
510 South 8th Street
Las Vegas, Nevada 89101
Telephone: (702) 421-2210
Facsimile: (702) 366-1939

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

*****

| | |
|---|---|
| In re: | ) CASE NO. BK-S-19-15333-MKN |
| | ) CHAPTER 7 |
| LAS VEGAS LAND PARTNERS, LLC | ) |
| | ) |
| | ) Date: October 30, 2019 |
| | ) Time: 2:30 p.m. |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER GRANTING APPLICATION TO EMPLOY JOHN W. MUIJE & ASSOCIATES AS SPECIAL COUNSEL ON A CONTINGENT FEE BASIS UNDER 11 U.S.C. §327(a)**

This matter having come on for hearing at the date and time set forth above and upon reading the Motion of Shelley D. Krohn, Trustee, to employ the law firm of JOHN W. MUIJE & ASSOCIATES as Special Counsel for the Estate pursuant to 11 U.S.C. §327 and §328; it appearing to the Court that neither the attorney, nor the firm, hold

or represent an interest adverse to the Estate, that the attorney is a disinterested party within the meaning of §101(14) of the Bankruptcy Code and may represent the Estate under 11 U.S.C. §327, that the declaration of John Muije is sufficient, and that the employment of special counsel is necessary and in the best interests of the Estate and the creditors; the Court noting the appearances of Shelley D. Krohn, Trustee, and Lenard E. Schwartzer, Esq., bankruptcy counsel for Russell Nype and Revenue Plus, LLC, and for good cause appearing, it is hereby:

**ORDERED** that pursuant to §327 and §328 of the Bankruptcy Code, the Trustee is authorized to employ the law firm of JOHN W. MUIJE & ASSOCIATES as Special Counsel on a contingent fee basis in accordance with the terms of the agreement set forth in the Motion and Declaration in support for this Order. The payment of all fees and costs are subject to further approval by this Court.

Respectfully submitted by:

_____
SHELLEY D. KROHN, TRUSTEE

## CERTIFICATION

In accordance with LR 9021, counsel submitting this document
certifies as follows (check one):

_X__  The court has waived the requirement set forth in LR 9021(b)(1).

_____  No party appeared at the hearing or filed an objection to the
motion.

___  I have delivered a copy of this proposed order to all counsel
who appeared at the hearing, and each has approved or
disapproved the order, or failed to respond, as indicated
below [list each party and whether the party has approved,
disapproved, or failed to respond to the document]:

Counsel appearing:

__x_  I certify that this is a case under Chapter 7 or 13, that I
have served a copy of this order with the motion pursuant to
LR 9014(g), and that no party has objected to the form or
content of the order

IT IS SO ORDERED.

# # #

*Exhibit "2"*

**COMP**
JOHN W. MUIJE & ASSOCIATES
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 East Sahara Avenue, Suite 106
Las Vegas, Nevada 89104
Telephone:  702-386-7002
Facsimile:  702-386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiff-in-Intervention*

DISTRICT COURT
CLARK COUNTY, NEVADA

RUSSELL L. NYPE AND REVENUS PLUS, LLC

Plaintiffs,

vs.

DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I through III, and ROE CORPORATIONS I through III, inclusive,

Mitchell Defendants.

_____

SHELLEY D. KROHN, U.S. BANKRUPTCY TRUSTEE

Proposed Plaintiff-In-Intervention

CASE NO:    A-16-740689-B

DEPT. NO:  XI

**[PROPOSED] COMPLAINT IN INTERVENTION FOR:**

1.  **CONSTRUCTIVE TRUST;**
2.  **FRAUDULENT CONVEYANCE;**
3.  **CONSPIRACY TO DEFRAUD;**
4.  **DECLARATORY RELIEF; AND**
5.  **ALTER EGO**

**ARBITRATION EXEMPT (EQUITABLE RELIEF)**

COMES NOW, SHELLEY D. KROHN, U.S. Bankruptcy Trustee (hereinafter referred to as "TRUSTEE"), and as and for causes of action against the Defendants, DAVID J. MITCHELL; BARNET LIBERMAN;  MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC;

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002  Fax: (702) 386-9135

WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LW VEGAS, LLC; CASINO COOLIDGE LLC, alleges and shows as follows:

## GENERAL FACTUAL ALLEGATIONS

1.     The Trustee was duly appointed to act as the Trustee in the Bankruptcy Case of Las Vegas Land Partners, LLC, Case No. BK-19-15333-mkn (hereinafter referred to as "TRUSTEE").

2.     Plaintiffs, RUSSELL L. NYPE and REVENUE PLUS, LLC (hereinafter "NYPE"), a New York Limited Liability Company.

3.     Defendant, DAVID J. MITCHELL (hereinafter "Mitchell), is an adult resident of New York.

4.     Defendant, BARNETT LIBERMAN (hereinafter "Liberman), is an adult resident of New York.

5.     Aquarius Owner, LLC is or was a Delaware limited liability company registered to do business in the State of Nevada in November, 2004, and maintained its registration through and including approximately November, 2009.

6.     On information and belief, Aquarius Owner LLC was owned and directed by Mitchell, Liberman, and/or LVLP.

7.     In that context, various real property transfers and ownership equity took place between LVLP and/or Aquarius Owner, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Aquarius Owner LLC, and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

8.      FC/LW Vegas is or was a Delaware limited liability company registered to do business in the State of Nevada in February 2011 which has maintained registration through the present.

9.      FC/LW, LLC, on information and belief, is an entity beneficially and jointly owned and operated by Liberman, Mitchell, LVLP, LIVE WORK, LLC and non-party Forest City Enterprises, for purposes of developing and managing various real property interest in Southern Nevada.

10      In that context, various real property transfers and ownership equity took place between LIVE WORK, LLC and/or FC/LW, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between FC/LV Vegas, LLC, and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

11.     Leah Property, LLC is a Delaware limited liability that first registered to do business in Southern Nevada in approximately February, 2005, and continued to be active and operate in the Southern Nevada area through and including February, 2015.

13.     On information and belief, Leah Property LLC is owned, managed, and operated by Liberman, at all relevant times.

14.     In that context, various real property transfers and ownership equity took place between LVLP and/or Leah Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Leah Property, LLC and its

– 3 –

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

15.     Live Work LLC is a Delaware limited liability company who first became active in Southern Nevada in or about April, 2005, and in fact was a plaintiff in the original underlying lawsuit with LVLP versus the plaintiffs herein.  Live Work, LLC, on information and belief, continued to be active and operating in Southern Nevada through and including approximately April, 2012.

16.     On information and belief, Live Work, LLC was owned, operated, and managed by Liberman, Mitchell, LVLP, Live Work Manager, LLC, and/or Mitchell Holdings, and was an active.

17.     In that context, various real property transfers and ownership equity took place between LVLP and/or Live Work, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Live Work Manager, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

18.     Livework Manager, LLC was a Delaware Limited Liability that first registered to do business in the State of Nevada in approximately April, 2005, and continued active and in business in Southern Nevada through the present.

19.     Livework Manager, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

20.     In that context, various real property transfers and ownership equity took place between LVLP and/or Live work Manger, LLC, during the operative time, and on information and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

belief, financial distributions and transactions occurred between Livework Manager, LLC and its

principals on a recurring basis, most of which were never disclosed in publicly available records

or documents.

       21.      Zoe Property, LLC is a Delaware Limited Liability Company that first registered

and became active in Southern Nevada in or about November 2004, and in fact was one of the

original plaintiffs along with Live Work, LLC and LVLP versus the plaintiffs herein.  On

information and belief, Zoe Property, LLC operated and continued to be active in Southern

Nevada through approximately November, 2007.

       22.      Zoe Property, LLC, was owned, operated and managed by, on information and

belief, by Liberman, Mitchell and/or LVLP.

       23.      In that context, various real property transfers and ownership equity took place \

\between LVLP and/or Zoe Property, LLC, during the operative time, and on information and

belief, financial distributions and transactions occurred between Zoe Property, LLC and its

principals on a recurring basis, most of which were never disclosed in publicly available records

or documents.

       24.      Wink One, LLC is a Delaware limited liability company that registered to do

business in the State of Nevada in approximately April, 2008, and remained active, according to

Secretary of State records, through and including approximately April, 2009.  Wink One, LLC, on

information and belief, was owned, operated and managed by Liberman, Mitchell, and/or LVLP.

       25,.     Wink One, LLC was owned, operated and managed by, on information and belief,

by Liberman, Mitchell, and/or LVLP.

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002  Fax: (702) 386-9135

26.     In that context, various real property transfers and ownership equity took place between LVLP and/or Wink One, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Wink One, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

27.     Casino Coolidge, LLC is a Delaware limited liability company that first registered to do business in Southern Nevada in or about October, 2014.

28.     On information and belief, Casino Coolidge, LLC is owned, operated and managed by Liberman, Mitchell, and/or LVLP.

29.     In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

30.     In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

31.     305 Las Vegas, LLC is a Delaware limited liability company that first registered and qualified to do business in Southern Nevada in approximately April, 2007, and remains active and doing business in Southern Nevada through the present.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

32.    On information and belief, 305 Las Vegas, LLC was originally owned, operated and managed by Liberman and/or LVLP.

33.    In that context, various real property transfers and ownership equity took place between LVLP, its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals or affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

34.    In that context, various real property transfers and ownership equity took place between LVLP and its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals and affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents.

35.    On information and belief, unbeknownst to Plaintiffs, in approximately 2012 305 Las Vegas, LLC engaged in an internal transaction resulting in the acquisition of the beneficial interest of Mitchell by a Mr. Win Churchill, and a monetary distribution benefitting Mitchell to the tune of $7.5 million, all of which Plaintiff has only learned at very recent times.

36.    On information and belief, MEYER PROPERTY, LTD., is fictitious entity that was involved for a relatively short period of time with LEAH PROPERTY, LLC, and in the context thereof participated in real estate transactions resulting in net financial gain to Leah and/or Liberman, Mitchell, and/or LVLP, the specifics of which financial gains were never disclosed nor reasonably discoverable by Plaintiffs herein.

37.     In that context, various real property transfers took place between LVLP and/or Meyer Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Meyer Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in the State of Nevada through the present.

38.     On information and belief, Mitchell Holdings, LLC is a Delaware limited liability company that never qualified to do business within the State of Nevada, but was used by Defendant Mitchell for purposes of owning Mitchell's equity or beneficial interest in various other defendants, and fuddling money back and forth between such entities, in a matter that would not be detectable or readily discoverable by Plaintiffs or other creditors.

39.     In that context, various real property transfers and ownership equity took place between LVLP and/or Mitchell Holdings, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Mitchell Holdings, LLC and its principals on a recurring basis, most of which were  never disclosed in publicly available records or documents, is a Delaware limited liability that first registered to do business in Nevada in approximately February, 2011, and continues to operate and do business, in good standing, through and including this date.

40.     Live Works TIC Successor, LLC, on information and belief, is an entity in which Liberman, Mitchell, and/or Las Vegas Land Holdings had substantial equity or beneficial interest, and was the ultimate recipient of financial proceeds, monies, emoluments and benefits deriving from Live Work TIC Successor LLC, and a tendency and common agreement entered into between Live Work TIC Successor,  LLC and non-party Forest City Enterprises, through

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

contractual and financial arrangements, referred to as the tenancy in common agreement, and numerous subsequent amendments thereto.

41.     In that context, various real property transfers and ownership equity took place between LVLP and/or Live Works TIC Successor, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Live Works TIC Successor, LLC and its principals on a recurring basis, most of which were never  disclosed in publicly available records or documents..

42.     Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LW VEGAS, LLC, are believed to be Delaware limited liability companies and/or corporations which have conducted business in the State of Nevada, and are alleged to be owned and/or controlled, in whole or in part by Defendants, LAS VEGAS LAND PARTNERS, LLC, DAVID MITCHELL and BARNET LIBERMAN.

43.     LVLP, LLC, Mitchell, and Liberman, created the various Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, on information and belief, and used multiple sophisticated counsel for purposes of secreting, hiding, and conveying away valuable assets that were available to satisfy creditors such as Plaintiffs as alleged more specifically hereinafter

LAW OFFICES

JOHN W. MUJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

(hereinafter referred to as the "Asset Protection Scheme").

44      .That Plaintiffs do not at present know the true names and identities of those Entity Defendants, both corporate and individual, herein joined by fictitious names, but is informed and believes and therefore alleges that said Entity Defendants, are agents, employees, servants and representatives of the named Entity Defendants, or persons and entities acting in concert with the named Entity Defendants with respect to the premises herein plead, who are liable to the Plaintiffs by reason thereof, and the Plaintiffs pray leave to amend this Complaint to insert their true names and identities with appropriate allegations when the same becomes known.

45.      Upon information and belief, part of the Asset Protection Scheme contemplated that the majority of the purported equity interests in the asset protection entities referred to in Paragraph 4 hereinabove be held in the name of LAS VEGAS LAND PARTNERS, LLC, or an associated entity, all of which were and are in reality controlled by DAVID J. MITCHELL and BARNET LIBERMAN.

46.      Upon information and belief, LAS VEGAS LAND PARTNERS, LLC received its equity interests in the asset protection entities gratuitously, or for wholly inadequate consideration.

47.      Upon information and belief, LAS VEGAS LAND PARTNERS, LLC is the nominal holder of the alleged interests, in the entity defendants, and  takes its direction from DAVID J. MITCHELL and BARNET LIBERMAN, in managing and operation in the asset protection entities, which exist merely to help Entity Defendants, DAVID J. MITCHELL and BARNET LIBERMAN  protect the original assets of LAS VEGAS LAND PARTNERS, LLC from creditors such as Plaintiffs.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 10 –

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

48.    Plaintiff is informed and believes, that the Entity Defendants are the recipients of fraudulent transfers of real property, monies, and other valuable assets as hereinafter alleged.

49.    Nype obtained a judgment against LVLP on or about April 10, 2015, and initiated post-judgment collection and discovery efforts during the Summer of 2015.

50    The first post-judgment discovery documentation received by NYPE were various tax returns and limited related information for LVLP, subsequently followed by various bank statements and financial ledger documentation, spanning approximately late August, 2015 through and including November 2015.

51.    Most of the documentation so produced was already stale dated even when produced, for example, the bank statements only being current through early 2014,SAID documentation being produced in late 2015.

52.    While the documentation produced in the latter half of 2015 disclosed some suspicious circumstances and questionable transactions, it became clear that substantial additional source document would be required to flesh out and understand precisely what had occurred.

53.    Based on a preliminary review of the newly disclosed bank statements and ledgers, it was noted that there was a  comingling of funds related to various payments that appear to be made on behalf of other entities.  Although not all of the canceled checks were provided, the bank statements of Las Vegas Land Partners, LLC located at Bates LVLP01-00001 to LVLP 08-00016 are indicative of usage by numerous related party entities.  An example of the comingling can be found at LVLP 07-00047, more specifically checks number 1287, 1288 and 1289 payable to the Clark County Treasurer for parcels that do not appear to be recorded in the name of Las Vegas

Land Partners, LLC and LVLP07-00048 more specifically checks number 1292 and 1293 payable to Delaware Secretary of State to register other entities.

54.    Documents provided labeled lvlp3a, a Las Vegas Land Partners, LLC document consisting of a simple check register covering the period 1/13/11 to 4/27/15 also supports that conclusion with the same date, payee and dollar amount information found on the checks.

58.    A review of the full tax returns of LVLP Holdings, LLC provided at Bates LVLP09-00001 to LVLP17-0064 Forms 1065 for calendar years 2005 to 2013 was first possible in the late fall of 2015 as well. The tax returns are indicative of a combination and consolidation of several related party Limited Liability Companies. The organizational documents located at Bates LVLP18-00001 to LVLP19-00202 indicate that Las Vegas Land Partners, LLC is the single equity member of Wink One, LLC and Livework Manager, LLC (who is the sole equity member of Livework, LLC).

56.    The members of Las Vegas Land Partners, LLC are Barnet Liberman and David Mitchell (Bates LVLP19-00033-35).

57.    There is no explanation for the usage of "LVLP Holdings, LLC" as the filing entity for the tax returns. There are numerous real estate parcels, equity interests and sources of income arising from the various consolidated entities listed on the tax returns of LVLP Holdings, LLC that are not traceable to the ledgers provided by Las Vegas Land Partners, LLC.

58.    Additionally there are numerous known sources of cash flow for example arising from Wink One, LLC related to the RTC Lease that are not traceable to the accounting records.

59.    During the Summer of 2016, NYPE again promulgated detailed specific written discovery requests to LVLP, which requests were partially complied with in the form of additional tax returns and ledger documentation, but mostly objected to.

JOHN W. MUJE & ASSOCIATES
LAW OFFICES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

60.      NYPE found it necessary to file a Motion to Compel discovery, and an Order resulting from many months of contested discovery disputes was finally entered by the Court on or about February 2, 2017.

61.      Some additional documentation was ultimately produced, after repeated efforts by NYPE, which disclosed additional improprieties, misconduct, and transactions by LVLP and its principals designed to effectively render LVLP insolvent and unable to respond in damages, which transactions will be discussed, in part, hereinafter.

62.      The Order Compelling Discovery of February 2, 2017 has only been partially complied with, and there remain substantial deficiencies and blocks of documentation that could and should have been produced, but have not been, at least as of the date of LVLP's bankruptcy filing.

64.      Even the documents produced from January through March, 2017, are inherently contradictory and do not match the data reported on the tax returns.

64.      As one key example, however, of the importance of having accurate and complete source records, attached hereto as Exhibit "1" and by this reference incorporated herein is a certification by LVLP's New Jersey CPA for the first time disclosing that various affiliated and associated entities are disregarded for tax and accounting purposes, and are all reported through LVLP Holdings, LLC's business tax return.

65.      The partial and incomplete documentation produced between the Fall of 2015, and into 2017, did show extensive co-mingling, a failure to keep separate and adequate accounting records for various affiliates and associated companies, a decided lack of concrete detail, and an absolute failure to account for and explain various cash flow entries.

66.      Given the incomplete documentation produced by defendants, the Plaintiff is unable to determine where LVLP's cash flow is coming from, or where the resulting cash flow is being applied.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

67.    On information and belief, the documentation available shows that LVLP, its affiliates and associated entities were shifting money between one entity and the other to pay bills and cover expenses as needed, and not in any coherent or recurring logical form.

68.    The data that has been provided does not match LVLP tax returns, for example failing to disclose substantial income.

69.    Part of the data provided appears to account for, in part, the financial transactions and relationship between LVLP and its joint venture partner (the entity which Nype procured to provide financing for LVLP's projects), Forest City Enterprises.

70.    The data available to date appears to show that arrangements were made with Forest City to utilize LVLP's share of revenue and cash flow to reduce debt and build equity, resulting in an absence of actual cash receipt by LVLP.

71.    Despite what those records are showing, however, the tax returns are wholly silent and fail to disclose the accrual of any imputed income or equity with respect to the Forest City Joint Ventures, despite the fact that the joint venture documents suggest that LVLP's share of revenue is being used to pay down debt and build equity, which would legally result in the accrual of taxable income which the law requires to be accurately reported

72.    Indeed, until the preliminary information was received in the Fall of 2015 as supplemented by the early 2017 production, LVLP, based on the tax returns and documentation it had previously supplied, continued to operate, appeared to have assets, appeared to be paying taxes as accrued, and continued to vigorously defend itself.

73.    One particular item first disclosed in the late Winter of 2017 is a statement by the acknowledged accountant for LVLP that numerous of the other defendant entities herein are "disregarded for tax purposes", meaning, on information and belief, that their revenue and expenses, as well as income and liabilities, while being nominally contained in a separate legal entity, are a practical matter, and as recognized by Federal Taxing Authorities, one and the same as LVLP.  See Exhibit "1".

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

74.    Additional discovery information fleshed out in 2016 and early 2017 includes the fact that LVLP has been effectively insolvent since 2015, despite showing millions of dollars of network on its tax returns, and has been forced to pay its attorneys in both the prior litigation and the present litigation through personal checks and credit cards of Mitchell and/or Liberman, or through affiliate entities.

75.    Much of the newly acquired financial data also disclosed that corporate filing fees for numerous of the defendants herein had been paid, *ad hoc,* from LVLP bank accounts, interchangeably, despite said entities nominally maintaining or claiming separate legal status.

76.    Plaintiffs RUSSELL L. NYPE and the REVENUE PLUS, LLC (hereinafter collectively referred to as "Nype") were Defendants in a case originally initiated by current Defendants, LAS VEGAS LAND PARTNERS, LLC, LIVE WORK, LLC and ZOE PROPERTIES, LLC in the Eighth Judicial District Court in Clark County, Nevada under Case No. A551073, which case commenced on or about November 2, 2007 (hereinafter the "First Case").

77    Nype counterclaimed in that case with regard to his prior business dealings with LAS VEGAS LAND PARTNERS, LLC, its associate entities, and its principals, BARNET LIBERMAN (hereinafter "Liberman") and DAVID J. MITCHELL (hereinafter "Mitchell"), seeking compensation which he had been promised and which he had earned during the course of the parties ongoing business dealings regarding the development of numerous Las Vegas real estate holdings.

78.    On information and belief, during the pendency of those proceedings, and after defaulting on their obligations to Nype, Liberman and Mitchell undertook the process of creating various affiliated and associate entities, including but not limited to several of the asset protection entities as alleged in Paragraph 43 hereinabove, utilizing sophisticated corporate and asset protection counsel.

–  15  –

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

79.     After years of protracted litigation, Nype ultimately obtained a judgment against LAS VEGAS LAND PARTNERS, LLC on or about April 10, 2015 in the principal amount of $2,608,797.50.

80.     As alleged hereinabove, upon information and belief, pursuant to the Asset Protection Scheme, on various dates spanning 2007 through the present, Defendant LAS VEGAS LAND PARTNERS, LLC commenced multiple real property and equity ownership transfers to convey its valuable real property interests, to one or more the asset protection entities, which asset protection entities continue to hold the subject real property or which have subsequently transferred such to additional entities in which Liberman, Mitchell, and or LVLP hold substantial beneficial interests.

81.     In addition to the numerous real property conveyances alleged hereinabove, and totally unbeknownst to Nype at the time LAS VEGAS LAND PARTNERS, LLC transferred literally millions of dollars in monies and liquidated funds to its principals, LIBERMAN and MITCHELL, during a time that LAS VEGAS LAND PARTNERS, LLC, knew or reasonably should have known of Nype's substantial monetary claims against it.

82.     The real estate and monetary transfers alleged hereinabove effectively rendered LAS VEGAS LAND PARTNERS insolvent, and unable to pay its debts on a regular basis as they matured, including but not limited to the monies that the Eighth Judicial District Court has determined are owed to Nype.

83.     Upon information and belief, the aforesaid actions of all Defendants were undertaken consciously, knowingly, willfully, and specifically in an effort to defeat and avoid Plaintiffs' rights which were being pursued in the First Case.

84.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LIBERMAN AND MITCHELL** were and are the alter ego of LAS VEGAS LAND PARTNERS, LLC, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and

still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

85.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **MEYER PROPERTY, LLC** was and is the alter ego of MEYER PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of MEYER PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of MEYER PROPERTY, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

86.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of ZOE PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of **ZOE PROPERTY, LLC**, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and

remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **ZOE PROPERTY, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

87.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of **LEAH PROPERTY, LLC**, that said Defendants did and still do dominate, influence and control of LEAH PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN use and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **LEAH PROPERTY, LLC**, if entity is not disregarded and the said Defendant held liable for all relief being sought herein.

88.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **WINK ONE, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **WINK ONE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **WINK ONE, LLC** if entity is not disregarded and the said Defendant held liable for all relief being sought herein

89.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002  Fax: (702) 386-9135

were and are the alter ego of **LIVE WORK, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness  of **LIVE WORK, LLC** if entity if entity is not disregarded and the said Defendant held liable for all relief being sought herein.

90.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LIVE WORK MANAGER, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK MANAGER, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **LIVE WORK MANAGER, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

91.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants,  LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **AQUARIUS OWNER, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **AQUARIUS OWNER, LLC** used and still use to conduct their business

affairs; that each such entity remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **AQUARIUS OWNER, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

92.      Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LVLP HOLDINGS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LVLP HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LVLP HOLDINGS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

93.      Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **MITCHELL HOLDINGS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **MITCHELL HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness **MITCHELL HOLDINGS, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

94.      Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned, LAS VEGAS LAND PARTNERS, LLC, is and was the alter ego of **305 LAS VEGAS, LLC**, that LVLP did and still does dominate, influence and

LAW OFFICES

**JOHN W. MUIJE & ASSOCIATES**

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

control of 305 Las Vegas, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; LVLP was and remains a mere shell and naked framework **which 305 LAS VEGAS, LLC**, used and still use to conduct their business affairs; that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

95.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **LIVE WORKS TIC SUCCESSOR, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORKS TIC SUCCESSOR, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

96.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **FC/LV VEGAS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **FC/LV VEGAS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity

is not disregarded and the said Defendant held liable for all relief being sought herein.

97.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **CASINO COOLIDGE, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **CASINO COOLIDGE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

98.    This New Case is effectively an extension and development of the first litigation, and is an effort by the Trustee  to avoid the wrongful misconduct of Defendants and each of them, in attempting to avoid LVLP's creditor's rights and improperly dissipate the assets of LAS VEGAS LAND PARTNERS, LLC, which were, are, and should be available to satisfy various creditor claims.

## FIRST CLAIM FOR RELIEF

### (Constructive Trust)

99.    The Trustee  incorporates by reference paragraphs 1 through 98  as though fully set forth.

100.    Pursuant to the pending litigation in the First Case,  it was understood that options or equity in various Real Estate parcels owned by LAS VEGAS LAND PARTNERS, LLC in or about 2006, as well as "Choses In Action" such as equity ownership in various affiliated entities would be available to satisfy Plaintiff's judgment.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

101. Defendants knew or reasonably should have known, that the subject property interests were valuable, and that the legitimate equity in the subject real property or beneficial ownership of the affiliate entities and limited liability ownership interest would be sufficient to satisfy Nype's claim, but for the fraudulent conveyances alleged herein.

102. Defendants transferred, hypothecated and encumbered various real property for improper purposes and inadequate consideration.

103. All of the foregoing facts make it just and equitable that this court impose and declare a constructive trust upon the subject property interest, and any proceeds therefrom, in favor of the Plaintiffs and the Trustee.

104. The court can and should declare a lien against the subject properties, order the sale thereof, and/or order the payment of all rents or monies received from the subject property to Plaintiffs and the Trustee herein.

105. It has been necessary for Trustee to retain the services of an attorney to prosecute this action and Plaintiff is therefore entitled to an award of reasonable attorneys' fees

### SECOND CLAIM FOR RELIEF

### (Fraudulent Conveyance)

106. The Trustee incorporates by reference paragraphs 1 through 105 as though fully set forth.

107. The Trustee is informed and believes, and on that basis alleges that Defendants have taken numerous actions to avoid satisfying various creditor claims against LAS VEGAS LAND PARTNERS, LLC.

108. The Trustee alleges on information and belief, that in order to avoid potential execution against real estate interests, *inter alia*, LAS VEGAS LAND PARTNERS, LLC took steps to hypothecate and transfer numerous property interests and valuable interests to the other Defendants herein.

LAW OFFICES

**JOHN W. MUIJE & ASSOCIATES**

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

109. The Trustee is informed and believes, and on that basis alleges that such transfers by Defendants were undertaken in an effort to avoid the adverse financial consequences of Plaintiffs' pending claims, as well as those of other creditors.

110. The Trustee is informed and believes, and on that basis alleges that the aforementioned transfers were gratuitous, or for inadequate or disguised consideration, made without obligation, and made with an intent to deprive Plaintiff's and other creditors of their ability to recover such funds directly from LAS VEGAS LAND PARTNERS, LLC in connection with the monies owed.

111. As a result of the aforementioned acts of Defendants, Plaintiffs and the Trustee are entitled to a Judgment against Defendants, jointly and severally, in an amount in excess of $15,000.00.

112. On or about August 14, 2014, during the course of proceedings initiated to enforce and collect upon the judgment in the First Case, Defendant LAS VEGAS LAND PARTNERS, LLC first provided tax returns and detail financial information which revealed to Nype, for the first time, that it had transferred its interest in numerous real estate parcels, as well as many millions of dollars, to the entity defendants and/or Liberman and Mitchell, during the ongoing pendency of the first case.

113. In making such transfers, LAS VEGAS LAND PARTNERS, LLC, and Defendants MITCHELL and LIBERMAN have acted with the actual intent to hinder delay and to defraud their creditors, including Nype, but fraudulently transferring assets to insiders and the entity defendants.

114. The Trustee lacks an adequate remedy at law because, unless the relief sought in this complaint is granted, LAS VEGAS LAND PARTNERS, LLC with the aid of the Defendants herein will have succeeded in fraudulently transferring its assets to insiders and/or related entities, depriving creditors of the opportunity to collect monies due and owing from LAS VEGAS LAND PARTNERS, LLC.

115. The Trustee has an high probability of success on the merits in this action.

116. The aforesaid transfer of assets to insiders and/or the entity defendants was made with actual intent to hinder, delay or defraud creditors, most significantly Nype, and these transfers therefore constitute fraudulent transfers in violation of NRS 112.180.

117. LAS VEGAS LAND PARTNERS, LLC did not receive reasonably equivalent value for the transfers herein alleged.

118. LAS VEGAS LAND PARTNERS, LLC and its principals  intended to incur or reasonably should have believed they would incur debts beyond its ability to pay the same as they become due, and thus the transfers at issue are transfers in violation of Nevada law.

119. Because of the special circumstances of this case, in which LAS VEGAS LAND PARTNERS, LLC is liable for a judgment it has consistently ignored and avoided, having committed fraud to avoid the judgment and its debts, and the hiding assets, and also constituting a risk of further affirmative frustration of valid efforts by Nype and other creditors to collect upon their claims, the Trustee is entitled to:

    (1)    The appointment of receiver to take possession of the assets of LVLP, LLC;

    (2)    An injunction against further dissipation, disposition, or assignment of any and all assets and property owned by LAS VEGAS LAND PARTNERS, LLC:

    (3)    Any other relief that the circumstances may require, including a declaration that the transfers in question are void, and that the assets in question are subject to execution by Nype.

120. It has been necessary for Trustee to retain the services of an attorney to prosecute this action, and Trustee is, therefore, entitled to reasonable attorneys' fees.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

**THIRD CLAIM FOR RELIEF**

**(Civil Conspiracy)**

121.    The Trustee incorporates by reference paragraphs 1 through 120 as though fully set forth.

122    As alleged hereinabove, and upon information and belief, the transfer of the subject real estate and substantial monetary amounts  were undertaken by Defendants with full knowledge as to the relevant circumstances and in an effort to participate in transactions in derogation of the rights of creditors.

123.    The knowing and willful conduct of the entity Defendants in agreeing to receive the subject real property and act as a nominee for said LAS VEGAS LAND PARTNERS. LLC, LIBERMAN and MITCHELL constitute acts of civil conspiracy.

124.    The Defendants, and each of them worked together in concerted actions with the intent to accomplish an unlawful purpose, vis a vis Plaintiffs and other creditors.

125.    The purpose of the unlawful, concerted actions of Defendants was intended to, or would likely result in direct harm to the creditors of LVLP.

126.    As a direct and proximate result of the aforesaid civil conspiracy, undertaken between the Defendants, Plaintiffs and the Trustee have been damaged in an amount in excess of $15,000.00.

127.    As alleged hereinabove, upon information and belief, Defendants' conduct was willful, knowing, intentional, and malicious, as a matter of law, entitling Plaintiffs and the Trustee to recover exemplary damages in an amount in excess of $15,000.00.

128.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorneys' fees.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone (702) 386-7002    Fax: (702) 386-9135

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

129.    The Trustee incorporates by references Paragraphs 1 through 128 as though fully set forth herein.

130.    A true and ripe controversy exists as to the dispute, and declaratory relief pursuant to NRS 30.040 is necessary to declare the respective rights, responsibilities, and obligations between the parties as a consequence of Plaintiffs' judgment against LAS VEGAS LAND PARTNERS, LLC, and as relates to the various transactions undertaken by Defendants, including but not limited to transactions involving various parcels of valuable Las Vegas Real Estate.

131.    For all of the reasons set forth hereinabove, Defendants have acted wrongfully and in violation of its creditors', and a direct declaration as to the invalidity of Defendants' transfers, and such should be determined and declared by the court.

132.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

## FIFTH CLAIM FOR RELIEF

### (Alter Ego)

133.    Plaintiff incorporates by references Paragraphs 1 through 132 as though fully set forth herein.

134.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIAS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, CASINO COOLIDGE, LLC, and each of them, were and remain the alter-egos of each other; that said Defendants did and still do dominate, influence and control each other; that there existed and still exists a unity of ownership between them; that the individuality and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which the other Defendants used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon creditors will result if the theoretical separateness of the Defendant entities is not disregarded and each such Defendant held liable for all relief being sought herein.

135.    Upon information and belief, to the extent that one or more of the Defendant entities is nominally owned or operated by or through LAS VEGAS LAND PARTNERS, LLC, or Defendants LIBERMAN or MITCHELL with respect to one or more of the Defendant entities, which entities as a practical matter exist with functional unity of ownership in said LAS VEGAS LAND PARTNERS, LLC or Defendants LIBERMAN or MITCHELL, the true and factual individuality and separateness of each such entity was and remains non-existent; each such entity was and remains a mere shell and naked framework, which LAS VEGAS LAND PARTNERS, LLC and Defendants LIBERMAN or MITCHELL utilize, through the offices of said Defendants LAS VEGAS LAND PARTNERS, LLC, LIBERMAN or MITCHELL and/or through nominees and others to conduct their business affairs.   Each such entity is, upon information and belief, merely another nominal manifestation of the business and  financial affairs of LAS VEGAS LAND PARTNERS, LLC and the Defendants LIBERMAN or MITCHELL, and to recognize any such separate entity would work as separate and distinct from LAS VEGAS LAND PARTNERS, LLC and Defendants LIBERMAN or MITCHELL, an injustice and fraud upon creditors, to the extent the theoretical or putative separateness of such entity is not disregarded and said nominal Defendants held liable for all the relief being sought herein.

136.    As a matter of both statutory common law, and prior declarations of the Eighth Judicial District Court, it is appropriate that the Court further determine and declare that all of the aforesaid entities be held to be the Alter Egos of  LAS VEGAS LAND PARTNERS, LLC and of Defendants LIBERMAN or MITCHELL, and that therefore the various Defendants named herein can

and should be jointly and severely liable to the Plaintiffs and Trustee with regard to all claims asserted.

137.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

**WHEREFORE,** Plaintiff prays for judgment against Defendants and each of them as follows:

1.    For a sum in excess of $15,000.00;

2.    For exemplary damages in an amount in excess of $10,000.00;

3.    For the imposition of a constructive trust upon the various parcels of real property and valuable equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC for the benefit of Plaintiff;

4.    For an order requiring the sale of the parcels of real estate and valuble ownership interest and an order directing the payment of all rents with regard to the subject real property be made to the order of the Trustee herein;

5.    For the Appointment of a Receiver;

6.    For interest upon all damages which Plaintiffs and the Trustee recovers at the Nevada Statutory rate.

7.    For a declaration as to the invalidity of Defendants' transactions as regards to the various valuable real estate interests and equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC;

8.    For a determination that the Defendants are the alter egos of each other , and should all be held liable to Plaintiff, jointly and severally, for the damages sought herein.

9.    For a declaration that the actions by LAS VEGAS LAND PARTNERS, LLC, in conjunction with the Defendants herein, to convey valuable property and monies to other Defendants with the intent to deprive creditors of their ability to recover funds was undertaking in a knowing, willful, intentional, and malicious manner, which

LAW OFFICES

**JOHN W. MUIJE & ASSOCIATES**

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

under Nevada law constitute malice and is sufficient grounds to invoke the availability of exemplary damages against Defendants, and each of them.

10. As a consequence of the willful malicious and intentional misconduct of the Defendants and each of them, Plaintiffs and the Trustee are entitled to recover exemplary damages from each Defendant in accordance with Nevada Law, in an amount in excess of $15,000.00, the precise amount to be proven at time of trial.

11. For reasonable attorneys' fees for the prosecution of this suit; and

12 For such other and further relief as the Court may deem just and proper.

DATED this ___ day of November, 2019.

JOHN W. MUIJE & ASSOCIATES


By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:     (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Trustee*

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 30 –

under Nevada law constitute malice and is sufficient grounds to invoke the availability of exemplary damages against Defendants, and each of them.

10. As a consequence of the willful malicious and intentional misconduct of the Defendants and each of them, Plaintiffs and the Trustee are entitled to recover exemplary damages from each Defendant in accordance with Nevada Law, in an amount in excess of $15,000.00, the precise amount to be proven at time of trial.

11. For reasonable attorneys' fees for the prosecution of this suit; and

12 For such other and further relief as the Court may deem just and proper.

DATED this ___ day of November, 2019.

JOHN W. MUIJE & ASSOCIATES


By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:      (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiff-in-Intervention*

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

# EXHIBIT B

Electronically Filed
11/18/2019 11:21 AM
Steven D. Grierson
CLERK OF THE COURT

1  **ORDR**
2  JOHN W. MUIJE & ASSOCIATES
   JOHN W. MUIJE, ESQ.
3  Nevada Bar No: 2419
   1840 East Sahara Avenue, Suite 106
4  Las Vegas, NV 89104
   Telephone No:   (702) 386-7002
5  Facsimile No:   (702) 386-9135
6  Email: Jmuije@muijelawoffice.com
   *Attorneys for Proposed Plaintiff- In-Intervention*
7  SHELLEY D. KROHN

8

9                    DISTRICT COURT

10              CLARK COUNTY, NEVADA

11  RUSSELL L. NYPE AND REVENUS PLUS,          CASE NO:   A-16-740689-B
    LLC
12                                             DEPT NO:   XI
                              Plaintiffs,
13
                        vs.
14  DAVID J. MITCHELL; BARNET LIBERMAN; LAS
15  VEGAS LAND PARTNERS, LLC; MEYER           **Date of Hearing:** Nov. 18, 2019
    PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH
16  PROPERTY, LLC; WINK ONE, LLC; LIVE WORK,  **Time of Hearing:**  9:00 a.m.
    LLC; LIVE WORK MANAGER, LLC; AQUARIUS
17  OWNER, LLC; LVLP HOLDINGS, LLC;
    MITCHELL HOLDINGS, LLC; LIBERMAN
18  HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE
    WORKS TIC SUCCESSOR, LLC; CASINO
19  COOLIDGE LLC; DOES I through III, and ROE
    CORPORATIONS I through III, inclusive,
20
21                            Mitchell Defendants.
22
23          <u>**ORDER GRANTING TRUSTEE'S MOTION TO INTERVENE**</u>

24        This matter came on for hearing on Trustee's Motion to Intervene on the time and date

25  noted above.  JOHN W. MUIJE, ESQ., of the Law Firm of JOHN W. MUIJE & ASSOCIATES,

26  appearing on behalf of Proposed Plaintiff-In-Intervention, SHELLEY D, KROHN.

27  . . . .

28  . . . .

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave. #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

1

1  **IT IS HEREBY ORDERD, ADJUDGED AND DECREED,** that Proposed Plaintiff-In-

2  Intervention, SHELLEY D. KROHN's, Motion to Intervene be and the same is hereby

3  **GRANTED.**

4  DATED this 18th day of _Nov._, 2019

5

6

7

8

9  DISTRICT JUDGE

10

11  Submitted by:

12  JOHN W. MUIJE & ASSOCIATES

13

14

15  BY:

16  JOHN W. MUIJE, ESQ.
      Nevada Bar No: 2419

17

18  1840 East Sahara Avenue, Suite 106
      Las Vegas, NV 89104

19  Telephone No:   (702) 386-7002

20  Facsimile No:   (702) 386-9135
      Email: Jmuije@muijelawoffice.com

21  *Attorneys for Proposed Plaintiff- In-
      Intervention SHELLEY D, KROHN*

22

23

24

25

26

27

28

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave. #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

2

# EXHIBIT C

Electronically Filed
11/18/2019 12:06 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
JOHN W. MUIJE & ASSOCIATES
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 East Sahara Avenue, Suite 106
Las Vegas, Nevada 89104
Telephone:  702-386-7002
Facsimile:  702-386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiff-in-Intervention*

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

DISTRICT COURT
CLARK COUNTY, NEVADA

RUSSELL L. NYPE AND REVENUS PLUS, LLC

Plaintiffs,

vs.

DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I through III, and ROE CORPORATIONS I through III, inclusive,

Mitchell Defendants.

_____

SHELLEY D. KROHN, U.S. BANKRUPTCY TRUSTEE

Proposed Plaintiff-In-Intervention

CASE NO:    A-16-740689-B

DEPT. NO:  XI

**COMPLAINT IN INTERVENTION FOR:**

1. **CONSTRUCTIVE TRUST;**
2. **FRAUDULENT CONVEYANCE;**
3. **CONSPIRACY TO DEFRAUD;**
4. **DECLARATORY RELIEF; AND**
5. **ALTER EGO**

**ARBITRATION EXEMPT (EQUITABLE RELIEF)**

COMES NOW, SHELLEY D. KROHN, U.S. Bankruptcy Trustee (hereinafter referred to as "TRUSTEE"), and as and for causes of action against the Defendants, DAVID J. MITCHELL; BARNET LIBERMAN;  MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC;

– 1 –

WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC;

LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC

SUCCESSOR, LLC; FC/LW VEGAS, LLC; CASINO COOLIDGE LLC, alleges and shows as follows:

### GENERAL FACTUAL ALLEGATIONS

1.    The Trustee was duly appointed to act as the Trustee in the Bankruptcy Case of

Las Vegas Land Partners, LLC, Case No. BK-19-15333-mkn (hereinafter referred to as

"TRUSTEE").

2.    Plaintiffs, RUSSELL L. NYPE and REVENUE PLUS, LLC (hereinafter

"NYPE"), a New York Limited Liability Company.

3.    Defendant, DAVID J. MITCHELL (hereinafter "Mitchell), is an adult resident of

New York.

4.    Defendant, BARNETT LIBERMAN (hereinafter "Liberman), is an adult resident

of New York.

5.    Aquarius Owner, LLC is or was a Delaware limited liability company registered to

do business in the State of Nevada in November, 2004, and maintained its registration through

and including approximately November, 2009.

6.    On information and belief, Aquarius Owner LLC was owned and directed by

Mitchell, Liberman, and/or LVLP.

7.    In that context, various real property transfers and ownership equity took place

between LVLP and/or Aquarius Owner, LLC, during the operative time, and on information and

belief, financial distributions and transactions occurred between Aquarius Owner LLC, and its

principals on a recurring basis, most of which were never disclosed in publicly available records

or documents.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

8.      FC/LW Vegas is or was a Delaware limited liability company registered to do business in the State of Nevada in February 2011 which has maintained registration through the present.

9.      FC/LW, LLC, on information and belief, is an entity beneficially and jointly owned and operated by Liberman, Mitchell, LVLP, LIVE WORK, LLC and non-party Forest City Enterprises, for purposes of developing and managing various real property interest in Southern Nevada.

10      In that context, various real property transfers and ownership equity took place between LIVE WORK, LLC and/or FC/LW, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between FC/LV Vegas, LLC, and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

11.      Leah Property, LLC is a Delaware limited liability that first registered to do business in Southern Nevada in approximately February, 2005, and continued to be active and operate in the Southern Nevada area through and including February, 2015.

13.      On information and belief, Leah Property LLC is owned, managed, and operated by Liberman, at all relevant times.

14.      In that context, various real property transfers and ownership equity took place between LVLP and/or Leah Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Leah Property, LLC and its

– 3 –

principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

15.    Live Work LLC is a Delaware limited liability company who first became active in Southern Nevada in or about April, 2005, and in fact was a plaintiff in the original underlying lawsuit with LVLP versus the plaintiffs herein.  Live Work, LLC, on information and belief, continued to be active and operating in Southern Nevada through and including approximately April, 2012.

16.    On information and belief, Live Work, LLC was owned, operated, and managed by Liberman, Mitchell, LVLP, Live Work Manager, LLC, and/or Mitchell Holdings, and was an active.

17.    In that context, various real property transfers and ownership equity took place between LVLP and/or Live Work, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Live Work Manager, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

18.    Livework Manager, LLC was a Delaware Limited Liability that first registered to do business in the State of Nevada in approximately April, 2005, and continued active and in business in Southern Nevada through the present.

19.    Livework Manager, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

20.    In that context, various real property transfers and ownership equity took place between LVLP and/or Live work Manger, LLC, during the operative time, and on information and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

belief, financial distributions and transactions occurred between Livework Manager, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

21.     Zoe Property, LLC is a Delaware Limited Liability Company that first registered and became active in Southern Nevada in or about November 2004, and in fact was one of the original plaintiffs along with Live Work, LLC and LVLP versus the plaintiffs herein.  On information and belief, Zoe Property, LLC operated and continued to be active in Southern Nevada through approximately November, 2007.

22.     Zoe Property, LLC, was owned, operated and managed by, on information and belief, by Liberman, Mitchell and/or LVLP.

23.     In that context, various real property transfers and ownership equity took place \ \between LVLP and/or Zoe Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Zoe Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

24.     Wink One, LLC is a Delaware limited liability company that registered to do business in the State of Nevada in approximately April, 2008, and remained active, according to Secretary of State records, through and including approximately April, 2009.  Wink One, LLC, on information and belief, was owned, operated and managed by Liberman, Mitchell, and/or LVLP.

25,.     Wink One, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

– 5 –

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

26.    In that context, various real property transfers and ownership equity took place between LVLP and/or Wink One, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Wink One, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

27.    Casino Coolidge, LLC is a Delaware limited liability company that first registered to do business in Southern Nevada in or about October, 2014.

28.    On information and belief, Casino Coolidge, LLC is owned, operated and managed by Liberman, Mitchell, and/or LVLP.

29.    In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

30.    In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

31.    305 Las Vegas, LLC is a Delaware limited liability company that first registered and qualified to do business in Southern Nevada in approximately April, 2007, and remains active and doing business in Southern Nevada through the present.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

32.     On information and belief, 305 Las Vegas, LLC was originally owned, operated and managed by Liberman and/or LVLP.

33.     In that context, various real property transfers and ownership equity took place between LVLP, its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals or affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

34.     In that context, various real property transfers and ownership equity took place between LVLP and its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals and affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents.

35.     On information and belief, unbeknownst to Plaintiffs, in approximately 2012 305 Las Vegas, LLC engaged in an internal transaction resulting in the acquisition of the beneficial interest of Mitchell by a Mr. Win Churchill, and a monetary distribution benefitting Mitchell to the tune of $7.5 million, all of which Plaintiff has only learned at very recent times.

36.     On information and belief, MEYER PROPERTY, LTD., is fictitious entity that was involved for a relatively short period of time with LEAH PROPERTY, LLC, and in the context thereof participated in real estate transactions resulting in net financial gain to Leah and/or Liberman, Mitchell, and/or LVLP, the specifics of which financial gains were never disclosed nor reasonably discoverable by Plaintiffs herein.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

37.    In that context, various real property transfers took place between LVLP and/or Meyer Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Meyer Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in the State of Nevada through the present.

38.    On information and belief, Mitchell Holdings, LLC is a Delaware limited liability company that never qualified to do business within the State of Nevada, but was used by Defendant Mitchell for purposes of owning Mitchell's equity or beneficial interest in various other defendants, and fuddling money back and forth between such entities, in a matter that would not be detectable or readily discoverable by Plaintiffs or other creditors.

39.    In that context, various real property transfers and ownership equity took place between LVLP and/or Mitchell Holdings, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Mitchell Holdings, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents, is a Delaware limited liability that first registered to do business in Nevada in approximately February, 2011, and continues to operate and do business, in good standing, through and including this date.

40.    Live Works TIC Successor, LLC, on information and belief, is an entity in which Liberman, Mitchell, and/or Las Vegas Land Holdings had substantial equity or beneficial interest, and was the ultimate recipient of financial proceeds, monies, emoluments and benefits deriving from Live Work TIC Successor LLC, and a tendency and common agreement entered into between Live Work TIC Successor, LLC and non-party Forest City Enterprises, through

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

contractual and financial arrangements, referred to as the tenancy in common agreement, and numerous subsequent amendments thereto.

41.    In that context, various real property transfers and ownership equity took place between LVLP and/or Live Works TIC Successor, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Live Works TIC Successor, LLC and its principals on a recurring basis, most of which were never  disclosed in publicly available records or documents..

42.    Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LW VEGAS, LLC, are believed to be Delaware limited liability companies and/or corporations which have conducted business in the State of Nevada, and are alleged to be owned and/or controlled, in whole or in part by Defendants, LAS VEGAS LAND PARTNERS, LLC, DAVID MITCHELL and BARNET LIBERMAN.

43.    LVLP, LLC, Mitchell, and Liberman, created the various Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, on information and belief, and used multiple sophisticated counsel for purposes of secreting, hiding, and conveying away valuable assets that were available to satisfy creditors such as Plaintiffs as alleged more specifically hereinafter

(hereinafter referred to as the "Asset Protection Scheme").

44    .That Plaintiffs do not at present know the true names and identities of those Entity Defendants, both corporate and individual, herein joined by fictitious names, but is informed and believes and therefore alleges that said Entity Defendants, are agents, employees, servants and representatives of the named Entity Defendants, or persons and entities acting in concert with the named Entity Defendants with respect to the premises herein plead, who are liable to the Plaintiffs by reason thereof, and the Plaintiffs pray leave to amend this Complaint to insert their true names and identities with appropriate allegations when the same becomes known.

45.    Upon information and belief, part of the Asset Protection Scheme contemplated that the majority of the purported equity interests in the asset protection entities referred to in Paragraph 4 hereinabove be held in the name of LAS VEGAS LAND PARTNERS, LLC, or an associated entity, all of which were and are in reality controlled by DAVID J. MITCHELL and BARNET LIBERMAN.

46.    Upon information and belief, LAS VEGAS LAND PARTNERS, LLC received its equity interests in the asset protection entities gratuitously, or for wholly inadequate consideration.

47.    Upon information and belief, LAS VEGAS LAND PARTNERS, LLC is the nominal holder of the alleged interests, in the entity defendants, and  takes its direction from DAVID J. MITCHELL and BARNET LIBERMAN, in managing and operation in the asset protection entities, which exist merely to help Entity Defendants, DAVID J. MITCHELL and BARNET LIBERMAN  protect the original assets of LAS VEGAS LAND PARTNERS, LLC from creditors such as Plaintiffs.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

- 10 -

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

48.     Plaintiff is informed and believes, that the Entity Defendants are the recipients of fraudulent transfers of real property, monies, and other valuable assets as hereinafter alleged.

49.     Nype obtained a judgment against LVLP on or about April 10, 2015, and initiated post-judgment collection and discovery efforts during the Summer of 2015.

50     The first post-judgment discovery documentation received by NYPE were various tax returns and limited related information for LVLP, subsequently followed by various bank statements and financial ledger documentation, spanning approximately late August, 2015 through and including November 2015.

51.     Most of the documentation so produced was already stale dated even when produced, for example, the bank statements only being current through early 2014,SAID documentation being produced in late 2015.

52.     While the documentation produced in the latter half of 2015 disclosed some suspicious circumstances and questionable transactions, it became clear that substantial additional source document would be required to flesh out and understand precisely what had occurred.

53.     Based on a preliminary review of the newly disclosed bank statements and ledgers, it was noted that there was a  comingling of funds related to various payments that appear to be made on behalf of other entities.  Although not all of the canceled checks were provided, the bank statements of Las Vegas Land Partners, LLC located at Bates LVLP01-00001 to LVLP 08-00016 are indicative of usage by numerous related party entities.  An example of the comingling can be found at LVLP 07-00047, more specifically checks number 1287, 1288 and 1289 payable to the Clark County Treasurer for parcels that do not appear to be recorded in the name of Las Vegas

Land Partners, LLC and LVLP07-00048 more specifically checks number 1292 and 1293 payable to Delaware Secretary of State to register other entities.

54.     Documents provided labeled lvlp3a, a Las Vegas Land Partners, LLC document consisting of a simple check register covering the period 1/13/11 to 4/27/15 also supports that conclusion with the same date, payee and dollar amount information found on the checks.

58.     A review of the full tax returns of LVLP Holdings, LLC provided at Bates LVLP09-00001 to LVLP17-0064 Forms 1065 for calendar years 2005 to 2013 was first possible in the late fall of 2015 as well. The tax returns are indicative of a combination and consolidation of several related party Limited Liability Companies.  The organizational documents located at Bates LVLP18-00001 to LVLP19-00202 indicate that Las Vegas Land Partners, LLC is the single equity member of Wink One, LLC and Livework Manager, LLC (who is the sole equity member of Livework, LLC).

56.     The members of Las Vegas Land Partners, LLC are Barnet Liberman and David Mitchell (Bates LVLP19-00033-35).

57.     There is no explanation for the usage of "LVLP Holdings, LLC" as the filing entity for the tax returns. There are numerous real estate parcels, equity interests and sources of income arising from the various consolidated entities listed on the tax returns of LVLP Holdings, LLC that are not traceable to the ledgers provided by Las Vegas Land Partners, LLC.

58.     Additionally there are numerous known sources of cash flow for example arising from Wink One, LLC related to the RTC Lease that are not traceable to the accounting records.

59.     During the Summer of 2016, NYPE again promulgated detailed specific written discovery requests to LVLP, which requests were partially complied with in the form of additional tax returns and ledger documentation, but mostly objected to.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

60.    NYPE found it necessary to file a Motion to Compel discovery, and an Order resulting from many months of contested discovery disputes was finally entered by the Court on or about February 2, 2017.

61.    Some additional documentation was ultimately produced, after repeated efforts by NYPE, which disclosed additional improprieties, misconduct, and transactions by LVLP and its principals designed to effectively render LVLP insolvent and unable to respond in damages, which transactions will be discussed, in part, hereinafter.

62.    The Order Compelling Discovery of February 2, 2017 has only been partially complied with, and there remain substantial deficiencies and blocks of documentation that could and should have been produced, but have not been, at least as of the date of LVLP's bankruptcy filing.

64.    Even the documents produced from January through March, 2017, are inherently contradictory and do not match the data reported on the tax returns.

64.    As one key example, however, of the importance of having accurate and complete source records, attached hereto as Exhibit "1" and by this reference incorporated herein is a certification by LVLP's New Jersey CPA for the first time disclosing that various affiliated and associated entities are disregarded for tax and accounting purposes, and are all reported through LVLP Holdings, LLC's business tax return.

65.    The partial and incomplete documentation produced between the Fall of 2015, and into 2017, did show extensive co-mingling, a failure to keep separate and adequate accounting records for various affiliates and associated companies, a decided lack of concrete detail, and an absolute failure to account for and explain various cash flow entries.

66.    Given the incomplete documentation produced by defendants, the Plaintiff is unable to determine where LVLP's cash flow is coming from, or where the resulting cash flow is being applied.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002  Fax: (702) 386-9135

67.     On information and belief, the documentation available shows that LVLP, its affiliates and associated entities were shifting money between one entity and the other to pay bills and cover expenses as needed, and not in any coherent or recurring logical form.

68.     The data that has been provided does not match LVLP tax returns, for example failing to disclose substantial income.

69.     Part of the data provided appears to account for, in part, the financial transactions and relationship between LVLP and its joint venture partner (the entity which Nype procured to provide financing for LVLP's projects), Forest City Enterprises.

70.     The data available to date appears to show that arrangements were made with Forest City to utilize LVLP's share of revenue and cash flow to reduce debt and build equity, resulting in an absence of actual cash receipt by LVLP.

71.     Despite what those records are showing, however, the tax returns are wholly silent and fail to disclose the accrual of any imputed income or equity with respect to the Forest City Joint Ventures, despite the fact that the joint venture documents suggest that LVLP's share of revenue is being used to pay down debt and build equity, which would legally result in the accrual of taxable income which the law requires to be accurately reported

72.     Indeed, until the preliminary information was received in the Fall of 2015 as supplemented by the early 2017 production, LVLP, based on the tax returns and documentation it had previously supplied, continued to operate, appeared to have assets, appeared to be paying taxes as accrued, and continued to vigorously defend itself.

73.     One particular item first disclosed in the late Winter of 2017 is a statement by the acknowledged accountant for LVLP that numerous of the other defendant entities herein are "disregarded for tax purposes", meaning, on information and belief, that their revenue and expenses, as well as income and liabilities, while being nominally contained in a separate legal entity, are a practical matter, and as recognized by Federal Taxing Authorities, one and the same as LVLP.  See Exhibit "1".

- 14 -

LAW OFFICES

JOHN W. MIJJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA  89104
Phone: (702) 386-7002    Fax: (702) 386-9135

74.    Additional discovery information fleshed out in 2016 and early 2017 includes the fact that LVLP has been effectively insolvent since 2015, despite showing millions of dollars of network on its tax returns, and has been forced to pay its attorneys in both the prior litigation and the present litigation through personal checks and credit cards of Mitchell and/or Liberman, or through affiliate entities.

75.    Much of the newly acquired financial data also disclosed that corporate filing fees for numerous of the defendants herein had been paid, *ad hoc,* from LVLP bank accounts, interchangeably, despite said entities nominally maintaining or claiming separate legal status.

76.    Plaintiffs RUSSELL L. NYPE and the REVENUE PLUS, LLC (hereinafter collectively referred to as "Nype") were Defendants in a case originally initiated by current Defendants, LAS VEGAS LAND PARTNERS, LLC, LIVE WORK, LLC and ZOE PROPERTIES, LLC in the Eighth Judicial District Court in Clark County, Nevada under Case No. A551073, which case commenced on or about November 2, 2007 (hereinafter the "First Case").

77    Nype counterclaimed in that case with regard to his prior business dealings with LAS VEGAS LAND PARTNERS, LLC, its associate entities, and its principals, BARNET LIBERMAN (hereinafter "Liberman") and DAVID J. MITCHELL (hereinafter "Mitchell"), seeking compensation which he had been promised and which he had earned during the course of the parties ongoing business dealings regarding the development of numerous Las Vegas real estate holdings.

78.    On information and belief, during the pendency of those proceedings, and after defaulting on their obligations to Nype, Liberman and Mitchell undertook the process of creating various affiliated and associate entities, including but not limited to several of the asset protection entities as alleged in Paragraph 43 hereinabove, utilizing sophisticated corporate and asset protection counsel.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

79.     After years of protracted litigation, Nype ultimately obtained a judgment against LAS VEGAS LAND PARTNERS, LLC on or about April 10, 2015 in the principal amount of $2,608,797.50.

80.     As alleged hereinabove, upon information and belief, pursuant to the Asset Protection Scheme, on various dates spanning 2007 through the present, Defendant LAS VEGAS LAND PARTNERS, LLC commenced multiple real property and equity ownership transfers to convey its valuable real property interests, to one or more the asset protection entities, which asset protection entities continue to hold the subject real property or which have subsequently transferred such to additional entities in which Liberman, Mitchell, and or LVLP hold substantial beneficial interests.

81.     In addition to the numerous real property conveyances alleged hereinabove, and totally unbeknownst to Nype at the time LAS VEGAS LAND PARTNERS, LLC transferred literally millions of dollars in monies and liquidated funds to its principals, LIBERMAN and MITCHELL, during a time that LAS VEGAS LAND PARTNERS, LLC, knew or reasonably should have known of Nype's substantial monetary claims against it.

82.     The real estate and monetary transfers alleged hereinabove effectively rendered LAS VEGAS LAND PARTNERS insolvent, and unable to pay its debts on a regular basis as they matured, including but not limited to the monies that the Eighth Judicial District Court has determined are owed to Nype.

83.     Upon information and belief, the aforesaid actions of all Defendants were undertaken consciously, knowingly, willfully, and specifically in an effort to defeat and avoid Plaintiffs' rights which were being pursued in the First Case.

84.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LIBERMAN AND MITCHELL** were and are the alter ego of LAS VEGAS LAND PARTNERS, LLC, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and

still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

85.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **MEYER PROPERTY, LLC** was and is the alter ego of MEYER PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of MEYER PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of MEYER PROPERTY, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

86.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of ZOE PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of **ZOE PROPERTY, LLC**, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **ZOE PROPERTY, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

87.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of **LEAH PROPERTY, LLC**, that said Defendants did and still do dominate, influence and control of LEAH PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN use and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **LEAH PROPERTY, LLC**, if entity is not disregarded and the said Defendant held liable for all relief being sought herein.

88.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **WINK ONE, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **WINK ONE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **WINK ONE, LLC** if entity is not disregarded and the said Defendant held liable for all relief being sought herein

89.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

were and are the alter ego of **LIVE WORK, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness  of **LIVE WORK, LLC** if entity if entity is not disregarded and the said Defendant held liable for all relief being sought herein.

90.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LIVE WORK MANAGER, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK MANAGER, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **LIVE WORK MANAGER, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

91.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants,  LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **AQUARIUS OWNER, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **AQUARIUS OWNER, LLC** used and still use to conduct their business

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

affairs; that each such entity remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **AQUARIUS OWNER, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

92.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LVLP HOLDINGS, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LVLP HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LVLP HOLDINGS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

93.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **MITCHELL HOLDINGS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **MITCHELL HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness **MITCHELL HOLDINGS, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

94.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned, LAS VEGAS LAND PARTNERS, LLC, is and was the alter ego of **305 LAS VEGAS, LLC**, that LVLP did and still does dominate, influence and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

control of 305 Las Vegas, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; LVLP was and remains a mere shell and naked framework **which 305 LAS VEGAS, LLC**, used and still use to conduct their business affairs; that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

95.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **LIVE WORKS TIC SUCCESSOR, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORKS TIC SUCCESSOR, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

96.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **FC/LV VEGAS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **FC/LV VEGAS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity

is not disregarded and the said Defendant held liable for all relief being sought herein.

97.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **CASINO COOLIDGE, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **CASINO COOLIDGE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

98.    This New Case is effectively an extension and development of the first litigation, and is an effort by the Trustee to avoid the wrongful misconduct of Defendants and each of them, in attempting to avoid LVLP's creditor's rights and improperly dissipate the assets of LAS VEGAS LAND PARTNERS, LLC, which were, are, and should be available to satisfy various creditor claims.

## FIRST CLAIM FOR RELIEF

### (Constructive Trust)

99.    The Trustee incorporates by reference paragraphs 1 through 98 as though fully set forth.

100.    Pursuant to the pending litigation in the First Case, it was understood that options or equity in various Real Estate parcels owned by LAS VEGAS LAND PARTNERS, LLC in or about 2006, as well as "Choses In Action" such as equity ownership in various affiliated entities would be available to satisfy Plaintiff's judgment.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

101.    Defendants knew or reasonably should have known, that the subject property interests were valuable, and that the legitimate equity in the subject real property or beneficial ownership of the affiliate entities and limited liability ownership interest would be sufficient to satisfy Nype's claim, but for the fraudulent conveyances alleged herein.

102.    Defendants transferred, hypothecated and encumbered various real property for improper purposes and inadequate consideration.

103.    All of the foregoing facts make it just and equitable that this court impose and declare a constructive trust upon the subject property interest, and any proceeds therefrom, in favor of the Plaintiffs and the Trustee.

104.    The court can and should declare a lien against the subject properties, order the sale thereof, and/or order the payment of all rents or monies received from the subject property to Plaintiffs and the Trustee herein.

105.    It has been necessary for Trustee to retain the services of an attorney to prosecute this action and Plaintiff is therefore entitled to an award of reasonable attorneys' fees

### SECOND CLAIM FOR RELIEF

### (Fraudulent Conveyance)

106.    The Trustee incorporates by reference paragraphs 1 through 105 as though fully set forth.

107.    The Trustee is informed and believes, and on that basis alleges that Defendants have taken numerous actions to avoid satisfying various creditor claims against LAS VEGAS LAND PARTNERS, LLC.

108.    The Trustee alleges on information and belief, that in order to avoid potential execution against real estate interests, *inter alia*, LAS VEGAS LAND PARTNERS, LLC took steps to hypothecate and transfer numerous property interests and valuable interests to the other Defendants herein.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

109.    The Trustee is informed and believes, and on that basis alleges that such transfers by Defendants were undertaken in an effort to avoid the adverse financial consequences of Plaintiffs' pending claims, as well as those of other creditors.

110.    The Trustee is informed and believes, and on that basis alleges that the aforementioned transfers were gratuitous, or for inadequate or disguised consideration, made without obligation, and made with an intent to deprive Plaintiff's and other creditors of their ability to recover such funds directly from LAS VEGAS LAND PARTNERS, LLC in connection with the monies owed.

111.    As a result of the aforementioned acts of Defendants, Plaintiffs and the Trustee are entitled to a Judgment against Defendants, jointly and severally, in an amount in excess of $15,000.00.

112.    On or about August 14, 2014, during the course of proceedings initiated to enforce and collect upon the judgment in the First Case, Defendant LAS VEGAS LAND PARTNERS, LLC first provided tax returns and detail financial information which revealed to Nype, for the first time, that it had transferred its interest in numerous real estate parcels, as well as many millions of dollars, to the entity defendants and/or Liberman and Mitchell, during the ongoing pendency of the first case.

113.    In making such transfers, LAS VEGAS LAND PARTNERS, LLC, and Defendants MITCHELL and LIBERMAN have acted with the actual intent to hinder delay and to defraud their creditors, including Nype, but fraudulently transferring assets to insiders and the entity defendants.

114.    The Trustee lacks an adequate remedy at law because, unless the relief sought in this complaint is granted, LAS VEGAS LAND PARTNERS, LLC with the aid of the Defendants herein will have succeeded in fraudulently transferring its assets to insiders and/or related entities, depriving creditors of the opportunity to collect monies due and owing from LAS VEGAS LAND PARTNERS, LLC.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

115.    The Trustee has an high probability of success on the merits in this action.

116.    The aforesaid transfer of assets to insiders and/or the entity defendants was made with actual intent to hinder, delay or defraud creditors, most significantly Nype, and these transfers therefore constitute fraudulent transfers in violation of NRS 112.180.

117.    LAS VEGAS LAND PARTNERS, LLC did not receive reasonably equivalent value for the transfers herein alleged.

118.    LAS VEGAS LAND PARTNERS, LLC and its principals  intended to incur or reasonably should have believed they would incur debts beyond its ability to pay the same as they become due, and thus the transfers at issue are transfers in violation of Nevada law.

119.    Because of the special circumstances of this case, in which LAS VEGAS LAND PARTNERS, LLC is liable for a judgment it has consistently ignored and avoided, having committed fraud to avoid the judgment and its debts, and the hiding assets, and also constituting a risk of further affirmative frustration of valid efforts by Nype and other creditors to collect upon their claims, the Trustee is entitled to:

(1)    The appointment of receiver to take possession of the assets of LVLP, LLC;

(2)    An injunction against further dissipation, disposition, or assignment of any and all assets and property owned by LAS VEGAS LAND PARTNERS, LLC;

(3)    Any other relief that the circumstances may require, including a declaration that the transfers in question are void, and that the assets in question are subject to execution by Nype.

120.    It has been necessary for Trustee to retain the services of an attorney to prosecute this action, and Trustee is, therefore, entitled to reasonable attorneys' fees.

**THIRD CLAIM FOR RELIEF**

**(Civil Conspiracy)**

121.    The Trustee incorporates by reference paragraphs 1 through 120 as though fully set forth.

122    As alleged hereinabove, and upon information and belief, the transfer of the subject real estate and substantial monetary amounts  were undertaken by Defendants with full knowledge as to the relevant circumstances and in an effort to participate in transactions in derogation of the rights of creditors.

123.    The knowing and willful conduct of the entity Defendants in agreeing to receive the subject real property and act as a nominee for said LAS VEGAS LAND PARTNERS. LLC, LIBERMAN and MITCHELL constitute acts of civil conspiracy.

124.    The Defendants, and each of them worked together in concerted actions with the intent to accomplish an unlawful purpose, vis a vis Plaintiffs and other creditors.

125.    The purpose of the unlawful, concerted actions of Defendants was intended to, or would likely result in direct harm to the creditors of LVLP.

126.    As a direct and proximate result of the aforesaid civil conspiracy, undertaken between the Defendants, Plaintiffs and the Trustee have been damaged in an amount in excess of $15,000.00.

127.    As alleged hereinabove, upon information and belief, Defendants' conduct was willful, knowing, intentional, and malicious, as a matter of law, entitling Plaintiffs and the Trustee to recover exemplary damages in an amount in excess of $15,000.00.

128.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorneys' fees.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Relief)**

129.    The Trustee incorporates by references Paragraphs 1 through 128 as though fully set forth herein.

130.    A true and ripe controversy exists as to the dispute, and declaratory relief pursuant to NRS 30.040 is necessary to declare the respective rights, responsibilities, and obligations between the parties as a consequence of Plaintiffs' judgment against LAS VEGAS LAND PARTNERS, LLC, and as relates to the various transactions undertaken by Defendants, including but not limited to transactions involving various parcels of valuable Las Vegas Real Estate.

131.    For all of the reasons set forth hereinabove, Defendants have acted wrongfully and in violation of its creditors', and a direct declaration as to the invalidity of Defendants' transfers, and such should be determined and declared by the court.

132.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

**FIFTH CLAIM FOR RELIEF**

**(Alter Ego)**

133.    Plaintiff incorporates by references Paragraphs 1 through 132 as though fully set forth herein.

134.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIAS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, CASINO COOLIDGE, LLC, and each of them, were and remain the alter-egos of each other; that said Defendants did and still do dominate, influence and control each other; that there existed and still exists a unity of ownership between them; that the individuality and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which the other Defendants used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon creditors will result if the theoretical separateness of the Defendant entities is not disregarded and each such Defendant held liable for all relief being sought herein.

135.    Upon information and belief, to the extent that one or more of the Defendant entities is nominally owned or operated by or through LAS VEGAS LAND PARTNERS, LLC, or Defendants LIBERMAN or MITCHELL with respect to one or more of the Defendant entities, which entities as a practical matter exist with functional unity of ownership in said LAS VEGAS LAND PARTNERS, LLC or Defendants LIBERMAN or MITCHELL, the true and factual individuality and separateness of each such entity was and remains non-existent; each such entity was and remains a mere shell and naked framework, which LAS VEGAS LAND PARTNERS, LLC and Defendants LIBERMAN or MITCHELL  utilize, through the offices of said Defendants LAS VEGAS LAND PARTNERS, LLC, LIBERMAN or MITCHELL and/or through nominees and others to conduct their business affairs.  Each such entity is, upon information and belief, merely another nominal manifestation of the business and  financial affairs of LAS VEGAS LAND PARTNERS, LLC and the Defendants LIBERMAN or MITCHELL, and to recognize any such separate entity would work as separate and distinct from LAS VEGAS LAND PARTNERS, LLC and Defendants LIBERMAN or MITCHELL, an injustice and fraud upon creditors, to the extent the theoretical or putative separateness of such entity is not disregarded and said nominal Defendants held liable for all the relief being sought herein.

136.    As a matter of both statutory common law, and prior declarations of the Eighth Judicial District Court, it is appropriate that the Court further determine and declare that all of the aforesaid entities be held to be the Alter Egos of  LAS VEGAS LAND PARTNERS, LLC and of Defendants LIBERMAN or MITCHELL, and that therefore the various Defendants named herein can

and should be jointly and severely liable to the Plaintiffs and Trustee with regard to all claims asserted.

137.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

**WHEREFORE**, Plaintiff prays for judgment against Defendants and each of them as follows:

1.    For a sum in excess of $15,000.00;

2.    For exemplary damages in an amount in excess of $10,000.00;

3.    For the imposition of a constructive trust upon the various parcels of real property and valuable equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC for the benefit of Plaintiff;

4.    For an order requiring the sale of the parcels of real estate and valuble ownership interest and an order directing the payment of all rents with regard to the subject real property be made to the order of the Trustee herein;

5.    For the Appointment of a Receiver;

6.    For interest upon all damages which Plaintiffs and the Trustee recovers at the Nevada Statutory rate.

7.    For a declaration as to the invalidity of Defendants' transactions as regards to the various valuable real estate interests and equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC;

8.    For a determination that the Defendants are the alter egos of each other , and should all be held liable to Plaintiff, jointly and severally, for the damages sought herein.

9.    For a declaration that the actions by LAS VEGAS LAND PARTNERS, LLC, in conjunction with the Defendants herein, to convey valuable property and monies to other Defendants with the intent to deprive creditors of their ability to recover funds was undertaking in a knowing, willful, intentional, and malicious manner, which

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

under Nevada law constitute malice and is sufficient grounds to invoke the availability of exemplary damages against Defendants, and each of them.

10.    As a consequence of the willful malicious and intentional misconduct of the Defendants and each of them, Plaintiffs and the Trustee are entitled to recover exemplary damages from each Defendant in accordance with Nevada Law, in an amount in excess of $15,000.00, the precise amount to be proven at time of trial.

11.    For reasonable attorneys' fees for the prosecution of this suit; and

12    For such other and further relief as the Court may deem just and proper.

DATED this 18th day of November, 2019.

JOHN W. MUIJE & ASSOCIATES

By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:     (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiff-in-Intervention*

## CERTIFICATE OF MAILING

I certify that I am an employee of JOHN W. MUIJE & ASSOCIATES and that on the 18th day of November, 2019, I caused the foregoing document, **COMPLAINT IN INTERVENTION (1) CONSTRUCTIVE TRUST; (2) FRAUDULENT CONVEYANCE; (3) CONSPIRACY TO DEFRAUD; (4) DECLARATORY RELIEF; AND (5) ALTER EGO, t**o be served as follows:

☐     By placing a copy of the same for mailing in the United States mail, with first-class postage prepaid addressed as follows; and/or

     By electronically filing with the Clerk of the Court via the Odyssey E-File and Serve System;

☐     By placing a copy of the same for mailing in the United States mail, with first-class postage prepaid marked certified return receipt requested addressed as follows:

Elliot S. Blut, Esq.
**BLUT LAW GROUP, P.C.**
300 South Fourth Street, Suite 701
Las Vegas, Nevada 89101
Telephone: (702) 384-1050
Facsimile: (702) 384-8565
E-Mail: eblut@blutlaw.com
*Attorneys for Defendants*
*Barnet Liberman and Casino Coolidge,*
*LLC*

Brian W. Boschee, Esq.
**HOLLEY DRIGGS WALCH**
**FINE PUZEY STEIN & THOMPSON**
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: (702) 791-0308
Facsimile: (702) 791-1912
E-Mail: bboschee@nevadafirm.com
*Attorneys for Defendant*
*305 Las Vegas, LLC*

H. Stan Johnson, Esq.
James L. Edwards, Esq.
**COHEN JOHNSON PARKER &**
**EDWARDS**
375 E. Warm Springs Road, #104
Las Vegas, Nevada 89119
*Attorneys for Mitchell Defendants*

_____
An Employee of John W. Muije & Associates

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002  Fax: (702) 386-9135

# EXHIBIT D

Electronically Filed
1/17/2020 1:41 PM
Steven D. Grierson
CLERK OF THE COURT

**FFCL**

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RUSSELL L. NYPE; REVENUE PLUS, LLC, DOES I through X; DOES I through X; DOE CORPORATIONS CASE NO: A-16-740689-C I through X; and DOES PARTNERSHIPS I through X, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID J. MITCHELL; BARNET LIBERMAN; LAS VEGAS LAND PARTNERS, LLC; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LNE WORK, LLC; LNE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; L VLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; LIBERMAN HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I through ill, and ROE CORPORATIONS I through ill, inclusive, <br><br> Defendants. | Case No.:     A-16-740689-C <br><br> Dept.:      XI |

***AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW***

This matter having come on for non-jury trial before the Honorable Elizabeth Gonzalez beginning on December 30, 2019, and continuing day to day, until its completion on January 7, 2020; John W. Muije of John W. Muije & Associates appeared on behalf of Russell L. Nype and Revenue Plus, LLC ("Plaintiffs") and Shelley D. Krohn, U.S. Bankruptcy Trustee ("Plaintiff Trustee"); H. Stan Johnson, James L. Edwards and Kevin M. Johnson of the law firm of Cohen, Johnson, Parker & Edwards appeared on behalf of David J. Mitchell, Las Vegas Land Partners, LLC, Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, Mitchell Holdings

LLC, Live Works TIC Successor LLC, FC/Live Work Vegas LLC, ("Mitchell Defendants");[1]

Brian W. Boschee of the law firm of Holley Driggs Walch Fine Puzey Stein & Thompson

appeared on behalf of Defendant 305 Las Vegas, LLC[2]; and, Eliott S. Blut appeared on behalf of

Defendants Barnett Liberman and Casino Coolidge; the Court having read and considered the

pleadings filed by the parties; having reviewed the evidence admitted during the trial; having

heard and carefully considered the testimony of the witnesses called to testify and weighing their

credibility; having considered the oral and written arguments of counsel, and with the intent of

rendering a decision on all claims before the Court,[3] pursuant to NRCP 52(a) and 58; the Court

makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.      This action arises from a judgment that Plaintiffs obtained on or about April 10,

2015, against Las Vegas Land Partners, LLC ("LVLP") in Case No. A551073.  Plaintiff filed this

suit on July 26, 2016.  The complaint was amended by the filing of an amended complaint on

August 21, 2017.

2.      Plaintiff Trustee was duly appointed to act as the Trustee in the Bankruptcy Case

*of Las Vegas Land Partners, LLC*, Case No. BK-19-15333-mkn and moved to intervene in the

instant action, which motion was granted on November 18, 2019. Plaintiff Trustee filed the

complaint in intervention on November 18, 2019.

3.      Plaintiff Russell L. Nype ("Nype") is an adult resident of New York.

---

[1]      Given the filing of *Las Vegas Land Partners, LLC*, Case No. BK-19-15333-mkn in
August 2019, the Court takes no action against Las Vegas Land Partners, LLC.

[2]      The Court granted the Rule 50(a) motion by 305 Las Vegas, LLC at the close of the
Plaintiffs' case as no damages against that entity were established given the nature of its conduct.

[3]      Plaintiff asserted five claims for relief against the Defendants:  1) Constructive Trust;
2) Fraudulent Transfer; 3) Civil Conspiracy; 4) Declaratory Relief; and 5) Alter Ego.

4. Plaintiff Revenue Plus, LLC (collectively with Nype, "Plaintiffs") is a Florida limited liability company.

5. Defendant, David J. Mitchell ("Mitchell"), is an adult resident of New York.

6. Defendant, Barnett Liberman ("Liberman"), is an adult resident of New York.

7. Defendant Mitchell Holdings, LLC ("Mitchell Holdings") is a Delaware limited liability company.

8. Defendant LVLP Holdings, LLC ("LVLP Holdings") is a Delaware limited liability company that was formed on or about November 4, 2004 by Mitchell and Liberman.

9. Defendant Las Vegas Land Partners ("LVLP") is a Delaware limited liability company.

10. Mitchell and Liberman are managers of LVLP.

11. At all relevant times, Mitchell and Liberman were the sole owners (50/50) and managers of LVLP Holdings.

12. At all relevant times, LVLP was owned (50/50) and managed by Mitchell and Liberman.

13. Defendant Casino Coolidge LLC is a Nevada limited liability company. ("Casino Coolidge").

14. Liberman is the managing member of Casino Coolidge.

15. Defendant Aquarius Owner, LLC ("Aquarius") is a Delaware limited liability company.

16. Defendant Leah Property, LLC ("Leah") is a Delaware limited liability company.

17. Defendant Livework, LLC ("Livework") is a Delaware limited liability company.

18. Defendant Livework Manager, LLC ("Livework Manager"), is a Delaware limited liability company.

19. Defendant Zoe Property, LLC ("Zoe") is a Delaware limited liability company.

20. Defendant Wink One, LLC ("Wink") is a Delaware limited liability company.

3

21.     Defendant Meyer Property, LLC ("Meyer") is a Delaware limited liability company.

22.     Non-party Charleston Casino Partners, LLC ("Casino Partners") is a Delaware limited liability company.

23.     Defendant FC/LW Vegas, LLC ("FC/LW") is a Delaware limited liability company.

24.     Defendant LiveWorks TIC Successor, LLC ("TIC Successor") is a Delaware limited liability company.

25.     These entities are collectively referred to as the Related Entities.[4]

26.     305 Las Vegas, LLC ("305 Las Vegas") was created in April of 2007 for the purpose through a 1031 exchange of purchasing real property located around 300 East Charleston.

27.     In 2005, Mitchell and Liberman requested Nype's assistance with finding a development partner to assist them in developing certain real property in Downtown Las Vegas.

28.     Prior to closing the transaction with Forest City, a dispute arose between LVLP and Nype in late 2006/early 2007 over the amount Nype was entitled to be paid related to the transaction with Forest City.

29.     Mitchell and Liberman were fully aware that Nype was expecting to receive at least two million dollars for his efforts.

30.     Despite understanding Nype's expectations, Mitchell and Liberman only set aside $430,000.

31.     Shortly after setting aside that amount, Mitchell and Liberman took personal distributions from LVLP in excess of thirteen million dollars.

---

[4]     For purposes of the term "Related Entity" the following are included: Las Vegas Land Partners, LLC, Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC Successor LLC, FC/LiveWork Vegas LLC and Casino Coolidge LLC.

32.     On November 2, 2007, LVLP and two other entities[5] sued Nype seeking primarily a declaratory judgment that they did not owe Nype any fee, Nype counterclaimed seeking compensation for services rendered.

33.     In December 2014, Leah sold certain real property to Casino Coolidge for $1,000,000. Mitchell and Liberman caused Leah to distribute sales proceeds in the amount of $341,934.47 directly to themselves, rather than Leah's parent company, LVLP. Plaintiff has not established that given the market conditions at the time that Mitchell and Liberman sold the Leah Property without obtaining reasonably equivalent value in exchange.

34.     After obtaining judgment on the counterclaim in 2015, Nype engaged in significant attempts to collect on the Judgment from LVLP.

35.     Those efforts resulted in recovery of approximately $10,000.

36.     Between 2007 and 2016, Mitchell and Liberman distributed to themselves a total of $15,148,339 from the Related Entities.

37.     These distributions were at times that Mitchell and Liberman were fully aware of Nype's claims.

38.     The distributions caused and/or contributed to the Related Entities' insolvency and/or inability to pay their debts as they became due.

39.     The evidence also demonstrates that Mitchell, Liberman and the Related Entities engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or divert millions of dollars in assets away from Nype and/or other creditors.

40.     The evidence also demonstrates that Mitchell, Liberman and the Related Entities engaged in conscious, concerted and ongoing efforts to ensure that funds and/or assets that would otherwise be available to Nype to satisfy his claims (and Judgment) were kept away from Nype.

---

[5]     The other plaintiffs in that case were LiveWork LLC and Zoe Properties, LLC, neither of which were named as counterdefendants.

41.    The evidence demonstrates that Mitchell, Liberman and the Related Entities distributed in excess of $15,000,000 in funds that should have been available to satisfy Nype's claims/Judgment.

42.    Nype's disclosure of the tax returns and its own consultant's report[6] on or about April 25, 2014, in A551073, are the latest date of discovery for purposes of NRS 112.230(1)(a).[7]

43.    David Mitchell was not credible.[8]  The failure of Mitchell to meaningfully participate in discovery until the eve of trial and the failure to produce documents which should have been in his possession leads the Court to conclude that if those documents had been produced they would have been adverse to Mitchell.

44.    At all relevant times, each of the Related Entities was wholly owned and managed by LVLP or LVLP Holdings.

45.    At all relevant times, each of the Related Entities was beneficially owned, controlled, and managed by Mitchell and Liberman.

46.    One or more of the Related Entities was formed with an initial capitalization of just $10.

---

[6]    The report is a part of Exhibit 90079.

[7]    That statute provides in pertinent part:

1. A claim for relief with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

   (a) Under paragraph (a) of subsection 1 of NRS 112.180, within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;

[8]    The explanation by Mitchell surrounding the creation of retention agreements with the CPA Sam Spitz signed in different styles and ink is additional information which leads the Court to believe Mitchell is not credible.  (Exhibits 60032-60036).

47.     At all relevant times, each of the Related Entities was treated by Mitchell and Liberman as a disregarded entity of LVLP Holdings for tax purposes and all of the Related Entities filed one combined tax return.

48.     Except with respect to Livework Manager and Casino Coolidge, none of these entities had its own bank account. Mitchell caused each of the Related Entities to use the same bank accounts to deposit and disburse funds, including distributions to Mitchell and Liberman.

49.     At all relevant times, Mitchell and Liberman caused each of the Related Entities to use the same financial and accounting records, which are not distinguishable by entity. Each of the Related Entities' financial and accounting records are not distinguishable by entity.

50.     The LVLP accounting records include a few Mitchell and Liberman personal transactions and postings commingled from multiple entities.

51.     Mitchell and Liberman caused each of the Related Entities to use the same general ledger to post all entries under the name of "Las Vegas Land Partners".

52.     Mitchell, Liberman and the Related Entities commingled funds, including personal loans from various banks which are included in the LVLP accounting records and general ledger.

53.     Mitchell and Liberman also used journal entries to post commingled transactions for themselves and the Related Entities.

54.     In 2016, the Related Entities stopped using bank accounts and instead began using journal entries to post entries apparently transacted personally by Mitchell.

55.     As a result of Mitchell and Liberman's domination, influence and control over the Related Entities, the individuality and separateness of the Related Entities—vis-à-vis themselves and Mitchell and Liberman—was and remains nonexistent as evidenced by the commingling of funds, transactions, revenues, expenses, assets, liabilities and contributed capital.

56.     The manner in which Mitchell and Liberman operated the Related Entities makes it virtually impossible to identify transactions by purpose and/or entity.

57.     The evidence demonstrates that: (a) Mitchell, Liberman and the Related Entities commingled funds, transactions and assets; (b) the Related Entities were and are undercapitalized;

7

(c) Mitchell, Liberman and the Related Entities distributed funds to Mitchell and Liberman as individuals without regard to parent entities; (d) Mitchell, Liberman and the Related Entities treated assets of the other entities as their own; and (e) the Related Entities failed to observe corporate or LLC formalities.

58.    The evidence demonstrates that the Related Entities: (a) are and were influenced and governed by Mitchell and Liberman; (b) there is such unity of interest and/or ownership that Mitchell, Liberman and the Related Entities are inseparable from the other; and (c) the facts are such that adherence to the fiction of separate entities would, under the circumstances, sanction a fraud or promote injustice.

59.    Mitchell, Liberman and the Related Entities have made distributions to avoid satisfying Nype's claims and Judgment.

a.    When Leah Property sold certain real property to Casino Coolidge on or about December 17, 2014, and did not transfer the funds to LVLP;

b.    When Mitchell and Liberman took personal distributions from the Related Entities, between 2007 and 2016, totaling $15,148.339.

60.    In determining that these distributions were made with the actual intent to hinder, delay or defraud creditors and Nype, the Court notes, among other things, the following:

a.    They were made to "insiders" or other entities of which Mitchell and Liberman own or control (in whole or in part);

b.    They were made at times when Mitchell and Liberman were fully aware of Nype's claims, Judgment and/or Nype's intent to sue for the amounts owed to him.

c.    The distributions rendered or contributed to LVLP's and/or the Related Entities' insolvency, and left LVLP and/or the Related Entities unable to pay their debts as they became due;

d.    Mitchell, Liberman and the Related Entities attempted to conceal the distributions and their assets, through their discovery misconduct in this matter, which required enormous and expensive effort on Nype's part to <u>attempt</u> to obtain full and proper disclosure; and

e.    Mitchell, Liberman and the Related Entities removed or concealed assets.

61.    If any findings of fact are properly conclusions of law, they shall be treated as if appropriately identified and designated.

## CONCLUSIONS OF LAW

1.    In Nevada, there are three general requirements for application of the alter ego doctrine: (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice." *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987).

2.    Nevada recognizes application of the alter ego doctrine in reverse, in which a creditor is permitted to reach "the assets of a corporation to satisfy the debt of a corporate insider based on a showing that the corporate entity is really the alter ego of the individual." <u>Loomis</u>, 116 Nev. at 903, 8 P.3d at 846.

3.    Application of the alter ego doctrine in reverse "is appropriate where the particular facts and equities show the existence of an alter ego relationship and require that the corporate fiction be ignored so that justice may be promoted." <u>Id.</u>, at 904, 8 P.3d at 846.

4.    The Court, concludes that: (a) Mitchell, Liberman and the Related Entities commingled funds, transactions and assets; (b) the Related Entities were and are undercapitalized; (c) Mitchell, Liberman and the Related Entities committed unauthorized diversion of funds; (d)

9

1    Mitchell, Liberman and the Related Entities treated assets of the other entities as their own; and

2    (e) the Related Entities failed to observe corporate and LLC formalities.

3         5.    The Court further concludes the evidence demonstrates that the Related Entities:

4    (a) are and were influenced and governed by Mitchell and Liberman; (b) there is such unity of

5    interest and/or ownership that Mitchell, Liberman and the Related Entities are inseparable from

6    the other; and (c) the facts are such that adherence to the fiction of separate entities would, under

7    

8    the circumstances, sanction a fraud or promote injustice.

9         6.    Justice and equity require that the Court impose alter ego liability on Mitchell,

10   Liberman and the Related Entities.

11        7.    Nype has proven, by a preponderance of the evidence his claim for alter ego,

12   establishing that Mitchell, Liberman, and each of the Related Entities, is the alter ego of LVLP

13   and each other.

14   

15        8.    Nype has not proven, by a preponderance of the evidence, his claim for alter ego

16   that Mitchell Holdings is the alter ego of Mitchell.

17        9.    Mitchell, Liberman and each of the Related Entities are jointly and severally liable

18   on Nype's Judgment and the damages, attorney's fees and costs awarded in this action.

19        10.    Prior to September of 2015, Nype had reason to know that the limited transfers

20   were transfers made by debtors under the UFTA, that the transfers rendered debtors insolvent (or

21   contributed thereto) or the facts and circumstances upon which this Court utilized in determining

22   that the transfers were made with the actual intent to hinder, delay or defraud creditors (including

23   

24   Nype).

25   

26   

27   

28   

10

11.     Nype has proven, by a preponderance of the evidence his claims for fraudulent transfer, including that certain of the distributions constitute fraudulent transfers within the meaning of NRS 112.180(1)(a). [9]

12.     Certain of those distributions were made outside the limitations period under NRS 112.230(1).

13.     Nevada's Uniform Fraudulent Transfer Act provides an equitable remedy for creditors affected by a fraudulent transfer, but nothing more. *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. Adv. Op. 15, 345 P.3d 1049 (2015).

14.     Nype has proven by a preponderance of the evidence that he suffered damages in the amount of $341,934.47 as a result of the fraudulent transfer of the proceeds of the Leah transaction with Casino Coolidge directly to Liberman and Mitchell, rather than to Leah's parent LVLP.

15.     The earlier transfers are barred by the limitations period for purposes of the fraudulent transfer claim, only.

16.     Nype has proven by a preponderance of the evidence that he suffered special damages in the form of attorney's fees, costs  and expert expenses related to the transfers in the total amount of $4,493,176.90.[10]

17.     Plaintiff cannot recover on a civil conspiracy claim (or accessory liability) for allegations arising out of NRS Chapter 112 against a nontransferor. *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. 114 at 120, 345 P.3d 1049 (2015).

---

[9]     The Court is cognizant of the possibility of duplicative awards given the various claims for relief.

[10]     The Court has previously evaluated the *Brunzell* factors in connection with the sanctions order which has now been satisfied. See 12/26/19 filing. That evaluation is incorporated by reference.

11

18.     Independent of NRS Chapter 112, to prove a civil conspiracy, Plaintiff must prove "a combination of two or more persons who, by some concerted action, intend to accomplish a lawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels vs. Butch Lewis Productions*, 109 Nev. 1043, 148, 862 P.2d 1207, 1210 (1993).

19.     The Court concludes that the evidence demonstrates that:

a.     Mitchell and Liberman, engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or distribute millions of dollars in assets away from Nype;

b.     Mitchell and Liberman received distributions from LVLP and the Related entities;

c.     Mitchell, fabricated and backdated evidence to facilitate the destruction and/or concealment of material financial evidence by his agent that would have greatly assisted Nype's case.

d.     But for Nype's pretrial discovery,[11] the fabrication of evidence would not have been uncovered.

20.     Nype has proven his claim of civil conspiracy, by a preponderance of the evidence against Mitchell and Liberman.

21.     Plaintiff has not established by a preponderance of the evidence the elements of civil conspiracy separate and apart from the distributions and fabrication of evidence.

22.     Plaintiff has established damages on the civil conspiracy claim in the amount of $15,148.339.

23.     Nype has not demonstrated that punitive damages are appropriate in this matter.

---

[11]     The limitations for a civil conspiracy claim is not limited by NRS 112.230(1)(a) but is instead governed by NRS 11.220 and the discovery rule. *Siragusa v. Brown*, 114 Nev. 1384 at 1391-3 (1998).

24.    Nype is entitled to recover his attorney's fees as special damages as he was successful on his claim for civil conspiracy in the total amount of $4,493,176.90.

25.    Nype has not established a claim for constructive trust given the current state of title of the remaining parcels in which the Related Entities hold their interest.

26.    Mitchell, Liberman, and the Related Entities' actions and inactions have caused Nype damages in the total amount of $19,641,515.90.[12]

27.    Nype may also file a post-trial motion if appropriate, for fees and costs not proven during the trial as special damages.

28.    Given the findings and conclusion no further relief on the Declaratory Relief claim is appropriate.

29.    If any conclusions of law are properly findings of fact, they shall be treated as if appropriately identified and designated.

Based upon the foregoing Findings of Fact and Conclusions of Law:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that JUDGMENT is hereby entered in favor of Plaintiffs and jointly and severally against Mitchell, Liberman, Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC Successor LLC, FC/LiveWork Vegas LLC and Casino Coolidge LLC on the fraudulent conveyance claim in the amount of $4,835,111.37.[13]

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that JUDGMENT is hereby entered in favor of Plaintiffs and jointly and severally against Mitchell and Liberman on

---

[12]    This is the total amount of damages which is not duplicated among the various claims for which the Court has made an award.

[13]    These damages are duplicated in the civil conspiracy judgment.

1   the civil conspiracy claim in the amount of $19,641,515.90.

2        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that JUDGMENT is

3   hereby entered in favor of Plaintiffs and jointly and severally against Mitchell, Liberman, Meyer

4   Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC,

5   LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC

6

7   Successor LLC, FC/LiveWork Vegas LLC and Casino Coolidge LLC on the alter ego claim in

8   the amount of the underlying judgment in A551073.

9                                          DATED this 17th day of January, 2020.

10

11

12                                          Elizabeth Gonzalez, District Court Judge

13

14                              **Certificate of Service**

15        I hereby certify that on the date filed, a copy of the foregoing Findings of Fact and Conclusions of

16  Law was electronically served, pursuant to N.E.F.C.R. Rule 9, to all registered parties in the Eighth

    Judicial District Court Electronic Filing Program.

17        *If indicated below*, a copy of the foregoing Scheduling Order was also:

18        ☐  Placed in the Attorney(s) Folder on the 1st Floor of the RJC for;

19

20        ☐  Mailed by United States Postal Service, Postage prepaid, to the proper parties listed below at
    their last known address(es):

21

22

23                                          Dan Kutinac

24

25

26

27

28

                                          14

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

BARNET LOUIS LIBERMAN,

                              Debtor.
----------------------------------------------------------------x
RUSSELL NYPE and REVENUE PLUS, LLC,

                              Plaintiffs,

v.

BARNET LOUIS LIBERMAN,

                              Defendant.
----------------------------------------------------------------x

Case No. 21-70611-reg

Chapter 7

Adv. Proc. No. 21-8123-reg

<u>MEMORANDUM DECISION AND ORDER</u>
<u>DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

In this adversary proceeding, the Plaintiffs, Russell Nype and Revenue Plus, LLC

(together "Nype" or "Plaintiffs") are seeking, under 11 U.S.C. § 523(a)(2)(A) and (a)(6), to

except from the Debtor's discharge liability stemming from a pre-petition judgment entered

against the Debtor and others by a Nevada state court ("Nevada Court"). That judgment was

supported by Amended Findings of Fact and Conclusions of Law, dated January 17, 2020, which

the Nevada Court entered after a trial on the merits. *See* District Court, Clark County, Nevada,

Amended Findings of Fact and Conclusions of Law, Case No. A-16-740689-C, Jan. 17, 2020

("Nevada Judgment"). The Nevada Judgment has three separate elements: an award in the

amount of $4,835,111.37 attributed to fraudulent conveyances under Nevada law ("Fraudulent

Conveyance Award"); an award in the amount of $19,641,515.90 attributed to a finding of civil

conspiracy under Nevada law ("Civil Conspiracy Award"); and a finding ("Alter Ego Finding")

1

that the Debtor and others are liable, under a Nevada alter ego theory for a prior judgment

("LVLP Judgment") in the amount of approximately $2,600,000, entered against an entity, Las

Vegas Land Partners LLC ("LVLP"), owned and controlled by the Debtor and his business

partner, David J. Mitchell ("Mitchell").

Before the Court is Plaintiffs' motion for partial summary judgment seeking judgment as

a matter of law solely as to the Fraudulent Conveyance Award. Relying on the doctrine of

collateral estoppel, the Plaintiffs argue that the findings and conclusions made in the Nevada

Judgment are sufficient to establish the elements of non-dischargeability under § 523(a)(2)(A)

and the Debtor should be precluded from presenting any defense on that claim. The Debtor

argues that the Nevada Judgment does not contain the necessary specificity with respect to the

elements of the § 523(a)(2)(A) asserted here and the Plaintiffs' motion should be denied.

Based on the record before it today, the Court cannot give any preclusive effect to the

Nevada Judgment. The Court cannot find, based on the current record, that the Nevada Judgment

is a valid and enforceable judgment. The litigation commenced by Nype, which resulted in the

Nevada Judgment, was commenced in aid of collecting on Nype's prior judgment against LVLP,

the LVLP Judgment ("Collection Litigation"). Subsequent to commencement of the Collection

Litigation, but prior to entry of the Nevada Judgment, LVLP filed for relief under chapter 7 of

the Bankruptcy Code.  LVLP was a named defendant in the Collection Litigation. Upon LVLP's

bankruptcy filing, the fraudulent conveyance claims asserted in the Collection Litigation became

property of the LVLP estate. The Collection Litigation continued as against all defendants except

LVLP, and the LVLP chapter 7 trustee intervened as a co-plaintiff with Nype as the proper party

to assert the fraudulent conveyance claims on behalf of the LVLP estate.

In a recent decision, the Bankruptcy Appellate Panel of the Ninth Circuit found that "postpetition prosecution of a fraudulent transfer claim against nondebtor parties violates § 362(a)(1)." *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21-1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *1 (B.A.P. 9th Cir. Nov. 18, 2021). If, in fact, the Nevada Judgment was entered in violation of the stay imposed by the LVLP bankruptcy filing, then it cannot be given collateral estoppel effect here.

The Motion is denied without prejudice.

<u>FACTS</u>

Sometime in 2005 the Debtor and his business partner David Mitchell asked Nype to help them find a partner to assist their company LVLP with the development of certain real property in Downtown Las Vegas.[1] (Nevada Judgment at 4, ¶27). In late 2006 or early 2007, a dispute arose between LVLP and Nype over Nype's fee. (Nevada Judgment at 4, ¶28). LVLP sued Nype in late 2007 seeking a declaratory judgment that it owed Nype no fee, and Nype counterclaimed seeking compensation for services rendered.

On April 10, 2015, the Nevada Court entered a judgment against LVLP in favor of Nype in the amount of $2,608,797 plus interest and costs. (District Court, Clark County, Nevada, Findings of Fact, Conclusions of Law and Decision, Case No. 07A551073, Mar. 26, 2015 ("LVLP Decision"); District Court, Clark County, Nevada, Judgment, Case No. 07A551073, Apr. 10, 2015 ("LVLP Judgment")).

---

[1]     Initially, Nype worked for LVLP through First Wall Street Capital International ("FWS"), but FWS and Nype had a falling out over Nype's fee share agreement for the LVLP work resulting in FWS terminating its relationship with Nype who nonetheless continued working on the deal for LVLP (LVLP Decision at 3, ¶¶ 14-37).

Nype collected only $10,000 on the LVLP Judgment. (Nevada Judgment at 5, ¶¶ 34, 35).

In 2017, Nype sued Mitchell, Liberman, LVLP and several related entities ("Related Entities"),[2] alleging that the defendants in that action engaged in an "Asset Protection Scheme" for the purpose of "secreting, hiding, and conveying away [from LVLP] valuable assets that were available to satisfy creditors [of LVLP] such as [Nype]" (District Court, Clark County, Nevada, Case No. A-16-740689-B, Amended Complaint, dated August 21, 2017, ¶56) ("Collection Litigation"). The Collection Litigation asserted claims for constructive trust, fraudulent conveyance, civil conspiracy, declaratory relief, and alter ego.

In August 2019, while the Collection Litigation was pending, LVLP filed a petition under chapter 7 of the Bankruptcy Code. (Bankr. D. Nev., Case No. 19-15333-mkn, "LVLP Bankruptcy"). After the LVLP Bankruptcy was filed, the Nevada Court continued the Collection Litigation as to the Debtor, Mitchell and the Related Entities, but not as to LVLP.

On October 21, 2019, the chapter 7 trustee appointed in the LVLP Bankruptcy filed an application to retain John W. Muije & Associates ("Muije & Associates") on a contingency fee basis as her special counsel to prosecute the fraudulent transfer claims asserted in the Collection Litigation. The retention application specifically recognized that the fraudulent transfer claims in the Collection Litigation were property of the LVLP Bankruptcy estate. (LVLP Bankruptcy, Dkt #28, Retention Application, ¶ 6).[3] By order of the Nevada bankruptcy court, dated October 31,

---

[2]      The "Related Entities," as the Nevada Court noted, include:  LVLP; Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC Successor LLC, FC/LiveWork Vegas LLC, and Casino Coolidge LLC.

[3]      The retention application recognized that Nype's claim in the LVLP Bankruptcy represented approximately 97% of the creditor body. The retention agreement attached to the retention application states: "Subject to Bankruptcy Court approval, 50% of any funds collected from the Defendants as a

4

2019, Muije & Associates was retained to represent the LVLP trustee as to the fraudulent conveyance claims. Muije & Associates continued to represent Nype as co-plaintiff on the remainder of the claims in the Collection Litigation. (LVLP Bankruptcy, Dkt #35). The LVLP trustee intervened as a plaintiff in the Collection Litigation and filed a "complaint in intervention" on November 18, 2019. The LVLP Bankruptcy case is still open.[4]

On January 17, 2020, after a trial on the merits in the Collection Litigation, the Nevada state court entered Amended Findings of Fact and Conclusions of Law which included a judgment against Mitchell, Liberman and the Related Entities in the total amount of $19,641,515.90 ("Nevada Judgment").

PROCEDURAL HISTORY

On April 1, 2021, Barnet Louis Liberman (the "Debtor" or "Liberman") filed a petition for relief under chapter 11 of the Bankruptcy Code.  The case was converted to chapter 7 on June 28, 2021. On August 24, 2021, the Plaintiffs filed a proof of claim in this case in the amount of $19,664,231.90 based on the Nevada Judgment. Thereafter Plaintiffs filed a complaint seeking non-dischargeability of the $19,641,515.90 claim under §§ 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code. On September 23, 2021, Plaintiffs filed the instant motion for partial summary judgment on the § 523(a)(2)(A) claim with regard only to the $4,835,111.37 Fraudulent Conveyance Award.

---

result of the State Court Litigation will be the property of [Nype] and 50% will be the Property of the [LVLP Bankruptcy estate]."

[4]    As noted by Nype in the summary judgment motion, "[t]his Court is permitted to take judicial notice of publicly filed documents such as those filed on the dockets of other courts." (Motion for Summary Judgment, Dkt #12, note 1).

<u>DISCUSSION</u>

The Plaintiffs' entire motion is premised upon this Court applying collateral estoppel to the Nevada Judgment. In order to apply collateral estoppel to the Nevada Judgment, the judgment must be valid and enforceable. *See In re Dabrowski*, 257 B.R. 394 (Bankr. S.D.N.Y. 2001). Actions taken in violation of the stay imposed by § 362 of the Bankruptcy Code are void, not merely voidable. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987)); *Hillis Motors, Inc v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir. 1993). The Bankruptcy Appellate Panel for the Ninth Circuit recently held that a creditor's continuation of a state court fraudulent conveyance action against non-debtor entities was a violation of the automatic stay, even though the debtor was separated out from the action. *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21-1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *5-6 (B.A.P. 9th Cir. Nov. 18, 2021) (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992)). This Court takes judicial notice of the docket in the LVLP Bankruptcy and notes that there is no order granting relief from stay to allow the Collection Litigation to proceed. In light of this fact, and in light of *In re Koeberer*, this Court cannot find, based on the current record, that the Nevada Judgment is a valid and enforceable judgment entitled to collateral estoppel effect.[5]

---

[5]    Assuming Plaintiffs are able to supplement the record or otherwise get past the issue raised here, the Court has concerns with Nype's standing to assert a claim against the Debtor based on the Fraudulent Conveyance Award. The LVLP trustee intervened in the Collection Litigation as the proper party plaintiff entitled to assert the fraudulent conveyance claims on behalf of the LVLP estate. Although Nype may benefit from any distribution in the LVLP bankruptcy, the Fraudulent Conveyance Award, it appears, is property of the LVLP bankruptcy estate, not Nype. In addition, on the merits of the collateral estoppel argument, the Court has concerns with the Nevada Judgment's failure to make any specific findings as to the Debtor's individual actions and the Debtor's individual intent to defraud, as opposed to collective findings made against the Debtor as part of a larger group of defendants.

<u>CONCLUSION</u>

The Plaintiffs' motion for partial summary judgment is denied without prejudice. The

pre-trial conference in this matter is restored to the Court's calendar on December 20, 2021 at

9:30 a.m for further proceedings consistent with this Memorandum Decision.

So ordered.



**Dated: Central Islip, New York**
       **December 3, 2021**

                        **Robert E. Grossman**
              **United States Bankruptcy Judge**

# EXHIBIT F

HOUMAND LAW FIRM, LTD.
Jacob L. Houmand, Esq.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone: 702/720-3370
Facsimile: 702/720-3371
jhoumand@houmandlaw.com
(Admitted Pro Hac Vice)
*Counsel for Shelley D. Krohn, Chapter 7 Trustee*
*In the case of Las Vegas Land Partners, LLC*

--and--

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Blvd., Suite 1
Las Vegas, NV  89146-5308
Telephone:     (702) 228-7590
Facsimile:     (702) 892-0122
Lenard E. Schwartzer, Esq.
bkfilings@s-mlaw.com
(Admitted Pro Hac Vice)

-- and --

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
Stuart.gordon@rivkin.com
Matthew.spero@rivkin.com
Co-Counsel to Russell Nype and
Revenue Plus LLC, Judgment Creditors

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>BARNET LOUIS LIBERMAN,<br><br>Debtor. | Case No. 8-21-70611-REG<br><br>Chapter 7<br><br>**MOTION TO LIFT STAY TO MOVE IN NEVADA BANKRUPTCY CASE OF LVLP**<br><br>Hearing Date: January 24, 2022<br>Hearing Time: 9:30 a.m. |

5626363.v2

Shelley D. Krohn, the Chapter 7 Trustee in the case of Las Vegas Land Partners, LLC (the "Nevada Trustee"), by and through her counsel, Houmand Law Firm, LTD., and Russell Nype and Revenue Plus, LLC (collectively, "Nype"), by and through its co-counsel, Schwartzer & McPherson Law Firm and Rivkin Radler LLP, (the Nevada Trustee and Nype are collectively referred to as "Movants") move this Court to modify the automatic stay to allow the Nevada Trustee and Nype to move the United States Bankruptcy Court for the District of Nevada (the "Nevada Bankruptcy Court") to consider and rule upon a Motion to Annul the Automatic Stay to be filed in the bankruptcy case of Las Vegas Land Partners, LLC, Case No. 19-15333-MKN (the "LVLP Bankruptcy Case") to be filed by the Movants.  In the LVLP Bankruptcy Case, the Nevada Bankruptcy Court had previously authorized the Nevada Trustee to employ counsel to pursue litigation against Barnet Louis Liberman ("Liberman") and others in the Eighth Judicial District Court (the "Nevada State Court"). The Nevada Trustee intervened in the Nevada State Court case and a judgment was ultimately issued in favor of the Nevada Trustee and Nype by the Nevada State Court.

This Court has raised the issue as to the validity of the judgment issued by the Nevada State Court on the grounds that the automatic stay was not lifted by the Nevada Bankruptcy Court in the LVLP Bankruptcy Case to permit the litigation in the Nevada State Court to proceed. The Nevada Trustee and Nype request

5626363.v2

permission of this Court to move the Nevada Bankruptcy Court to annul the automatic stay as permitted by Bankruptcy Code §362(d).

The issue of whether to annul the automatic stay in the LVLP Bankruptcy Case is a core proceeding in the LVLP Bankruptcy Case. 28 U.S.C. § 157(b)(2).

## **FACTS**

1.     Las Vegas Land Partners, LLC ("LVLP") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 19, 2019 (the "Petition Date").  The Nevada Trustee is the duly appointed and acting Chapter 7 Trustee.

2.     Prior to the Petition Date, Russell Nype and Revenue Plus, LLC obtained a judgment dated April 10, 2015 against LVLP for approximately $4,500,000.

3.     Prior to the Petition Date, on July 26, 2016, Nype sued LVLP, Barnet Liberman and others (collectively, the "Co-Defendants") in the Eighth Judicial District Court as Case No. A-16-740689-B (the "State Court Litigation").

4.     In the State Court Litigation and in prior litigation, John Muije & Associates (the "Muije Firm") represented Nype.

5.      The filing of LVLP's petition automatically stayed the State Court Litigation against LVLP and the prosecution of the fraudulent transfer and alter ego causes of action, which were property of the LVLP bankruptcy estate.

5626363.v2

7.     In the LVLP Bankruptcy Case, the Nevada Trustee employed the Muije Firm to prosecute the claims belonging to the LVLP bankruptcy estate.

8.     The Nevada Bankruptcy Court approved the employment of the Muije Firm to prosecute the claims belonging to the LVLP bankruptcy estate.

9.     The Nevada Trustee thereafter intervened in the State Court Litigation which had previously been commenced by Nype.

10.    The record of the State Court Litigation shows that the fraudulent transfer claims and the alter ego claims belonging to the LVLP Bankruptcy Estate were prosecuted by the Muije Firm on behalf of the Nevada Trustee.

11.    The Nevada State Court conducted a multi-day trial of the State Court Litigation.

12.    As a result of the trial in the Nevada State Court, Amended Findings of Fact and Conclusions of Law (the "Judgment") were entered against Liberman and his co-defendants.

13.    In the pending adversary proceeding objecting to the dischargeability of the Judgment against Liberman in this Court, this Court has questioned the validity of the Judgment issued by the Nevada State Court based on the lack of an order lifting the automatic stay in the LVLP Bankruptcy Case (which is still pending in the Nevada Bankruptcy Court).

14.     The Movants assert that no order lifting the automatic stay in the LVLP Bankruptcy Case was required because the claims belonging to the LVLP bankruptcy estate were prosecuted by the Nevada Trustee.[1]

15.     It is respectfully submitted that the Nevada Bankruptcy Court is the only court with jurisdiction to annul the automatic stay in the LVLP Bankruptcy Case.

16.     The Movants have prepared and are ready to file a MOTION TO ANNUL STAY TO ELIMINATE AN ISSUE CONCERNING THE STATE JUDGMENT,

17.     A draft copy of such motion is attached hereto as Exhibit "A" (the "Motion to Annul Stay").

---

[1] The automatic stay does not apply to actions by a debtor or trustee in an offensive posture. *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,* 892 F.2d 575, 577 (7th Cir.1989); *In re United States Abatement Corp.,* 157 B.R. 278, 279 (E.D.La.1993), *aff'd,* 39 F.3d 563 (5th Cir.1994); *Carley Cap. Grp. v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C. Cir. 1989).

> "[T]he automatic stay provision of Section 362 ' "by its terms only stays proceedings against the debtor," and "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate." ' " *In re Fin. News Network Inc.*, 158 B.R. 570, 572 (S.D.N.Y. 1993) (quoting *Carley Capital Grp. v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C. Cir. 1989) (per curiam) (quoting *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982))) (emphasis in *St. Croix*).

*Tenas-Reynard v. Palermo Taxi Inc.,* No. 14 CIV. 6974 (PGG), 2016 WL 1276451, at *7 (S.D.N.Y. Mar. 30, 2016).

5626363.v2

## MEMORANDUM OF LAW

### A.    RULES FOR LIFTING STAY FOR LITIGATION

The Movants request that the automatic stay in this case be modified to permit the Movants to file a motion to annul the automatic stay in the LVLP Bankruptcy Case. 11 U.S.C. § 362 pertains to the lifting of the automatic stay and provides that a Court may grant the request of a moving party to modify the automatic stay for cause. *See* 11 U.S.C. § 362(d)(1).  Although the Bankruptcy Code does not define "cause," courts have granted relief from stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the nonbankruptcy suit involves multiple parties or is ready for trial.

The Second Circuit has observed that "[n]either the statute nor the legislative history defines the term 'for cause.' " *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). The *Sonnax* court identified several factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum.  *See also, In re Curtis*, 40 B.R. 795, 799-800 (Bankr.D. Utah 1984).  The *Sonnax/Curtis* factors are also used by bankruptcy courts in the Ninth Circuit.  See *In re EB Holdings II, Inc.,* 591 B.R. 10, 15 (Bankr. D. Nev. 2018).

5626363.v2

# ARGUMENT

**A.    THE STAY SHOULD BE LIFTED TO ALLOW THE NEVADA BANKRUPTCY COURT TO DETERMINE IF THE AUTOMATIC STAY SHOULD BE ANNULLED IN THE LVLP BANKRUPTCY CASE.**

While it is and remains the position of the Movants that the automatic stay in the LVLP Bankruptcy Case did not enjoin the prosecution of the claims in the State Court Litigation once the Nevada Trustee became a Plaintiff in Intervention, the Movants are asking this Court to allow the Nevada Bankruptcy Court to determine an issue concerning the automatic stay in the LVLP Bankruptcy Case, which is pending before that Court.

The determination of motions concerning the automatic stay in the LVLP Bankruptcy Case are "core matters" for the Nevada Bankruptcy Court. See 28 U.S.C. §157(b)(2). While other courts may have jurisdiction to determine the applicability of the automatic stay in cases before them, only the Nevada Bankruptcy Court can annul the automatic stay in the LVLP Bankruptcy Case.

The determination of the Motion to Annul Stay will require the application of law which may be different in the Ninth Circuit than in the Second Circuit.  It would be appropriate for the Nevada Bankruptcy Court to make that determination and apply Ninth Circuit law. Bankruptcy courts "are bound by the law of their own circuit.... They are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be." *See Hasbrouck v. Texaco, Inc.,* 663

F.2d 930, 933 (9th Cir.1981); *In re ANC Rental Corp., Inc.,* 341 B.R. 178, 179

(Bankr. D. Del. 2006).

 The Nevada Trustee and Nype are asking for an order lifting the stay in the

Liberman bankruptcy case, which will allow the Nevada Bankruptcy Court to

determine if the automatic stay should be annulled in the LVLP Bankruptcy Case

or to determine that the automatic stay was inapplicable to eliminate the issue of

whether the trial by the Nevada State Court of the Nevada Trustee's claims and the

resulting Judgment violated the automatic stay in the LVLP Bankruptcy Case. For

this motion, the Nevada Trustee and Nype present their analysis of the

*Sonnax/Curtis* factors, as follows:

(1) **Whether the relief will result in a partial or complete resolution of**

  **the issues**: The lifting of the stay in the case before this Court will allow

  the Nevada Bankruptcy Court to determine if the automatic stay should

  be annulled in the LVLP Bankruptcy Case, thereby eliminating this

  issue from this Court's analysis of the validity of the Judgment. All the

  remaining issues involved in the State Court Case, including the

  amount of damages owed by the Debtor and its non-debtor co-

  defendants would then be deemed finally determined, eliminating the

  need for a retrial in State Court and, possibly, a trial in this Court. **This**

  **factor favors lifting the stay**.

(2)     **The lack of any connection with or interference with the bankruptcy case**: Lifting the stay in this case to allow the Nevada Bankruptcy Court to consider the potential annulment of the stay in the LVLP Bankruptcy Case will not interfere with the administration of the Liberman bankruptcy estate. To the contrary, it will potentially eliminate an issue in the adversary proceeding. It will allow for judicial economy in the pending adversary proceeding against Liberman only and will not affect the Liberman bankruptcy estate. **This factor favors lifting the stay**.

(3)     **Whether the foreign proceeding involves the debtor as a fiduciary**: Not applicable. **This factor is neutral**.

(4)     **Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases**: The Nevada Bankruptcy Court is the only court which can determine whether or not to annul the automatic stay in the LVLP Bankruptcy Case. **This factor favors lifting the stay**.

(5)     **Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation**: No. There is no insurance which would cover the defense of the Motion to Annul Stay. **This factor does not favor lifting the stay**.

(6) **Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question**: No. **This factor does not favor lifting the stay**.

(7) **Whether the litigation in another forum would prejudice the interests of other creditors, the creditors committee, and other interested parties**: No. These parties won't be prejudiced. The main issue in the Nevada State Court was the fraud committed by Liberman and his co-defendants.[2] Liberman's bankruptcy estate, trustee and creditors are not parties to the pending adversary proceeding. **This factor favors lifting the stay.**

(8) **Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c):** No. Equitable subordination is not involved in the State Court litigation. **This factor favors lifting the stay**.

(9) **Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)**: No. **This factor favors lifting the stay**.

(10) **The interest of judicial economy and the expeditious and**

---

[2] The other defendants in the Nevada State Court Litigation, being non-debtors, have all assumed that the Judgment was a final judgment and have appealed the decision of the Nevada State Court. That appeal is still pending.

**economical determination of litigation for the parties**: Yes. The Nevada State Court has already tried the fraudulent conveyance case against Liberman and multiple non-debtor co-defendants. The Nevada Bankruptcy Court has already authorized the Nevada Trustee to employ counsel who tried the case. The Nevada Bankruptcy Court is familiar with the facts and issues in the State Court Litigation and has the jurisdiction to determine if annulling the automatic stay is appropriate. **This factor favors lifting the stay**.

(11)  **Whether the foreign proceedings have progressed to the point where the parties are prepared for trial**: Yes. The State Court Litigation was already tried. The Motion to Annul can be set in the ordinary course and be heard within 30-45 days after the stay is lifted in this case. **This factor favors lifting the stay**.

(12)   **The impact of the stay on the parties and the "balance of hurt"**: The annulment of the automatic stay in the LVLP Bankruptcy Case can only be determined by the Nevada Bankruptcy Court. This is an issue that must be determined. Otherwise, all the parties to the State Court Litigation are left in limbo. This benefits all parties to that litigation. **This factor favors lifting the stay**.

Based on these factors, this Court should lift the stay to allow the Nevada

Bankruptcy Court to consider the Motion to Annul Stay. The Movants are **not** asking that the stay be lifted to allow any other litigation against Liberman or the Liberman Bankruptcy Estate in the LVLP Bankruptcy Case.

**WHEREFORE**, the Nevada Trustee and Nype request that this Court enter an order:

1.     Lifting the automatic stay to allow the Movants to move the Nevada Bankruptcy Court to consider the Motion to Annul Stay.

2.     For such other and further relief as this Court deems just and proper.

Dated:     Las Vegas, Nevada
           December 22, 2021     _/s/ Lenard E. Schwartzer_
                                 Lenard E. Schwartzer, Esq.
                                 Schwartzer & McPherson Law Firm
                                 2850 South Jones Blvd., Suite 1
                                 Las Vegas, NV 89146

                   and

Dated:     Uniondale, New York
           December 22, 2021     _/s/ Stuart I. Gordon_
                                 Stuart I. Gordon, Esq.
                                 Matthew V. Spero, Esq.
                                 RIVKIN RADLER LLP
                                 926 RXR Plaza
                                 Uniondale, New York  11556-0926

                   and

Dated:     Las Vegas, Nevada
           December 22, 2021     /s/ Jacob L. Houmand
                                 Jacob L. Houmand, Esq.
                                 HOUMAND LAW FIRM, LTD.
                                 9205 West Russell Road, Bldg 3, Ste 240
                                 Las Vegas, NV 89148

5626363.v2

1  HOUMAND LAW FIRM, LTD.
   Jacob L. Houmand, Esq., NV Bar No. 12781
2  9205 West Russell Road, Building 3, Suite 240
   Las Vegas, NV 89148
3  Telephone: 702/720-3370
   Facsimile: 702/720-3371
4  jhoumand@houmandlaw.com
5  *Counsel for Shelley D. Krohn, Chapter 7 Trustee*

6  --and--

7  Lenard E. Schwartzer, NV Bar No. 0399
   Schwartzer & McPherson Law Firm
8  2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada  89146-5308
9  Telephone:  (702) 228-7590
   Facsimile:  (702) 892-0122
10 E-Mail:  bkfilings@s-mlaw.com
   *Counsel for Russell Nype and Revenue Plus, LLC*
11

12           **UNITED STATES BANKRUPTCY COURT**

13               **DISTRICT OF NEVADA**

14 In re:                          Case No. BK-S-19-15333-MKN

15 LAS VEGAS LAND PARTNERS, LLC,    Chapter 7

16                      Debtor.     **MOTION TO ANNUL STAY TO
                                    VALIDATE STATE COURT
17                                  JUDGMENT**

18                                  Hearing Date:   January 26, 2021
                                    Hearing Time:  2:30 p.m.
19

20          SHELLEY D. KROHN ("Trustee"), the Chapter 7 Trustee in the case of Las Vegas

21 Land Partners, LLC ("LVLP"), by and through her counsel, Jacob I. Houmand, and

22 RUSSELL NYPE and REVENUE PLUS, LLC (collectively, "Nype"), by and through

23 their counsel, Schwartzer & McPherson Law Firm by Lenard E. Schwartzer, (Trustee and

24 Nype are sometimes referred to as "Movants") hereby move this Court to annul the

25 automatic stay in this case to eliminate the question of whether the Amended Findings of

26 Fact and Conclusions of Law ("Judgment") entered January 17, 2020 by the Nevada

27 District Court (the "State Court") in Case No. A-16-740689-B (the "State Court

28 Litigation") violated the automatic stay in this case. The reason for annulling the automatic

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

stay in this case is to eliminate an issue in the bankruptcy case of one of the defendants, Barnet Louis Liberman ("Liberman") concerning the validity and preclusive effect of the Judgment.

It appears that all parties in this bankruptcy case and in the State Court case assumed that the employment of counsel by the Trustee and the intervention of the Trustee in the State Court Litigation *as a plaintiff* eliminated the need for an order lifting the stay in this case. In the pending bankruptcy case of Liberman, one of the defendants in the State Court Litigation, Nype commenced an adversary proceeding objecting to the discharge of Nype's claims flowing from the Judgment. The Bankruptcy Court for the Eastern District of New York, which is presiding over the bankruptcy case of Liberman and the adversary proceeding, has taken the opposite position and questioned the validity of the Judgment issued by the State Court in favor of the Movants – which issue was never raised by Liberman in any court.

## **FACTS**

1.      LVLP filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 19, 2019 (the "Petition Date"). [ECF 1]. The Nevada Trustee is the duly appointed and acting Chapter 7 Trustee in that case. [ECF 2].

2.      Prior to the Petition Date, Russell Nype and Revenue Plus, LLC (collectively, "Nype") obtained a judgment dated April 10, 2015 against LVLP issued by the Eighth Judicial District Court in Case No.07-A-551073.  After an appeal to the Nevada Supreme Court, an Amended and Final Judgment on Costs dated November 1, 2018 was issued. Currently, the amount due on the two judgments is approximately $4,500,000.

3.      Prior to LVLP's Petition Date, on July 26, 2016, NYPE sued the Debtor, DAVID J. MITCHELL; BARNET LIBERMAN; LAS VEGAS LAND PARTNERS, LLC; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIAS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; LIEBERMAN HOLDINGS, LLC; 305 LAS VEGAS LLC; LIVE WORKS TIC

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  SUCCESSOR, LLC; PC/LIVE WORK VEGAS, LLC; CASINO COLLIDGE, LLC

2  (collectively, the "Co-Defendants") in the State Court Litigation.

3  4.    In the State Court Litigation and in the prior litigation, John W. Muije and

4  Associates (the "Muije Firm") represented Nype.

5  5.    In the State Court Litigation, Nype alleged (a) he was entitled to a

6  constructive trust on property of the Co-Defendants; (b) he was entitled to avoid fraudulent

7  transfers of real property by the LVLP and Co-Defendants; (c) LVLP and Co-Defendants

8  had conspired to defraud Nype; (d) he was entitled to a declaration that the transfers of real

9  property by LVLP and Co-Defendants were void; and (e) he was entitled to a declaration

10  that the Co-Defendants were the alter egos of LVLP and their assets could be used to pay

11  the debt to Nype.

12  6.    The filing of LVLP's petition automatically stayed the State Court Litigation

13  against LVLP and the prosecution of the fraudulent transfer and alter ego causes of action,

14  which are property of the LVLP bankruptcy estate.

15  7.    In the LVLP Bankruptcy Case, the Trustee filed the Application to Employ

16  John W. Muije & Associates as Special Counsel on a Contingent Fee Basis Under 11

17  U.S.C. §327(a).  [ECF 28].

18  8.    In this Application, the Nevada Bankruptcy Court was informed:

19      "6.    The filing of the debtor's petition automatically stayed…(b)

20      the prosecution of the fraudulent transfer action which is property of the

21      Debtor's bankruptcy estate.

22      ***

23      13.    The Muije Firm agreed to turn over to the trustee fifty percent

24      (50%) of all funds and assets collected or recovered from the defendants

25      attributable to any claims litigated in the State court Litigation ….

26      14.    The professional services rendered by the Muije Firm will be

27      limited to representation of the trustee in recovering the fraudulent transfers

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

1    as to which the Debtor's bankruptcy estate claims an interest and are claims

2    asserted in the pending State Court Litigation."

3        9.    In the LVLP Bankruptcy Case, the Declaration of John W. Muije in Support

4    of Application to Employ John W. Muije & Associates as Special Counsel was filed.

5    [ECF 29].

6        10.    In this Declaration, Mr. Muije states:

7        "12.    50% of any funds and assets collected or recovered from the

8    Co-Defendants by the Muije Firm in the State Court litigation… will be

9    turned over to the Trustee.

10        13.    The professional services rendered by the Muije Firm will be

11    limited to representation of the trustee in challenging the fraudulent

12    conveyances as to which the Debtor's bankruptcy estate claims an interest

13    and are claims asserted in the pending State Court litigation."

14        11.    In the LVLP Bankruptcy Case, the Declaration of Shelley D. Krohn in

15    Support of Application to Employ John W. Muije & Associates as Special Counsel was

16    filed.  [ECF 30].

17        12.    In this Declaration, Trustee Krohn stated:

18        13.    I have required that 50% of any funds and assets collected or

19    recovered from the Co-Defendants by the Muije Firm in the State Court

20    litigation (except for the previously awarded discovery sanction) will be

21    turned over to me as trustee.

22        ***

23        17.    I have been informed that the Muije Firm will continue to

24    represent Nype with respect to all claims other than the recovery of

25    fraudulent transfers, and because of the agreement between the trustee and

26    Nype, 50% of the recovery and funds collected from the Co-Defendants will

27    not belong to Debtor's estate ("Non-estate Property").

28        ***

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

4

23.     In my business judgment, it is in the best interests of the debtor's bankruptcy estate to employ the Muije Firm on a contingent fee basis to pursue the bankruptcy estate's claims against the Co-Defendants."

13.     Based upon these documents, this Court entered the Order Granting Application to Employ John W. Muije & Associates as Special Counsel on a Contingent Fee Basis Under 11 U.S.C. §327(a).  [ECF 35].

14.     The record of the State Court Litigation shows that the fraudulent transfer claims and alter ego claims belonging to the LVLP Bankruptcy Estate were prosecuted on behalf of Trustee Krohn.

15     Trustee Krohn moved to intervene in the State Court Litigation as a plaintiff. Shelley D. Krohn, Trustee's Motion to Intervene attached hereto as Exhibit "A".

16.     The State Court entered an Order Granting Trustee's Motion to Intervene attached hereto as Exhibit "B".

17.     Trustee Krohn filed her Complaint in Intervention attached hereto as Exhibit "C".

18.     The Complaint in Intervention shows that the alter ego allegations were prosecuted on behalf of Trustee Krohn and the LVLP Bankruptcy Estate.  See paragraphs 84 through 97 and 136-137 of the Complaint in Intervention.

19.     The Complaint in Intervention shows that the fraudulent conveyance allegations were prosecuted on behalf of Trustee Krohn and the LVLP Bankruptcy Estate. See paragraphs 106 through 111 of the Complaint in Intervention.

20.     The pleadings filed by Trustee Krohn's counsel include Trustee Krohn as a Proposed Plaintiff in Intervention in the caption.

21.     As a result of a trial by the Nevada State Court, on January 17, 2020, the Judgment was entered against Liberman and his co-defendants. A copy of that Judgment is attached hereto as Exhibit "D".

22.     The Muije Firm collected approximately $400,000 from one of the Co-Defendants-Casino Coolidge, LLC.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

23.    Subsequently, the Muije Firm turned over 50% of the funds collected from Casino Coolidge, LLC to Trustee Krohn[1], applied for fees and costs and was awarded fees and costs by the Nevada Bankruptcy Court from the assets of the LVLP Bankruptcy Estate.  See First Interim Fee Application Of John W. Muije & Associates For Allowance of Compensation for Services Rendered As Special Litigation Counsel During Period From November 1, 2019 Through April 30, 2020 And For Reimbursement Of Expenses Pursuant To 11 U.S.C. §§330 And 331 And Federal Rule of Bankruptcy Procedure 2016 [ECF 63] and Order Granting First Interim Fee Application Of John W. Muije & Associates For Allowance of Compensation for Services Rendered As Special Litigation Counsel During Period From November 1, 2019 Through April 30, 2020 And For Reimbursement Of Expenses Pursuant To 11 U.S.C. §§330 And 331 And Federal Rule of Bankruptcy Procedure 2016. [ECF 76].

24.    More than a year after the entry of the Judgment, on April 1, 2021, Liberman filed a petition for relief under Chapter 11 in the United States Bankruptcy Court for the Eastern District of New York (the "NY Bankruptcy Court").

25.    Liberman's bankruptcy case was thereafter converted to a case under Chapter 7.

26.    Nype filed a timely complaint objecting to the discharge of the debt awarded by the Judgment.

27.    Nype filed a Motion for Partial Summary Judgment based on the Judgment.

28.    The NY Bankruptcy Court has raised issues concerning the validity and preclusive effect of the Judgment.  In its MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT, a copy of which is attached as Exhibit "E", that court stated in relevant part:

> Based on the record before it today, the Court cannot give any preclusive effect to the Nevada Judgment. The Court cannot find, based on the current record, that the Nevada Judgment is a valid and enforceable

---

[1] These are the only funds in the possession of the Trustee.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

judgment. The litigation commenced by Nype, which resulted in the Nevada Judgment, was commenced in aid of collecting on Nype's prior judgment against LVLP, the LVLP Judgment ("Collection Litigation"). Subsequent to commencement of the Collection Litigation, but prior to entry of the Nevada Judgment, LVLP filed for relief under chapter 7 of the Bankruptcy Code. LVLP was a named defendant in the Collection Litigation. Upon LVLP's bankruptcy filing, the fraudulent conveyance claims asserted in the Collection Litigation became property of the LVLP estate. The Collection Litigation continued as against all defendants except LVLP, and the LVLP chapter 7 trustee intervened as a co-plaintiff with Nype as the proper party to assert the fraudulent conveyance claims on behalf of the LVLP estate.

In a recent decision, the Bankruptcy Appellate Panel of the Ninth Circuit found that "postpetition prosecution of a fraudulent transfer claim against nondebtor parties violates § 362(a)(1)." *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21- 1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *1 (B.A.P. 9th Cir. Nov. 18, 2021). If, in fact, the Nevada Judgment was entered in violation of the stay imposed by the LVLP bankruptcy filing, then it cannot be given collateral estoppel effect here.

The Motion is denied without prejudice.[…]

The Plaintiffs' entire motion is premised upon this Court applying collateral estoppel to the Nevada Judgment. In order to apply collateral estoppel to the Nevada Judgment, the judgment must be valid and enforceable. *See In re Dabrowski*, 257 B.R. 394 (Bankr. S.D.N.Y. 2001). Actions taken in violation of the stay imposed by § 362 of the Bankruptcy Code are void, not merely voidable. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987)); *Hillis Motors, Inc v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir. 1993). The Bankruptcy Appellate Panel for the Ninth Circuit recently held that a creditor's continuation of a state court fraudulent conveyance action against non-debtor entities was a violation of the automatic stay, even though the debtor was separated out from the action. *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21-1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *5-6 (B.A.P. 9th Cir. Nov. 18, 2021) (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992)). This Court takes judicial notice of the docket in the LVLP Bankruptcy and notes that there is no order granting relief from stay to allow the Collection Litigation to proceed. In light of this fact, and in light of *In re Koeberer*, this Court cannot find, based on the current record, that the Nevada Judgment is a valid and enforceable judgment entitled to collateral estoppel effect.[…]

1     The Trustee has ratified the prosecution of the adversary proceeding against

2   Liberman. See Declaration of Shelley Krohn filed in the Liberman New York adversary

3   proceeding, a copy of which is attached as Exhibit "F".

4     The Trustee and Nype assert that the prosecution of the fraudulent transfer claims

5   and the alter ego claims by the Trustee in the State Court Litigation did not violate the

6   automatic stay in the LVLP case.[2]

7     As of now, the other defendants in the State Court Litigation have not raised this

8   issue as a defense to the Judgment.

9     This Motion seeks an order annulling the automatic stay in this bankruptcy case, to

10   eliminate the question of the validity and preclusive effect of the Judgment but not the

11   other issues pending in the NY Bankruptcy Court.

12                    **MEMORANDUM OF LAW**

13   **A.**     **RULES FOR ANNULLING THE AUTOMATIC STAY**

14     11 U.S.C. §362(d) provides for annulling the automatic stay as well as terminating

15   the automatic stay.   The party seeking annulment must show "cause".[3] Section 362(d)

16

17   _____

18   [2] The automatic stay does not apply to actions by a debtor or trustee in an offensive
     posture. *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,* 892 F.2d 575, 577 (7th

19   Cir.1989); *In re United States Abatement Corp.,* 157 B.R. 278, 279 (E.D.La.1993), *aff'd,* 39 F.3d
     563 (5th Cir.1994); *Carley Cap. Grp. v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C. Cir.

20   1989).

21        "[T]he automatic stay provision of Section 362 ' "by its terms only stays
          proceedings against the debtor," and "does not address actions brought by the

22        debtor which would inure to the benefit of the bankruptcy estate." ' " *In re Fin.
          News Network Inc.*, 158 B.R. 570, 572 (S.D.N.Y. 1993) (quoting *Carley Capital*

23        *Grp. v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C. Cir. 1989)
          (per curiam) (quoting *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel*

24        *Corp.,* 682 F.2d 446, 448 (3d Cir. 1982))) (emphasis in *St. Croix*).

25   *Tenas-Reynard v. Palermo Taxi Inc.,* No. 14 CIV. 6974 (PGG), 2016 WL 1276451, at *7
     (S.D.N.Y. Mar. 30, 2016).

26   [3] Bankruptcy Code 362(d)(1) provides:

27        (d) On request of a party in interest and after notice and hearing, the court shall
          grant relief from the stay provided under subsection (a) of this section, such as by

28        terminating, *annulling,* modifying, or conditioning such stay—

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  expressly authorizes a bankruptcy court to annul the automatic stay in a bankruptcy case.

2  "Bankruptcy courts have the power to annul an automatic stay retroactively for cause

3  pursuant to 11 U.S.C. § 362(d)(1) in order to rehabilitate stay violations." *Bunch v.*

4  *Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.),* 329 F.3d 948, 951–52 (8th Cir.2003).

5  See also, *In re Schwartz*, 954 F.2d 569, 573 (9th Cir. 1992) ("If a creditor obtains

6  retroactive relief under section 362(d), there is no violation of the automatic stay")

7       In deciding whether it should grant such relief, the Court looks at the circumstances

8  of the case and balances the equities of the parties' respective positions. *In re Nat'l Envtl.*

9  *Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997); *In re Fjeldsted*, 293 B.R. 12, 24 (9th

10  Cir. BAP 2003).

11       Several factors have been identified by Courts when determining
   whether circumstances are sufficiently compelling to warrant retroactive
12   annulment of the stay. Such factors include (1) whether the creditor had
   actual or constructive knowledge of the bankruptcy filing, (2) whether the
13   debtor acted in bad faith, (3) whether grounds would have existed for
   modification of the stay if a motion had been filed before the violation, (4)
14   whether the denial of retroactive relief would result in unnecessary expense
   to the creditor, and (5) whether the creditor has detrimentally changed its
15   position on the basis of the action taken. *Id.* at 281.

17  *In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004).  In *In re Schumann*, 546 B.R. 223,

18  228 (Bankr. D.N.M. 2016), the Court listed the factors as follows:

19     1.  Whether the creditor had actual or constructive knowledge of the debtor's
        bankruptcy filing when it acted in violation of the automatic stay.

20     2.  Whether the debtor filed the bankruptcy case in bad faith or otherwise acted
        in bad faith.

21     3.  Whether grounds for relief from the stay existed and a motion, if filed, would
        likely have been granted prior to the automatic stay violation.

23     4.  How quickly the creditor sought annulment of the automatic stay upon
        learning of the debtor's bankruptcy filing.

25     5.  Whether the creditor continued to violate the stay after learning of the
        debtor's bankruptcy filing.

26     6.  Whether the debtor remained 'stealthily silent' in the face of the creditor's

28       (1) *for cause,* including the lack of adequate protection of an interest in
        property of such party in interest;

1    unknowing violation of the automatic stay.

2        In *In re Lett,* 238 B.R. 167, 195 (Bankr.W.D.Mo.1999), and *In re Stockwell*, 262

3   B.R. 275, 281 (Bankr.D.Vt.2001), the bankruptcy judges also considered "if failure to

4   grant retroactive relief would cause unnecessary expense to the creditor" and "if the

5   creditor has detrimentally changed its position on the basis of the action taken."

6    The Bankruptcy Appellate Panel for the Ninth Circuit stated:

7        We conclude that a determination of whether or not to annul the automatic
8        stay and thereby grant retroactive relief requires the court to balance the
         equities.

9   *In re Fjeldsted*, 293 B.R. 12, 15 (B.A.P. 9th Cir. 2003).

10       The most important analysis this Court should make is two-fold:

11   (1)    Whether the Court would have lifted the automatic stay if that had been

12          requested before the trial in the State Court Litigation; and

13   (2)    Taking into consideration all of the circumstances, would annulling the stay

14          be equitable.

15   **B.    EFFECT OF ANNULLING THE AUTOMATIC STAY**

16       When the automatic stay is annulled it works retroactively to the date of a debtor's

17   petition. *See Franklin Sav. Assn'v. Office of Thrift Supervision,* 31 F.3d 1020, 1023 (10th

18   Cir.1994) (acknowledging that "bankruptcy courts have the authority to 'annul' a stay")

19   (citing 11 U.S.C. § 362(d)); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners,*

20   *Ltd.),* 749 F.2d 670, 675 (11th Cir.1984) ("The word 'annulling' in ... [§ 362(d) ] evidently

21   contemplates the power of bankruptcy courts to grant relief from the stay which has

22   retroactive effect ..."). Annulment of the automatic stay retroactively validates post-

23   petition actions taken in violation of the automatic stay. *See In re Schwartz,* 954 F.2d 569,

24   573 (9th Cir.1992) (reasoning that "[i]f a creditor obtains retroactive relief under section

25   362(d), there is no violation of the automatic stay"); *In re Am. Spectrum Realty, Inc.,* 540

26   B.R. 730, 743 (Bankr. C.D. Cal. 2015) ("Section 362(d) provides authorization to annul

27   the automatic stay, which, in effect, retroactively ratifies or validates acts that otherwise

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

10

1    violated the stay."); *In re Boni*, 240 B.R. 381, 384 (B.A.P. 9th Cir. 1999) ("By annulling

2    the automatic stay, the bankruptcy court may validate an act that would otherwise be void

3    as a violation of the automatic stay.").

4            In this case, Duwaik seeks the annulment of the automatic stay
         retroactively. The Eleventh Circuit Court of Appeals has explained the
5         distinction between annulling the stay retroactively, as requested by Duwaik,
         and modifying the stay prospectively to permit a creditor to take an action in
6         the future.
            It is true that acts taken in violation of the automatic stay are generally
7         deemed void and without effect. [Citations omitted]. Nonetheless, § 362(d)
         expressly grants bankruptcy courts the option, in fashioning appropriate
8         relief, of "annulling" the automatic stay, in addition to merely "terminating"
         it. The word "annulling" in this provision evidently contemplates the power
9         of bankruptcy courts to grant relief from the stay which has retroactive
         effect; otherwise its inclusion, next to "terminating," would be superfluous.
10
            . . . . .
11            Accordingly, we hold that § 362(d) permits bankruptcy courts, in
12         appropriately limited circumstances, to grant retroactive relief from the
         automatic stay.
13         *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir.1984).
         Consequently, § 362(d) authorizes the annulment of the stay nunc pro tunc to
14         the date of the petition, provided that the circumstances of the particular case
         warrant such relief. "Bankruptcy courts have the power to annul an
15         automatic stay retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in
         order to rehabilitate stay violations." *In re Webb,* 294 B.R. 850, 853
16         (Bankr.E.D.Ark.2003)(quoting *In re Hoffinger Indus.,* 329 F.3d 948, 951–52
17         (8th Cir.2003)).

18    *In re Barr*, 318 B.R. 592, 597–98 (Bankr. M.D. Fla. 2004).

19            In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* 589

20    U.S. ——, 140 S. Ct. 696, 206 L. Ed. 2d 1 (2020) ("Acevedo"), the United States Supreme

21    Court limited a federal court's inherent authority to issue *nunc pro tunc* orders. This

22    decision does not limit a federal court from exercising statutorily granted authority to issue

23    orders which have retroactive effect.

24    In this Circuit the rule was stated by a BAP Panel:

25    **The Supreme Court's *Acevedo* opinion does not preclude retroactive
26    relief from stay.**
            During the pendency of this appeal, the Supreme Court
27         decided *Acevedo*, 140 S. Ct. 696, in which it held that a United States
         District Court's nunc pro tunc order remanding a removed lawsuit to state

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

11

1
2
3
4
5
6
7

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

court was not effective to retroactively confer jurisdiction so as to validate the state court's orders entered before remand. *See id.* at 699-701.[9] At least one bankruptcy court has interpreted *Acevedo* as prohibiting a grant of retroactive or nunc pro tunc relief from stay. *In re Telles*, No. 8-20-70325-reg, 2020 WL 2121254 (Bankr. E.D.N.Y. Apr. 30, 2020).

**We do not believe that the ruling in *Acevedo* prohibits a bankruptcy court's exercise of the power to grant retroactive relief from stay.** But this court should always carefully consider the scope and reach of Supreme Court opinions; and in light of our disagreement with *Telles*– that *Acevedo* is directly relevant to requests to terminate or annul the stay retroactively–we consider the issue here and at some length.

*In re Merriman*, 616 B.R. 381, 391–92 (B.A.P. 9th Cir. 2020) (emphasis added), *appeal dismissed,* No. 20-60036, 2021 WL 3610895 (9th Cir. Feb. 26, 2021). This rule has been followed by this Court.  *In re Sorelle*, No. BK-S-19-17870-MKN, 2020 WL 8551788, at *8 (Bankr. D. Nev. Dec. 2, 2020) and other bankruptcy courts.  See *In re Miller*, 620 B.R. 637, 641 (Bankr. E.D. Cal. 2020); *In re Wellington*, No. 20-10080, 2021 WL 1963933 (Bankr. M.D.N.C. Mar. 9, 2021) (following and quoting *Merriman* and *Miller*); *In re Grinding Specialists, LLC*, 625 B.R. 6, 14 (Bankr. D.S.C. 2021) (quoting *Miller*). See also *In re SS Body Armor I, Inc.,* No. 10-11255(CSS), 2021 WL 2315177, at *3 (Bankr. D. Del. June 7, 2021) ("The *Acevedo* case prohibits courts from using *nunc pro tunc* orders to cure jurisdictional defects arising under 28 U.S.C. § 1445(d), which governs nonremovable actions. *Acevedo* does not prohibit courts from entering *nunc pro tunc* orders where there are no jurisdictional defects.").

Movants are aware that Judge Grossman (the presiding judge in the Liberman Bankruptcy Case) has taken the opposite position in the *Telles* case referenced by the *Merriman* Court.  Judge Grossman has held:

The landscape of the law is different post-*Acevedo,* and this Court is bound to follow the precedent set by the Supreme Court. The Supreme Court has clarified that *nunc pro tunc* relief cannot be used to confer jurisdiction where none existed. *Acevedo,* 140 S.Ct. at 700-01. Once a debtor files for bankruptcy, the state court is divested of jurisdiction over property of the estate, and any action taken by the state court with respect to the debtor's property is void.

*In re Telles*, No. 8-20-70325-REG, 2020 WL 2121254, at *4 (Bankr. E.D.N.Y. Apr. 30, 2020).

Notwithstanding the decision in *Telles,* this Court should respectfully follow the precedent of the 9th Circuit B.A.P. in *Merriman* and by this Court in *Sorelle.*

## C.    RULES FOR LIFTING STAY FOR PENDING LITIGATION

11 U.S.C. § 362 pertains to the lifting of the automatic stay and provides that a Court may grant the request of a moving party to modify the automatic stay for cause.  *See* 11 U.S.C. § 362(d)(1).  Although the Bankruptcy Code does not define "cause," courts in the Ninth Circuit have granted relief from stay under § 362(d0(1) when necessary to permit pending litigation to be concluded in another forum if the nonbankruptcy suit involves multiple parties or is ready for trial.  *See In re John Smith (In re Smith)*, 389 B.R. 902, 917-18 (D.Nev. 2008) (citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990)):

> Stay relief shall be granted upon a showing of "cause," which "has no clear definition and is determined on a case-by-case basis." *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.),* 96 F.3d 346, 352 (9th Cir.1996), quoting *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir.1990). The decision whether to grant or deny relief from the automatic stay "is committed to the sound discretion of the bankruptcy court." *Conejo,* 96 F.3d at 351.
> Especially when litigation in a nonbankruptcy court is ready for trial or has already been tried and is ready for judgment, it is not uncommon for bankruptcy courts to find cause to lift the automatic stay, at least to permit entry of judgment to liquidate the amount of a claim asserted against a debtor.

*In re Patel*, 291 B.R. 169, 172 (Bankr. D. Ariz. 2003). *See In re Plumberex Specialty Products, Inc.,* 311 B.R. 551, 556–57 (Bankr.C.D.Cal.2004) ("Courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial.") (citations omitted); *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D. Cal. 2015) ("cause" existed to lift automatic stay to allow state court

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

litigation that had been pending against Chapter 11 debtor for more than two years to proceed before court that was very familiar with issues and parties).

The burden of proof on a motion to modify the automatic stay is a shifting one. *See In re Smith*, 389 B.R. at 918 (citations omitted). Once the moving party establishes a prima facie case that "cause" exists, the burden shifts to the debtor to show that relief from the stay is unwarranted. *See id.* Courts have identified various factors relevant to determining whether the stay should be lifted to allow a creditor to continue pending litigation in a non-bankruptcy forum. In particular, most courts analyze twelve nonexclusive factors as issues a bankruptcy court should weigh in determining whether to lift the stay. *See In re Smith*, 389 B.R. at 918-9; *see In re Curtis*, 40 B.R. 795, 799-800 (Bankr.D. Utah 1984); *see Sonnax Indus., Inc. v. Tri Component Prods. Corp (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990). These factors (the "*Sonnax/Curtis* factors") are as follows:

(1)    Whether the relief will result in a partial or complete resolution of the issues;

(2)    The lack of any connection with or interference with the bankruptcy case;

(3)    Whether the foreign proceeding involves the debtor as a fiduciary;

(4)    Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

(5)    Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)    Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

(7)    Whether the litigation in another forum would prejudice the interests of other creditors, the creditors committee and other interested parties;

(8)    Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 5109(c);

(9)    Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

(10)    The interest of judicial economy and the expeditious and economical determination of litigation for the parties;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

(11)    Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)    The impact of the stay on the parties and the "balance of hurt."

*See In re Smith*, 389 B.R. at 918-19.

## **ARGUMENT**

### **A.    THE STAY SHOULD BE ANNULLED TO VALIDATE THE STATE COURT JUDGMENT AFTER TRIAL ON THE MERITS**

Nype and the Trustee are asking this Court to annul the stay to eliminate any question that the Judgment issued in the State Court Litigation was valid against the Co-Defendants, including Liberman. Except to the extent that the causes of actions alleged belong to the LVLP bankruptcy estate, there was no bankruptcy stay of the action against Liberman and the Co-Defendants because they are not debtors and the automatic stay does not protect non-debtor co-defendants.[4]

It was and still is the position of the Movants that there was no automatic stay of the action for fraudulent transfers and alter ego because those claims were brought by Trustee Krohn on behalf of the LVLP Bankruptcy Estate. Generally, the automatic stay enjoins actions against a debtor or debtor's property interests but not actions for the benefit of the bankruptcy estate.

The application of the facts of this case to the *Barr/Schuman* factors is as follows:

1.    **Whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay.**    Trustee Krohn and Nype were aware of the LVLP

---

[4] "[T]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991). *See also, e.g., Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); *Marcus, Stowell & Beye Government Securities, Inc. v. Jefferson Investment Corp.,* 797 F.2d 227, 230 n. 4 (5th Cir.1986) ("The well established rule is that an automatic stay of judicial proceedings against one defendant does not apply to proceedings against co-defendants.").

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Bankruptcy Case but believe that all parties to the action proceeded as

2    if the stay did not apply.

3    2.    **Whether the debtor filed the bankruptcy case in bad faith or**

4    **otherwise acted in bad faith.**  The LVLP Bankruptcy Case was filed

5    on the eve of trial in the State Court causing a further delay until

6    Trustee Krohn could employ counsel and intervene. Filing to avoid

7    trial is an indicator of "bad faith".

8    3.    **Whether grounds for relief from the stay existed and a motion, if**

9    **filed, would likely have been granted prior to the automatic stay**

10    **violation.** The grounds for lifting the automatic stay existed at the

11    time this court authorized the employment of Special Counsel to

12    prosecute the LVLP Bankruptcy Estate's claims and since seemingly

13    none of the parties proceeded as if the stay applied, Movants believe

14    the stay would like have been granted if a motion had been made.

15    4.    **How quickly the creditor sought annulment of the automatic stay**

16    **upon learning of the debtor's bankruptcy filing.** Trustee Krohn and

17    Nype did not immediately seek relief from the stay because all parties

18    were seemingly under the impression that prosecution of the LVLP

19    Bankruptcy Estate's claims by the Trustee did not require the

20    automatic stay to be lifted.

21    5.    **Whether the creditor continued to violate the stay after learning**

22    **of the debtor's bankruptcy filing.** Because neither the plaintiffs nor

23    the defendants in the State Court Litigation believed that the

24    automatic stay enjoined the Trustee's prosecution of claims belonging

25    to the LVLP Bankruptcy Estate, no relief from stay was sought prior

26    to the current motion.

27    6.    **Whether the debtor remained 'stealthily silent' in the face of the**

28    **creditor's unknowing violation of the automatic stay.** Neither

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Nype Motion to Annul Stay 20211221          165629990.v2

1    Liberman nor the Co-Defendants raised the automatic stay in the State

2    Court Litigation or in the pending NY Bankruptcy Case.  The issue

3    was raised by Judge Grossman.

4    The application of the facts of this case to the *Sonnax/Curtis* factors is as follows:

5    1.    **Whether the relief will result in a partial or complete resolution of**

6    **the issues**: This Motion seeks relief concerning one issue: whether the

7    automatic stay in the LVLP Bankruptcy Case (not in the Liberman

8    Bankruptcy Case) enjoined the prosecution of the claims by the

9    Trustee and Nype in the State Court Litigation. The annulment of the

10    stay will make the State Court's Judgment a valid and preclusive

11    judgment. **This factor favors annulling the stay**.

12    2.    **The lack of any connection with or interference with the**

13    **bankruptcy case**: The annulment of the stay will allow the

14    determination of the dischargeability of the Judgment in the Liberman

15    Bankruptcy Case without a new trial. It will have no affect on the

16    administration of the LVLP Bankruptcy Case (except to make the

17    judgment in favor of the LVLP Bankruptcy estate against Liberman

18    more likely to be determined to be non-dischargeable). The annulment

19    of the stay will promote the administration of this bankruptcy estate.

20    **This factor favors annulling the stay**.

21    3.    **Whether the foreign proceeding involves the debtor as a**

22    **fiduciary**: Not applicable. **This factor is neutral**.

23    4.    **Whether a specialized tribunal has been established to hear the**

24    **particular cause of action and whether that tribunal has the**

25    **expertise to hear such cases**:  The State Court business court was

26    created to hear business cases. It has already tried the case. **This**

27    **factor favors annulling the stay**.

28    5.    **Whether the debtor's insurance carrier has assumed full financial**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    responsibility for defending the litigation: No. **This factor does not**

2    **favor annulling the stay**.

3    6.    **Whether the action essentially involves third parties, and the**

4        **debtor functions only as a bailee or conduit for the goods or**

5        **proceeds in question**: No. The State Court Litigation obtained

6        awards against non-debtor Co-Defendants as well as against

7        Liberman. **This factor favors annulling the stay**.

8    7.    **Whether the litigation in another forum would prejudice the**

9        **interests of other creditors, the creditors committee and other**

10        **interested parties**: No. The State Court Litigation to recover

11        fraudulent transfers of the debtor's property will benefit the estate.

12        **This factor favors annulling the stay.**

13    8.    **Whether the judgment claim arising from the foreign action is**

14        **subject to equitable subordination under Section 510(c):** No.

15        Equitable subordination is not involved in the State Court Litigation.

16        **This factor favors annulling the stay**.

17    9.    **Whether movant's success in the foreign proceeding would result**

18        **in a judicial lien avoidable by the debtor under Section 522(f)**: No.

19        **This factor favors annulling the stay**.

20    10.    **The interest of judicial economy and the expeditious and**

21        **economical determination of litigation for the parties**: Yes. Two

22        years ago, the State Court, after 3 years, tried the case over several

23        days. The State Court had jurisdiction over all of the defendants and

24        the subject matter of the litigation. **This factor favors annulling the**

25        **stay**.

26    11.    **Whether the foreign proceedings have progressed to the point**

27        **where the parties are prepared for trial**: Yes. The matter was set

28        for trial just when LVLP filed its bankruptcy petition (to delay the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

State Court trial). The State Court, with the Trustee as a co-plaintiff, conducted the multi-day trial two years ago. **This factor favors annulling the stay**.

12. **The impact of the stay on the parties and the "balance of hurt"**: Since the issues have already been litigated, all parties benefit from annulling the stay to avoid the time and expense of a retrial. **This factor favors annulling the stay**.

Based on these factors, this Court should annul the stay to allow the Judgment to be a valid final judgment in favor of Nype and the Trustee to (a) to be used in the Liberman Bankruptcy Case and (b) to be used to collect awarded damages and property from the Co-Defendants.

**WHEREFORE**, the Russell Nype and Revenue Plus, LLC and the Trustee respectfully request that this Court enter an order:

1. Annulling the automatic stay to eliminate any question concerning the validity of the Judgment entered in the State Court Litigation (a) to be used in the Liberman Bankruptcy Case and (b) to be used to collect awarded damages and property from the Co-Defendants; and (c) to allow the pending appeals of the Judgment issued by the State Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

2. For such further relief as this Court deems just and proper.

_____

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Nype Motion to Annul Stay 20211221    195629990.v2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 S. Jones Blvd., Suite 1
Las Vegas, NV  89146
*Counsel for Russell Nype and Revenue Plus, LLC*

_____

Jacob L. Houmand, Esq., NV Bar No. 12781
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

Nype Motion to Annul Stay 20211221          205629990.v2

# EXHIBIT A

Electronically Filed
11/12/2019 5:00 PM
Steven D. Grierson
CLERK OF THE COURT

1  **MINV**
JOHN W. MUIJE & ASSOCIATES
2  JOHN W. MUIJE, ESQ.
Nevada Bar No: 2419
3  1840 East Sahara Avenue, Suite 106
Las Vegas, Nevada 89104
4  Telephone No: (702) 386-7002
Facsimile No:  (702) 386-9135
5  Email: Jmuije@muijelawoffice.com
*Attorneys for Proposed Plaintiff*
6  *In Intervention Shelley D. Krohn*
7

8                          DISTRICT COURT

9                      CLARK COUNTY, NEVADA

10

11  RUSSELL L. NYPE AND REVENUS PLUS,      CASE NO:   A-16-740689-B
    LLC
12                                          DEPT NO:   XI
                              Plaintiffs,
13
14              vs.
    DAVID J. MITCHELL; BARNET LIBERMAN; LAS
15  VEGAS LAND PARTNERS, LLC; MEYER        **SHELLEY D. KROHN, BANKRUPTCY**
    PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH **TRUSTEE'S MOTION TO INTERVENE**
16  PROPERTY, LLC; WINK ONE, LLC; LIVE WORK,
    LLC; LIVE WORK MANAGER, LLC; AQUARIUS
17  OWNER, LLC; LVLP HOLDINGS, LLC;        **DATE:**
    MITCHELL HOLDINGS, LLC; LIBERMAN
18  HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE **TIME:**
    WORKS TIC SUCCESSOR, LLC; CASINO
19  COOLIDGE LLC; DOES I through III, and ROE
    CORPORATIONS I through III, inclusive,
20
21                          Mitchell Defendants.
22

23

24          COMES NOW, SHELLEY D. KROHN, Proposed Plaintiff-in-Intervention (hereinafter

25  "Plaintiff"), by and through the undersigned counsel, who hereby respectfully submits her Motion

26  to Intervene in this matter.  This Motion is supported by the following Memorandum of Points

27  . . . .

28

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

1  and Authorities, the exhibits attached hereto, the Court's file herein, and any evidence adduced at

2  the hearing to be held by the Court.

3       DATED this 12 day of November, 2019

4

5                                    JOHN W. MUIJE & ASSOCIATES

6

7                                    By: _____

8                                    JOHN W. MUIJE, ESQ.
                                     Nevada Bar No. 2419
9                                    1840 East Sahara Avenue, #106
                                     Las Vegas, Nevada 89104
10                                   Telephone:   702-386-7002
                                     Facsimile:   702-386-9135
11                                   E-Mail: jmuije@muijelawoffice.com
                                     *Attorneys for Proposed Plaintiff*
12                                   *In Intervention Shelley D. Krohn*

13

14

15

16  . . . .

17  . . . .

18  . . . .

19  . . . .

20  . . . .

21  . . . .

22  . . . .

23  . . . .

24  . . . .

25  . . . .

26  . . . .

27  . . . .

28  . . . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Shelley D. Krohn  (hereinafter "Krohn") brings this Motion seeking to Intervene in this matter pursuant to NRCP 24(a) as Krohn, has an interest in the subject matter of this action and the disposition of this action affects Trustee's ability to recover, on behalf of the Bankruptcy of Las Vegas Land Partners, LLC, BK-S-19-15333-MKN, the funds which the original Plaintiff herein has sought to recover with regard to the alleged fraudulent conveyances involving the various named Defendants herein.

Krohn is familiar with the claims asserted in this litigation and has consulted with counsel for the original Plaintiff.   Krohn has obtained Bankruptcy Court approval to employ John W. Muije, Esq., attorney as Special Counsel for the purpose of pursuing the claims asserted herein, *inter alia*, from the various defendants already named.   See Exhibit "1." Under applicable Bankruptcy law, the Bankruptcy Trustee has two years from the date that a Bankruptcy Petition is filed, and a Trustee appointed, to assert and seek claims such as those already pending before this Court.  The Trustee respectfully represents that such is exactly what she wants to do, and that the appropriate forum for the same, in the exercise of the Trustee's sound business judgment, is the already pending matter before this Honorable Court.

### II.

### ARGUMENT AND AUTHORITIES

Shelley D. Krohn seeks the permission of this Court to intervene in this matter pursuant to NRS 12.130, which provides that before trial, "any person may intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest

3

against both." The intervention is to be made as provided for in the Nevada Rules of Civil Procedure. *Id.* NRCP 24(a) provides that:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the application claims an interest related to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

As there is no statute applicable in this matter that provides Shelley D. Krohn, an unconditional right to intervene, Shelley D. Krohn's application is governed by NRCP 24(a)(2), and allows a party to intervene if it meets the following four requirements: (1) that she have sufficient interest in the subject matter of the litigation, (2) that her ability to protect that interest may be impaired if she does not intervene; (3) that her interest is not adequately represented by existing parties, and (4) that is application is timely. *American Home Assurance Company v. Eighth Judicial District Court*, 122 Nev. 1229, 147 P.3d 1120, 1127 (2006).

The timeliness of an applicant's motion to intervene is "a determination that lies within the sound discretion of the trial court." *Lawler v. Ginochio*, 94 Nev. 623, 626, 584 P.2d 667 (1978) quoting *Cleland v. Eighth Judicial District Court*, 92 Nev. 454, 456. 552 P.2d 488 (1976). The timeliness requirement "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Id.* A copy of Shelley D. Krohn's proposed Complaint In Intervention is attached hereto as Exhibit "2".

The fraudulent transfer claims previously brought by the Plaintiff as creditors likely became property of the Bankruptcy Estate of LVLP, and the Trustee, as representative of that

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

Bankruptcy Estate of LVLP pursuant to Bankruptcy Code Section 323(a), has the authority to bring such actions.

<div style="text-align:center">11 U.S.C. Section 544 provides in part:</div>

    (a)    The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor.

Here, Shelley D. Krohn's application to intervene in this action meets all four requirements of NRCP 24(a)(2). Shelley D. Krohn has a sufficient interest in the subject matter of this litigation. Trustee has conducted reasonable discovery in the context of the Las Vegas Land Partners, LLC's bankruptcy proceeding, and is reasonably persuaded that meritorious claims exist against the various named defendants herein, to recoup and recover valuable assets that once belonged beneficially to the Debtor, Las Vegas Land Partners, LLC.

It is true that the Trustee could elect to start over from scratch and could independently invoke the jurisdiction before the State Court or before the Bankruptcy Court. Nevertheless, where and how to pursue the recovery of the claims asserted is unequivocally within the business judgment of a Bankruptcy Trustee, and the Trustee has elected to intervene in this case, with multiple defendants already active and present, as opposed to starting over from scratch.

Because of the overlapping claims, it is judicially economic to bring all the claims to trial at the same time. Having to literally reinvent the wheel would be inefficient, detrimental to judicial economy, and might very well impair the efficacy of the Trustee's attempt to recover the subject property for the benefit of the Estate. Given the nature of the underlying common law and state law claims, it is appropriate that the Trustee join with the existing Plaintiff, both of whom have legitimate interests in the anticipated proceeds of this litigation, and further, that the Trustee be present so as to protect the interests of the Bankruptcy Estate and the other creditors.

<div style="text-align:center">5</div>

Finally, as noted hereinabove, Congress in its infinite wisdom has declared that a Bankruptcy Trustee has two years to evaluate, investigate, and develop theories to recover assets for the Bankruptcy Estate, and to initiate the pursuit of claims such as that sought in this litigation. Accordingly, Las Vegas Land Partners, LLC's bankruptcy having commenced a less than four months ago, the Trustee is well within the statutory time allowed.

### III.

### <u>CONCLUSION</u>

Therefore, Shelley D. Krohn respectfully requests that the Court grant her Motion to Intervene and order that Shelley D. Krohn be allowed to file her Complaint-in-Intervention in this matter, since Shelley D. Krohn's application meets the requirements of NRCP 24(a))2), and she should be heard in this matter.

DATED this ___ day of November, 2019

JOHN W. MUIJE & ASSOCIATES

By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 East Sahara Avenue, #106
Las Vegas, Nevada 89104
Telephone:   702-386-7002
Facsimile:   702-386-9135
E-Mail: jmuije@muijelawoffice.com
*Attorneys for Proposed Plaintiff*
*In Intervention*

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave., #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

**CERTIFICATE OF SERVICE**

I certify that I am an employee of JOHN W. MUIJE & ASSOCIATES and that on the _12TH_ day of November, 2019, I caused the foregoing document, **SHELLEY D. KROHN, BANKRUPTCY TRUSTEE'S MOTION TO INTERVENE,** to be served as follows:

☐    by placing a copy of the same for mailing in the United States mail, with first class postage prepaid addressed as follows; and/or

☒    by electronically filing and serving with the Clerk of the Court via the Odyssey E File and Serve System;

☐    by placing a copy of the same for mailing in the United States mail, with first class postage prepaid marked certified return receipt requested addressed as follows:

Elliot S. Blut, Esq.
**BLUT LAW GROUP, P.C.**
300 South Fourth Street, Suite 701
Las Vegas, Nevada 89101
Telephone: (702) 384-1050
Facsimile:  (702) 384-8565
E-Mail: eblut@blutlaw.com
*Attorneys for Defendants*
*Barnet Liberman and Casino Coolidge,*
*LLC*

Brian W. Boschee, Esq.
**HOLLEY DRIGGS WALCH**
**FINE PUZEY STEIN & THOMPSON**
400 South Fourth Street, Third Floor
Las Vegas, Nevada 9101
Telephone: (702) 791-0308
Facsimile:  (702) 791-1912
E-Mail: bboschee@nevadafirm.com
*Attorneys for Defendant*
*305 Las Vegas, LLC*

James L. Edwards, Esq.
**COHEN JOHNSON PARKER**
**& EDWARDS**
375 East Warm Springs Road, Suite 104
Las Vegas, Nevada 89119
Telephone:  (702) 823-3500
Facsimile:  (702) 823-3400
E-Mail: jedwards@parkeredwardslaw.com
*Attorneys for Mitchell Defendants*

_____
An Employee of JOHN W, MUIJE & ASSOCIATES

*Exhibit "1"*

Case 8-21-70611-reg    Doc 183-3    Filed 12/23/21    Entered 12/23/21 12:30:35
Case 19-15333-mkn    Doc 94    Entered 03/11/22 09:47:22    Page 165 of 301
Case 19-15333-mkn    Doc 35    Entered 10/31/19 09:13:53    Page 1 of 3

Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
October 31, 2019

SHELLEY D. KROHN
E-mail: Shelley@TrusteeKrohn.com
510 South 8th Street
Las Vegas, Nevada 89101
Telephone: (702) 421-2210
Facsimile: (702) 366-1939

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

*****

In re:                                    ) CASE NO. BK-S-19-15333-MKN
                                          ) CHAPTER 7
  LAS VEGAS LAND PARTNERS, LLC            )
                                          )
                                          ) Date: October 30, 2019
                                          ) Time: 2:30 p.m.
                                          )
                          Debtor.         )
_____ )

**ORDER GRANTING APPLICATION TO EMPLOY JOHN W. MUIJE & ASSOCIATES AS SPECIAL COUNSEL ON A CONTINGENT FEE BASIS UNDER 11 U.S.C. §327(a)**

This matter having come on for hearing at the date and time set forth above and upon reading the Motion of Shelley D. Krohn, Trustee, to employ the law firm of JOHN W. MUIJE & ASSOCIATES as Special Counsel for the Estate pursuant to 11 U.S.C. §327 and §328; it appearing to the Court that neither the attorney, nor the firm, hold

1  or represent an interest adverse to the Estate, that the attorney is

2  a disinterested party within the meaning of §101(14) of the

3  Bankruptcy Code and may represent the Estate under 11 U.S.C. §327,

4  that the declaration of John Muije is sufficient, and that the

5  employment of special counsel is necessary and in the best interests

6  of the Estate and the creditors; the Court noting the appearances of

7  Shelley D. Krohn, Trustee, and Lenard E. Schwartzer, Esq., bankruptcy

8  counsel for Russell Nype and Revenue Plus, LLC, and for good cause

9  appearing, it is hereby:

10

11      **ORDERED** that pursuant to §327 and §328 of the Bankruptcy Code,

12  the Trustee is authorized to employ the law firm of JOHN W. MUIJE &

13  ASSOCIATES as Special Counsel on a contingent fee basis in accordance

14  with the terms of the agreement set forth in the Motion and

15  Declaration in support for this Order. The payment of all fees and

16  costs are subject to further approval by this Court.

17  Respectfully submitted by:

18

19

20  _____
    SHELLEY D. KROHN, TRUSTEE

21

22

23

24

25

26

27

28

**CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

_X__ The court has waived the requirement set forth in LR 9021(b)(1).

_____ No party appeared at the hearing or filed an objection to the motion.

____ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

Counsel appearing:

__x_ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order

**IT IS SO ORDERED.**

# # #

# Exhibit "2"

1  | **COMP**
2  | JOHN W. MUIJE & ASSOCIATES
   | JOHN W. MUIJE, ESQ.
3  | Nevada Bar No. 2419
   | 1840 East Sahara Avenue, Suite 106
4  | Las Vegas, Nevada 89104
   | Telephone:  702-386-7002
5  | Facsimile:  702-386-9135
   | Email: jmuije@muijelawoffice.com
6  | *Attorneys for Plaintiff-in-Intervention*

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

DISTRICT COURT
CLARK COUNTY, NEVADA

RUSSELL L. NYPE AND REVENUS PLUS, LLC

                                    Plaintiffs,

vs.

DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I through III, and ROE CORPORATIONS I through III, inclusive,

                                    Mitchell Defendants.

_____

SHELLEY D. KROHN, U.S. BANKRUPTCY TRUSTEE

Proposed Plaintiff-In-Intervention

CASE NO:    A-16-740689-B

DEPT. NO:  XI

**[PROPOSED] COMPLAINT IN INTERVENTION FOR:**

1.  **CONSTRUCTIVE TRUST;**
2.  **FRAUDULENT CONVEYANCE;**
3.  **CONSPIRACY TO DEFRAUD;**
4.  **DECLARATORY RELIEF; AND**
5.  **ALTER EGO**

**ARBITRATION EXEMPT (EQUITABLE RELIEF)**

COMES NOW, SHELLEY D. KROHN, U.S. Bankruptcy Trustee (hereinafter referred to as "TRUSTEE"), and as and for causes of action against the Defendants, DAVID J. MITCHELL; BARNET LIBERMAN;  MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC;

– 1 –

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC;

LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC

SUCCESSOR, LLC; FC/LW VEGAS, LLC; CASINO COOLIDGE LLC, alleges and shows as follows:

## GENERAL FACTUAL ALLEGATIONS

1.    The Trustee was duly appointed to act as the Trustee in the Bankruptcy Case of

Las Vegas Land Partners, LLC, Case  No. BK-19-15333-mkn (hereinafter referred to as

"TRUSTEE").

2.    Plaintiffs,  RUSSELL L. NYPE and REVENUE PLUS, LLC (hereinafter

"NYPE"), a New York Limited Liability Company.

3.    Defendant, DAVID J. MITCHELL (hereinafter "Mitchell), is an adult resident of

New York.

4.     Defendant, BARNETT LIBERMAN (hereinafter "Liberman), is an adult resident

of New York.

5.    Aquarius Owner, LLC is or was a Delaware limited liability company registered to

do business in the State of Nevada in November, 2004, and maintained its registration through

and including approximately November, 2009.

6.    On information and belief, Aquarius Owner LLC was owned and directed by

Mitchell, Liberman, and/or LVLP.

7.    In that context, various real property transfers and ownership equity took place

between LVLP and/or Aquarius Owner, LLC, during the operative time, and on information and

belief, financial distributions and transactions occurred between Aquarius Owner LLC, and its

principals on a recurring basis, most of which were never disclosed in publicly available records

or documents.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

8.      FC/LW Vegas is or was a Delaware limited liability company registered to do business in the State of Nevada in February 2011 which has maintained registration through the present.

9.      FC/LW, LLC, on information and belief, is an entity beneficially and jointly owned and operated by Liberman, Mitchell, LVLP, LIVE WORK, LLC and non-party Forest City Enterprises, for purposes of developing and managing various real property interest in Southern Nevada.

10      In that context, various real property transfers and ownership equity took place between LIVE WORK, LLC and/or FC/LW, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between FC/LV Vegas, LLC, and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

11.      Leah Property, LLC is a Delaware limited liability that first registered to do business in Southern Nevada in approximately February, 2005, and continued to be active and operate in the Southern Nevada area through and including February, 2015.

13.      On information and belief, Leah Property LLC is owned, managed, and operated by Liberman, at all relevant times.

14.      In that context, various real property transfers and ownership equity took place between LVLP and/or Leah Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Leah Property, LLC and its

principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

15.     Live Work LLC is a Delaware limited liability company who first became active in Southern Nevada in or about April, 2005, and in fact was a plaintiff in the original underlying lawsuit with LVLP versus the plaintiffs herein.  Live Work, LLC, on information and belief, continued to be active and operating in Southern Nevada through and including approximately April, 2012.

16.     On information and belief, Live Work, LLC was owned, operated, and managed by Liberman, Mitchell, LVLP, Live Work Manager, LLC, and/or Mitchell Holdings, and was an active.

17.     In that context, various real property transfers and ownership equity took place between LVLP and/or Live Work, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Live Work Manager, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

18.     Livework Manager, LLC was a Delaware Limited Liability that first registered to do business in the State of Nevada in approximately April, 2005, and continued active and in business in Southern Nevada through the present.

19.     Livework Manager, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

20.     In that context, various real property transfers and ownership equity took place between LVLP and/or Live work Manger, LLC, during the operative time, and on information and

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

belief, financial distributions and transactions occurred between Livework Manager, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

21.     Zoe Property, LLC is a Delaware Limited Liability Company that first registered and became active in Southern Nevada in or about November 2004, and in fact was one of the original plaintiffs along with Live Work, LLC and LVLP versus the plaintiffs herein.  On information and belief, Zoe Property, LLC operated and continued to be active in Southern Nevada through approximately November, 2007.

22.     Zoe Property, LLC, was owned, operated and managed by, on information and belief, by Liberman, Mitchell and/or LVLP.

23.     In that context, various real property transfers and ownership equity took place \ \between LVLP and/or Zoe Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Zoe Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

24.     Wink One, LLC is a Delaware limited liability company that registered to do business in the State of Nevada in approximately April, 2008, and remained active, according to Secretary of State records, through and including approximately April, 2009.  Wink One, LLC, on information and belief, was owned, operated and managed by Liberman, Mitchell, and/or LVLP.

25,.     Wink One, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

- 5 -

26.    In that context, various real property transfers and ownership equity took place between LVLP and/or Wink One, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Wink One, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

27.    Casino Coolidge, LLC is a Delaware limited liability company that first registered to do business in Southern Nevada in or about October, 2014.

28.    On information and belief, Casino Coolidge, LLC is owned, operated and managed by Liberman, Mitchell, and/or LVLP.

29.    In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

30.    In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

31.    305 Las Vegas, LLC is a Delaware limited liability company that first registered and qualified to do business in Southern Nevada in approximately April, 2007, and remains active and doing business in Southern Nevada through the present.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

32. On information and belief, 305 Las Vegas, LLC was originally owned, operated and managed by Liberman and/or LVLP.

33. In that context, various real property transfers and ownership equity took place between LVLP, its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals or affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

34. In that context, various real property transfers and ownership equity took place between LVLP and its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals and affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents.

35. On information and belief, unbeknownst to Plaintiffs, in approximately 2012 305 Las Vegas, LLC engaged in an internal transaction resulting in the acquisition of the beneficial interest of Mitchell by a Mr. Win Churchill, and a monetary distribution benefitting Mitchell to the tune of $7.5 million, all of which Plaintiff has only learned at very recent times.

36. On information and belief, MEYER PROPERTY, LTD., is fictitious entity that was involved for a relatively short period of time with LEAH PROPERTY, LLC, and in the context thereof participated in real estate transactions resulting in net financial gain to Leah and/or Liberman, Mitchell, and/or LVLP, the specifics of which financial gains were never disclosed nor reasonably discoverable by Plaintiffs herein.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 7 –

37.    In that context, various real property transfers took place between LVLP and/or Meyer Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Meyer Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in the State of Nevada through the present.

38.    On information and belief, Mitchell Holdings, LLC is a Delaware limited liability company that never qualified to do business within the State of Nevada, but was used by Defendant Mitchell for purposes of owning Mitchell's equity or beneficial interest in various other defendants, and fuddling money back and forth between such entities, in a matter that would not be detectable or readily discoverable by Plaintiffs or other creditors.

39.    In that context, various real property transfers and ownership equity took place between LVLP and/or Mitchell Holdings, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Mitchell Holdings, LLC and its principals on a recurring basis, most of which were  never disclosed in publicly available records or documents, is a Delaware limited liability that first registered to do business in Nevada in approximately February, 2011, and continues to operate and do business, in good standing, through and including this date.

40.    Live Works TIC Successor, LLC, on information and belief, is an entity in which Liberman, Mitchell, and/or Las Vegas Land Holdings had substantial equity or beneficial interest, and was the ultimate recipient of financial proceeds, monies, emoluments and benefits deriving from Live Work TIC Successor LLC, and a tendency and common agreement entered into between Live Work TIC Successor,  LLC and non-party Forest City Enterprises, through

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

contractual and financial arrangements, referred to as the tenancy in common agreement, and numerous subsequent amendments thereto.

   41.  In that context, various real property transfers and ownership equity took place between LVLP and/or Live Works TIC Successor, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Live Works TIC Successor, LLC and its principals on a recurring basis, most of which were never  disclosed in publicly available records or documents..

   42.  Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LW VEGAS, LLC, are believed to be Delaware limited liability companies and/or corporations which have conducted business in the State of Nevada, and are alleged to be owned and/or controlled, in whole or in part by Defendants, LAS VEGAS LAND PARTNERS, LLC, DAVID MITCHELL and BARNET LIBERMAN.

   43.  LVLP, LLC, Mitchell, and Liberman, created the various Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, on information and belief, and used multiple sophisticated counsel for purposes of secreting, hiding, and conveying away valuable assets that were available to satisfy creditors such as Plaintiffs as alleged more specifically hereinafter

(hereinafter referred to as the "Asset Protection Scheme").

44    .That Plaintiffs do not at present know the true names and identities of those Entity Defendants, both corporate and individual, herein joined by fictitious names, but is informed and believes and therefore alleges that said Entity Defendants, are agents, employees, servants and representatives of the named Entity Defendants, or persons and entities acting in concert with the named Entity Defendants with respect to the premises herein plead, who are liable to the Plaintiffs by reason thereof, and the Plaintiffs pray leave to amend this Complaint to insert their true names and identities with appropriate allegations when the same becomes known.

45.    Upon information and belief, part of the Asset Protection Scheme contemplated that the majority of the purported equity interests in the asset protection entities referred to in Paragraph 4 hereinabove be held in the name of LAS VEGAS LAND PARTNERS, LLC, or an associated entity, all of which were and are in reality controlled by DAVID J. MITCHELL and BARNET LIBERMAN.

46.    Upon information and belief, LAS VEGAS LAND PARTNERS, LLC received its equity interests in the asset protection entities gratuitously, or for wholly inadequate consideration.

47.    Upon information and belief, LAS VEGAS LAND PARTNERS, LLC is the nominal holder of the alleged interests, in the entity defendants, and  takes its direction from DAVID J. MITCHELL and BARNET LIBERMAN, in managing and operation in the asset protection entities, which exist merely to help Entity Defendants, DAVID J. MITCHELL and BARNET LIBERMAN  protect the original assets of LAS VEGAS LAND PARTNERS, LLC from creditors such as Plaintiffs.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 10 –

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

48.    Plaintiff is informed and believes, that the Entity Defendants are the recipients of fraudulent transfers of real property, monies, and other valuable assets as hereinafter alleged.

49.    Nype obtained a judgment against LVLP on or about April 10, 2015, and initiated post-judgment collection and discovery efforts during the Summer of 2015.

50    The first post-judgment discovery documentation received by NYPE were various tax returns and limited related information for LVLP, subsequently followed by various bank statements and financial ledger documentation, spanning approximately late August, 2015 through and including November 2015.

51.    Most of the documentation so produced was already stale dated even when produced, for example, the bank statements only being current through early 2014,SAID documentation being produced in late 2015.

52.    While the documentation produced in the latter half of 2015 disclosed some suspicious circumstances and questionable transactions, it became clear that substantial additional source document would be required to flesh out and understand precisely what had occurred.

53.    Based on a preliminary review of the newly disclosed bank statements and ledgers, it was noted that there was a  comingling of funds related to various payments that appear to be made on behalf of other entities.  Although not all of the canceled checks were provided, the bank statements of Las Vegas Land Partners, LLC located at Bates LVLP01-00001 to LVLP 08-00016 are indicative of usage by numerous related party entities.  An example of the comingling can be found at LVLP 07-00047, more specifically checks number 1287, 1288 and 1289 payable to the Clark County Treasurer for parcels that do not appear to be recorded in the name of Las Vegas

JOHN W. MUJE & ASSOCIATES
LAW OFFICES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

Land Partners, LLC and LVLP07-00048 more specifically checks number 1292 and 1293 payable to Delaware Secretary of State to register other entities.

54.     Documents provided labeled lvlp3a, a Las Vegas Land Partners, LLC document consisting of a simple check register covering the period 1/13/11 to 4/27/15 also supports that conclusion with the same date, payee and dollar amount information found on the checks.

55.     A review of the full tax returns of LVLP Holdings, LLC provided at Bates LVLP09-00001 to LVLP17-0064 Forms 1065 for calendar years 2005 to 2013 was first possible in the late fall of 2015 as well. The tax returns are indicative of a combination and consolidation of several related party Limited Liability Companies. The organizational documents located at Bates LVLP18-00001 to LVLP19-00202 indicate that Las Vegas Land Partners, LLC is the single equity member of Wink One, LLC and Livework Manager, LLC (who is the sole equity member of Livework, LLC).

56.     The members of Las Vegas Land Partners, LLC are Barnet Liberman and David Mitchell (Bates LVLP19-00033-35).

57.     There is no explanation for the usage of "LVLP Holdings, LLC" as the filing entity for the tax returns. There are numerous real estate parcels, equity interests and sources of income arising from the various consolidated entities listed on the tax returns of LVLP Holdings, LLC that are not traceable to the ledgers provided by Las Vegas Land Partners, LLC.

58.     Additionally there are numerous known sources of cash flow for example arising from Wink One, LLC related to the RTC Lease that are not traceable to the accounting records.

59.     During the Summer of 2016, NYPE again promulgated detailed specific written discovery requests to LVLP, which requests were partially complied with in the form of additional tax returns and ledger documentation, but mostly objected to.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

60.     NYPE found it necessary to file a Motion to Compel discovery, and an Order resulting from many months of contested discovery disputes was finally entered by the Court on or about February 2, 2017.

61.     Some additional documentation was ultimately produced, after repeated efforts by NYPE, which disclosed additional improprieties, misconduct, and transactions by LVLP and its principals designed to effectively render LVLP insolvent and unable to respond in damages, which transactions will be discussed, in part, hereinafter.

62.     The Order Compelling Discovery of February 2, 2017 has only been partially complied with, and there remain substantial deficiencies and blocks of documentation that could and should have been produced, but have not been, at least as of the date of LVLP's bankruptcy filing.

64.     Even the documents produced from January through March, 2017, are inherently contradictory and do not match the data reported on the tax returns.

64.     As one key example, however, of the importance of having accurate and complete source records, attached hereto as Exhibit "1" and by this reference incorporated herein is a certification by LVLP's New Jersey CPA for the first time disclosing that various affiliated and associated entities are disregarded for tax and accounting purposes, and are all reported through LVLP Holdings, LLC's business tax return.

65.     The partial and incomplete documentation produced between the Fall of 2015, and into 2017, did show extensive co-mingling, a failure to keep separate and adequate accounting records for various affiliates and associated companies, a decided lack of concrete detail, and an absolute failure to account for and explain various cash flow entries.

66.     Given the incomplete documentation produced by defendants, the Plaintiff is unable to determine where LVLP's cash flow is coming from, or where the resulting cash flow is being applied.

67.    On information and belief, the documentation available shows that LVLP, its affiliates and associated entities were shifting money between one entity and the other to pay bills and cover expenses as needed, and not in any coherent or recurring logical form.

68.    The data that has been provided does not match LVLP tax returns, for example failing to disclose substantial income.

69.    Part of the data provided appears to account for, in part, the financial transactions and relationship between LVLP and its joint venture partner (the entity which Nype procured to provide financing for LVLP's projects), Forest City Enterprises.

70.    The data available to date appears to show that arrangements were made with Forest City to utilize LVLP's share of revenue and cash flow to reduce debt and build equity, resulting in an absence of actual cash receipt by LVLP.

71.    Despite what those records are showing, however, the tax returns are wholly silent and fail to disclose the accrual of any imputed income or equity with respect to the Forest City Joint Ventures, despite the fact that the joint venture documents suggest that LVLP's share of revenue is being used to pay down debt and build equity, which would legally result in the accrual of taxable income which the law requires to be accurately reported

72.    Indeed, until the preliminary information was received in the Fall of 2015 as supplemented by the early 2017 production, LVLP, based on the tax returns and documentation it had previously supplied, continued to operate, appeared to have assets, appeared to be paying taxes as accrued, and continued to vigorously defend itself.

73.    One particular item first disclosed in the late Winter of 2017 is a statement by the acknowledged accountant for LVLP that numerous of the other defendant entities herein are "disregarded for tax purposes", meaning, on information and belief, that their revenue and expenses, as well as income and liabilities, while being nominally contained in a separate legal entity, are a practical matter, and as recognized by Federal Taxing Authorities, one and the same as LVLP.  See Exhibit "1".

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

74.    Additional discovery information fleshed out in 2016 and early 2017 includes the fact that LVLP has been effectively insolvent since 2015, despite showing millions of dollars of network on its tax returns, and has been forced to pay its attorneys in both the prior litigation and the present litigation through personal checks and credit cards of Mitchell and/or Liberman, or through affiliate entities.

75.    Much of the newly acquired financial data also disclosed that corporate filing fees for numerous of the defendants herein had been paid, *ad hoc,* from LVLP bank accounts, interchangeably, despite said entities nominally maintaining or claiming separate legal status.

76.    Plaintiffs RUSSELL L. NYPE and the REVENUE PLUS, LLC (hereinafter collectively referred to as "Nype") were Defendants in a case originally initiated by current Defendants, LAS VEGAS LAND PARTNERS, LLC, LIVE WORK, LLC and ZOE PROPERTIES, LLC in the Eighth Judicial District Court in Clark County, Nevada under Case No. A551073, which case commenced on or about November 2, 2007 (hereinafter the "First Case").

77    Nype counterclaimed in that case with regard to his prior business dealings with LAS VEGAS LAND PARTNERS, LLC, its associate entities, and its principals, BARNET LIBERMAN (hereinafter "Liberman") and DAVID J. MITCHELL (hereinafter "Mitchell"), seeking compensation which he had been promised and which he had earned during the course of the parties ongoing business dealings regarding the development of numerous Las Vegas real estate holdings.

78.    On information and belief, during the pendency of those proceedings, and after defaulting on their obligations to Nype, Liberman and Mitchell undertook the process of creating various affiliated and associate entities, including but not limited to several of the asset protection entities as alleged in Paragraph 43 hereinabove, utilizing sophisticated corporate and asset protection counsel.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

79.     After years of protracted litigation, Nype ultimately obtained a judgment against LAS VEGAS LAND PARTNERS, LLC on or about April 10, 2015 in the principal amount of $2,608,797.50.

80.     As alleged hereinabove, upon information and belief, pursuant to the Asset Protection Scheme, on  various dates spanning 2007 through the present,  Defendant LAS VEGAS LAND PARTNERS, LLC commenced multiple real property and equity ownership transfers to convey its valuable real property interests, to one or more the asset protection entities, which asset protection entities continue to hold the subject real property or which have subsequently transferred such to additional entities in which Liberman, Mitchell, and or LVLP hold substantial beneficial interests.

81.     In addition to the numerous real property conveyances alleged hereinabove, and totally unbeknownst to Nype at the time  LAS VEGAS LAND PARTNERS, LLC transferred literally millions of dollars in monies and liquidated funds to its principals, LIBERMAN and MITCHELL, during a time that LAS VEGAS LAND PARTNERS, LLC, knew or reasonably should have known of Nype's substantial monetary claims against it.

82.     The real estate and monetary transfers alleged hereinabove effectively rendered LAS VEGAS LAND PARTNERS insolvent, and unable to pay its debts on a regular basis as they matured, including but not limited to the monies that the Eighth Judicial District Court has determined are owed to Nype.

83.     Upon information and belief, the aforesaid actions of all Defendants were undertaken consciously, knowingly, willfully, and specifically in an effort to defeat and avoid Plaintiffs' rights which were being pursued in the First Case.

84.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LIBERMAN AND MITCHELL** were and are the alter ego of LAS VEGAS LAND PARTNERS, LLC, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

85.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **MEYER PROPERTY, LLC** was and is the alter ego of MEYER PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of MEYER PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of MEYER PROPERTY, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

86.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of ZOE PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of **ZOE PROPERTY, LLC**, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1

2  remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the

3  theoretical separateness of **ZOE PROPERTY, LLC** entity is not disregarded and the said

4  Defendant held liable for all relief being sought herein.

5        87.    Upon information and belief, the Trustee is informed and believes and thereon

6  alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC,**

7  **LIBERMAN and MITCHELL** were and are the alter ego of **LEAH PROPERTY, LLC**, that

8  said Defendants did and still do dominate, influence and control of LEAH PROPERTY, LLC, that

9  there existed and still exists a unity of ownership between them; that the individuality and

10  separateness of each entity was and remains non-existent; that each such entity was and remains a

11  mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and

12  LIBERMAN use and still use to conduct their business affairs; that each such entity is and

13  remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the

14  theoretical separateness of **LEAH PROPERTY, LLC**, if entity is not disregarded and the said

15  Defendant held liable for all relief being sought herein.

16        88.    Upon information and belief, the Trustee is informed and believes and thereon

17  alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC

18  were and are the alter ego of **WINK ONE, LLC,** that said Defendant did and still does dominate,

19  influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists

20  a unity of ownership between them; that the individuality and separateness of each entity was and

21  remains non-existent; that each such entity was and remains a mere shell and naked framework

22  which **WINK ONE, LLC** used and still use to conduct their business affairs; that each such entity

23  is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will

24  result if the theoretical separateness of **WINK ONE, LLC** if entity is not disregarded and the said

25  Defendant held liable for all relief being sought herein

26        89.    Upon information and belief, the Trustee is informed and believes and thereon

27  alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC

28

were and are the alter ego of **LIVE WORK, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness  of **LIVE WORK, LLC** if entity if entity is not disregarded and the said Defendant held liable for all relief being sought herein.

90.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LIVE WORK MANAGER, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK MANAGER, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **LIVE WORK MANAGER, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

91.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants,  LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **AQUARIUS OWNER, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **AQUARIUS OWNER, LLC** used and still use to conduct their business

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

affairs; that each such entity remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **AQUARIUS OWNER, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

92.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LVLP HOLDINGS, LLC**,  that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LVLP HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LVLP HOLDINGS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

93.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **MITCHELL HOLDINGS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **MITCHELL HOLDINGS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness **MITCHELL HOLDINGS, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

94.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned, LAS VEGAS LAND PARTNERS, LLC, is and was the alter ego of **305 LAS VEGAS, LLC**, that LVLP did and still does dominate, influence and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

control of 305 Las Vegas, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; LVLP was and remains a mere shell and naked framework **which 305 LAS VEGAS, LLC,** used and still use to conduct their business affairs; that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

95.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **LIVE WORKS TIC SUCCESSOR, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORKS TIC SUCCESSOR, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

96.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **FC/LV VEGAS, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **FC/LV VEGAS, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

is not disregarded and the said Defendant held liable for all relief being sought herein.

97.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **CASINO COOLIDGE, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **CASINO COOLIDGE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

98.    This New Case is effectively an extension and development of the first litigation, and is an effort by the Trustee  to avoid the wrongful misconduct of Defendants and each of them, in attempting to avoid LVLP's creditor's rights and improperly dissipate the assets of LAS VEGAS LAND PARTNERS, LLC, which were, are, and should be available to satisfy various creditor claims.

## FIRST CLAIM FOR RELIEF

### (Constructive Trust)

99.    The Trustee  incorporates by reference paragraphs 1 through 98  as though fully set forth.

100.    Pursuant to the pending litigation in the First Case,  it was understood that options or equity in various Real Estate parcels owned by LAS VEGAS LAND PARTNERS, LLC in or about 2006, as well as "Choses In Action" such as equity ownership in various affiliated entities would be available to satisfy Plaintiff's judgment.

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

101.    Defendants knew or reasonably should have known, that the subject property interests were valuable, and that the legitimate equity in the subject real property or beneficial ownership of the affiliate entities and limited liability ownership interest would be sufficient to satisfy Nype's claim, but for the fraudulent conveyances alleged herein.

102.    Defendants transferred, hypothecated and encumbered various real property for improper purposes and inadequate consideration.

103.    All of the foregoing facts make it just and equitable that this court impose and declare a constructive trust upon the subject property interest, and any proceeds therefrom, in favor of the Plaintiffs and the Trustee.

104.    The court can and should declare a lien against the subject properties, order the sale thereof, and/or order the payment of all rents or monies received from the subject property to Plaintiffs and the Trustee herein.

105.    It has been necessary for Trustee to retain the services of an attorney to prosecute this action and Plaintiff is therefore entitled to an award of reasonable attorneys' fees

## SECOND CLAIM FOR RELIEF

### (Fraudulent Conveyance)

106.    The Trustee incorporates by reference paragraphs 1 through 105 as though fully set forth.

107.    The Trustee is informed and believes, and on that basis alleges that Defendants have taken numerous actions to avoid satisfying various creditor claims against LAS VEGAS LAND PARTNERS, LLC.

108.    The Trustee alleges on information and belief, that in order to avoid potential execution against real estate interests, *inter alia*, LAS VEGAS LAND PARTNERS, LLC took steps to hypothecate and transfer numerous property interests and valuable interests to the other Defendants herein.

109.    The Trustee is informed and believes, and on that basis alleges that such transfers by Defendants were undertaken in an effort to avoid the adverse financial consequences of Plaintiffs' pending claims, as well as those of other creditors.

110.    The Trustee is informed and believes, and on that basis alleges that the aforementioned transfers were gratuitous, or for inadequate or disguised consideration, made without obligation, and made with an intent to deprive Plaintiff's and other creditors of their ability to recover such funds directly from LAS VEGAS LAND PARTNERS, LLC in connection with the monies owed.

111.    As a result of the aforementioned acts of Defendants, Plaintiffs and the Trustee are entitled to a Judgment against Defendants, jointly and severally, in an amount in excess of $15,000.00.

112.    On or about August 14, 2014, during the course of proceedings initiated to enforce and collect upon the judgment in the First Case, Defendant LAS VEGAS LAND PARTNERS, LLC first provided tax returns and detail financial information which revealed to Nype, for the first time, that it had transferred its interest in numerous real estate parcels, as well as many millions of dollars, to the entity defendants and/or Liberman and Mitchell, during the ongoing pendency of the first case.

113.    In making such transfers, LAS VEGAS LAND PARTNERS, LLC, and Defendants MITCHELL and LIBERMAN have acted with the actual intent to hinder delay and to defraud their creditors, including Nype, but fraudulently transferring assets to insiders and the entity defendants.

114.    The Trustee lacks an adequate remedy at law because, unless the relief sought in this complaint is granted, LAS VEGAS LAND PARTNERS, LLC with the aid of the Defendants herein will have succeeded in fraudulently transferring its assets to insiders and/or related entities, depriving creditors of the opportunity to collect monies due and owing from LAS VEGAS LAND PARTNERS, LLC.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

115.    The Trustee has an high probability of success on the merits in this action.

116.    The aforesaid transfer of assets to insiders and/or the entity defendants was made with actual intent to hinder, delay or defraud creditors, most significantly Nype, and these transfers therefore constitute fraudulent transfers in violation of NRS 112.180.

117.    LAS VEGAS LAND PARTNERS, LLC did not receive reasonably equivalent value for the transfers herein alleged.

118.    LAS VEGAS LAND PARTNERS, LLC and its principals  intended to incur or reasonably should have believed they would incur debts beyond its ability to pay the same as they become due, and thus the transfers at issue are transfers in violation of Nevada law.

119.    Because of the special circumstances of this case, in which LAS VEGAS LAND PARTNERS, LLC is liable for a judgment it has consistently ignored and avoided, having committed fraud to avoid the judgment and its debts, and the hiding assets, and also constituting a risk of further affirmative frustration of valid efforts by Nype and other creditors to collect upon their claims, the Trustee is entitled to:

(1)    The appointment of receiver to take possession of the assets of LVLP, LLC;

(2)    An injunction against further dissipation, disposition, or assignment of any and all assets and property owned by LAS VEGAS LAND PARTNERS, LLC:

(3)    Any other relief that the circumstances may require, including a declaration that the transfers in question are void, and that the assets in question are subject to execution by Nype.

120.    It has been necessary for Trustee to retain the services of an attorney to prosecute this action, and Trustee is, therefore, entitled to reasonable attorneys' fees.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

## THIRD CLAIM FOR RELIEF

### (Civil Conspiracy)

121.    The Trustee incorporates by reference paragraphs 1 through 120 as though fully set forth.

122    As alleged hereinabove, and upon information and belief, the transfer of the subject real estate and substantial monetary amounts  were undertaken by Defendants with full knowledge as to the relevant circumstances and in an effort to participate in transactions in derogation of the rights of creditors.

123.    The knowing and willful conduct of the entity Defendants in agreeing to receive the subject real property and act as a nominee for said LAS VEGAS LAND PARTNERS. LLC, LIBERMAN and MITCHELL constitute acts of civil conspiracy.

124.    The Defendants, and each of them worked together in concerted actions with the intent to accomplish an unlawful purpose, vis a vis Plaintiffs and other creditors.

125.    The purpose of the unlawful, concerted actions of Defendants was intended to, or would likely result in direct harm to the creditors of LVLP.

126.    As a direct and proximate result of the aforesaid civil conspiracy, undertaken between the Defendants, Plaintiffs and the Trustee have been damaged in an amount in excess of $15,000.00.

127.    As alleged hereinabove, upon information and belief, Defendants' conduct was willful, knowing, intentional, and malicious, as a matter of law, entitling Plaintiffs and the Trustee to recover exemplary damages in an amount in excess of $15,000.00.

128.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorneys' fees.

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES

1840 E. SAHARA AVE #106
LAS VEGAS, NEVADA 89104
Phone (702) 386-7002    Fax: (702) 386-9135

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

129.    The Trustee incorporates by references Paragraphs 1 through 128 as though fully set forth herein.

130.    A true and ripe controversy exists as to the dispute, and declaratory relief pursuant to NRS 30.040 is necessary to declare the respective rights, responsibilities, and obligations between the parties as a consequence of Plaintiffs' judgment against LAS VEGAS LAND PARTNERS, LLC, and as relates to the various transactions undertaken by Defendants, including but not limited to transactions involving various parcels of valuable Las Vegas Real Estate.

131.    For all of the reasons set forth hereinabove, Defendants have acted wrongfully and in violation of its creditors', and a direct declaration as to the invalidity of Defendants' transfers, and such should be determined and declared by the court.

132.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

## FIFTH CLAIM FOR RELIEF

### (Alter Ego)

133.    Plaintiff incorporates by references Paragraphs 1 through 132 as though fully set forth herein.

134.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIAS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, CASINO COOLIDGE, LLC, and each of them, were and remain the alter-egos of each other; that said Defendants did and still do dominate, influence and control each other; that there existed and still exists a unity of ownership between them; that the individuality and

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1

2  separateness of each entity was and remains non-existent; that each such entity was and remains a

3  mere shell and naked framework which the other Defendants used and still use to conduct their

4  business affairs; that each such entity is and remains inadequately capitalized; and that an injustice

5  and fraud upon creditors will result if the theoretical separateness of the Defendant entities is not

6  disregarded and each such Defendant held liable for all relief being sought herein.

7      135.    Upon information and belief, to the extent that one or more of the Defendant

8  entities is nominally owned or operated by or through LAS VEGAS LAND PARTNERS, LLC, or

9  Defendants LIBERMAN or MITCHELL with respect to one or more of the Defendant entities, which

10 entities as a practical matter exist with functional unity of ownership in said LAS VEGAS LAND

11 PARTNERS, LLC or Defendants LIBERMAN or MITCHELL, the true and factual individuality and

12 separateness of each such entity was and remains non-existent; each such entity was and remains a

13 mere shell and naked framework, which LAS VEGAS LAND PARTNERS, LLC and Defendants

14 LIBERMAN or MITCHELL  utilize, through the offices of said Defendants LAS VEGAS LAND

15 PARTNERS, LLC, LIBERMAN or MITCHELL and/or through nominees and others to conduct their

16 business affairs.   Each such entity is, upon information and belief, merely another nominal

17 manifestation of the business and  financial affairs of LAS VEGAS LAND PARTNERS, LLC and

18 the Defendants LIBERMAN or MITCHELL, and to recognize any such separate entity would work

19 as separate and distinct from LAS VEGAS LAND PARTNERS, LLC and Defendants LIBERMAN

20 or MITCHELL, an injustice and fraud upon creditors, to the extent the theoretical or putative

21 separateness of such entity is not disregarded and said nominal Defendants held liable for all the relief

22 being sought herein.

23      136.    As a matter of both statutory common law, and prior declarations of the Eighth

24 Judicial District Court, it is appropriate that the Court further determine and declare that all of the

25 aforesaid entities be held to be the Alter Egos of  LAS VEGAS LAND PARTNERS, LLC and of

26 Defendants LIBERMAN or MITCHELL, and that therefore the various Defendants named herein can

27

28

and should be jointly and severely liable to the Plaintiffs and Trustee with regard to all claims asserted.

137.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

**WHEREFORE,** Plaintiff prays for judgment against Defendants and each of them as follows:

1.    For a sum in excess of $15,000.00;

2.    For exemplary damages in an amount in excess of $10,000.00;

3.    For the imposition of a constructive trust upon the various parcels of real property and valuable equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC for the benefit of Plaintiff;

4.    For an order requiring the sale of the parcels of real estate and valuble ownership interest and an order directing the payment of all rents with regard to the subject real property be made to the order of the Trustee herein;

5.    For the Appointment of a Receiver;

6.    For interest upon all damages which Plaintiffs and the Trustee recovers at the Nevada Statutory rate.

7.    For a declaration as to the invalidity of Defendants' transactions as regards to the various valuable real estate interests and equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC;

8.    For a determination that the Defendants are the alter egos of each other , and should all be held liable to Plaintiff, jointly and severally, for the damages sought herein.

9.    For a declaration that the actions by LAS VEGAS LAND PARTNERS, LLC, in conjunction with the Defendants herein, to convey valuable property and monies to other Defendants with the intent to deprive creditors of their ability to recover funds was undertaking in a knowing, willful, intentional, and malicious manner, which

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 29 –

under Nevada law constitute malice and is sufficient grounds to invoke the availability of exemplary damages against Defendants, and each of them.

10.     As a consequence of the willful malicious and intentional misconduct of the Defendants and each of them, Plaintiffs and the Trustee are entitled to recover exemplary damages from each Defendant in accordance with Nevada Law, in an amount in excess of $15,000.00, the precise amount to be proven at time of trial.

11.     For reasonable attorneys' fees for the prosecution of this suit; and

12      For such other and further relief as the Court may deem just and proper.

DATED this ___ day of November, 2019.

JOHN W. MUIJE & ASSOCIATES

By: _____

JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:     (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Trustee*

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 30 –

under Nevada law constitute malice and is sufficient grounds to invoke the availability of exemplary damages against Defendants, and each of them.

10. As a consequence of the willful malicious and intentional misconduct of the Defendants and each of them, Plaintiffs and the Trustee are entitled to recover exemplary damages from each Defendant in accordance with Nevada Law, in an amount in excess of $15,000.00, the precise amount to be proven at time of trial.

11. For reasonable attorneys' fees for the prosecution of this suit; and

12 For such other and further relief as the Court may deem just and proper.

DATED this ___ day of November, 2019.

JOHN W. MUIJE & ASSOCIATES


By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:     (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiff-in-Intervention*

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

# EXHIBIT B

Electronically Filed
11/18/2019 11:21 AM
Steven D. Grierson
CLERK OF THE COURT

1  **ORDR**
2  JOHN W. MUIJE & ASSOCIATES
   JOHN W. MUIJE, ESQ.
3  Nevada Bar No: 2419
   1840 East Sahara Avenue, Suite 106
4  Las Vegas, NV 89104
   Telephone No:  (702) 386-7002
5  Facsimile No:  (702) 386-9135
6  Email: Jmuije@muijelawoffice.com
   *Attorneys for Proposed Plaintiff- In-Intervention*
7  SHELLEY D, KROHN

8                       DISTRICT COURT

9                 CLARK COUNTY, NEVADA

10

11  RUSSELL L. NYPE AND REVENUS PLUS,     |  CASE NO:  A-16-740689-B
    LLC
12                                         |  DEPT NO:  XI
                              Plaintiffs,
13
                        vs.
14  DAVID J. MITCHELL; BARNET LIBERMAN; LAS
15  VEGAS LAND PARTNERS, LLC; MEYER          |  **Date of Hearing:**  Nov. 18, 2019
    PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH
16  PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, |  **Time of Hearing:**  9:00 a.m.
    LLC; LIVE WORK MANAGER, LLC; AQUARIUS
17  OWNER, LLC; LVLP HOLDINGS, LLC;
    MITCHELL HOLDINGS, LLC; LIBERMAN
18  HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE
    WORKS TIC SUCCESSOR, LLC; CASINO
19  COOLIDGE LLC; DOES I through III, and ROE
    CORPORATIONS I through III, inclusive,
20
21                     Mitchell Defendants.
22

23        <u>**ORDER GRANTING TRUSTEE'S MOTION TO INTERVENE**</u>

24        This matter came on for hearing on Trustee's Motion to Intervene on the time and date

25  noted above.  JOHN W. MUIJE, ESQ., of the Law Firm of JOHN W. MUIJE & ASSOCIATES,

26  appearing on behalf of Proposed Plaintiff-In-Intervention, SHELLEY D, KROHN.

27

28  . . . .

JOHN W. MUIJE & ASSOCIATES
1840 E. Sahara Ave. #106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Email: Jmuije@muijelawoffice.com

                              1

1    **IT IS HEREBY ORDERD, ADJUDGED AND DECREED,** that Proposed Plaintiff-In-

2   Intervention, SHELLEY D. KROHN's, Motion to Intervene be and the same is hereby

3   **GRANTED.**

4          DATED this 18th day of _Nav._, 2019

5

6

7

8

9                                    DISTRICT JUDGE

10

11  Submitted by:

12  JOHN W. MUIJE & ASSOCIATES

13

14

15  BY:

16         JOHN W. MUIJE, ESQ.
          Nevada Bar No: 2419
17         1840 East Sahara Avenue, Suite 106
          Las Vegas, NV 89104
18         Telephone No:   (702) 386-7002
19         Facsimile No:   (702) 386-9135
          Email: Jmuije@muijelawoffice.com
20         *Attorneys for Proposed Plaintiff- In-*
          *Intervention SHELLEY D, KROHN*
21

22

23

24

25

26

27

28

2

# EXHIBIT C

Electronically Filed
11/18/2019 12:06 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
JOHN W. MUIJE & ASSOCIATES
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 East Sahara Avenue, Suite 106
Las Vegas, Nevada 89104
Telephone: 702-386-7002
Facsimile: 702-386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiff-in-Intervention*

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

# DISTRICT COURT
## CLARK COUNTY, NEVADA

RUSSELL L. NYPE AND REVENUS PLUS, LLC

Plaintiffs,

vs.

DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I through III, and ROE CORPORATIONS I through III, inclusive,

Mitchell Defendants.

_____

SHELLEY D. KROHN, U.S. BANKRUPTCY TRUSTEE

Proposed Plaintiff-In-Intervention

CASE NO:    A-16-740689-B

DEPT. NO:    XI

**COMPLAINT IN INTERVENTION FOR:**

1. **CONSTRUCTIVE TRUST;**
2. **FRAUDULENT CONVEYANCE;**
3. **CONSPIRACY TO DEFRAUD;**
4. **DECLARATORY RELIEF; AND**
5. **ALTER EGO**

**ARBITRATION EXEMPT (EQUITABLE RELIEF)**

COMES NOW, SHELLEY D. KROHN, U.S. Bankruptcy Trustee (hereinafter referred to as "TRUSTEE"), and as and for causes of action against the Defendants, DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC;

WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC;

LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC

SUCCESSOR, LLC; FC/LW VEGAS, LLC; CASINO COOLIDGE LLC, alleges and shows as follows:

### GENERAL FACTUAL ALLEGATIONS

1.      The Trustee was duly appointed to act as the Trustee in the Bankruptcy Case of

Las Vegas Land Partners, LLC, Case No. BK-19-15333-mkn (hereinafter referred to as

"TRUSTEE").

2.      Plaintiffs, RUSSELL L. NYPE and REVENUE PLUS, LLC (hereinafter

"NYPE"), a New York Limited Liability Company.

3.      Defendant, DAVID J. MITCHELL (hereinafter "Mitchell), is an adult resident of

New York.

4.       Defendant, BARNETT LIBERMAN (hereinafter "Liberman), is an adult resident

of New York.

5.      Aquarius Owner, LLC is or was a Delaware limited liability company registered to

do business in the State of Nevada in November, 2004, and maintained its registration through

and including approximately November, 2009.

6.      On information and belief, Aquarius Owner LLC was owned and directed by

Mitchell, Liberman, and/or LVLP.

7.      In that context, various real property transfers and ownership equity took place

between LVLP and/or Aquarius Owner, LLC, during the operative time, and on information and

belief, financial distributions and transactions occurred between Aquarius Owner LLC, and its

principals on a recurring basis, most of which were never disclosed in publicly available records

or documents.

8.    FC/LW Vegas is or was a Delaware limited liability company registered to do business in the State of Nevada in February 2011 which has maintained registration through the present.

9.    FC/LW, LLC, on information and belief, is an entity beneficially and jointly owned and operated by Liberman, Mitchell, LVLP, LIVE WORK, LLC and non-party Forest City Enterprises, for purposes of developing and managing various real property interest in Southern Nevada.

10    In that context, various real property transfers and ownership equity took place between LIVE WORK, LLC and/or FC/LW, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between FC/LV Vegas, LLC, and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

11.    Leah Property, LLC is a Delaware limited liability that first registered to do business in Southern Nevada in approximately February, 2005, and continued to be active and operate in the Southern Nevada area through and including February, 2015.

13.    On information and belief, Leah Property LLC is owned, managed, and operated by Liberman, at all relevant times.

14.    In that context, various real property transfers and ownership equity took place between LVLP and/or Leah Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Leah Property, LLC and its

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 3 –

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

15.    Live Work LLC is a Delaware limited liability company who first became active in Southern Nevada in or about April, 2005, and in fact was a plaintiff in the original underlying lawsuit with LVLP versus the plaintiffs herein.  Live Work, LLC, on information and belief, continued to be active and operating in Southern Nevada through and including approximately April, 2012.

16.    On information and belief, Live Work, LLC was owned, operated, and managed by Liberman, Mitchell, LVLP, Live Work Manager, LLC, and/or Mitchell Holdings, and was an active.

17.    In that context, various real property transfers and ownership equity took place between LVLP and/or Live Work, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Live Work Manager, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

18.    Livework Manager, LLC was a Delaware Limited Liability that first registered to do business in the State of Nevada in approximately April, 2005, and continued active and in business in Southern Nevada through the present.

19.    Livework Manager, LLC was owned, operated and managed by, on information and belief, by Liberman, Mitchell, and/or LVLP.

20.    In that context, various real property transfers and ownership equity took place between LVLP and/or Live work Manger, LLC, during the operative time, and on information and

belief, financial distributions and transactions occurred between Livework Manager, LLC and its

principals on a recurring basis, most of which were never disclosed in publicly available records

or documents.

     21.    Zoe Property, LLC is a Delaware Limited Liability Company that first registered

and became active in Southern Nevada in or about November 2004, and in fact was one of the

original plaintiffs along with Live Work, LLC and LVLP versus the plaintiffs herein.  On

information and belief, Zoe Property, LLC operated and continued to be active in Southern

Nevada through approximately November, 2007.

     22.    Zoe Property, LLC, was owned, operated and managed by, on information and

belief, by Liberman, Mitchell and/or LVLP.

     23.    In that context, various real property transfers and ownership equity took place \

\between LVLP and/or Zoe Property, LLC, during the operative time, and on information and

belief, financial distributions and transactions occurred between Zoe Property, LLC and its

principals on a recurring basis, most of which were never disclosed in publicly available records

or documents.

     24.    Wink One, LLC is a Delaware limited liability company that registered to do

business in the State of Nevada in approximately April, 2008, and remained active, according to

Secretary of State records, through and including approximately April, 2009.  Wink One, LLC, on

information and belief, was owned, operated and managed by Liberman, Mitchell, and/or LVLP.

     25,.    Wink One, LLC was owned, operated and managed by, on information and belief,

by Liberman, Mitchell, and/or LVLP.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

26.     In that context, various real property transfers and ownership equity took place between LVLP and/or Wink One, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Wink One, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents..

27.     Casino Coolidge, LLC is a Delaware limited liability company that first registered to do business in Southern Nevada in or about October, 2014.

28.     On information and belief, Casino Coolidge, LLC is owned, operated and managed by Liberman, Mitchell, and/or LVLP.

29.     In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

30.     In that context, various real property transfers and ownership equity took place between LVLP and/or Casino Coolidge, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Casino Coolidge, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents.

31.     305 Las Vegas, LLC is a Delaware limited liability company that first registered and qualified to do business in Southern Nevada in approximately April, 2007, and remains active and doing business in Southern Nevada through the present.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

32.    On information and belief, 305 Las Vegas, LLC was originally owned, operated and managed by Liberman and/or LVLP.

33.    In that context, various real property transfers and ownership equity took place between LVLP, its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals or affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in Southern Nevada through the present.

34.    In that context, various real property transfers and ownership equity took place between LVLP and its affiliates and/or 305 Las Vegas, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between 305 Las Vegas, LLC, LVLP and its principals and affiliates on a recurring basis, most of which were never disclosed in publicly available records or documents.

35.    On information and belief, unbeknownst to Plaintiffs, in approximately 2012 305 Las Vegas, LLC engaged in an internal transaction resulting in the acquisition of the beneficial interest of Mitchell by a Mr. Win Churchill, and a monetary distribution benefitting Mitchell to the tune of $7.5 million, all of which Plaintiff has only learned at very recent times.

36.    On information and belief, MEYER PROPERTY, LTD., is fictitious entity that was involved for a relatively short period of time with LEAH PROPERTY, LLC, and in the context thereof participated in real estate transactions resulting in net financial gain to Leah and/or Liberman, Mitchell, and/or LVLP, the specifics of which financial gains were never disclosed nor reasonably discoverable by Plaintiffs herein.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

37.    In that context, various real property transfers took place between LVLP and/or Meyer Property, LLC, during the operative time, and on information and belief, financial distributions and transactions occurred between Meyer Property, LLC and its principals on a recurring basis, most of which were never disclosed in publicly available records or documents and continues to operate and be active in the State of Nevada through the present.

38.    On information and belief, Mitchell Holdings, LLC is a Delaware limited liability company that never qualified to do business within the State of Nevada, but was used by Defendant Mitchell for purposes of owning Mitchell's equity or beneficial interest in various other defendants, and fuddling money back and forth between such entities, in a matter that would not be detectable or readily discoverable by Plaintiffs or other creditors.

39.    In that context, various real property transfers and ownership equity took place between LVLP and/or Mitchell Holdings, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Mitchell Holdings, LLC and its principals on a recurring basis, most of which were  never disclosed in publicly available records or documents, is a Delaware limited liability that first registered to do business in Nevada in approximately February, 2011, and continues to operate and do business, in good standing, through and including this date.

40.    Live Works TIC Successor, LLC, on information and belief, is an entity in which Liberman, Mitchell, and/or Las Vegas Land Holdings had substantial equity or beneficial interest, and was the ultimate recipient of financial proceeds, monies, emoluments and benefits deriving from Live Work TIC Successor LLC, and a tendency and common agreement entered into between Live Work TIC Successor,  LLC and non-party Forest City Enterprises, through

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

contractual and financial arrangements, referred to as the tenancy in common agreement, and numerous subsequent amendments thereto.

41.     In that context, various real property transfers and ownership equity took place between LVLP and/or Live Works TIC Successor, LLC during the operative time, and on information and belief, financial distributions and transactions occurred between Live Works TIC Successor, LLC and its principals on a recurring basis, most of which were never  disclosed in publicly available records or documents..

42.     Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LW VEGAS, LLC, are believed to be Delaware limited liability companies and/or corporations which have conducted business in the State of Nevada, and are alleged to be owned and/or controlled, in whole or in part by Defendants, LAS VEGAS LAND PARTNERS, LLC, DAVID MITCHELL and BARNET LIBERMAN.

43.     LVLP, LLC, Mitchell, and Liberman, created the various Entity Defendants, MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, on information and belief, and used multiple sophisticated counsel for purposes of secreting, hiding, and conveying away valuable assets that were available to satisfy creditors such as Plaintiffs as alleged more specifically hereinafter

(hereinafter referred to as the "Asset Protection Scheme").

44.    .That Plaintiffs do not at present know the true names and identities of those Entity Defendants, both corporate and individual, herein joined by fictitious names, but is informed and believes and therefore alleges that said Entity Defendants, are agents, employees, servants and representatives of the named Entity Defendants, or persons and entities acting in concert with the named Entity Defendants with respect to the premises herein plead, who are liable to the Plaintiffs by reason thereof, and the Plaintiffs pray leave to amend this Complaint to insert their true names and identities with appropriate allegations when the same becomes known.

45.    Upon information and belief, part of the Asset Protection Scheme contemplated that the majority of the purported equity interests in the asset protection entities referred to in Paragraph 4 hereinabove be held in the name of LAS VEGAS LAND PARTNERS, LLC, or an associated entity, all of which were and are in reality controlled by DAVID J. MITCHELL and BARNET LIBERMAN.

46.    Upon information and belief, LAS VEGAS LAND PARTNERS, LLC received its equity interests in the asset protection entities gratuitously, or for wholly inadequate consideration.

47.    Upon information and belief, LAS VEGAS LAND PARTNERS, LLC is the nominal holder of the alleged interests, in the entity defendants, and  takes its direction from DAVID J. MITCHELL and BARNET LIBERMAN, in managing and operation in the asset protection entities, which exist merely to help Entity Defendants, DAVID J. MITCHELL and BARNET LIBERMAN  protect the original assets of LAS VEGAS LAND PARTNERS, LLC from creditors such as Plaintiffs.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

- 10 -

48.    Plaintiff is informed and believes, that the Entity Defendants are the recipients of fraudulent transfers of real property, monies, and other valuable assets as hereinafter alleged.

49.    Nype obtained a judgment against LVLP on or about April 10, 2015, and initiated post-judgment collection and discovery efforts during the Summer of 2015.

50    The first post-judgment discovery documentation received by NYPE were various tax returns and limited related information for LVLP, subsequently followed by various bank statements and financial ledger documentation, spanning approximately late August, 2015 through and including November 2015.

51.    Most of the documentation so produced was already stale dated even when produced, for example, the bank statements only being current through early 2014,SAID documentation being produced in late 2015.

52.    While the documentation produced in the latter half of 2015 disclosed some suspicious circumstances and questionable transactions, it became clear that substantial additional source document would be required to flesh out and understand precisely what had occurred.

53.    Based on a preliminary review of the newly disclosed bank statements and ledgers, it was noted that there was a comingling of funds related to various payments that appear to be made on behalf of other entities.  Although not all of the canceled checks were provided, the bank statements of Las Vegas Land Partners, LLC located at Bates LVLP01-00001 to LVLP 08-00016 are indicative of usage by numerous related party entities.  An example of the comingling can be found at LVLP 07-00047, more specifically checks number 1287, 1288 and 1289 payable to the Clark County Treasurer for parcels that do not appear to be recorded in the name of Las Vegas

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

Land Partners, LLC and LVLP07-00048 more specifically checks number 1292 and 1293 payable to Delaware Secretary of State to register other entities.

54.    Documents provided labeled lvlp3a, a Las Vegas Land Partners, LLC document consisting of a simple check register covering the period 1/13/11 to 4/27/15 also supports that conclusion with the same date, payee and dollar amount information found on the checks.

58.    A review of the full tax returns of LVLP Holdings, LLC provided at Bates LVLP09-00001 to LVLP17-0064 Forms 1065 for calendar years 2005 to 2013 was first possible in the late fall of 2015 as well. The tax returns are indicative of a combination and consolidation of several related party Limited Liability Companies.  The organizational documents located at Bates LVLP18-00001 to LVLP19-00202 indicate that Las Vegas Land Partners, LLC is the single equity member of Wink One, LLC and Livework Manager, LLC (who is the sole equity member of Livework, LLC).

56.    The members of Las Vegas Land Partners, LLC are Barnet Liberman and David Mitchell (Bates LVLP19-00033-35).

57.    There is no explanation for the usage of "LVLP Holdings, LLC" as the filing entity for the tax returns. There are numerous real estate parcels, equity interests and sources of income arising from the various consolidated entities listed on the tax returns of LVLP Holdings, LLC that are not traceable to the ledgers provided by Las Vegas Land Partners, LLC.

58.    Additionally there are numerous known sources of cash flow for example arising from Wink One, LLC related to the RTC Lease that are not traceable to the accounting records.

59.    During the Summer of 2016, NYPE again promulgated detailed specific written discovery requests to LVLP, which requests were partially complied with in the form of additional tax returns and ledger documentation, but mostly objected to.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

60.    NYPE found it necessary to file a Motion to Compel discovery, and an Order resulting from many months of contested discovery disputes was finally entered by the Court on or about February 2, 2017.

61.    Some additional documentation was ultimately produced, after repeated efforts by NYPE, which disclosed additional improprieties, misconduct, and transactions by LVLP and its principals designed to effectively render LVLP insolvent and unable to respond in damages, which transactions will be discussed, in part, hereinafter.

62.    The Order Compelling Discovery of February 2, 2017 has only been partially complied with, and there remain substantial deficiencies and blocks of documentation that could and should have been produced, but have not been, at least as of the date of LVLP's bankruptcy filing.

64.    Even the documents produced from January through March, 2017, are inherently contradictory and <u>do not</u> match the data reported on the tax returns.

64.    As one key example, however, of the importance of having accurate and complete source records, attached hereto as Exhibit "1" and by this reference incorporated herein is a certification by LVLP's New Jersey CPA <u>for the first time</u> disclosing that various affiliated and associated entities are disregarded for tax and accounting purposes, and are all reported through LVLP Holdings, LLC's business tax return.

65.    The partial and incomplete documentation produced between the Fall of 2015, and into 2017, did show extensive co-mingling, a failure to keep separate and adequate accounting records for various affiliates and associated companies, a decided lack of concrete detail, and an absolute failure to account for and explain various cash flow entries.

66.    Given the incomplete documentation produced by defendants, the Plaintiff is unable to determine where LVLP's cash flow is coming from, or where the resulting cash flow is being applied.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

LAW OFFICES

JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

67.     On information and belief, the documentation available shows that LVLP, its affiliates and associated entities were shifting money between one entity and the other to pay bills and cover expenses as needed, and not in any coherent or recurring logical form.

68.     The data that has been provided does not match LVLP tax returns, for example failing to disclose substantial income.

69.     Part of the data provided appears to account for, in part, the financial transactions and relationship between LVLP and its joint venture partner (the entity which Nype procured to provide financing for LVLP's projects), Forest City Enterprises.

70.     The data available to date appears to show that arrangements were made with Forest City to utilize LVLP's share of revenue and cash flow to reduce debt and build equity, resulting in an absence of actual cash receipt by LVLP.

71.     Despite what those records are showing, however, the tax returns are wholly silent and fail to disclose the accrual of any imputed income or equity with respect to the Forest City Joint Ventures, despite the fact that the joint venture documents suggest that LVLP's share of revenue is being used to pay down debt and build equity, which would legally result in the accrual of taxable income which the law requires to be accurately reported

72.     Indeed, until the preliminary information was received in the Fall of 2015 as supplemented by the early 2017 production, LVLP, based on the tax returns and documentation it had previously supplied, continued to operate, appeared to have assets, appeared to be paying taxes as accrued, and continued to vigorously defend itself.

73.     One particular item first disclosed in the late Winter of 2017 is a statement by the acknowledged accountant for LVLP that numerous of the other defendant entities herein are "disregarded for tax purposes", meaning, on information and belief, that their revenue and expenses, as well as income and liabilities, while being nominally contained in a separate legal entity, are a practical matter, and as recognized by Federal Taxing Authorities, one and the same as LVLP.  See Exhibit "1".

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

74.    Additional discovery information fleshed out in 2016 and early 2017 includes the fact that LVLP has been effectively insolvent since 2015, despite showing millions of dollars of network on its tax returns, and has been forced to pay its attorneys in both the prior litigation and the present litigation through personal checks and credit cards of Mitchell and/or Liberman, or through affiliate entities.

75.    Much of the newly acquired financial data also disclosed that corporate filing fees for numerous of the defendants herein had been paid, *ad hoc,* from LVLP bank accounts, interchangeably, despite said entities nominally maintaining or claiming separate legal status.

76.    Plaintiffs RUSSELL L. NYPE and the REVENUE PLUS, LLC (hereinafter collectively referred to as "Nype") were Defendants in a case originally initiated by current Defendants, LAS VEGAS LAND PARTNERS, LLC, LIVE WORK, LLC and ZOE PROPERTIES, LLC in the Eighth Judicial District Court in Clark County, Nevada under Case No. A551073, which case commenced on or about November 2, 2007 (hereinafter the "First Case").

77    Nype counterclaimed in that case with regard to his prior business dealings with LAS VEGAS LAND PARTNERS, LLC, its associate entities, and its principals, BARNET LIBERMAN (hereinafter "Liberman") and DAVID J. MITCHELL (hereinafter "Mitchell"), seeking compensation which he had been promised and which he had earned during the course of the parties ongoing business dealings regarding the development of numerous Las Vegas real estate holdings.

78.    On information and belief, during the pendency of those proceedings, and after defaulting on their obligations to Nype, Liberman and Mitchell undertook the process of creating various affiliated and associate entities, including but not limited to several of the asset protection entities as alleged in Paragraph 43 hereinabove, utilizing sophisticated corporate and asset protection counsel.

79.     After years of protracted litigation, Nype ultimately obtained a judgment against LAS VEGAS LAND PARTNERS, LLC on or about April 10, 2015 in the principal amount of $2,608,797.50.

80.     As alleged hereinabove, upon information and belief, pursuant to the Asset Protection Scheme, on various dates spanning 2007 through the present, Defendant LAS VEGAS LAND PARTNERS, LLC commenced multiple real property and equity ownership transfers to convey its valuable real property interests, to one or more the asset protection entities, which asset protection entities continue to hold the subject real property or which have subsequently transferred such to additional entities in which Liberman, Mitchell, and or LVLP hold substantial beneficial interests.

81.     In addition to the numerous real property conveyances alleged hereinabove, and totally unbeknownst to Nype at the time LAS VEGAS LAND PARTNERS, LLC transferred literally millions of dollars in monies and liquidated funds to its principals, LIBERMAN and MITCHELL, during a time that LAS VEGAS LAND PARTNERS, LLC, knew or reasonably should have known of Nype's substantial monetary claims against it.

82.     The real estate and monetary transfers alleged hereinabove effectively rendered LAS VEGAS LAND PARTNERS insolvent, and unable to pay its debts on a regular basis as they matured, including but not limited to the monies that the Eighth Judicial District Court has determined are owed to Nype.

83.     Upon information and belief, the aforesaid actions of all Defendants were undertaken consciously, knowingly, willfully, and specifically in an effort to defeat and avoid Plaintiffs' rights which were being pursued in the First Case.

84.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LIBERMAN AND MITCHELL** were and are the alter ego of LAS VEGAS LAND PARTNERS, LLC, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and

LAW OFFICES

**JOHN W. MUIJE & ASSOCIATES**

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

- 16 -

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA  89104
Phone: (702) 386-7002    Fax: (702) 386-9135

still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

85.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **MEYER PROPERTY, LLC** was and is the alter ego of MEYER PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of MEYER PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of MEYER PROPERTY, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

86.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of ZOE PROPERTY, LLC, that said Defendants did and still do dominate, influence and control of **ZOE PROPERTY, LLC**, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN used and still use to conduct their business affairs; that each such entity is and

remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **ZOE PROPERTY, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

87.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, **LAS VEGAS LAND PARTNERS, LLC, LIBERMAN and MITCHELL** were and are the alter ego of **LEAH PROPERTY, LLC**, that said Defendants did and still do dominate, influence and control of LEAH PROPERTY, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which LAS VEGAS LAND PARTNERS, LLC, MITCHELL and LIBERMAN use and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **LEAH PROPERTY, LLC**, if entity is not disregarded and the said Defendant held liable for all relief being sought herein.

88.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **WINK ONE, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **WINK ONE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **WINK ONE, LLC** if entity is not disregarded and the said Defendant held liable for all relief being sought herein

89.     Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

were and are the alter ego of **LIVE WORK, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness  of **LIVE WORK, LLC** if entity if entity is not disregarded and the said Defendant held liable for all relief being sought herein.

90.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC were and are the alter ego of **LIVE WORK MANAGER, LLC,** that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **LIVE WORK MANAGER, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of **LIVE WORK MANAGER, LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

91.    Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants,  LAS VEGAS LAND PARTNERS, LLC, was and are the alter ego of **AQUARIUS OWNER, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **AQUARIUS OWNER, LLC** used and still use to conduct their business

LAW OFFICES

JOHN W. MUJE & ASSOCIATES

1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 19 –

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1

2  affairs; that each such entity remains inadequately capitalized; and that an injustice and fraud upon

3  the Trustee will result if the theoretical separateness of **AQUARIUS OWNER, LLC** entity is not

4  disregarded and the said Defendant held liable for all relief being sought herein.

5      92.    Upon information and belief, the Trustee is informed and believes and thereon

6  alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC

7  were and are the alter ego of **LVLP HOLDINGS, LLC**,  that said Defendant did and still does

8  dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and

9  still exists a unity of ownership between them; that the individuality and separateness of each

10  entity was and remains non-existent; that each such entity was and remains a mere shell and naked

11  framework which **LVLP HOLDINGS, LLC** used and still use to conduct their business affairs;

12  that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon

13  the Trustee will result if the theoretical separateness of LVLP HOLDINGS, LLC entity is not

14  disregarded and the said Defendant held liable for all relief being sought herein.

15      93.    Upon information and belief, the Trustee is informed and believes and thereon

16  alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC,

17  were and are the alter ego of **MITCHELL HOLDINGS, LLC**, that said Defendant did and still

18  does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there

19  existed and still exists a unity of ownership between them; that the individuality and separateness

20  of each entity was and remains non-existent; that each such entity was and remains a mere shell

21  and naked framework which **MITCHELL HOLDINGS, LLC** used and still use to conduct their

22  business affairs; that each such entity is and remains inadequately capitalized; and that an injustice

23  and fraud upon the Trustee will result if the theoretical separateness **MITCHELL HOLDINGS,**

24  **LLC** entity is not disregarded and the said Defendant held liable for all relief being sought herein.

25      94.    Upon information and belief, the Trustee is informed and believes and thereon

26  alleges that at all times herein mentioned, LAS VEGAS LAND PARTNERS, LLC, is and was the

27  alter ego of **305 LAS VEGAS, LLC**, that LVLP did and still does dominate, influence and

28

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

1

2   control of 305 Las Vegas, LLC, that there existed and still exists a unity of ownership between

3   them; that the individuality and separateness of each entity was and remains non-existent; LVLP

4   was and remains a mere shell and naked framework **which 305 LAS VEGAS, LLC**, used and

5   still use to conduct their business affairs; that an injustice and fraud upon the Trustee will result if

6   the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded

7   and the said Defendant held liable for all relief being sought herein.

8        95.    Upon information and belief, the Trustee is informed and believes and thereon

9   alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC,

10  was and are the alter ego of **LIVE WORKS TIC SUCCESSOR, LLC**, that said Defendant did

11  and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that

12  there existed and still exists a unity of ownership between them; that the individuality and

13  separateness of each entity was and remains non-existent; that each such entity was and remains a

14  mere shell and naked framework which **LIVE WORKS TIC SUCCESSOR, LLC** used and still

15  use to conduct their business affairs; that each such entity is and remains inadequately capitalized;

16  and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS

17  VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for

18  all relief being sought herein.

19       96.    Upon information and belief, the Trustee is informed and believes and thereon

20  alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC,

21  were and are the alter ego of **FC/LV VEGAS, LLC**, that said Defendant did and still does

22  dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and

23  still exists a unity of ownership between them; that the individuality and separateness of each

24  entity was and remains non-existent; that each such entity was and remains a mere shell and naked

25  framework which **FC/LV VEGAS, LLC** used and still use to conduct their business affairs; that

26  each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the

27  Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity

28

- 21 -

is not disregarded and the said Defendant held liable for all relief being sought herein.

97. Upon information and belief, the Trustee is informed and believes and thereon alleges that at all times herein mentioned Defendants, LAS VEGAS LAND PARTNERS, LLC, were and are the alter ego of **CASINO COOLIDGE, LLC**, that said Defendant did and still does dominate, influence and control of LAS VEGAS LAND PARTNERS, LLC, that there existed and still exists a unity of ownership between them; that the individuality and separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which **CASINO COOLIDGE, LLC** used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon the Trustee will result if the theoretical separateness of LAS VEGAS LAND PARTNERS, LLC entity is not disregarded and the said Defendant held liable for all relief being sought herein.

98. This New Case is effectively an extension and development of the first litigation, and is an effort by the Trustee to avoid the wrongful misconduct of Defendants and each of them, in attempting to avoid LVLP's creditor's rights and improperly dissipate the assets of LAS VEGAS LAND PARTNERS, LLC, which were, are, and should be available to satisfy various creditor claims.

## FIRST CLAIM FOR RELIEF

### (Constructive Trust)

99. The Trustee incorporates by reference paragraphs 1 through 98 as though fully set forth.

100. Pursuant to the pending litigation in the First Case, it was understood that options or equity in various Real Estate parcels owned by LAS VEGAS LAND PARTNERS, LLC in or about 2006, as well as "Choses In Action" such as equity ownership in various affiliated entities would be available to satisfy Plaintiff's judgment.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

101. Defendants knew or reasonably should have known, that the subject property interests were valuable, and that the legitimate equity in the subject real property or beneficial ownership of the affiliate entities and limited liability ownership interest would be sufficient to satisfy Nype's claim, but for the fraudulent conveyances alleged herein.

102. Defendants transferred, hypothecated and encumbered various real property for improper purposes and inadequate consideration.

103. All of the foregoing facts make it just and equitable that this court impose and declare a constructive trust upon the subject property interest, and any proceeds therefrom, in favor of the Plaintiffs and the Trustee.

104. The court can and should declare a lien against the subject properties, order the sale thereof, and/or order the payment of all rents or monies received from the subject property to Plaintiffs and the Trustee herein.

105. It has been necessary for Trustee to retain the services of an attorney to prosecute this action and Plaintiff is therefore entitled to an award of reasonable attorneys' fees

## SECOND CLAIM FOR RELIEF

### (Fraudulent Conveyance)

106. The Trustee incorporates by reference paragraphs 1 through 105 as though fully set forth.

107. The Trustee is informed and believes, and on that basis alleges that Defendants have taken numerous actions to avoid satisfying various creditor claims against LAS VEGAS LAND PARTNERS, LLC.

108. The Trustee alleges on information and belief, that in order to avoid potential execution against real estate interests, *inter alia*, LAS VEGAS LAND PARTNERS, LLC took steps to hypothecate and transfer numerous property interests and valuable interests to the other Defendants herein.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

109.    The Trustee is informed and believes, and on that basis alleges that such transfers by Defendants were undertaken in an effort to avoid the adverse financial consequences of Plaintiffs' pending claims, as well as those of other creditors.

110.    The Trustee is informed and believes, and on that basis alleges that the aforementioned transfers were gratuitous, or for inadequate or disguised consideration, made without obligation, and made with an intent to deprive Plaintiff's and other creditors of their ability to recover such funds directly from LAS VEGAS LAND PARTNERS, LLC in connection with the monies owed.

111.    As a result of the aforementioned acts of Defendants, Plaintiffs and the Trustee are entitled to a Judgment against Defendants, jointly and severally, in an amount in excess of $15,000.00.

112.    On or about August 14, 2014, during the course of proceedings initiated to enforce and collect upon the judgment in the First Case, Defendant LAS VEGAS LAND PARTNERS, LLC first provided tax returns and detail financial information which revealed to Nype, for the first time, that it had transferred its interest in numerous real estate parcels, as well as many millions of dollars, to the entity defendants and/or Liberman and Mitchell, during the ongoing pendency of the first case.

113.    In making such transfers, LAS VEGAS LAND PARTNERS, LLC, and Defendants MITCHELL and LIBERMAN have acted with the actual intent to hinder delay and to defraud their creditors, including Nype, but fraudulently transferring assets to insiders and the entity defendants.

114.    The Trustee lacks an adequate remedy at law because, unless the relief sought in this complaint is granted, LAS VEGAS LAND PARTNERS, LLC with the aid of the Defendants herein will have succeeded in fraudulently transferring its assets to insiders and/or related entities, depriving creditors of the opportunity to collect monies due and owing from LAS VEGAS LAND PARTNERS, LLC.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

115. The Trustee has an high probability of success on the merits in this action.

116. The aforesaid transfer of assets to insiders and/or the entity defendants was made with actual intent to hinder, delay or defraud creditors, most significantly Nype, and these transfers therefore constitute fraudulent transfers in violation of NRS 112.180.

117. LAS VEGAS LAND PARTNERS, LLC did not receive reasonably equivalent value for the transfers herein alleged.

118. LAS VEGAS LAND PARTNERS, LLC and its principals intended to incur or reasonably should have believed they would incur debts beyond its ability to pay the same as they become due, and thus the transfers at issue are transfers in violation of Nevada law.

119. Because of the special circumstances of this case, in which LAS VEGAS LAND PARTNERS, LLC is liable for a judgment it has consistently ignored and avoided, having committed fraud to avoid the judgment and its debts, and the hiding assets, and also constituting a risk of further affirmative frustration of valid efforts by Nype and other creditors to collect upon their claims, the Trustee is entitled to:

(1) The appointment of receiver to take possession of the assets of LVLP, LLC;

(2) An injunction against further dissipation, disposition, or assignment of any and all assets and property owned by LAS VEGAS LAND PARTNERS, LLC:

(3) Any other relief that the circumstances may require, including a declaration that the transfers in question are void, and that the assets in question are subject to execution by Nype.

120. It has been necessary for Trustee to retain the services of an attorney to prosecute this action, and Trustee is, therefore, entitled to reasonable attorneys' fees.

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

- 25 -

LAW OFFICES
JOHN W. MUJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

## THIRD CLAIM FOR RELIEF

### (Civil Conspiracy)

121.    The Trustee incorporates by reference paragraphs 1 through 120 as though fully set forth.

122    As alleged hereinabove, and upon information and belief, the transfer of the subject real estate and substantial monetary amounts  were undertaken by Defendants with full knowledge as to the relevant circumstances and in an effort to participate in transactions in derogation of the rights of creditors.

123.    The knowing and willful conduct of the entity Defendants in agreeing to receive the subject real property and act as a nominee for said LAS VEGAS LAND PARTNERS. LLC, LIBERMAN and MITCHELL constitute acts of civil conspiracy.

124.    The Defendants, and each of them worked together in concerted actions with the intent to accomplish an unlawful purpose, vis a vis Plaintiffs and other creditors.

125.    The purpose of the unlawful, concerted actions of Defendants was intended to, or would likely result in direct harm to the creditors of LVLP.

126.    As a direct and proximate result of the aforesaid civil conspiracy, undertaken between the Defendants, Plaintiffs and the Trustee have been damaged in an amount in excess of $15,000.00.

127.    As alleged hereinabove, upon information and belief, Defendants' conduct was willful, knowing, intentional, and malicious, as a matter of law, entitling Plaintiffs and the Trustee to recover exemplary damages in an amount in excess of $15,000.00.

128.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorneys' fees.

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Relief)**

129.    The Trustee incorporates by references Paragraphs 1 through 128 as though fully set forth herein.

130.    A true and ripe controversy exists as to the dispute, and declaratory relief pursuant to NRS 30.040 is necessary to declare the respective rights, responsibilities, and obligations between the parties as a consequence of Plaintiffs' judgment against LAS VEGAS LAND PARTNERS, LLC, and as relates to the various transactions undertaken by Defendants, including but not limited to transactions involving various parcels of valuable Las Vegas Real Estate.

131.    For all of the reasons set forth hereinabove, Defendants have acted wrongfully and in violation of its creditors', and a direct declaration as to the invalidity of Defendants' transfers, and such should be determined and declared by the court.

132.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

**FIFTH CLAIM FOR RELIEF**

**(Alter Ego)**

133.    Plaintiff incorporates by references Paragraphs 1 through 132 as though fully set forth herein.

134.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, DAVID J. MITCHELL; BARNET LIBERMAN; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LIVE WORK, LLC; LIVE WORK MANAGER, LLC; AQUARIAS OWNER, LLC; LVLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; 305 LAS VEGAS LLC; LIVE WORKS TIC SUCCESSOR, LLC; FC/LV VEGAS, LLC, CASINO COOLIDGE, LLC, and each of them, were and remain the alter-egos of each other; that said Defendants did and still do dominate, influence and control each other; that there existed and still exists a unity of ownership between them; that the individuality and

separateness of each entity was and remains non-existent; that each such entity was and remains a mere shell and naked framework which the other Defendants used and still use to conduct their business affairs; that each such entity is and remains inadequately capitalized; and that an injustice and fraud upon creditors will result if the theoretical separateness of the Defendant entities is not disregarded and each such Defendant held liable for all relief being sought herein.

135.    Upon information and belief, to the extent that one or more of the Defendant entities is nominally owned or operated by or through LAS VEGAS LAND PARTNERS, LLC, or Defendants LIBERMAN or MITCHELL with respect to one or more of the Defendant entities, which entities as a practical matter exist with functional unity of ownership in said LAS VEGAS LAND PARTNERS, LLC or Defendants LIBERMAN or MITCHELL, the true and factual individuality and separateness of each such entity was and remains non-existent; each such entity was and remains a mere shell and naked framework, which LAS VEGAS LAND PARTNERS, LLC and Defendants LIBERMAN or MITCHELL  utilize, through the offices of said Defendants LAS VEGAS LAND PARTNERS, LLC, LIBERMAN or MITCHELL and/or through nominees and others to conduct their business affairs.   Each such entity is, upon information and belief, merely another nominal manifestation of the business and  financial affairs of LAS VEGAS LAND PARTNERS, LLC and the Defendants LIBERMAN or MITCHELL, and to recognize any such separate entity would work as separate and distinct from LAS VEGAS LAND PARTNERS, LLC and Defendants LIBERMAN or MITCHELL, an injustice and fraud upon creditors, to the extent the theoretical or putative separateness of such entity is not disregarded and said nominal Defendants held liable for all the relief being sought herein.

136.    As a matter of both statutory common law, and prior declarations of the Eighth Judicial District Court, it is appropriate that the Court further determine and declare that all of the aforesaid entities be held to be the Alter Egos of  LAS VEGAS LAND PARTNERS, LLC and of Defendants LIBERMAN or MITCHELL, and that therefore the various Defendants named herein can

and should be jointly and severely liable to the Plaintiffs and Trustee with regard to all claims asserted.

137.    That it has been necessary for the Trustee to retain the services of an attorney to prosecute this action and plaintiff is therefore entitled to reasonable attorneys fees.

**WHEREFORE**, Plaintiff prays for judgment against Defendants and each of them as follows:

1.    For a sum in excess of $15,000.00;

2.    For exemplary damages in an amount in excess of $10,000.00;

3.    For the imposition of a constructive trust upon the various parcels of real property and valuable equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC for the benefit of Plaintiff;

4.    For an order requiring the sale of the parcels of real estate and valuble ownership interest and an order directing the payment of all rents with regard to the subject real property be made to the order of the Trustee herein;

5.    For the Appointment of a Receiver;

6.    For interest upon all damages which Plaintiffs and the Trustee recovers at the Nevada Statutory rate.

7.    For a declaration as to the invalidity of Defendants' transactions as regards to the various valuable real estate interests and equity ownership interests formerly owned by LAS VEGAS LAND PARTNERS, LLC;

8.    For a determination that the Defendants are the alter egos of each other , and should all be held liable to Plaintiff, jointly and severally, for the damages sought herein.

9.    For a declaration that the actions by LAS VEGAS LAND PARTNERS, LLC, in conjunction with the Defendants herein, to convey valuable property and monies to other Defendants with the intent to deprive creditors of their ability to recover funds was undertaking in a knowing, willful, intentional, and malicious manner, which

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

under Nevada law constitute malice and is sufficient grounds to invoke the availability of exemplary damages against Defendants, and each of them.

10.    As a consequence of the willful malicious and intentional misconduct of the Defendants and each of them, Plaintiffs and the Trustee are entitled to recover exemplary damages from each Defendant in accordance with Nevada Law, in an amount in excess of $15,000.00, the precise amount to be proven at time of trial.

11.    For reasonable attorneys' fees for the prosecution of this suit; and

12    For such other and further relief as the Court may deem just and proper.

DATED this _18th_ day of November, 2019.

JOHN W. MUIJE & ASSOCIATES

By: _____
JOHN W. MUIJE, ESQ.
Nevada Bar No. 2419
1840 E. Sahara Ave #106
Las Vegas, Nevada 89104
Telephone: (702) 386-7002
Fax No:    (702) 386-9135
Email: jmuije@muijelawoffice.com
*Attorneys for Plaintiff-in-Intervention*

LAW OFFICES
JOHN W. MUIJE & ASSOCIATES
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002    Fax: (702) 386-9135

– 30 –

## CERTIFICATE OF MAILING

I certify that I am an employee of JOHN W. MUIJE & ASSOCIATES and that on the 18th day of November, 2019, I caused the foregoing document, **COMPLAINT IN INTERVENTION (1) CONSTRUCTIVE TRUST; (2) FRAUDULENT CONVEYANCE; (3) CONSPIRACY TO DEFRAUD; (4) DECLARATORY RELIEF; AND (5) ALTER EGO,** to be served as follows:

☐ By placing a copy of the same for mailing in the United States mail, with first-class postage prepaid addressed as follows; and/or

☒ By electronically filing with the Clerk of the Court via the Odyssey E-File and Serve System;

☐ By placing a copy of the same for mailing in the United States mail, with first-class postage prepaid marked certified return receipt requested addressed as follows:

Elliot S. Blut, Esq.
**BLUT LAW GROUP, P.C.**
300 South Fourth Street, Suite 701
Las Vegas, Nevada 89101
Telephone: (702) 384-1050
Facsimile:  (702) 384-8565
E-Mail: eblut@blutlaw.com
*Attorneys for Defendants*
*Barnet Liberman and Casino Coolidge,*
*LLC*

Brian W. Boschee, Esq.
**HOLLEY DRIGGS WALCH**
**FINE PUZEY STEIN & THOMPSON**
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone: (702) 791-0308
Facsimile:   (702) 791-1912
E-Mail: bboschee@nevadafirm.com
*Attorneys for Defendant*
*305 Las Vegas, LLC*

H. Stan Johnson, Esq.
James L. Edwards, Esq.
**COHEN JOHNSON PARKER &**
**EDWARDS**
375 E. Warm Springs Road, #104
Las Vegas, Nevada 89119
*Attorneys for Mitchell Defendants*

_____
An Employee of John W. Muije & Associates

LAW OFFICES
**JOHN W. MUIJE & ASSOCIATES**
1840 E. SAHARA AVE. #106
LAS VEGAS, NEVADA 89104
Phone: (702) 386-7002   Fax: (702) 386-9135

# EXHIBIT D

Electronically Filed
1/17/2020 1:41 PM
Steven D. Grierson
CLERK OF THE COURT

**FFCL**

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| RUSSELL L. NYPE; REVENUE PLUS, LLC, DOES I through X; DOES I through X; DOE CORPORATIONS CASE NO: A-16-740689-C I through X; and DOES PARTNERSHIPS I through X, | **Case No.:**   A-16-740689-C |
| | **Dept.:**   XI |
| Plaintiffs, | |
| v. | |
| DAVID J. MITCHELL; BARNET LIBERMAN; LAS VEGAS LAND PARTNERS, LLC; MEYER PROPERTY, LTD.; ZOE PROPERTY, LLC; LEAH PROPERTY, LLC; WINK ONE, LLC; LNE WORK, LLC; LNE WORK MANAGER, LLC; AQUARIUS OWNER, LLC; L VLP HOLDINGS, LLC; MITCHELL HOLDINGS, LLC; LIBERMAN HOLDINGS, LLC; 305 LAS VEGAS, LLC; LIVE WORKS TIC SUCCESSOR, LLC; CASINO COOLIDGE LLC; DOES I through ill, and ROE CORPORATIONS I through ill, inclusive, | |
| Defendants. | |

***AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW***

This matter having come on for non-jury trial before the Honorable Elizabeth Gonzalez

beginning on December 30, 2019, and continuing day to day, until its completion on January 7,

2020; John W. Muije of John W. Muije & Associates appeared on behalf of Russell L. Nype and

Revenue Plus, LLC ("Plaintiffs") and Shelley D. Krohn, U.S. Bankruptcy Trustee ("Plaintiff

Trustee"); H. Stan Johnson, James L. Edwards and Kevin M. Johnson of the law firm of Cohen,

Johnson, Parker & Edwards appeared on behalf of David J. Mitchell, Las Vegas Land Partners,

LLC, Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork

LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, Mitchell Holdings

RECEIVED
JAN 17 2020
CLERK OF THE COURT

52

14

1   LLC, Live Works TIC Successor LLC, FC/Live Work Vegas LLC, ("Mitchell Defendants");[1]

2   Brian W. Boschee of the law firm of Holley Driggs Walch Fine Puzey Stein & Thompson

3   appeared on behalf of Defendant 305 Las Vegas, LLC[2]; and, Eliott S. Blut appeared on behalf of

4   Defendants Barnett Liberman and Casino Coolidge; the Court having read and considered the

5   pleadings filed by the parties; having reviewed the evidence admitted during the trial; having

6   heard and carefully considered the testimony of the witnesses called to testify and weighing their

7   credibility; having considered the oral and written arguments of counsel, and with the intent of

8   rendering a decision on all claims before the Court,[3] pursuant to NRCP 52(a) and 58; the Court

9   makes the following findings of fact and conclusions of law:

10

11                                      **FINDINGS OF FACT**

12

13       1.      This action arises from a judgment that Plaintiffs obtained on or about April 10,

14   2015, against Las Vegas Land Partners, LLC ("LVLP") in Case No. A551073. Plaintiff filed this

15   suit on July 26, 2016. The complaint was amended by the filing of an amended complaint on

16   August 21, 2017.

17       2.      Plaintiff Trustee was duly appointed to act as the Trustee in the Bankruptcy Case

18   *of Las Vegas Land Partners, LLC*, Case No. BK-19-15333-mkn and moved to intervene in the

19   instant action, which motion was granted on November 18, 2019. Plaintiff Trustee filed the

20   complaint in intervention on November 18, 2019.

21       3.      Plaintiff Russell L. Nype ("Nype") is an adult resident of New York.

22

23   _____

24   [1]     Given the filing of *Las Vegas Land Partners, LLC*, Case No. BK-19-15333-mkn in
     August 2019, the Court takes no action against Las Vegas Land Partners, LLC.

25   [2]     The Court granted the Rule 50(a) motion by 305 Las Vegas, LLC at the close of the
26   Plaintiffs' case as no damages against that entity were established given the nature of its conduct.

27   [3]     Plaintiff asserted five claims for relief against the Defendants: 1) Constructive Trust;
     2) Fraudulent Transfer; 3) Civil Conspiracy; 4) Declaratory Relief; and 5) Alter Ego.
28

                                                2

4.     Plaintiff Revenue Plus, LLC (collectively with Nype, "Plaintiffs") is a Florida limited liability company.

5.     Defendant, David J. Mitchell ("Mitchell"), is an adult resident of New York.

6.     Defendant, Barnett Liberman ("Liberman"), is an adult resident of New York.

7.     Defendant Mitchell Holdings, LLC ("Mitchell Holdings") is a Delaware limited liability company.

8.     Defendant LVLP Holdings, LLC ("LVLP Holdings") is a Delaware limited liability company that was formed on or about November 4, 2004 by Mitchell and Liberman.

9.     Defendant Las Vegas Land Partners ("LVLP") is a Delaware limited liability company.

10.     Mitchell and Liberman are managers of LVLP.

11.     At all relevant times, Mitchell and Liberman were the sole owners (50/50) and managers of LVLP Holdings.

12.     At all relevant times, LVLP was owned (50/50) and managed by Mitchell and Liberman.

13.     Defendant Casino Coolidge LLC is a Nevada limited liability company.  ("Casino Coolidge").

14.     Liberman is the managing member of Casino Coolidge.

15.     Defendant Aquarius Owner, LLC ("Aquarius") is a Delaware limited liability company.

16.     Defendant Leah Property, LLC ("Leah") is a Delaware limited liability company.

17.     Defendant Livework, LLC ("Livework") is a Delaware limited liability company.

18.     Defendant Livework Manager, LLC ("Livework Manager"), is a Delaware limited liability company.

19.     Defendant Zoe Property, LLC ("Zoe") is a Delaware limited liability company.

20.     Defendant Wink One, LLC ("Wink") is a Delaware limited liability company.

21.    Defendant Meyer Property, LLC ("Meyer") is a Delaware limited liability company.

22.    Non-party Charleston Casino Partners, LLC ("Casino Partners") is a Delaware limited liability company.

23.    Defendant FC/LW Vegas, LLC ("FC/LW") is a Delaware limited liability company.

24.    Defendant LiveWorks TIC Successor, LLC ("TIC Successor") is a Delaware limited liability company.

25.    These entities are collectively referred to as the Related Entities.[4]

26.    305 Las Vegas, LLC ("305 Las Vegas") was created in April of 2007 for the purpose through a 1031 exchange of purchasing real property located around 300 East Charleston.

27.    In 2005, Mitchell and Liberman requested Nype's assistance with finding a development partner to assist them in developing certain real property in Downtown Las Vegas.

28.    Prior to closing the transaction with Forest City, a dispute arose between LVLP and Nype in late 2006/early 2007 over the amount Nype was entitled to be paid related to the transaction with Forest City.

29.    Mitchell and Liberman were fully aware that Nype was expecting to receive at least two million dollars for his efforts.

30.    Despite understanding Nype's expectations, Mitchell and Liberman only set aside $430,000.

31.    Shortly after setting aside that amount, Mitchell and Liberman took personal distributions from LVLP in excess of thirteen million dollars.

---

[4]    For purposes of the term "Related Entity" the following are included: Las Vegas Land Partners, LLC, Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC Successor LLC, FC/LiveWork Vegas LLC and Casino Coolidge LLC.

4

32.     On November 2, 2007, LVLP and two other entities[5] sued Nype seeking primarily a declaratory judgment that they did not owe Nype any fee, Nype counterclaimed seeking compensation for services rendered.

33.     In December 2014, Leah sold certain real property to Casino Coolidge for $1,000,000. Mitchell and Liberman caused Leah to distribute sales proceeds in the amount of $341,934.47 directly to themselves, rather than Leah's parent company, LVLP. Plaintiff has not established that given the market conditions at the time that Mitchell and Liberman sold the Leah Property without obtaining reasonably equivalent value in exchange.

34.     After obtaining judgment on the counterclaim in 2015, Nype engaged in significant attempts to collect on the Judgment from LVLP.

35.     Those efforts resulted in recovery of approximately $10,000.

36.     Between 2007 and 2016, Mitchell and Liberman distributed to themselves a total of $15,148,339 from the Related Entities.

37.     These distributions were at times that Mitchell and Liberman were fully aware of Nype's claims.

38.     The distributions caused and/or contributed to the Related Entities' insolvency and/or inability to pay their debts as they became due.

39.     The evidence also demonstrates that Mitchell, Liberman and the Related Entities engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or divert millions of dollars in assets away from Nype and/or other creditors.

40.     The evidence also demonstrates that Mitchell, Liberman and the Related Entities engaged in conscious, concerted and ongoing efforts to ensure that funds and/or assets that would otherwise be available to Nype to satisfy his claims (and Judgment) were kept away from Nype.

---

[5]     The other plaintiffs in that case were LiveWork LLC and Zoe Properties, LLC, neither of which were named as counterdefendants.

41.    The evidence demonstrates that Mitchell, Liberman and the Related Entities distributed in excess of $15,000,000 in funds that should have been available to satisfy Nype's claims/Judgment.

42.    Nype's disclosure of the tax returns and its own consultant's report[6] on or about April 25, 2014, in A551073, are the latest date of discovery for purposes of NRS 112.230(1)(a).[7]

43.    David Mitchell was not credible.[8] The failure of Mitchell to meaningfully participate in discovery until the eve of trial and the failure to produce documents which should have been in his possession leads the Court to conclude that if those documents had been produced they would have been adverse to Mitchell.

44.    At all relevant times, each of the Related Entities was wholly owned and managed by LVLP or LVLP Holdings.

45.    At all relevant times, each of the Related Entities was beneficially owned, controlled, and managed by Mitchell and Liberman.

46.    One or more of the Related Entities was formed with an initial capitalization of just $10.

---

[6]    The report is a part of Exhibit 90079.

[7]    That statute provides in pertinent part:

1. A claim for relief with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

   (a) Under paragraph (a) of subsection 1 of NRS 112.180, within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;

[8]    The explanation by Mitchell surrounding the creation of retention agreements with the CPA Sam Spitz signed in different styles and ink is additional information which leads the Court to believe Mitchell is not credible. (Exhibits 60032-60036).

47.    At all relevant times, each of the Related Entities was treated by Mitchell and Liberman as a disregarded entity of LVLP Holdings for tax purposes and all of the Related Entities filed one combined tax return.

48.    Except with respect to Livework Manager and Casino Coolidge, none of these entities had its own bank account. Mitchell caused each of the Related Entities to use the same bank accounts to deposit and disburse funds, including distributions to Mitchell and Liberman.

49.    At all relevant times, Mitchell and Liberman caused each of the Related Entities to use the same financial and accounting records, which are not distinguishable by entity. Each of the Related Entities' financial and accounting records are not distinguishable by entity.

50.    The LVLP accounting records include a few Mitchell and Liberman personal transactions and postings commingled from multiple entities.

51.    Mitchell and Liberman caused each of the Related Entities to use the same general ledger to post all entries under the name of "Las Vegas Land Partners".

52.    Mitchell, Liberman and the Related Entities commingled funds, including personal loans from various banks which are included in the LVLP accounting records and general ledger.

53.    Mitchell and Liberman also used journal entries to post commingled transactions for themselves and the Related Entities.

54.    In 2016, the Related Entities stopped using bank accounts and instead began using journal entries to post entries apparently transacted personally by Mitchell.

55.    As a result of Mitchell and Liberman's domination, influence and control over the Related Entities, the individuality and separateness of the Related Entities—vis-à-vis themselves and Mitchell and Liberman—was and remains nonexistent as evidenced by the commingling of funds, transactions, revenues, expenses, assets, liabilities and contributed capital.

56.    The manner in which Mitchell and Liberman operated the Related Entities makes it virtually impossible to identify transactions by purpose and/or entity.

57.    The evidence demonstrates that: (a) Mitchell, Liberman and the Related Entities commingled funds, transactions and assets; (b) the Related Entities were and are undercapitalized;

(c) Mitchell, Liberman and the Related Entities distributed funds to Mitchell and Liberman as individuals without regard to parent entities; (d) Mitchell, Liberman and the Related Entities treated assets of the other entities as their own; and (e) the Related Entities failed to observe corporate or LLC formalities.

58.   The evidence demonstrates that the Related Entities: (a) are and were influenced and governed by Mitchell and Liberman; (b) there is such unity of interest and/or ownership that Mitchell, Liberman and the Related Entities are inseparable from the other; and (c) the facts are such that adherence to the fiction of separate entities would, under the circumstances, sanction a fraud or promote injustice.

59.   Mitchell, Liberman and the Related Entities have made distributions to avoid satisfying Nype's claims and Judgment.

a.   When Leah Property sold certain real property to Casino Coolidge on or about December 17, 2014, and did not transfer the funds to LVLP;

b.   When Mitchell and Liberman took personal distributions from the Related Entities, between 2007 and 2016, totaling $15,148.339.

60.   In determining that these distributions were made with the actual intent to hinder, delay or defraud creditors and Nype, the Court notes, among other things, the following:

a.   They were made to "insiders" or other entities of which Mitchell and Liberman own or control (in whole or in part);

b.   They were made at times when Mitchell and Liberman were fully aware of Nype's claims, Judgment and/or Nype's intent to sue for the amounts owed to him.

c.   The distributions rendered or contributed to LVLP's and/or the Related Entities' insolvency, and left LVLP and/or the Related Entities unable to pay their debts as they became due;

d.    Mitchell, Liberman and the Related Entities attempted to conceal the distributions and their assets, through their discovery misconduct in this matter, which required enormous and expensive effort on Nype's part to <u>attempt</u> to obtain full and proper disclosure; and

e.    Mitchell, Liberman and the Related Entities removed or concealed assets.

61.    If any findings of fact are properly conclusions of law, they shall be treated as if appropriately identified and designated.

## CONCLUSIONS OF LAW

1.    In Nevada, there are three general requirements for application of the alter ego doctrine: (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice." *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987).

2.    Nevada recognizes application of the alter ego doctrine in reverse, in which a creditor is permitted to reach "the assets of a corporation to satisfy the debt of a corporate insider based on a showing that the corporate entity is really the alter ego of the individual." <u>Loomis</u>, 116 Nev. at 903, 8 P.3d at 846.

3.    Application of the alter ego doctrine in reverse "is appropriate where the particular facts and equities show the existence of an alter ego relationship and require that the corporate fiction be ignored so that justice may be promoted." <u>Id.</u>, at 904, 8 P.3d at 846.

4.    The Court, concludes that: (a) Mitchell, Liberman and the Related Entities commingled funds, transactions and assets; (b) the Related Entities were and are undercapitalized; (c) Mitchell, Liberman and the Related Entities committed unauthorized diversion of funds; (d)

9

Mitchell, Liberman and the Related Entities treated assets of the other entities as their own; and (e) the Related Entities failed to observe corporate and LLC formalities.

5.     The Court further concludes the evidence demonstrates that the Related Entities: (a) are and were influenced and governed by Mitchell and Liberman; (b) there is such unity of interest and/or ownership that Mitchell, Liberman and the Related Entities are inseparable from the other; and (c) the facts are such that adherence to the fiction of separate entities would, under the circumstances, sanction a fraud or promote injustice.

6.     Justice and equity require that the Court impose alter ego liability on Mitchell, Liberman and the Related Entities.

7.     Nype has proven, by a preponderance of the evidence his claim for alter ego, establishing that Mitchell, Liberman, and each of the Related Entities, is the alter ego of LVLP and each other.

8.     Nype has not proven, by a preponderance of the evidence, his claim for alter ego that Mitchell Holdings is the alter ego of Mitchell.

9.     Mitchell, Liberman and each of the Related Entities are jointly and severally liable on Nype's Judgment and the damages, attorney's fees and costs awarded in this action.

10.     Prior to September of 2015, Nype had reason to know that the limited transfers were transfers made by debtors under the UFTA, that the transfers rendered debtors insolvent (or contributed thereto) or the facts and circumstances upon which this Court utilized in determining that the transfers were made with the actual intent to hinder, delay or defraud creditors (including Nype).

11.    Nype has proven, by a preponderance of the evidence his claims for fraudulent transfer, including that certain of the distributions constitute fraudulent transfers within the meaning of NRS 112.180(1)(a). [9]

12.    Certain of those distributions were made outside the limitations period under NRS 112.230(1).

13.    Nevada's Uniform Fraudulent Transfer Act provides an equitable remedy for creditors affected by a fraudulent transfer, but nothing more. *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. Adv. Op. 15, 345 P.3d 1049 (2015).

14.    Nype has proven by a preponderance of the evidence that he suffered damages in the amount of $341,934.47 as a result of the fraudulent transfer of the proceeds of the Leah transaction with Casino Coolidge directly to Liberman and Mitchell, rather than to Leah's parent LVLP.

15.    The earlier transfers are barred by the limitations period for purposes of the fraudulent transfer claim, only.

16.    Nype has proven by a preponderance of the evidence that he suffered special damages in the form of attorney's fees, costs  and expert expenses related to the transfers in the total amount of $4,493,176.90. [10]

17.    Plaintiff cannot recover on a civil conspiracy claim (or accessory liability) for allegations arising out of NRS Chapter 112 against a nontransferor. *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. 114 at 120, 345 P.3d 1049 (2015).

---

[9]    The Court is cognizant of the possibility of duplicative awards given the various claims for relief.

[10]    The Court has previously evaluated the *Brunzell* factors in connection with the sanctions order which has now been satisfied.  See 12/26/19 filing. That evaluation is incorporated by reference.

18.   Independent of NRS Chapter 112, to prove a civil conspiracy, Plaintiff must prove "a combination of two or more persons who, by some concerted action, intend to accomplish a lawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels vs. Butch Lewis Productions*, 109 Nev. 1043, 148, 862 P.2d 1207, 1210 (1993).

19.   The Court concludes that the evidence demonstrates that:

a.   Mitchell and Liberman, engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or distribute millions of dollars in assets away from Nype;

b.   Mitchell and Liberman received distributions from LVLP and the Related entities;

c.   Mitchell, fabricated and backdated evidence to facilitate the destruction and/or concealment of material financial evidence by his agent that would have greatly assisted Nype's case.

d.   But for Nype's pretrial discovery,[11] the fabrication of evidence would not have been uncovered.

20.   Nype has proven his claim of civil conspiracy, by a preponderance of the evidence against Mitchell and Liberman.

21.   Plaintiff has not established by a preponderance of the evidence the elements of civil conspiracy separate and apart from the distributions and fabrication of evidence.

22.   Plaintiff has established damages on the civil conspiracy claim in the amount of $15,148.339.

23.   Nype has not demonstrated that punitive damages are appropriate in this matter.

---

[11]   The limitations for a civil conspiracy claim is not limited by NRS 112.230(1)(a) but is instead governed by NRS 11.220 and the discovery rule. *Siragusa v. Brown*, 114 Nev. 1384 at 1391-3 (1998).

12

24.    Nype is entitled to recover his attorney's fees as special damages as he was successful on his claim for civil conspiracy in the total amount of $4,493,176.90.

25.    Nype has not established a claim for constructive trust given the current state of title of the remaining parcels in which the Related Entities hold their interest.

26.    Mitchell, Liberman, and the Related Entities' actions and inactions have caused Nype damages in the total amount of $19,641,515.90.[12]

27.    Nype may also file a post-trial motion if appropriate, for fees and costs not proven during the trial as special damages.

28.    Given the findings and conclusion no further relief on the Declaratory Relief claim is appropriate.

29.    If any conclusions of law are properly findings of fact, they shall be treated as if appropriately identified and designated.

Based upon the foregoing Findings of Fact and Conclusions of Law:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that JUDGMENT is hereby entered in favor of Plaintiffs and jointly and severally against Mitchell, Liberman, Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC Successor LLC, FC/LiveWork Vegas LLC and Casino Coolidge LLC on the fraudulent conveyance claim in the amount of $4,835,111.37.[13]

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that JUDGMENT is hereby entered in favor of Plaintiffs and jointly and severally against Mitchell and Liberman on

---

[12]    This is the total amount of damages which is not duplicated among the various claims for which the Court has made an award.

[13]    These damages are duplicated in the civil conspiracy judgment.

1    the civil conspiracy claim in the amount of $19,641,515.90.

2    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that JUDGMENT is

3    hereby entered in favor of Plaintiffs and jointly and severally against Mitchell, Liberman, Meyer

4    Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC,

5    LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC

6    Successor LLC, FC/LiveWork Vegas LLC and Casino Coolidge LLC on the alter ego claim in

7    the amount of the underlying judgment in A551073.

8

9                                           DATED this 17th day of January, 2020.

10

11

12                                           _____
                                             Elizabeth Gonzalez, District Court Judge
13

14                        **Certificate of Service**

15        I hereby certify that on the date filed, a copy of the foregoing Findings of Fact and Conclusions of

16    Law was electronically served, pursuant to N.E.F.C.R. Rule 9, to all registered parties in the Eighth

17    Judicial District Court Electronic Filing Program.

18            *If indicated below*, a copy of the foregoing Scheduling Order was also:

19        ☐   Placed in the Attorney(s) Folder on the 1st Floor of the RJC for;

20        ☐   Mailed by United States Postal Service, Postage prepaid, to the proper parties listed below at
      their last known address(es):

21

22

23                                           _____
                                             Dan Kutinac
24

25

26

27

28

                                     14

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

BARNET LOUIS LIBERMAN,

                          Debtor.
-----------------------------------------------------------------x
RUSSELL NYPE and REVENUE PLUS, LLC,

                        Plaintiffs,

v.

BARNET LOUIS LIBERMAN,

                        Defendant.
-----------------------------------------------------------------x

Case No. 21-70611-reg

Chapter 7

Adv. Proc. No. 21-8123-reg

MEMORANDUM DECISION AND ORDER
DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

      In this adversary proceeding, the Plaintiffs, Russell Nype and Revenue Plus, LLC

(together "Nype" or "Plaintiffs") are seeking, under 11 U.S.C. § 523(a)(2)(A) and (a)(6), to

except from the Debtor's discharge liability stemming from a pre-petition judgment entered

against the Debtor and others by a Nevada state court ("Nevada Court"). That judgment was

supported by Amended Findings of Fact and Conclusions of Law, dated January 17, 2020, which

the Nevada Court entered after a trial on the merits. *See* District Court, Clark County, Nevada,

Amended Findings of Fact and Conclusions of Law, Case No. A-16-740689-C, Jan. 17, 2020

("Nevada Judgment"). The Nevada Judgment has three separate elements: an award in the

amount of $4,835,111.37 attributed to fraudulent conveyances under Nevada law ("Fraudulent

Conveyance Award"); an award in the amount of $19,641,515.90 attributed to a finding of civil

conspiracy under Nevada law ("Civil Conspiracy Award"); and a finding ("Alter Ego Finding")

that the Debtor and others are liable, under a Nevada alter ego theory for a prior judgment

("LVLP Judgment") in the amount of approximately $2,600,000, entered against an entity, Las

Vegas Land Partners LLC ("LVLP"), owned and controlled by the Debtor and his business

partner, David J. Mitchell ("Mitchell").

Before the Court is Plaintiffs' motion for partial summary judgment seeking judgment as

a matter of law solely as to the Fraudulent Conveyance Award. Relying on the doctrine of

collateral estoppel, the Plaintiffs argue that the findings and conclusions made in the Nevada

Judgment are sufficient to establish the elements of non-dischargeability under § 523(a)(2)(A)

and the Debtor should be precluded from presenting any defense on that claim. The Debtor

argues that the Nevada Judgment does not contain the necessary specificity with respect to the

elements of the § 523(a)(2)(A) asserted here and the Plaintiffs' motion should be denied.

Based on the record before it today, the Court cannot give any preclusive effect to the

Nevada Judgment. The Court cannot find, based on the current record, that the Nevada Judgment

is a valid and enforceable judgment. The litigation commenced by Nype, which resulted in the

Nevada Judgment, was commenced in aid of collecting on Nype's prior judgment against LVLP,

the LVLP Judgment ("Collection Litigation"). Subsequent to commencement of the Collection

Litigation, but prior to entry of the Nevada Judgment, LVLP filed for relief under chapter 7 of

the Bankruptcy Code.  LVLP was a named defendant in the Collection Litigation. Upon LVLP's

bankruptcy filing, the fraudulent conveyance claims asserted in the Collection Litigation became

property of the LVLP estate. The Collection Litigation continued as against all defendants except

LVLP, and the LVLP chapter 7 trustee intervened as a co-plaintiff with Nype as the proper party

to assert the fraudulent conveyance claims on behalf of the LVLP estate.

In a recent decision, the Bankruptcy Appellate Panel of the Ninth Circuit found that "postpetition prosecution of a fraudulent transfer claim against nondebtor parties violates § 362(a)(1)." *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21-1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *1 (B.A.P. 9th Cir. Nov. 18, 2021). If, in fact, the Nevada Judgment was entered in violation of the stay imposed by the LVLP bankruptcy filing, then it cannot be given collateral estoppel effect here.

The Motion is denied without prejudice.

<u>FACTS</u>

Sometime in 2005 the Debtor and his business partner David Mitchell asked Nype to help them find a partner to assist their company LVLP with the development of certain real property in Downtown Las Vegas.[1] (Nevada Judgment at 4, ¶27). In late 2006 or early 2007, a dispute arose between LVLP and Nype over Nype's fee. (Nevada Judgment at 4, ¶28). LVLP sued Nype in late 2007 seeking a declaratory judgment that it owed Nype no fee, and Nype counterclaimed seeking compensation for services rendered.

On April 10, 2015, the Nevada Court entered a judgment against LVLP in favor of Nype in the amount of $2,608,797 plus interest and costs. (District Court, Clark County, Nevada, Findings of Fact, Conclusions of Law and Decision, Case No. 07A551073, Mar. 26, 2015 ("LVLP Decision"); District Court, Clark County, Nevada, Judgment, Case No. 07A551073, Apr. 10, 2015 ("LVLP Judgment")).

---

[1]    Initially, Nype worked for LVLP through First Wall Street Capital International ("FWS"), but FWS and Nype had a falling out over Nype's fee share agreement for the LVLP work resulting in FWS terminating its relationship with Nype who nonetheless continued working on the deal for LVLP (LVLP Decision at 3, ¶¶ 14-37).

Nype collected only $10,000 on the LVLP Judgment. (Nevada Judgment at 5, ¶¶ 34, 35).

In 2017, Nype sued Mitchell, Liberman, LVLP and several related entities ("Related Entities"),[2] alleging that the defendants in that action engaged in an "Asset Protection Scheme" for the purpose of "secreting, hiding, and conveying away [from LVLP] valuable assets that were available to satisfy creditors [of LVLP] such as [Nype]" (District Court, Clark County, Nevada, Case No. A-16-740689-B, Amended Complaint, dated August 21, 2017, ¶56) ("Collection Litigation"). The Collection Litigation asserted claims for constructive trust, fraudulent conveyance, civil conspiracy, declaratory relief, and alter ego.

In August 2019, while the Collection Litigation was pending, LVLP filed a petition under chapter 7 of the Bankruptcy Code. (Bankr. D. Nev., Case No. 19-15333-mkn, "LVLP Bankruptcy"). After the LVLP Bankruptcy was filed, the Nevada Court continued the Collection Litigation as to the Debtor, Mitchell and the Related Entities, but not as to LVLP.

On October 21, 2019, the chapter 7 trustee appointed in the LVLP Bankruptcy filed an application to retain John W. Muije & Associates ("Muije & Associates") on a contingency fee basis as her special counsel to prosecute the fraudulent transfer claims asserted in the Collection Litigation. The retention application specifically recognized that the fraudulent transfer claims in the Collection Litigation were property of the LVLP Bankruptcy estate. (LVLP Bankruptcy, Dkt #28, Retention Application, ¶ 6).[3] By order of the Nevada bankruptcy court, dated October 31,

---

[2] The "Related Entities," as the Nevada Court noted, include: LVLP; Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC, LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC Successor LLC, FC/LiveWork Vegas LLC, and Casino Coolidge LLC.

[3] The retention application recognized that Nype's claim in the LVLP Bankruptcy represented approximately 97% of the creditor body. The retention agreement attached to the retention application states: "Subject to Bankruptcy Court approval, 50% of any funds collected from the Defendants as a

2019, Muije & Associates was retained to represent the LVLP trustee as to the fraudulent conveyance claims. Muije & Associates continued to represent Nype as co-plaintiff on the remainder of the claims in the Collection Litigation. (LVLP Bankruptcy, Dkt #35). The LVLP trustee intervened as a plaintiff in the Collection Litigation and filed a "complaint in intervention" on November 18, 2019. The LVLP Bankruptcy case is still open.[4]

On January 17, 2020, after a trial on the merits in the Collection Litigation, the Nevada state court entered Amended Findings of Fact and Conclusions of Law which included a judgment against Mitchell, Liberman and the Related Entities in the total amount of $19,641,515.90 ("Nevada Judgment").

## PROCEDURAL HISTORY

On April 1, 2021, Barnet Louis Liberman (the "Debtor" or "Liberman") filed a petition for relief under chapter 11 of the Bankruptcy Code.  The case was converted to chapter 7 on June 28, 2021. On August 24, 2021, the Plaintiffs filed a proof of claim in this case in the amount of $19,664,231.90 based on the Nevada Judgment. Thereafter Plaintiffs filed a complaint seeking non-dischargeability of the $19,641,515.90 claim under §§ 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code. On September 23, 2021, Plaintiffs filed the instant motion for partial summary judgment on the § 523(a)(2)(A) claim with regard only to the $4,835,111.37 Fraudulent Conveyance Award.

---

result of the State Court Litigation will be the property of [Nype] and 50% will be the Property of the [LVLP Bankruptcy estate]."

[4]    As noted by Nype in the summary judgment motion, "[t]his Court is permitted to take judicial notice of publicly filed documents such as those filed on the dockets of other courts." (Motion for Summary Judgment, Dkt #12, note 1).

<u>DISCUSSION</u>

The Plaintiffs' entire motion is premised upon this Court applying collateral estoppel to the Nevada Judgment. In order to apply collateral estoppel to the Nevada Judgment, the judgment must be valid and enforceable. *See In re Dabrowski*, 257 B.R. 394 (Bankr. S.D.N.Y. 2001). Actions taken in violation of the stay imposed by § 362 of the Bankruptcy Code are void, not merely voidable. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987)); *Hillis Motors, Inc v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir. 1993). The Bankruptcy Appellate Panel for the Ninth Circuit recently held that a creditor's continuation of a state court fraudulent conveyance action against non-debtor entities was a violation of the automatic stay, even though the debtor was separated out from the action. *Koeberer v. California Bank of Commerce et al. (In re Koeberer)*, BAP No. NC-21-1078-FBS, Bk. No. 20-110514, 2021 WL 5371142 at *5-6 (B.A.P. 9th Cir. Nov. 18, 2021) (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992)). This Court takes judicial notice of the docket in the LVLP Bankruptcy and notes that there is no order granting relief from stay to allow the Collection Litigation to proceed. In light of this fact, and in light of *In re Koeberer*, this Court cannot find, based on the current record, that the Nevada Judgment is a valid and enforceable judgment entitled to collateral estoppel effect.[5]

---

[5]    Assuming Plaintiffs are able to supplement the record or otherwise get past the issue raised here, the Court has concerns with Nype's standing to assert a claim against the Debtor based on the Fraudulent Conveyance Award. The LVLP trustee intervened in the Collection Litigation as the proper party plaintiff entitled to assert the fraudulent conveyance claims on behalf of the LVLP estate. Although Nype may benefit from any distribution in the LVLP bankruptcy, the Fraudulent Conveyance Award, it appears, is property of the LVLP bankruptcy estate, not Nype. In addition, on the merits of the collateral estoppel argument, the Court has concerns with the Nevada Judgment's failure to make any specific findings as to the Debtor's individual actions and the Debtor's individual intent to defraud, as opposed to collective findings made against the Debtor as part of a larger group of defendants.

<u>CONCLUSION</u>

The Plaintiffs' motion for partial summary judgment is denied without prejudice. The pre-trial conference in this matter is restored to the Court's calendar on December 20, 2021 at 9:30 a.m for further proceedings consistent with this Memorandum Decision.

So ordered.



Dated: Central Islip, New York                                    Robert E. Grossman
            December 3, 2021                            United States Bankruptcy Judge

# EXHIBIT F

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Blvd., Suite 1
Las Vegas, NV  89146-5308
Telephone:    (702) 228-7590
Facsimile:    (702) 892-0122
Lenard E. Schwartzer, Esq.
bkfilings@s-mlaw.com
(Admitted Pro Hac Vice)
Counsel to Russell Nype and
Revenue Plus LLC, Judgment Creditors

-- and --
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
Stuart.gordon@rivkin.com
Matthew.spero@rivkin.com
Co-Counsel to Russell Nype and
Revenue Plus LLC, Judgment Creditors

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>BARNET LOUIS LIBERMAN,<br><br><div align="right">Debtor.</div> | Case No. 8-21-70611-REG<br><br>Chapter 11<br><br>Adversary Proceeding No.: 21-8123-reg |
| RUSSELL NYPE and REVENUE PLUS, LLC,<br><br><div align="right">Plaintiffs,</div><br>vs.<br><br>BARNET LOUIS LIBERMAN<br><br><div align="right">Defendant.</div> | **DECLARATION OF SHELLEY D. KROHN IN SUPPORT OF MOTION FOR RECONSIDERATION OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF JUDGMENT DEBT OR RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:<br>Hearing Time: |

SHELLEY D. KROHN, being duly sworn, states:

I am over the age of 18 years and state the following based on personal knowledge.

1.     I am the duly appointed and acting Ch. 7 trustee in the bankruptcy case of Las Vegas Land Partners, LLC ("LVLP") pending in the United States Bankruptcy Court for the District of Nevada (the "Nevada Bankruptcy Court").

2.     As Trustee of LVLP, I sought the authority of the Nevada Bankruptcy Court to employ John W. Muije & Associates ("Muije") as my special counsel to prosecute the claims belonging to the bankruptcy estate of LVLP in the Eighth Judicial District Court (the "State Court"), Case No. A-16-740689-B, entitled *Russell Nype and Revenue Plus, LLC et al. vs. David J. Mitchell, Barnet Liberman, Las Vegas Land Partners, LLC et al.* (the "State Court Litigation").

3.     The Application to employ Muije informed the Nevada Bankruptcy Court that Russell Nype and I had agreed that any assets or funds collected from the Defendants would be divided equally between Russell Nype and the LVLP Bankruptcy Estate.

4.     The Nevada Bankruptcy Court authorized the employment of Muije as requested, including the terms stated in the Application.

5.     In the State Court Litigation, a motion for me to intervene was filed and granted.

6.     After my intervention in the State Court Litigation, all claims belonging to Russell Nype, Revenue Plus, LLC and the Bankruptcy Estate of LVLP were tried and a Judgment was entered in favor of Plaintiffs and against Defendants

7.      I am aware of the pending Adverasry Proceeding No. 21-8123-reg  (the "Adversary Proceeding") seeking to determine the dischargeability of the debt owed pursuant to the Judgment entered in the State Court Litigation in the United States Bankruptcy Court for the Eastern District of New York.

8.      I have read this Court's MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT entered in the Adversary Proceeding No. 21-8123-reg (the "Adversary Proceeding").

9.      I ratify the prosecution of the Adversary Proceeding pursuant to FRCP Rule 17(a)(3), I authorize the continued prosecution of the Adversary Proceeding, and I agree to be bound by its results.

10.     If this Court determines that I am a necessary party or the real party in interest for the Adversary Proceeding, I am ready and willing to intervene as a plaintiff in the pending Adversary Proceeding as an additional plaintiff.

11.     If this Court determines that it is necessary, I am ready and willing to join in a motion seeking an order from the Nevada Bankruptcy Court annulling the automatic stay to the extent this Court believes it is necessary in order for the Judgment in the State Court Litigation to be valid.

Dated:       December 14, 2021

_____
Shelley D. Krohn

Prepared By:

_/s/ Lenard E. Schwartzer_____
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm

# EXHIBIT G

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-21-70611-reg

4    Adv. Case No. 8-21-08123-reg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    BARNET LOUIS LIBERMAN,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   NYPE, ET AL.,

13               Plaintiffs,

14          v.

15   LIBERMAN,

16               Defendant.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

Page 2

1          United States Bankruptcy Court

2          290 Federal Plaza

3          Central Islip, New York 11722

4

5          January 24, 2021

6          10:20 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ROBERT E. GROSSMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1    HEARING re motion to lift stay.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   ROSEN & ASSOCIATES

 4        Attorneys for Debtor

 5        747 Third Avenue

 6        New York, NY 10017

 7

 8   BY:  SANFORD ROSEN (TELEPHONICALLY)

 9

10   SCHWARTZER & MCPHERSON LAW FIRM

11        Attorneys for Russell Nype

12        2850 South Jones Boulevard, Suite 1

13        Las Vegas, NV 89146

14

15   BY:  LENARD E. SCHWARTZER (TELEPHONICALLY)

16

17   RIVKIN RADLER

18        Attorneys for Russell Nype

19        926 RXR Plaza

20        West Tower

21        Uniondale, NY 11556

22

23   BY:  MATTHEW SPERO (TELEPHONICALLY)

24

25
```

Page 5

1   HOUMAND LAW FIRM, LTD.

2         Attorneys for Shelley Krohn, Chapter 7 Trustee

3         9205 West Russell Road

4         Building 3, Suite 240

5         Las Vegas, Nevada 89148

6

7   BY:   JACOB HOUMAND (TELEPHONICALLY)

8

9   ROSENBERG & ESTIS, P.C.

10        Attorneys for 3form Lender LLC and 305-421 LLC

11        733 Third Avenue

12        New York, NY 10017.

13

14   BY:   JOHH GIAMPOLO (TELEPHONICALLY)

15

16   SHEPPARD MULLIN

17        Attorneys for Access Bank

18        30 Rockefeller Plaza

19        New York, NY 10112

20

21   BY:   MIKE DRISCOLL (TELEPHONICALLY)

22

23

24

25

Page 6

1    WEINBERG GROSS & PERGAMENT

2         Trustee

3         400 Garden City Plaza, Suite 403

4         Garden City, NY 11530

5

6    BY:  MARC PERGAMENT (TELEPHONICALLY)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

```
 1                   P R O C E E D I N G S
 2           CLERK:  Next matter, Nype et al. v. Liberman,
 3    Adversary No. 21-8123, and Barnet Louis Liberman, Adversary
 4    No. 21-70611.  Please state your appearance.
 5           MR. SCHWARTZER:  Leonard Schwartzer appearing for
 6    Russell Nype and his company.
 7           MR. SPERO:  Good morning, Your Honor.  Matthew
 8    Spero from Rivkin Radler.  We are local counsel for Mr.
 9    Schwartzer to Russell Nype and Revenue Plus.
10           THE COURT:  Good morning.
11           MR. ROSEN:  Good morning, Your Honor.  Sanford
12    Rosen, Rosen & Associates, for the Debtor.
13           THE COURT:  Good morning.
14           MR. HOUMAND:  Good morning, Your Honor.  Jacob
15    Houmand appearing on behalf of Shelley Krohn, Chapter 7
16    Trustee in the Las Vegas Land Partners, which is pending in
17    Las Vegas, Nevada Bankruptcy Court.
18           THE COURT:  Good morning.
19           MR. PERGAMENT:  Good morning, Marc Pergament,
20    Weinberg Gross & Pergament, attorneys for the Trustee of Mr.
21    Liberman.  I am also the Trustee.
22           THE COURT:  Good morning.  Okay.  Is that
23    everybody on here I guess?
24           MR. GIAMPOLO:  Your Honor, I was going to make an
25    appearance.  Good morning, Your Honor.  John Giampolo,
```

Page 8

```
 1   Rosenberg & Estis, for creditor 3form Lender LLC and 305-421
 2   LLC.
 3              THE COURT:  Good morning.
 4              MR. DRISCOLL:  Good morning, Your Honor.  Mike
 5   Driscoll of Sheppard Mullin on behalf of Access Bank.  Thank
 6   you, Your Honor.
 7              THE COURT:  Good morning.  Okay.  Where do we
 8   begin.  Where do we begin.  Let's start with you guys with
 9   the motion to lift stay made by Nype counsel.  The Court
10   admit him, Mr. Nype, to go back to the Bankruptcy Court in
11   Nevada for a determination that the stay -- that the stay in
12   place at the time, assuming there was, can be annulled --
13   well, I won't say nunc pro tunc, but in essentially nunc pro
14   tunc, arguing that in the Ninth Circuit, the Ninth Circuit
15   law would be that would permit, if the Judge felt it was
16   appropriate, to find that the stay, if there was, was lifted
17   essentially that permitted consideration of the action in
18   the Nevada District Court with the intent to then bring that
19   decision back here and part and parcel of that, have me
20   reconsider my decision with regard to the collateral
21   estoppel effect of the Nevada judgment.
22              So assuming that's close to what we're arguing
23   about, or you are oral arguing, I'll ask the movant here to
24   explain to me the rationale why the Court -- why a stay
25   should be lifted in this case.
```

Page 9

```
 1           MR. SCHWARTZER:  Your Honor, Leonard Schwartzer
 2      speaking.  I just want to point out to the Court that the
 3      motion to lift stay only becomes necessary if we cannot
 4      convince you that the judgment is valid based upon the
 5      present circumstances, but I'm perfectly willing to argue
 6      the motion to lift stay now.
 7           The motion to lift stay requests this Court to
 8      allow the Nevada court to annul the automatic stay in the
 9      Las Vegas Land Partners case because at the time and as
10      obviously you are aware from the record, in the Las Vegas
11      Land Partners case, the Bankruptcy Court authorized the
12      trustee to employ John Nucci, who was Mr. Nype's counsel in
13      the state court action, to proceed on behalf of the trustee
14      and the Las Vegas Land Partners bankruptcy estate to proceed
15      with this litigation against Mr. Liberman, Mt. Mitchell, and
16      an assortment of their entities to recover claims against
17      them, including the fraudulent transfer claim that belonged
18      to the bankruptcy estate, the alter ego claim that belonged
19      to the bankruptcy estate, and the civil conspiracy claim
20      which we would assert belong to Mr. Nype at the same time.
21           THE COURT:  Hold it, hold it, hold it.  Just to be
22      technically clear, you're not arguing that the Bankruptcy
23      Court did anything with regard to a creditor proceeding.
24      You're arguing that the Bankruptcy Court permitted I think
25      your firm if I'm not wrong, maybe it's some other firm, but
```

1   a law firm to act on behalf of the bankruptcy trustee in the

2   case out there.

3           There was no determination of the rights of any

4   creditors to proceed, but there was determination that you

5   could represent simultaneously -- well, maybe not

6   simultaneously, but you represent the estate.  That was the

7   only thing the Bankruptcy Court did as I read the papers.

8           MR. SCHWARTZER:  I agree.  The Court order

9   authorized Mr. -- well, first of all, Mr. Nucci is not in my

10  firm.  He's been a --

11          THE COURT:  I'm sorry.

12          MR. SCHWARTZER:  He's a state court litigation

13  attorney who I know, and he referred Mr. Nype to me when the

14  Las Vegas Land Partners bankruptcy case was filed --

15          THE COURT:  Okay.

16          MR. SCHWARTZER:  -- to look at this.  And the

17  trustee, Shelley Krohn, who at that time -- Ms. Krohn's an

18  attorney, but she was -- and she was representing herself,

19  she did not have counsel -- filed the motion for employment

20  of Mr. Nucci.  And in the applications and in the

21  declarations that were filed in support of the motion to

22  employ Mr. Nucci to represent the bankruptcy estate, it was

23  made clear that there were multiple claims in the case, that

24  some of the claims undoubtedly were property of the

25  bankruptcy estate, and Mr. Nucci was employed by the

Page 11

1    bankruptcy estate on a one-third contingent fee.

2           But the applications made clear, and we pointed

3    that out in our briefs, made clear that the claim was going

4    to proceed with Mr. Nype, as well as being a plaintiff, and

5    that any recovery, either on any of the claims whether they

6    belonged to the bankruptcy estate or not, were going to be

7    divided 50/50 between the Las Vegas Land Partners bankruptcy

8    estate and Mr. Nype.

9           And the reason was very clear -- there was very

10   obvious reasons for the trustee wanting to do that.  One,

11   the bankruptcy estate of Las Vegas Land Partners was

12   allegedly by the filing a no-asset bankruptcy estate.  It

13   had no funds to employ counsel, no funds for investigation.

14          Number two, the lawsuit in the state court was

15   ready for trial.  I believe the order authorizing the

16   employment was in the fall of the year and the trial was set

17   for December 30th of that year, and it was quite apparent to

18   everybody that the Las Vegas Land Partners bankruptcy case

19   was filed for the sole purpose of staying that lawsuit.

20          And then, number two, the other part of the reason

21   why the trustee decided to do an intervention in the state

22   court action is because the state court action had been

23   filed several years earlier, and that would give the

24   plaintiffs in the state court action, at least I believe,

25   four additional years to look back at fraudulent transfers,

Page 12

1    which would be advantageous to the trustee and the

2    bankruptcy estate.

3              THE COURT:  Hold it, hold it.  We've been through

4    all this.  I understand this.  I'm simply asking no new

5    documents are presented to me from the court in Nevada, the

6    Bankruptcy Court, that deals specifically with Mr. Nype

7    lifting a stay permitting Mr. Nype's claims to proceed in

8    the State District Court.

9              Your argument that Ms. Krohn hired somebody to

10   represent her in the District Court claims out there, which

11   belonged to the bankruptcy estate, well and good.  But Ms.

12   Krohn's not in front of me as a defendant, nor is anybody

13   else.

14             Mr. Nype is arguing that implicitly the retention

15   of a lawyer to represent a trustee in a state court action

16   is implicitly a lifting of the stay to prevent a third party

17   creditor to proceed in that action.  That's what's difficult

18   for me to follow.

19             MR. SCHWARTZER:  Okay, and I understand.  That's

20   why -- and if that's the Court's feelings, then as you

21   stated --

22             THE COURT:  No, that's the law.  It's not the

23   Court's --

24             MR. SCHWARTZER:  Well --

25             THE COURT:  Sir, it's not the Court's feelings.

```
 1              MR. SCHWARTZER:  Okay.

 2              THE COURT:  You don't know me, but my feelings

 3     don't get hurt often.  The law, as I read it -- now other

 4     people read it differently -- that Mr. Nype may or may not

 5     have a claim that he could have continued in the District

 6     Court separate and apart from the trustee's claim.

 7              I think Mr. Rosen may disagree with that, but

 8     we'll hear from him in a few minutes.

 9              But that's not the point.  You want me to allow

10     you to go back to Nevada, make your argument to that judge

11     that, for whatever reason the judge should find that Mr.

12     Nype could also proceed or that the action of retaining a

13     lawyer was tantamount to a lifting of the stay.  And that

14     judge has every right to make any determination he wants,

15     but that's what you're asking me to allow you to do.

16              MR. SCHWARTZER:  Yes, Your Honor.

17              THE COURT:  Okay.  Now let's say, you've got a lot

18     of issues --

19              MR. SCHWARTZER:  And the reason --

20              THE COURT:  Hold it.  You got a lot of issues.

21     Let me have Mr. Rosen and other parties respond to this

22     discrete question, which is what is the opposition to the

23     argument that the retention of the lawyer to represent the

24     trustee is tantamount to a lifting of the stay and,

25     therefore, Mr. Nype had a stay lifted or, if not, you should
```

```
1     go back to the Nevada Bankruptcy Court and let that Court

2     re-issue a new order on this.

3               So first let me ask Mr. Pergament, then I'll ask

4     Mr. Rosen.  Mr. Pergament, you put in papers that don't

5     object to this relief, correct?

6               MR. PERGAMENT:  That's correct, Your Honor.  I

7     thought it was appropriate that he can go back to the State

8     Court in Nevada for that --

9               THE COURT:  He's not going back to the State

10    Court.

11              MR. PERGAMENT:  The Bankruptcy Court in Nevada to

12    make that determination as to what that judge -- how you

13    infer from that retention order.

14              THE COURT:  Why; what analysis could you do?  What

15    is the stay that's in place that you analyzed?

16              MR. PERGAMENT:  What I looked at, Your Honor, is I

17    looked at what was filed by Mr. Nype's counsel.  I looked at

18    the order that was signed by the Bankruptcy Court in Nevada.

19    I did not believe that was clear, but I believe it was that

20    Court that would have to decide.

21              THE COURT:  No, but you're a fiduciary to this

22    estate.  Tell me why I should and what is stayed to permit

23    him to go back to Nevada?  What property of the estate is

24    stayed?

25              MR. PERGAMENT:  I don't think the property of the
```

Page 15

1    estate is stayed, Your Honor.  I think it goes to the

2    dischargeability lawsuit that's before Your Honor.  That's

3    what I was looking at.

4            THE COURT:  There is no dischargeability because

5    you allowed -- look, because Mr. Liberman got a discharge in

6    this case in some magical way, which has created all kinds

7    of issues, whether you realize it or not.  So there is no

8    stay as to anything Mr. Liberman owns or controls in his own

9    name now because he's got a discharge, and once you get a

10   discharge, there's no stay.

11           So the only stay that you're consenting to is stay

12   that is currently property of this estate.  I want to know

13   from you as the trustee what's that property, since you put

14   in papers saying you don't object.

15           MR. PERGAMENT:  The only property this estate has,

16   Your Honor, that could be liquidated by the estate is the

17   fraudulent conveyance actions that the trustee is

18   investigating.  The trustee looked at the real property.

19           THE COURT:  What does that have to do with the

20   stay that's in front of me.

21           MR. PERGAMENT:  It doesn't.  I'm asking --

22           THE COURT:  Mr. Pergament, you put papers in --

23           MR. PERGAMENT:  I understand, Judge.

24           THE COURT:  -- saying you don't object.  I want to

25   know what property you looked at to determine that you don't

1     object to the lifting of the stay.  What property is it?

2              MR. PERGAMENT:  The only property, Your Honor, is

3     the property in Las Vegas that's the subject to the lawsuit

4     that underlies the entire bankruptcy.

5              THE COURT:  So while Mr. Rosen says that property,

6     which is property of the estate, may be subject deficient

7     judgment, you apparently don't care because you said, oh,

8     lift the stay, go back to Nevada.  You took a bizarre thing

9     (indiscernible) stay the order.

10             MR. PERGAMENT:  I don't think that's what I

11    intended, Your Honor.

12             THE COURT:  Yeah, well, I don't know what you

13    intended to do.

14             MR. PERGAMENT:  Okay.

15             THE COURT:  I don't even know why -- never mind.

16    There's other issues in this case.  Well, there's no answer

17    there.  So, Mr. Rosen, you tell me now.  What is the

18    property that you're objecting to for the stay to be lifted?

19             MR. ROSEN:  I'm sorry, Your Honor.  What is the

20    property?

21             THE COURT:  The problem we have is that because

22    this debtor, in the midst of everything else and all the

23    allegations in here, nobody did anything to interfere with

24    the debtor getting a discharge.  Any property that that

25    debtor has -- debtor, that Mr. Liberman has, there's no stay

```
 1    on anything.  There's no stay anymore because you got a
 2    discharge.
 3            The only stay that can is employed in this case
 4    would be estate property, the Liberman estate's property.
 5    I'm trying to figure out what that is.  You say I shouldn't
 6    lift the stay.  I'm trying to get somebody to answer me what
 7    property is stayed today.
 8            MR. SCHWARTZER:  Your Honor, Leonard Schwartzer
 9    speaking.  There is no --
10            THE COURT:  No, no, no, no.  I asked Mr. Rosen.
11    You can speak after though.
12            MR. SCHWARTZER:  I'm sorry.
13            THE COURT:  Thank you.
14            MR. ROSEN:  Your Honor, please forgive me, but I
15    just don't understand the question.
16            THE COURT:  All right, guys, I've been working on
17    this for two weeks now, and I don't even know what you all
18    are doing so far.  We find out that Mr. Liberman gets his
19    discharge.  So now, the only property that this Court has
20    jurisdiction over is property of the bankruptcy estate.
21            I asked the trustee, who should know since he
22    doesn't object to the lifting of the stay, what property he
23    analyzed to say he doesn't object.  He doesn't know.  We're
24    getting some answer that's not to do with anything.  Okay,
25    pass through that one.
```

1          I don't know what property I have jurisdiction

2     over to grant or deny a stay.  I don't know there is a stay.

3     They want to go back, as I understand, to Nevada and ask

4     that bankruptcy judge to do something, and then come back

5     here and face the same issues about whether or not there's

6     collateral estoppel on the judgments.  Why doesn't somebody

7     just try this case?  I don't know, but that's not my

8     problem.

9          The argument -- but the property, there is no

10    property that I can find of the debtor's estate today over

11    which this Court has jurisdiction.  I'm just asking somebody

12    to tell me if there is, what is it.  Hello?  Hello,

13    somebody, anybody?

14          MR. SCHWARTZER:  Leonard Schwartzer for Mr. Nype

15    and his company.  Your Honor, there's no property of the

16    estate.  This litigation doesn't affect the bankruptcy

17    estate as far as the estate's property goes.

18          THE COURT:  I actually think you're right.  I

19    think you're right.  I'm just trying to find somebody who's

20    argued against the lifting of the stay to explain to me why

21    I have to do anything.  There is no property that I have

22    jurisdiction over right now, because if the point was to go

23    back to Nevada to generate a claim against Liberman, that

24    clearly could be stayed if he hadn't already gotten his

25    discharge.  This guy's got his discharge.

1          And nobody objected, not Mr. Pergament certainly

2     who's the only one who can, to the claim of this 19 million.

3     So I have no idea what you're going to come out of Nevada

4     with that's going to matter to me; it may, it may not.  But

5     I certainly can't figure what order I have to enter in this

6     case to do anything.  You want to do it?  Do it, don't do

7     it.  If ultimately somebody comes after you for something,

8     you're the lawyer, make a determination.

9          But I don't know what jurisdiction, what property

10    -- now, Mr. Rosen, you've objected to the lifting of the

11    stay.  All I'm trying to find is what's the argument, what

12    property.

13          MR. ROSEN:  Well, Your Honor, I don't know that

14    it's the property at issue.  I think the problem is Mr. Nype

15    is seeking relief from the automatic stay to go back to the

16    Bankruptcy Court and essentially validate the judgment of

17    the Nevada District Court.

18          THE COURT:  No, no, he's not, he's not.  That's

19    the crazy thing about this.  Nobody's objected --

20          MR. ROSEN:  What do you --

21          THE COURT:  Mr. Rosen, nobody's objected to the

22    full claim that they filed.  They don't need anybody to tell

23    them they're owed 20 million bucks.

24          MR. ROSEN:  I agree with that.  He doesn't need a

25    judgment against the debtor to pursue his non-

```
1   dischargeability claim.  If he's got a claim, he's got a

2   claim.  He can prove it in the context of the

3   dischargeability challenge, but he has no right to go get

4   stay relief, in my opinion at least, and have the Las Vegas

5   Bankruptcy Court somehow retroactively say that there was no

6   stay violation with respect to the Las Vegas bankruptcy.

7            THE COURT:  The interesting question here would

8   be:  If there was a violation of the stay and damages

9   resulted from that, who would own those damages?  Obviously,

10  Mr. Pergament doesn't care because he doesn't raise any

11  objections to this and he's the only one who can.

12           So I don't -- nobody has come forward that has

13  standing to explain to me what automatic stay currently

14  applies.  I think they're right.  There is -- I'm not

15  issuing any order.  There is no -- in my mind, they want to

16  go back to Nevada and have that Judge say this judgment,

17  whatever infirmities the judge from New York may find on a

18  collateral estoppel argument, we're not dealing with; I'm

19  sure he's going to do that.

20           But to the extent the argument is it was stayed at

21  the time, I'm going to rule there was no stay in place, so

22  therefore, he can go back to New York and that argument is

23  off the table, which leaves us pretty much exactly where we

24  are today.  Now if they want to do that, it's a free

25  country, you know, okay.  I don't know if there are other
```

Page 21

1    reasons.  I don't know if Mr. Pergament and these creditors

2    have had conversations that ultimately -- I don't know what

3    they're doing.  I have no understanding of the actions in

4    this case.

5             But I do believe that I don't have to do anything.

6    I don't have jurisdiction, I don't believe, to prevent them

7    because there's a discharge, so they can't go after --

8    there's no purpose in going after Mr. Liberman because the

9    act occurred prepetition.  They're not going anyplace to

10   reaffirm the dollar amount of the claim because nobody's

11   objected to their claims, so they have that.

12            The only reason they're doing it obviously is to

13   reinforce a subsequent motion for summary judgment again

14   brought probably by either the trustee, who may or may not

15   be the right party, but all the other aspects of the case

16   are set in stone right now.

17            Whether Mr. Nype, at the time he filed his claim

18   here, had one or the trustee had the claim and whether the

19   trustee failed to file -- all those things that I mentioned

20   are not going to be changed in Nevada.  There's nothing in

21   Nevada that's going to change that.

22            The only issue in Nevada is whether or not there

23   was a stay in place; if there was, whether it was lifted.

24   And I don't know what that stay is on, therefore, I can't

25   tell them not to do it.  I don't think there's a violation

1    of the stay on the papers that's in front of me.

2         Now if somebody had raised the question that the

3    damages from the lifting of the stay that we had today,

4    therefore a reason not to send it back, I'm not sure, but

5    nobody raised it.  The trustee was the only one; he's not

6    doing anything on this.  So I don't see what the issue is

7    here.  I really don't.

8         I think there's a lot of energy, but you -- you're

9    good lawyers, you're all good lawyers.  If you believe that

10   there is no stay, go back.  I'm not finding it -- I can't

11   find any property of this bankruptcy estate that you'd be

12   stayed from going back to Nevada reaffirming the original

13   judgment.

14        You're not changing the dollar amount because that

15   dollar's already -- normally, people want to go back and

16   have a judge set the dollar amount for the claim.  That, we

17   don't have here, or they want to bring additional claims

18   that damage the debtor.  You can't do that here because this

19   debtor's already gotten his discharge.

20        The only issue in this case is the 523 and, for

21   some reason, nobody just wants to try it.  Make a motion in

22   limine on facts.  Everybody wants to go through this route.

23   Fine.  I got other things to do.

24        MR. SCHWARTZER:  Your Honor, could you enter an

25   order saying that the motion is moot because the stay

Page 23

```
 1   doesn't apply?
 2            THE COURT:  Nope, because I don't have
 3   jurisdiction.  I don't have jurisdiction.  There's no stay--
 4            MR. SCHWARTZER:  You have jurisdiction over the
 5   stay in the case of Mr. Liberman --
 6            THE COURT:  Correct.
 7            MR. SCHWARTZER:  -- to say that this motion is
 8   denied because it's moot because there's no stay in effect.
 9            THE COURT:  I'll tell you what, sir.  If you get
10   Mr. Rosen to agree to that -- I guess the trustee can chime
11   in, I don't know -- and everybody consents, fine.  I'll do
12   something.  It won't be --
13            MR. SCHWARTZER:  Well, Your Honor, that leaves my
14   client with the problem that if you don't lift the stay and
15   we go forward in Nevada and Mr. Rosen files a motion to hold
16   my client in contempt for violating the automatic stay
17   against further litigation against the -- oh, not the
18   automatic stay, the post-discharge stay.
19            THE COURT:  What do you want me to do, enjoin them
20   from doing that?  I'm not going to enjoin them from doing
21   that.
22            MR. SCHWARTZER:  No.  I would like you to say that
23   the stay doesn't apply and, therefore, the motion is moot.
24            THE COURT:  You're a good lawyer and you hit the
25   nail, the proverbial nail on the head, which is your issue,
```

Page 24

```
 1     not mine.  Once having gotten this discharge, Mr. Rosen and
 2     his client have full protection of a discharge.
 3               MR. SCHWARTZER:  Right.
 4               THE COURT:  If that impacts what you do in Nevada,
 5     that's their claim; they have that claim.  If it doesn't,
 6     they got no claim.
 7               MR. SCHWARTZER:  That is why we're in front of you
 8     asking you to make that decision beforehand so we're not
 9     potentially violating the stay.
10               THE COURT:  I'm not going to give you an order
11     that says what you do out there that Mr. Rosen is precluded
12     from protecting his client's rights unless he waives those
13     rights, and I've known him for too long to think he would do
14     that, will you, Mr. Rosen.
15               MR. ROSEN:  Right, Judge.
16               MR. SCHWARTZER:  So are you granting the motion or
17     denying the motion?
18               THE COURT:  I'm not doing anything with the
19     motion.  I don't think the motion raised the case of
20     controversy in front of me because there's no property that
21     anybody has shown me over which a stay exists.  I understand
22     other issues in the case.  It's a complicated fact.  Why
23     don't you just try the 523, but you don't want to do that.
24               MR. SCHWARTZER:  Because --
25               THE COURT:  Sir, that was rhetorical.  You have
```

Page 25

```
 1     every right --

 2               MR. SCHWARTZER:  I know.

 3               THE COURT:  You have every right --

 4               MR. SCHWARTZER:  But last time, it was a five-day

 5     trial, Your Honor, and my client doesn't want to pay for

 6     another five-day trial.

 7               THE COURT:  Ask your local counsel or anyone else

 8     here how long this trial will last in front of me.  I'll

 9     allow you to seek that information from Mr. Spero or anybody

10     else you want in the Second Circuit.  How long do you think

11     a trial like in front of Grossman will last, okay?  But you

12     have every right to protect your client.

13               Mr. Rosen has every right.  His client is sitting

14     with a discharge.  Whatever else he may have done and

15     however else that affects the rest of this case, he got it.

16     And if you now move in Nevada and Mr. Rosen creatively can

17     find an area where he believes that's a violation of that

18     discharge, he will move and protect his own client.  I can't

19     tell him he can't do that, and there's no order I can sign

20     today that can impact his right to argue post-discharge that

21     you're violating that discharge.  Done.

22               MR. SCHWARTZER:  Well, then what's the purpose of

23     a motion to lift stay with litigation?

24               THE COURT:  In this case?

25               MR. SCHWARTZER:  That's exactly what it is.  I bet
```

1    you he should have heard the order --

2          THE COURT:  Sir, I've had hundreds or a thousand

3    of this motion.  If you ask me in this case the purpose, the

4    answer is none to me.  But it's your motion, not mine.  I

5    didn't write it.  Would I have?  No.  But it's your motion,

6    it's good papers, it was interesting.

7          MR. SCHWARTZER:  Then all I'm asking, if it please

8    the Court to (indiscernible) granted or denied.

9          THE COURT:  Sir, I have no basis -- I'm not --

10   we're done with this.  I can't have the same argument a

11   hundred times.  I know what you want.  Why, I'm not sure.

12   But I have no ruling to make where nobody has defined what

13   property there is over which this motion is being made.

14   Nobody can -- the trustee can't tell me; nobody can tell me.

15          And what you're concerned with is an area that I

16   can't be concerned with, which is what happens to Mr.

17   Liberman's rights on a post-discharge injunction, so the

18   Court is basically deciding not to enter any order in this

19   case.  You want to try to mandamus me on it, be my guest.

20   Take two years and try it.  I'm not --

21          MR. SCHWARTZER:  I heard how long it takes.  I've

22   taken a few in the District Court, Your Honor, and it's not

23   very useful.

24          THE COURT:  Sir, trust me.  If I were you, ask

25   your local counsel.  We use motion in limine all the time.

Page 27

```
 1    I don't know what -- I can give people trials.  If you have
 2    a hundred witnesses, that's one thing.  Neither of you guys
 3    are going to have any witnesses in my way of looking at it.
 4           Mr. Liberman already has his discharge.  So what
 5    I'm missing in this case, guys, and this is why I wonder
 6    what the trustee's involvement is, is I don't think a lot of
 7    you believe the bankruptcy is going to accumulate
 8    substantial assets.  So the only asset that exists should
 9    exist, even in controversy, with either the people he's
10    distributed it to, properly or not, and they come back into
11    the estate, which leaves with a trustee who then do whatever
12    he does.
13           But there's stuff going on in this case that I
14    give you more credit than what's in front of me.  So I'm
15    seeing, hopefully, just the tip of an iceberg.
16    (Indiscernible), but it doesn't make any sense what you're
17    doing, so that's what I'm doing.  I'm not signing any order
18    because I don't think the Court has jurisdiction -- may have
19    jurisdiction, has no basis.  If you can find me a law,
20    something in the statute that requires me to enter some form
21    of order, show it to me.  Not now.
22           So that's where I am.  I've looked at the motion
23    to reconsider.  Essentially, what you're arguing is that you
24    want another crack at summary judgment, probably brought by
25    the trustee based on the new view or at least my view and my
```

1    decision.  Can't stop you from doing anything.

2              I'm not granting the motion to reconsider because

3    nothing has changed.  I don't find anything that changed,

4    other than I'm now sure the only party who got -- who was

5    empowered to win this case was the trustee, at least the

6    claims that I see.

7              If there are other aspects, there's nothing in the

8    record that has been presented to me that changes my view.

9    So I'm going to deny the motion to reconsider by the rules

10   on the lift stay to the extent there is.

11             I do give you leave, however, if you can find a

12   statute in law in the Bankruptcy Code that does what you

13   want it to do and doesn't -- and I find doesn't impair the

14   subsequent rights of Mr. Liberman for a post-discharge

15   injunction, I'll look at it.  There's nothing in front of me

16   on that now.  That's where I am, guys.

17             MR. SCHWARTZER:  Thank you, Your Honor.

18             THE COURT:  All right.  I'm going to give you a

19   holding date because I'm sure we're going to do this again.

20   I mean, I actually enjoy it because your papers are very

21   good, both sides, and there are very subtle issues and I

22   think there have been mistakes -- probably some mistakes

23   made to make it more interesting.

24             Madrie, give them a holding date.  I'll give you a

25   holding in two weeks out, maybe you can tell me where you

Page 29

1    are then.  If you don't need it, just call chambers and

2    we'll give you a longer one.

3             MR. SCHWARTZER:  Your Honor, could you give us a

4    longer one because I'm going to be away next week.

5             THE COURT:  Sure.  Put it out until the end of

6    February.

7             CLERK:  February 23rd at 9:30.

8             THE COURT:  We'll use February 23rd as a holding

9    date.

10            MR. SCHWARTZER:  Thank you, Your Honor.

11            THE COURT:  Thank you, all.

12            MR. ROSEN:  Thank you, Judge.

13            MR. PERGAMENT:  Thank you, Your Honor.

14            (Whereupon these proceedings were concluded at

15    10:59 AM.)

16

17

18

19

20

21

22

23

24

25

Page 30

1                           I N D E X

2

3                           RULINGS

4                                           Page        Line

5     Motion denied                          28           9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

1                  C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6     _Sonya M. Ledanski Hyde_

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  January 31, 2022

**[& - based]**                                                                       Page 1

**&**

**&**   4:3,10 5:9 6:1
   7:12,20 8:1

**1**

**1**   4:12
**10017**   4:6 5:12
**10112**   5:19
**10:20**   2:6
**10:59**   29:15
**11501**   31:23
**11530**   6:4
**11556**   4:21
**11722**   2:3
**12151**   31:6
**19**   19:2

**2**

**20**   19:23
**2021**   2:5
**2022**   31:25
**21-70611**   7:4
**21-8123**   7:3
**23rd**   29:7,8
**24**   2:5
**240**   5:4
**28**   30:5
**2850**   4:12
**290**   2:2

**3**

**3**   5:4
**30**   5:18
**300**   31:22
**305-421**   5:10 8:1
**30th**   11:17
**31**   31:25
**330**   31:21
**3form**   5:10 8:1

**4**

**400**   6:3
**403**   6:3

**5**

**50/50**   11:7
**523**   22:20 24:23

**7**

**7**   5:2 7:15
**733**   5:11
**747**   4:5

**8**

**8-21-08123**   1:4
**8-21-70611**   1:3
**89146**   4:13
**89148**   5:5

**9**

**9**   30:5
**9205**   5:3
**926**   4:19
**9:30**   29:7

**a**

**access**   5:17 8:5
**accumulate**   27:7
**accurate**   31:4
**act**   10:1 21:9
**action**   8:17 9:13
   11:22,22,24 12:15
   12:17 13:12
**actions**   15:17 21:3
**additional**   11:25
   22:17
**admit**   8:10
**adv**   1:4
**advantageous**
   12:1
**adversary**   7:3,3
**affect**   18:16
**agree**   10:8 19:24
   23:10
**al**   1:12 7:2
**allegations**   16:23
**allegedly**   11:12
**allow**   9:8 13:9,15
   25:9

**allowed**   15:5
**alter**   9:18
**amount**   21:10
   22:14,16
**analysis**   14:14
**analyzed**   14:15
   17:23
**annul**   9:8
**annulled**   8:12
**answer**   16:16 17:6
   17:24 26:4
**anybody**   12:12
   18:13 19:22 24:21
   25:9
**anymore**   17:1
**anyplace**   21:9
**apart**   13:6
**apparent**   11:17
**apparently**   16:7
**appearance**   7:4
   7:25
**appearing**   7:5,15
**applications**
   10:20 11:2
**applies**   20:14
**apply**   23:1,23
**appropriate**   8:16
   14:7
**area**   25:17 26:15
**argue**   9:5 25:20
**argued**   18:20
**arguing**   8:14,22
   8:23 9:22,24
   12:14 27:23
**argument**   12:9
   13:10,23 18:9
   19:11 20:18,20,22
   26:10
**asked**   17:10,21
**asking**   12:4 13:15
   15:21 18:11 24:8
   26:7

**aspects**   21:15 28:7
**assert**   9:20
**asset**   11:12 27:8
**assets**   27:8
**associates**   4:3
   7:12
**assortment**   9:16
**assuming**   8:12,22
**attorney**   10:13,18
**attorneys**   4:4,11
   4:18 5:2,10,17
   7:20
**authorized**   9:11
   10:9
**authorizing**   11:15
**automatic**   9:8
   19:15 20:13 23:16
   23:18
**avenue**   4:5 5:11
**aware**   9:10

**b**

**b**   2:21
**back**   8:10,19
   11:25 13:10 14:1
   14:7,9,23 16:8
   18:3,4,23 19:15
   20:16,22 22:4,10
   22:12,15 27:10
**bank**   5:17 8:5
**bankruptcy**   1:1
   2:1,23 7:17 8:10
   9:11,14,18,19,22
   9:24 10:1,7,14,22
   10:25 11:1,6,7,11
   11:12,18 12:2,6
   12:11 14:1,11,18
   16:4 17:20 18:4
   18:16 19:16 20:5
   20:6 22:11 27:7
   28:12
**barnet**   1:8 7:3
**based**   9:4 27:25

**basically** 26:18
**basis** 26:9 27:19
**behalf** 7:15 8:5
  9:13 10:1
**believe** 11:15,24
  14:19,19 21:5,6
  22:9 27:7
**believes** 25:17
**belong** 9:20
**belonged** 9:17,18
  11:6 12:11
**bet** 25:25
**bizarre** 16:8
**boulevard** 4:12
**briefs** 11:3
**bring** 8:18 22:17
**brought** 21:14
  27:24
**bucks** 19:23
**building** 5:4

**c**

**c** 4:1 7:1 31:1,1
**call** 29:1
**care** 16:7 20:10
**case** 1:3,4 8:25 9:9
  9:11 10:2,14,23
  11:18 15:6 16:16
  17:3 18:7 19:6
  21:4,15 22:20
  23:5 24:19,22
  25:15,24 26:3,19
  27:5,13 28:5
**central** 2:3
**certainly** 19:1,5
**certified** 31:3
**challenge** 20:3
**chambers** 29:1
**change** 21:21
**changed** 21:20
  28:3,3
**changes** 28:8
**changing** 22:14

**chapter** 5:2 7:15
**chime** 23:10
**circuit** 8:14,14
  25:10
**circumstances** 9:5
**city** 6:3,4
**civil** 9:19
**claim** 9:17,18,19
  11:3 13:5,6 18:23
  19:2,22 20:1,1,2
  21:10,17,18 22:16
  24:5,5,6
**claims** 9:16 10:23
  10:24 11:5 12:17
  12:10 21:11 22:17
  28:6
**clear** 9:22 10:23
  11:2,3,9 14:19
**clearly** 18:24
**clerk** 7:2 29:7
**client** 23:14,16
  24:2 25:5,12,13
  25:18
**client's** 24:12
**close** 8:22
**code** 28:12
**collateral** 8:20
  18:6 20:18
**come** 18:4 19:3
  20:12 27:10
**comes** 19:7
**company** 7:6
  18:15
**complicated**
  24:22
**concerned** 26:15
  26:16
**concluded** 29:14
**consenting** 15:11
**consents** 23:11
**consideration**
  8:17

**conspiracy** 9:19
**contempt** 23:16
**context** 20:2
**contingent** 11:1
**continued** 13:5
**controls** 15:8
**controversy** 24:20
  27:9
**conversations**
  21:2
**conveyance** 15:17
**convince** 9:4
**correct** 14:5,6
  23:6
**counsel** 7:8 8:9
  9:12 10:19 11:13
  14:17 25:7 26:25
**country** 20:25
  31:21
**court** 1:1 2:1 7:10
  7:13,17,18,22 8:3
  8:7,9,10,18,24 9:2
  9:7,8,11,13,21,23
  9:24 10:7,8,11,12
  10:15 11:14,22,22
  11:24 12:3,5,6,8
  12:10,15,22,25
  13:2,6,17,20 14:1
  14:1,8,9,10,11,14
  14:18,20,21 15:4
  15:19,22,24 16:5
  16:12,15,21 17:10
  17:13,16,19 18:11
  18:18 19:16,17,18
  19:21 20:5,7 23:2
  23:6,9,19,24 24:4
  24:10,18,25 25:3
  25:7,24 26:2,8,9
  26:18,22,24 27:18
  28:18 29:5,8,11
**court's** 12:20,23
  12:25

**crack** 27:24
**crazy** 19:19
**created** 15:6
**creatively** 25:16
**credit** 27:14
**creditor** 8:1 9:23
  12:17
**creditors** 10:4
  21:1
**currently** 15:12
  20:13

**d**

**d** 7:1 30:1
**damage** 22:18
**damages** 20:8,9
  22:3
**date** 28:19,24
  29:9 31:25
**day** 25:4,6
**dealing** 20:18
**deals** 12:6
**debtor** 1:10 4:4
  7:12 16:22,24,25
  16:25 19:25 22:18
**debtor's** 18:10
  22:19
**december** 11:17
**decide** 14:20
**decided** 11:21
**deciding** 26:18
**decision** 8:19,20
  24:8 28:1
**declarations**
  10:21
**defendant** 1:16
  12:12
**deficient** 16:6
**defined** 26:12
**denied** 23:8 26:8
  30:5
**deny** 18:2 28:9
**denying** 24:17

**determination**
8:11 10:3,4 13:14
14:12 19:8
**determine** 15:25
**differently** 13:4
**difficult** 12:17
**disagree** 13:7
**discharge** 15:5,9
15:10 16:24 17:2
17:19 18:25,25
21:7 22:19 23:18
24:1,2 25:14,18
25:20,21 26:17
27:4 28:14
**dischargeability**
15:2,4 20:1,3
**discrete** 13:22
**distributed** 27:10
**district** 1:2 8:18
12:8,10 13:5
19:17 26:22
**divided** 11:7
**documents** 12:5
**doing** 17:18 21:3
21:12 22:6 23:20
23:20 24:18 27:17
27:17 28:1
**dollar** 21:10 22:14
22:16
**dollar's** 22:15
**driscoll** 5:21 8:4,5

**e**

**e** 2:21,21,22 4:1,1
4:15 7:1,1 30:1
31:1
**earlier** 11:23
**eastern** 1:2
**ecro** 2:25
**effect** 8:21 23:8
**ego** 9:18
**either** 11:5 21:14
27:9

**employ** 9:12
10:22 11:13
**employed** 10:25
17:3
**employment**
10:19 11:16
**empowered** 28:5
**energy** 22:8
**enjoin** 23:19,20
**enjoy** 28:20
**enter** 19:5 22:24
26:18 27:20
**entire** 16:4
**entities** 9:16
**essentially** 8:13
8:17 19:16 27:23
**estate** 9:14,18,19
10:6,22,25 11:1,6
11:8,11,12 12:2
12:11 14:22,23
15:1,12,15,16
16:6 17:4,20
18:10,16,17 22:11
27:11
**estate's** 17:4
18:17
**estis** 5:9 8:1
**estoppel** 8:21 18:6
20:18
**et** 1:12 7:2
**everybody** 7:23
11:18 22:22 23:11
**exactly** 20:23
25:25
**exist** 27:9
**exists** 24:21 27:8
**explain** 8:24
18:20 20:13
**extent** 20:20
28:10

**f**

**f** 2:21 31:1
**face** 18:5
**fact** 24:22
**facts** 22:22
**failed** 21:19
**fall** 11:16
**far** 17:18 18:17
**february** 29:6,7,8
**federal** 2:2
**fee** 11:1
**feelings** 12:20,25
13:2
**felt** 8:15
**fiduciary** 14:21
**figure** 17:5 19:5
**file** 21:19
**filed** 10:14,19,21
11:19,23 14:17
19:22 21:17
**files** 23:15
**filing** 11:12
**find** 8:16 13:11
17:18 18:10,19
19:11 20:17 22:11
25:17 27:19 28:3
28:11,13
**finding** 22:10
**fine** 22:23 23:11
**firm** 4:10 5:1 9:25
9:25 10:1,10
**first** 10:9 14:3
**five** 25:4,6
**follow** 12:18
**foregoing** 31:3
**forgive** 17:14
**form** 27:20
**forward** 20:12
23:15
**four** 11:25
**fraudulent** 9:17
11:25 15:17

**free** 20:24
**front** 12:12 15:20
22:1 24:7,20 25:8
25:11 27:14 28:15
**full** 19:22 24:2
**funds** 11:13,13
**further** 23:17

**g**

**g** 7:1
**garden** 6:3,4
**generate** 18:23
**getting** 16:24
17:24
**giampolo** 5:14
7:24,25
**give** 11:23 24:10
27:1,14 28:11,18
28:24,24 29:2,3
**go** 8:10 13:10 14:1
14:7,23 16:8 18:3
18:22 19:15 20:3
20:16,22 21:7
22:10,15,22 23:15
**goes** 15:1 18:17
**going** 7:24 11:3,6
14:9 19:3,4 20:19
20:21 21:8,9,20
21:21 22:12 23:20
24:10 27:3,7,13
28:9,18,19 29:4
**good** 7:7,10,11,13
7:14,18,19,22,25
8:3,4,7 12:11 22:9
22:9 23:24 26:6
28:21
**gotten** 18:24
22:19 24:1
**grant** 18:2
**granted** 26:8
**granting** 24:16
28:2
**gross** 6:1 7:20

**grossman** 2:22
25:11
**guess** 7:23 23:10
**guest** 26:19
**guy's** 18:25
**guys** 8:8 17:16
27:2,5 28:16

**h**

**happens** 26:16
**head** 23:25
**hear** 13:8
**heard** 26:1,21
**hearing** 3:1
**hello** 18:12,12
**hired** 12:9
**hit** 23:24
**hold** 9:21,21,21
12:3,3 13:20
23:15
**holding** 28:19,24
28:25 29:8
**hon** 2:22
**honor** 7:7,11,14
7:24,25 8:4,6 9:1
13:16 14:6,16
15:1,2,16 16:2,11
16:19 17:8,14
18:15 19:13 22:24
23:13 25:5 26:22
28:17 29:3,10,13
**hopefully** 27:15
**houmand** 5:1,7
7:14,15
**hundred** 26:11
27:2
**hundreds** 26:2
**hurt** 13:3
**hyde** 3:25 31:3,8

**i**

**iceberg** 27:15
**idea** 19:3
**impact** 25:20

**impacts** 24:4
**impair** 28:13
**implicitly** 12:14
12:16
**including** 9:17
**indiscernible** 16:9
26:8 27:16
**infer** 14:13
**infirmities** 20:17
**information** 25:9
**injunction** 26:17
28:15
**intended** 16:11,13
**intent** 8:18
**interesting** 20:7
26:6 28:23
**interfere** 16:23
**intervention**
11:21
**investigating**
15:18
**investigation**
11:13
**involvement** 27:6
**islip** 2:3
**issue** 14:2 19:14
21:22 22:6,20
23:25
**issues** 13:18,20
15:7 16:16 18:5
24:22 28:21
**issuing** 20:15

**j**

**jacob** 5:7 7:14
**january** 2:5 31:25
**johh** 5:14
**john** 7:25 9:12
**jones** 4:12
**judge** 2:23 8:15
13:10,11,14 14:12
15:23 18:4 20:16
20:17 22:16 24:15
29:12

**judgment** 8:21
9:4 16:7 19:16,25
20:16 21:13 22:13
27:24
**judgments** 18:6
**jurisdiction** 17:20
18:1,11,22 19:9
21:6 23:3,3,4
27:18,19

**k**

**kinds** 15:6
**know** 10:13 13:2
15:12,25 16:12,15
17:17,21,23 18:1
18:2,7 19:9,13
20:25,25 21:1,2
21:24 23:11 25:2
26:11 27:1
**known** 24:13
**krohn** 5:2 7:15
10:17 12:9
**krohn's** 10:17
12:12

**l**

**land** 7:16 9:9,11
9:14 10:14 11:7
11:11,18
**las** 4:13 5:5 7:16
7:17 9:9,10,14
10:14 11:7,11,18
16:3 20:4,6
**law** 4:10 5:1 8:15
10:1 12:22 13:3
27:19 28:12
**lawsuit** 11:14,19
15:2 16:3
**lawyer** 12:15
13:13,23 19:8
23:24
**lawyers** 22:9,9
**leave** 28:11
**leaves** 20:23 23:13
27:11

**ledanski** 3:25 31:3
31:8
**legal** 31:20
**lenard** 4:15
**lender** 5:10 8:1
**leonard** 7:5 9:1
17:8 18:14
**liberman** 1:8,15
7:2,3,21 9:15 15:5
15:8 16:25 17:4
17:18 18:23 21:8
23:5 27:4 28:14
**liberman's** 26:17
**lift** 3:1 8:9 9:3,6,7
16:8 17:6 23:14
25:23 28:10
**lifted** 8:16,25
13:25 16:18 21:23
**lifting** 12:7,16
13:13,24 16:1
17:22 18:20 19:10
22:3
**limine** 22:22
26:25
**line** 30:4
**liquidated** 15:16
**litigation** 9:15
10:12 18:16 23:17
25:23
**llc** 5:10,10 8:1,2
**local** 7:8 25:7
26:25
**long** 24:13 25:8
25:10 26:21
**longer** 29:2,4
**look** 10:16 11:25
15:5 28:15
**looked** 14:16,17
14:17 15:18,25
27:22
**looking** 15:3 27:3
**lot** 13:17,20 22:8
27:6

louis  1:8 7:3

**m**

madrie  28:24
magical  15:6
mandamus  26:19
marc  6:6 7:19
matter  1:6 7:2
  19:4
matthew  4:23 7:7
mcpherson  4:10
mean  28:20
mentioned  21:19
midst  16:22
mike  5:21 8:4
million  19:2,23
mind  16:15 20:15
mine  24:1 26:4
mineola  31:23
minutes  13:8
missing  27:5
mistakes  28:22,22
mitchell  9:15
moot  22:25 23:8
  23:23
morning  7:7,10
  7:11,13,14,18,19
  7:22,25 8:3,4,7
motion  3:1 8:9 9:3
  9:6,7 10:19,21
  21:13 22:21,25
  23:7,15,23 24:16
  24:17,19,19 25:23
  26:3,4,5,13,25
  27:22 28:2,9 30:5
movant  8:23
move  25:16,18
mt  9:15
mullin  5:16 8:5
multiple  10:23

**n**

n  4:1 7:1 30:1
  31:1

nail  23:25,25
name  15:9
necessary  9:3
need  19:22,24
  29:1
neither  27:2
nevada  5:5 7:17
  8:11,18,21 9:8
  12:5 13:10 14:1,8
  14:11,18,23 16:8
  18:3,23 19:3,17
  20:16 21:20,21,22
  22:12 23:15 24:4
  25:16
never  16:15
new  1:2 2:3 4:6
  5:12,19 12:4 14:2
  20:17,22 27:25
ninth  8:14,14
nobody's  19:19,21
  21:10
non  19:25
nope  23:2
normally  22:15
nucci  9:12 10:9,20
  10:22,25
number  11:14,20
nunc  8:13,13
nv  4:13
ny  4:6,21 5:12,19
  6:4 31:23
nype  1:12 4:11,18
  7:2,6,9 8:9,10
  9:20 10:13 11:4,8
  12:6,14 13:4,12
  13:25 18:14 19:14
  21:17
nype's  9:12 12:7
  14:17

**o**

o  2:21 7:1 31:1
object  14:5 15:14
  15:24 16:1 17:22

17:23
objected  19:1,10
  19:19,21 21:11
objecting  16:18
objections  20:11
obvious  11:10
obviously  9:10
  20:9 21:12
occurred  21:9
oh  16:7 23:17
okay  7:22 8:7
  10:15 12:19 13:1
  13:17 16:14 17:24
  20:25 25:11
old  31:21
once  15:9 24:1
opinion  20:4
opposition  13:22
oral  8:23
order  10:8 11:15
  14:2,13,18 16:9
  19:5 20:15 22:25
  24:10 25:19 26:1
  26:18 27:17,21
original  22:12
owed  19:23
owns  15:8

**p**

p  4:1,1 7:1
p.c.  5:9
page  30:4
papers  10:7 14:4
  15:14,22 22:1
  26:6 28:20
parcel  8:19
part  8:19 11:20
parties  13:21
partners  7:16 9:9
  9:11,14 10:14
  11:7,11,18
party  12:16 21:15
  28:4

pass  17:25
pay  25:5
pending  7:16
people  13:4 22:15
  27:1,9
perfectly  9:5
pergament  6:1,6
  7:19,19,20 14:3,4
  14:6,11,16,25
  15:15,21,22,23
  16:2,10,14 19:1
  20:10 21:1 29:13
permit  8:15 14:22
permitted  8:17
  9:24
permitting  12:7
place  8:12 14:15
  20:21 21:23
plaintiff  11:4
plaintiffs  1:13
  11:24
plaza  2:2 4:19
  5:18 6:3
please  7:4 17:14
  26:7
plus  7:9
point  9:2 13:9
  18:22
pointed  11:2
post  23:18 25:20
  26:17 28:14
potentially  24:9
precluded  24:11
prepetition  21:9
present  9:5
presented  12:5
  28:8
pretty  20:23
prevent  12:16
  21:6
pro  8:13,13
probably  21:14
  27:24 28:22

[problem - state]

**problem** 16:21
18:8 19:14 23:14
**proceed** 9:13,14
10:4 11:4 12:7,17
13:12
**proceeding** 9:23
**proceedings**
29:14 31:4
**properly** 27:10
**property** 10:24
14:23,25 15:12,13
15:15,18,25 16:1
16:2,3,5,6,18,20
16:24 17:4,4,7,19
17:20,22 18:1,9
18:10,15,17,21
19:9,12,14 22:11
24:20 26:13
**protect** 25:12,18
**protecting** 24:12
**protection** 24:2
**prove** 20:2
**proverbial** 23:25
**purpose** 11:19
21:8 25:22 26:3
**pursue** 19:25
**put** 14:4 15:13,22
29:5

**q**

**question** 13:22
17:15 20:7 22:2
**quite** 11:17

**r**

**r** 2:21 4:1 7:1 31:1
**radler** 4:17 7:8
**raise** 20:10
**raised** 22:2,5
24:19
**rationale** 8:24
**read** 10:7 13:3,4
**ready** 11:15
**reaffirm** 21:10

**reaffirming** 22:12
**real** 15:18
**realize** 15:7
**really** 22:7
**reason** 11:9,20
13:11,19 21:12
22:4,21
**reasons** 11:10
21:1
**reconsider** 8:20
27:23 28:2,9
**record** 9:10 28:8
31:4
**recover** 9:16
**recovery** 11:5
**referred** 10:13
**reg** 1:3,4
**regard** 8:20 9:23
**reinforce** 21:13
**relief** 14:5 19:15
20:4
**represent** 10:5,6
10:22 12:10,15
13:23
**representing**
10:18
**requests** 9:7
**requires** 27:20
**respect** 20:6
**respond** 13:21
**rest** 25:15
**resulted** 20:9
**retaining** 13:12
**retention** 12:14
13:23 14:13
**retroactively** 20:5
**revenue** 7:9
**rhetorical** 24:25
**right** 13:14 17:16
18:18,19,22 20:3
20:14 21:15,16
24:3,15 25:1,3,12
25:13,20 28:18

**rights** 10:3 24:12
24:13 26:17 28:14
**rivkin** 4:17 7:8
**road** 5:3 31:21
**robert** 2:22
**rockefeller** 5:18
**rosen** 4:3,8 7:11
7:12,12 13:7,21
14:4 16:5,17,19
17:10,14 19:10,13
19:20,21,24 23:10
23:15 24:1,11,14
24:15 25:13,16
29:12
**rosenberg** 5:9 8:1
**route** 22:22
**rule** 20:21
**rules** 28:9
**ruling** 26:12
**rulings** 30:3
**russell** 4:11,18 5:3
7:6,9
**rxr** 4:19

**s**

**s** 4:1 7:1
**sanford** 4:8 7:11
**saying** 15:14,24
22:25
**says** 16:5 24:11
**schwartzer** 4:10
4:15 7:5,5,9 9:1,1
10:8,12,16 12:19
12:24 13:1,16,19
17:8,8,12 18:14
18:14 22:24 23:4
23:7,13,22 24:3,7
24:16,24 25:2,4
25:22,25 26:7,21
28:17 29:3,10
**second** 25:10
**see** 22:6 28:6
**seeing** 27:15

**seek** 25:9
**seeking** 19:15
**send** 22:4
**sense** 27:16
**separate** 13:6
**set** 11:16 21:16
22:16
**shelley** 5:2 7:15
10:17
**sheppard** 5:16 8:5
**show** 27:21
**shown** 24:21
**sides** 28:21
**sign** 25:19
**signature** 31:6
**signed** 14:18
**signing** 27:17
**simply** 12:4
**simultaneously**
10:5,6
**sir** 12:25 23:9
24:25 26:2,9,24
**sitting** 25:13
**sole** 11:19
**solutions** 31:20
**somebody** 12:9
17:6 18:6,11,13
18:19 19:7 22:2
**sonya** 3:25 31:3,8
**sorry** 10:11 16:19
17:12
**south** 4:12
**speak** 17:11
**speaking** 9:2 17:9
**specifically** 12:6
**spero** 4:23 7:7,8
25:9
**standing** 20:13
**start** 8:8
**state** 7:4 9:13
10:12 11:14,21,22
11:24 12:8,15
14:7,9

**[stated - years]** Page 7

stated 12:21
states 1:1 2:1
statute 27:20
  28:12
stay 3:1 8:9,11,11
  8:16,24 9:3,6,7,8
  12:7,16 13:13,24
  13:25 14:15 15:8
  15:10,11,11,20
  16:1,8,9,18,25
  17:1,3,6,22 18:2,2
  18:20 19:11,15
  20:4,6,8,13,21
  21:23,24 22:1,3
  22:10,25 23:3,5,8
  23:14,16,18,18,23
  24:9,21 25:23
  28:10
stayed 14:22,24
  15:1 17:7 18:24
  20:20 22:12
staying 11:19
stone 21:16
stop 28:1
stuff 27:13
subject 16:3,6
subsequent 21:13
  28:14
substantial 27:8
subtle 28:21
suite 4:12 5:4 6:3
  31:22
summary 21:13
  27:24
support 10:21
sure 20:19 22:4
  26:11 28:4,19
  29:5

**t**

t 31:1,1
table 20:23
take 26:20

taken 26:22
takes 26:21
tantamount 13:13
  13:24
technically 9:22
telephonically 4:8
  4:15,23 5:7,14,21
  6:6
tell 14:22 16:17
  18:12 19:22 21:25
  23:9 25:19 26:14
  26:14 28:25
thank 8:5 17:13
  28:17 29:10,11,12
  29:13
thing 10:7 16:8
  19:19 27:2
things 21:19
  22:23
think 9:24 13:7
  14:25 15:1 16:10
  18:18,19 19:14
  20:14 21:25 22:8
  24:13,19 25:10
  27:6,18 28:22
third 4:5 5:11
  11:1 12:16
thought 14:7
thousand 26:2
time 8:12 9:9,20
  10:17 20:21 21:17
  25:4 26:25
times 26:11
tip 27:15
today 17:7 18:10
  20:24 22:3 25:20
tower 4:20
transcribed 3:25
transcript 31:4
transfer 9:17
transfers 11:25
trial 11:15,16
  25:5,6,8,11

trials 27:1
true 31:4
trust 26:24
trustee 5:2 6:2
  7:16,20,21 9:12
  9:13 10:1,17
  11:10,21 12:1,15
  13:24 15:13,17,18
  17:21 21:14,18,19
  22:5 23:10 26:14
  27:11,25 28:5
trustee's 13:6
  27:6
try 18:7 22:21
  24:23 26:19,20
trying 17:5,6
  18:19 19:11
tunc 8:13,14
two 11:14,20
  17:17 26:20 28:25

**u**

u.s. 2:23
ultimately 19:7
  21:2
underlies 16:4
understand 12:4
  12:19 15:23 17:15
  18:3 24:21
understanding
  21:3
undoubtedly
  10:24
uniondale 4:21
united 1:1 2:1
unknown 2:25
use 26:25 29:8
useful 26:23

**v**

v 1:14 7:2
valid 9:4
validate 19:16
vegas 4:13 5:5
  7:16,17 9:9,10,14

10:14 11:7,11,18
  16:3 20:4,6
veritext 31:20
view 27:25,25
  28:8
violating 23:16
  24:9 25:21
violation 20:6,8
  21:25 25:17

**w**

waives 24:12
want 9:2 13:9
  15:12,24 18:3
  19:6 20:15,24
  22:15,17 23:19
  24:23 25:5,10
  26:11,19 27:24
  28:13
wanting 11:10
wants 13:14 22:21
  22:22
way 15:6 27:3
we've 12:3
week 29:4
weeks 17:17 28:25
weinberg 6:1 7:20
west 4:20 5:3
willing 9:5
win 28:5
witnesses 27:2,3
wonder 27:5
working 17:16
write 26:5
wrong 9:25

**x**

x 1:5,11,17 30:1

**y**

yeah 16:12
year 11:16,17
years 11:23,25
  26:20

**york**   1:2 2:3 4:6
    5:12,19 20:17,22