Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
May 20, 2022

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: | ) Case No.: 19-15333-MKN |
| | ) Chapter  7 |
| LAS VEGAS LAND PARTNERS, LLC, | ) |
| | ) |
| Debtor. | ) Date:   April 13, 2022 |
| | ) Time:  2:30 p.m. |
| | ) |

**ORDER ON MOTION TO ANNUL STAY TO VALIDATE**
**STATE COURT JUDGMENT[1]**

On April 13, 2022, the court heard the Motion to Annul Stay to Validate State Court Judgment ("Motion"), brought by Russell Nype and Revenue Plus, LLC, in the above-captioned case.  The appearances of counsel were noted on the record.  After arguments were presented, the matter was taken under submission.

**BACKGROUND**

On August 19, 2019, Las Vegas Land Partners, LLC ("Debtor") filed a "skeleton" voluntary Chapter 7 petition.  (ECF No. 1).  The petition is signed by David Mitchell ("Mitchell") as managing member of the Debtor.  On the same date, a Notice of Chapter 7 Bankruptcy Case - - No Proof of Claim Deadline was entered which set a meeting of creditors for September 25, 2019.  The case was assigned for administration to Chapter 7 panel trustee Shelley D. Krohn ("Trustee Krohn").

---

[1] In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.  All references to "Section" or "§§ 101-1532" are to the provisions of the Bankruptcy Code.

1

On October 3, 2019, Debtor filed its schedules of assets and liabilities ("Schedules"), statement of financial affairs ("SOFA"), and related documents. (ECF Nos. 20, 21, and 23). The documents are signed by Mitchell. Item 7 of the SOFA lists a civil action described as <u>Nype and Revenue Plus v. Mitchell, Liberman, et al</u>, Case No. A-16-740689-B ("State Litigation"), pending in the District Court Clark County ("State Court"). Defendants named in the State Litigation include the Debtor, Mitchell, another individual named Barnet Liberman ("Liberman"), and various other entities.

On October 24, 2019, the Trustee filed an application to employ John W. Muije & Associates ("Muije") as special counsel on a contingency basis to continue prosecution of the State Litigation under various legal theories, including fraudulent conveyance and alter ego claims. (ECF No. 28).

On October 31, 2019, an order was entered approving the Trustee's employment of Muije to pursue the State Litigation. (ECF No. 35).

On November 26, 2019, Debtor filed amended schedules of assets and liabilities, statement of financial affairs, an amended voluntary petition, and related documents, even though counsel for Debtor did not indicate "Amended" on the face of the documents. (ECF No. 37). All of the documents are signed by Mitchell on behalf of the Debtor. On this same date, Debtor filed a further amended statement of financial affairs that does not indicate "Amended" on the face of the document. (ECF No. 38). Amended property Schedule "A/B" lists "Possible fraudulent conveyance and alter ego claims" having an unknown value.

On January 23, 2020, Debtor filed another amended schedules of assets and liabilities and statement of financial affairs. Again, counsel for Debtor did not indicate "Amended" on the face of the documents. (ECF No. 43).

On March 12, 2020, a nonpriority unsecured proof of claim was filed by Russell L. Nype ("Nype") in the amount of $4,484,944.19. The claim is based on a counterclaim judgment in favor of Nype and Revenue Plus, LLC and against the Debtor. The counterclaim judgment was entered by the State Court on or about April 10, 2015, in a separate case denominated Case No. 07-A-551073. A copy of the counterclaim judgment is attached to Nype's proof of claim.

Collection of the counterclaim judgment obtained in April 2015 is the basis for Nype's commencement of the State Litigation in July 2016.

On June 19, 2020, Trustee Krohn filed her Initial Asset Report indicating that she "has received information so no further appearance is needed by the debtor MEETING CONCLUDED." (ECF No. 62).

On August 7, 2020, the Trustee filed an application to approve interim compensation of Muije & Associates for services rendered in the State Litigation. (ECF No. 63).

On September 10, 2020, an order was entered granting interim compensation of special counsel. (ECF No. 76).

On May 27, 2021, an order was entered approving a stipulation between the Trustee and Nype wherein the proof of claim filed by the latter would not be withdrawn or amended inasmuch as the claim amount represents approximately 98 percent of the timely filed claims in the Chapter 7 case. (ECF No. 85).

On March 11, 2022, Nype filed the instant Motion, along with a Request for Judicial Notice. (ECF Nos. 94 and 95). The Motion seeks to annul the automatic stay so that a judgment entered in the State Litigation on January 17, 2020, against various parties as alter egos of the Debtor ("Alter Ego Judgment"), would not be treated as void as a violation of the automatic stay. A copy of the Alter Ego Judgment is attached as Exhibit "D" to the Motion.[2] The Motion was noticed to be heard on April 13, 2022. (ECF No. 96).

---

[2] The Alter Ego Judgment is entitled "Amended Findings of Face and Conclusions of Law" and specifically references the Trustee's permitted intervention in the State Litigation. After numerous factual findings, the State Court concluded that application of the alter ego doctrine was warranted under Nevada law. Alter ego liability therefore was imposed on all of the Debtor, the individual defendants, and certain non-individual entities. Liability also was imposed based on certain fraudulent transfers under Nevada law as well as on the basis of civil conspiracy under Nevada law. The findings of fact, conclusions of law, and final judgment were entered by the Honorable Elizabeth Gonzalez after a multi-day bench trial commencing on December 30, 2019 and ending on January 7, 2020. Based on live witness testimony, Judge Gonzalez specifically found Mitchell not to be credible. The trial judge retired in 2021 and no longer serves on the State Court bench.

3

On March 30, 2022, an opposition to the instant Motion ("Opposition") was filed by counsel representing the Debtor as well as Mitchell.[3]  (ECF No. 99).

On March 30, 2022, the Trustee filed a joinder to the instant Motion.  (ECF No. 100).

On April 6, 2022, Nype filed a reply brief ("Reply") in support of the Motion.  (ECF No. 102).

**DISCUSSION**

The Alter Ego Judgment was entered in the State Litigation on January 17, 2020.  It was entered after Debtor filed its Chapter 7 petition on August 19, 2019.  The Alter Ego Judgment was entered against the Debtor as well as parties determined to be alter egos of the Debtor. While the Chapter 7 Trustee intervened in the State Litigation to pursue the bankruptcy estate's claims, the automatic stay had not been terminated to permit the Alter Ego Judgment to be entered against the Debtor.

Liberman commenced a voluntary Chapter 7 proceeding in the Eastern District of New York on April 1, 2021.  Nype objected to dischargeability of debt under Section 523(a) based on the Alter Ego Judgment.  The bankruptcy court in the adversary proceeding denied Nype's summary judgment motion without prejudice in December 2021.  The bankruptcy court determined that the Alter Ego Judgment may have been entered in violation of the automatic stay arising from the Debtor's bankruptcy and therefore may be a void judgment[4] that cannot be given issue preclusive effect in Liberman's proceeding.[5]

In the instant case, Nype, joined by the Trustee, now seek to annul the automatic stay under Section 362(d)(1) for cause.  Annulment would be effective so that the Alter Ego

---

[3] It appears that Mitchell is one of the named individual defendants that is personally liable under the Alter Ego Judgment.  It is not clear how the same counsel can represent parties adjudicated to be alter egos of one another without creating an actual conflict of interest.

[4] In the Ninth Circuit, acts taken in violation of the automatic stay are not merely voidable, but are *void ab initio.*  See Schwartz v. U.S. (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992); Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 934 (9th Cir. 2009); In re Ward, 2019 WL 5875106, at *3 (Bankr. D. Nev. June 10, 2019).

[5] The bankruptcy court's determination in the Liberman adversary fortuitously prevented more disputes over the validity of the Alter Ego Judgment from being raised in the future.

Judgment would not be void and therefore could be enforced.[6]  Both Nype, as well as the Trustee, benefit from the requested relief as it provides a basis for recovery of the amounts awarded under the Alter Ego Judgment.  By contrast, the opposition allegedly filed on behalf of the Debtor and Mitchell benefits no one entitled to protection in this bankruptcy case.

Debtor relinquished its control over property of the bankruptcy estate when it voluntarily commenced the Chapter 7 proceeding.  Possession and constructive possession of all legal and equitable interests of the Debtor passed to the Chapter 7 trustee under Section 704(a)(1).  See CBS, Inc. v. Folks (In re Folks), 211 B.R. 378, 388 (B.A.P. 9th Cir. 1997) (Chapter 7 trustee has sole standing to assert alter ego claim of Chapter 7 estate unless the claim is abandoned)[7]; see also In re Dao, 616 B.R. 103, 106 (Bankr. E.D. Cal. 2020); In re Zavala, 444 B.R. 181, 189-90 (Bankr. E.D. Cal. 2011).  Included among those legal interests was the decision-making power of the debtor entity.  See In re B&M Land & Livestock, LLC, 498 B.R. 262, 267 (Bankr. D. Nev. 2013) (Chapter 7 by limited liability company); compare also Schwartzer v. Cleveland (In re Cleveland), 519 B.R. 304, 306-07 (D. Nev. 2014) (Chapter 7 by sole member of single-member limited liability company).  Through its pre-bankruptcy counsel, Debtor filed the opposition.  At the hearing, counsel for the Trustee confirmed that the opposition was filed without the Trustee's consent and therefore was unauthorized.  For that reason alone, it is given no weight.

Mitchell is not a creditor in this bankruptcy proceeding.  He was never listed as a creditor in any of the Debtor's Schedules that he executed under penalty of perjury and Mitchell did not file a proof of claim.  Mitchell is inextricably conflicted because the Alter Ego Judgment was

---

[6] Entry of the Alter Ego Judgment on January 17, 2020, clearly preceded the commencement of Liberman's bankruptcy proceeding on April 1, 2021.  Whether the findings and conclusions of the trial judge in the State Litigation would be entitled to issue preclusive effect under Nevada law is immaterial at this time to any other matters in the Debtor's proceeding.  More important, whether the same findings and conclusions by the Nevada State Court should be given preclusive effect in Nype's dischargeability action against Liberman is not before this court.

[7] Abrogated on other grounds.  See Ahcom, Ltd. v. Smelding, 623 F.3d 1248, 1252 (9th Cir. 2010).

5

entered against him personally and his personal assets are at stake.  His unsurprising opposition to the instant Motion also is given no weight.[8]

Authority to annul the automatic stay is well established.  See Schwartz v. U.S. (In re Schwartz), 954 F.2d 569, 572-73 (9th Cir. 1992).  The continued availability of annulment also is well established.  See Merriman v. Fattorini (In re Merriman), 616 B.R. 381 (B.A.P. 9th Cir. 2020).[9]  Irrespective of whether entry of the Alter Ego Judgment, including the fraudulent transfer claims, violated the automatic stay arising from the Debtor's case, compare Koeberer v. California Bank of Commerce (In re Koeberer), 2021 WL 5271142, at * 1 (B.A.P. 9th Cir.Nov. 18, 2021), annulment of the automatic would validate entry of the judgment.  See Lonestar Sec. & Video, Inc. v. Gurrola (In re Gurrola), 328 B.R. 158, 172 (B.A.P. 9th Cir. 2005).

On numerous occasions, this court has determined whether cause exists to annul the automatic stay.  See, e.g., In re Leeds, 589 B.R. 186, 193-94 (Bankr. D. Nev. 2018) (annulment of automatic stay denied based on trustee's breach of duty, inadequate notice, and unclean hands); In re Barrett, 2019 WL 5884234 (Bankr. D. Nev. 2019), aff'd on other grounds, 833 Fed.Appx. 668 (9th Cir. 2020) (annulment of automatic stay granted in favor of purchaser at HOA foreclosure sale).  Whether "cause" exists under Section 362(d)(1) to annul the stay is

---

[8] While creditors and third parties can seek relief from the automatic stay, it is well established that creditors and third parties cannot assert the automatic stay to protect their own interests.  See Tilley v. Vucurevich (In re Pecan Groves of Ariz.), 951 F.2d 242, 245 (9th Cir. 1991).  Compare Bank of New York Mellon v. Enchantment Condominium Association, 2 F.4th 1229, 1232-33 (9th Cir. 2021) (HOA sale void as a violation of the automatic stay may be asserted under Nevada law by a creditor in a diversity action seeking quiet title; distinguishing In re Pecan Groves).

[9] In Roman Catholic Archdiocese of San Juan, P.R. v. Acevedo Feliciano, 140 S.Ct. 696 (2020), the Court addressed whether a "nunc pro tunc" order could be entered to restore jurisdiction to a court to validate orders in a removed case that were issued before the case was remanded.  The Court concluded that a "nunc pro tunc" order could not be entered to create jurisdiction for a court that did not have pending jurisdiction over a matter.  140 S.Ct. at 700-701.  In Merriman, the bankruptcy appellate panel recognized that annulment of the automatic stay remains available for proceedings in non-bankruptcy actions that are still pending.  616 B.R. at 393-94.

determined under a "balancing of the equities" test.  See Fjelsted v. Lien (In re Fjelsted), 293
B.R. 12, 24 (B.A.P. 9th Cir. 2003).

The following factors should be considered:

     1. Number of filings;

     2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

     3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

     4. The Debtor's overall good faith (totality of circumstances test): cf. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 93 (9th Cir. BAP 1988)(chapter 13 good faith);

     5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

     6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

     7. The relative ease of restoring parties to the status quo ante;

     8. The costs of annulment to debtors and creditors;

     9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

     10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

     11. Whether annulment of the stay will cause irreparable injury to the debtor;

     12. Whether stay relief will promote judicial economy or other efficiencies.

Id. at 25.

     For ease of analysis, these considerations may be grouped.  "Five of these factors (1, 2, 4, 6, and 11) focus solely on the debtor ('debtor factors'); three of these factors (3, 5, and 10) focus solely on non-debtors ('non-debtor factors'); three of these factors (7, 8, and 9) focus on both the debtor and non-debtor parties ('common factors'); and one factor (12) looks to judicial interests ('neutral factor').  All twelve factors ('Fjelsted Factors') simply provide an analytical framework and any one factor may be dispositive in comparison to the others…Thus,

determining whether annulment is proper is made on a case by case basis…" <u>In re Barrett</u>, 2019 WL at *9 (citations omitted).

In this instance, the "debtor factors" favor annulment of the stay. The instant case involves a single bankruptcy filing by an entity with no prior history of seeking bankruptcy protection. By electing a liquidation by a bankruptcy trustee under Chapter 7 rather than attempting a reorganization through prior management under Chapter 11, there appears to be no outward effort to prevent a neutral investigation of its financial affairs and assets. No suggestion has been made that the Debtor has failed to attend required meetings of creditors or failed to otherwise cooperate with the Chapter 7 trustee. Annulment of the automatic stay would benefit the bankruptcy estate through enforcement of the Alter Ego Judgment rather than cause irreparable injury. The debtor factors clearly support the requested relief.

The "non-debtor factors" also favor annulment of the automatic stay. If the Alter Ego Judgment is treated as void in absence of annulment of the automatic stay, the brunt of the injury is borne by Nype whose proof of claim represents over 98% of the timely filed claims in this case. Neither Mitchell nor Liberman are scheduled as creditors in the case, nor have they filed proofs of claim or interests. It is undisputed that Nype pursued the State Litigation in conjunction with the Chapter 7 Trustee, that the Trustee formally intervened in the State Litigation, and that the State Litigation liquidated claims that are property of the bankruptcy estate. Moreover, the record establishes that creditor Nype in conjunction with the Chapter 7 Trustee brought the instant Motion within a reasonable time after summary judgment was denied in the Liberman dischargeability proceeding. Under these circumstances, the non-debtor factors also support the requested relief.

The "common factors" also support annulment of the automatic stay. In this instance, the Alter Ego Judgment was obtained after presentation of evidence through a bench trial, and includes the entry of detailed findings of act and conclusions of law. If the Alter Ego Judgment is treated as void, further proceedings in the State Litigation would be required. As previously discussed in note 2, <u>supra</u>, the judgment was entered after a lengthy bench trial before a jurist who has retired and who would not be available to reassess, reconsider or review any of the

record in a civil action that commenced in 2016.  Under these circumstances, the ease of restoring the status quo, i.e., before the Alter Ego Judgment was entered, is non-existent for all practical purposes.  Because expeditious annulment of the automatic stay benefits a liquidation voluntarily initiated by the Debtor as well as the primary creditor in the case, the common factors also support the requested relief.

The remaining "neutral factor" overwhelmingly favors annulment of the automatic stay. Judicial economy is served for this court inasmuch as it facilitates the Trustee's administration of the estate, evaluation of claims, distribution of estate assets, and closure of the case.  Judicial economy is served for the State Court as it eliminates or minimizes that need for further proceedings in connection with the State Litigation.  Judicial economy may or may not be served for the bankruptcy court in the Liberman dischargeability action if the Alter Ego Judgment is material to the disposition of that matter.

Based on the foregoing, the court finds that the Fjeldsted considerations - the debtor, non-debtor, creditor, and neutral factors – favor retroactive relief from stay for cause under Section 362(d)(1).  Therefore, the court concludes that the automatic stay that arose in the Debtor's case on August 19, 2019, should be annulled for all purposes with respect to the Alter Ego Judgment entered in the State Litigation, including any post-judgment proceedings related thereto.

**IT IS THEREFORE ORDERED** that the Motion to Annul Stay to Validate State Court Judgment, brought on behalf of Russell Nype and Revenue Plus, LLC, Docket No. 94, and joined by the Shelley D. Krohn, Chapter 7 Trustee, Docket No. 100, be, and the same hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that effective August 19, 2019, the automatic stay arising in the above-captioned bankruptcy case is **ANNULLED** with respect to the action styled as Nype and Revenue Plus v. Mitchell, Liberman, et al, Case No. A-16-740689-B, commenced in the Eighth Judicial District Court, Clark County, Nevada.

Copies sent via BNC to all parties

9

Copies sent via BNC to:
LAS VEGAS LAND PARTNERS, LLC
ATTENTION: OFFICER OR MANAGING AGENT
375 E WARM SPRINGS ROAD, SUITE 104
LAS VEGAS, NV 89119

### #