LENARD E. SCHWARTZER (NV Bar No. 0399)
JASON A. IMES (NV Bar No. 7030)
Schwartzer & Imes Law Firm PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
Email: efilings@sailawfirm.com
*Counsel for Russell Nype*
   *and Revenue Plus, LLC, Plan Proponents*

<div style="text-align:center">

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

</div>

| | |
|---|---|
| In re | Case No. BK-S-19-15333-MKN |
| LAS VEGAS LAND PARTNERS, LLC, | Chapter 11 |
| Debtor. | **MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 11 CASE** |
| | Hearing Date: September 28, 2022<br>Hearing Time: 2:30 p.m. |

RUSSELL NYPE and REVENUE PLUS, LLC (collectively, "Creditors"), by and through their counsel, Schwartzer & Imes Law Firm PC, pursuant to Bankruptcy Code §706(b), move to convert the case of LAS VEGAS LAND PARTNERS, LLC ("Debtor") from a Chapter 7 case to a Chapter 11 case so that a Plan of Reorganization can be considered and confirmed.

On August 18, 2019 (more than (three (3) years ago), the Debtor filed its voluntary petition for relief under Chapter 7. Shelley D. Krohn ("Trustee") was immediately appointed trustee. See ECF 1 and 2.

Creditors are the only pre-petition creditors of this Debtor. The Debtor owes the Creditors more than $10,200,000 for breach of contract, fraudulent transfers and special damages for fraud. See Amended Claim 2 and the Attachment to Amended

. . .

. . .

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Claim 2.[1]

2      Previously, the Trustee, through the efforts of Special Counsel John W.

3  Muije, collected $221,142.31 in funds from an entity determined to an alter ego of

4  the Debtor named Casino Coolidge, LLC. The Creditors understand that the Trustee

5  has paid:

6      i.      A contingent fee to Muije of attorneys' fees in the amount of

7              $73,714.00 in fees plus reimbursement of in the amount of $29,730.23;

8              and

9      ii.     $5,000.00 to CBRE for its appraisal report.

10  The Trustee should have approximately $110,000.00 in funds.[2]

11      Debtor is the 100% owner of Wink One, LLC, a Nevada limited liability

12  company, ("Wink One") which owns a forty percent (40%) tenant-in-common

13  interest in the real property described as the city block bounded by Casino Center,

14  Bonneville, South 1st and Garces Streets, Las Vegas, Nevada [APN 139-34-301-

15  008] (the "Property"). This Property is co-owned with Forest City Realty Trust,

16  LLC ("Forest City"), the owner of the remaining sixty percent (60%) tenant-in-

17  common interest in the Property. This Property is subject to a long-term lease to the

18  Regional Transportation Commission of Southern Nevada (the "RTC"). The

19  Property has been appraised, as of September 20, 2020, for $72 million and is

20  subject to a secured debt of approximately $38 million. Nype believes it is

21  questionable that there will be sufficient proceeds from the sale of the Debtor's

22  interest in the Property to pay Nype's claim in full. As interest rates rise, the

23  . . .

24  _____

25  [1] $4,484,944 is owed by the Debtor to Creditors based on the Judgments entered April 10, 2015 and March 12, 2020 and $5,715,490 is owed to the Debtor and to the Creditors based on the

26  Judgment and Orders entered January 17, 2020, May 13, 2020(2), and May 14, 2020.  In addition, Creditors were awarded damages of $19,641,515 against Mitchell and Liberman. The Judgments

27  and orders are referred to as the "Judgments".

28  [2] An accounting from the Trustee has been requested and not, as yet, provided.

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 891 46-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

property declines in value.

The Plan Proponents are only pre-petition creditors of the Debtor who have a claim.[3]

The Trustee has had three (3) years to sell the Debtor's interest in the Property. To date, she has been unsuccessful. The Plan Proponents assert that it is time to turn over the sales efforts to the Creditors because of (a) the Trustee's delay in or inability to liquidate the Debtor's interest in the Property and (b) to avoid a substantial trustee's commission on the sale the Property based on sale.

The creditors have prepared a [PROPOSED] CREDITORS' PLAN OF REORGANIZATION "Plan") and a [PROPOSED] CREDITORS' DISCLOSURE STATEMENT ("Disclosure Statement") which are attached hereto as **Exhibit "A"** and **Exhibit "B"** and have set a hearing for this Court to approve the Disclosure Statement and set the hearing for confirmation of the Plan.[4]

The Plan proposes to reorganize the Debtor as follows:

1. Appoint Russell Nype as Manager of the Debtor;
2. Appoint Russell Nype as Manager of the Debtor's 100% owned subsidiary, Wink One, LLC (Wink One");
3. Pay all administrative priority fees and costs incurred in this Chapter 7 bankruptcy case;
4. Assume the contracts of and continue to work with the realtor and consultant previously employed by the Trustee;
5. Sell the property interest of the Wink One consisting of forty percent (40%) tenant-in-common interest in the Property to the RTC or a third party;

. . .

---

[3] Hayes & Welsh filed a Proof of Claim 1 but then withdrew it.  See ECF 81.

[4] Creditors will request that these hearing s be expedited because with only one set of Creditors who are plan proponents the voting will be predetermined.

**SCHWARTZER & IMES LAW FIRM PC**
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

6. Pay the unsecured claim of Russell Nype and Revenue Plus, LLC (up to 100% plus accrued interest); and

7. Distribute the balance of sales proceeds, if any, to members of the Debtor consisting of David Mitchell[5] and the Bankruptcy Estate of Barnet Louis Liberman ("Members").

## MEMORANDUM OF LAW

Bankruptcy Code §706(b) provides:

(b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time.

Bankruptcy Rule 1017(f)(1) provides:

(f) Procedure for Dismissal, Conversion, or Suspension.
    (1) Rule 9014 governs a proceeding to dismiss or suspend a case, or to convert a case to another chapter, except under §§706(a), 1112(a), 1208(a) or (b), or 1307(a) or (b).

Bankruptcy Code §706(b) contains no time limit for making the request to convert to Chapter 11 and does not require the consent of the debtor to convert to Chapter 11.[6] *Decker v. Office of the United States Trustee,* 548 B.R. 813, 816 (D. Alaska 2015) ("the plain language of 11 U.S.C. § 706(b) makes it clear that a bankruptcy court may convert a Chapter 7 proceeding to a Chapter 11 proceeding without the debtor's consent"); *In re Ravasia*, No. 17-00106-FPC, 2020 WL 4726416, at *9 (Bankr. E.D. Wash. Aug. 13, 2020), *aff'd,* No. 2:17-AP-80021-FPC, 2021 WL 1511940 (B.A.P. 9th Cir. Apr. 16, 2021), *aff'd,* No. 21-60029, 2022 WL 541183 (9th Cir. Feb. 23, 2022) ("11 U.S.C. § 706(b) permits a Bankruptcy Court to

---

[5] As of _____, 2022, Mitchell's interest in the Debtor is subject to a state court issued charging order in favor of Creditors.

[6] Contrast Bankruptcy Code §706(b) with §706(c) which requires debtor consent for conversions to Chapter 12 or Chapter 13.

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 891 46-5640
Tel: (702) 228-7590 · Fox: (702) 892-0122

convert a Chapter 7 case to Chapter 11 over objection from the debtor when conversion furthers the goals of the Bankruptcy Code.").

The decision whether to convert a chapter 7 case to a case under Chapter 11 under § 706(b) is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest. *Matter of Johnson,* 116 B.R. 224, 225–26 (Bankr.D.Idaho 1990) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 94 (1978), U.S.Code Cong. & Admin News 1978, pp. 5787, 5880, 6336)); *In re Decker*, 535 B.R. 828, 835 (Bankr. D. Alaska), *aff'd sub nom. Decker v. Off. of the United States Trustee,* 548 B.R. 813 (D. Alaska 2015); *In re Willis*, 345 B.R. 647, 654 (8th Cir. BAP 2006); *In re Schlehuber*, 489 B.R. 570, 573 (B.A.P. 8th Cir. 2013), *aff'd,* 558 F. App'x 715 (8th Cir. 2014); *Matter of Texas Extrusion Corp.,* 844 F.2d 1142, 1161 (5th Cir. 1988) ("These decisions to convert are within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest.").

"Since there are no specific grounds for conversion, a court 'should consider anything relevant that would further the goals of the Bankruptcy Code.'" *Proudfoot Consulting Co. v. Gordon (In re Gordon),* 465 B.R. 683, 692 (Bankr.N.D.Ga. 2012) (quoting *In re Lobera,* 454 B.R. 824, 854 (Bankr.D.N.M. 2011)).

## ARGUMENT

The key factual decision that this Court must make is whether conversion will "benefit of all parties in interest".[7]  In this case, the parties in interest consist of

---

[7] *Walden v. Walker*, 2006 WL 8451170, at *3 (S.D. Fla. Mar. 8, 2006), *aff'd sub nom. In re Walker*, 515 F.3d 1204 (11th Cir. 2008), stated:

Although no definition of "party in interest" exists in Chapter 7 of the Bankruptcy Code, the definition in Chapter 11 of the Code define a party in interest as "the debtor, the trustee, a creditor's committee.…" *In re Westwood Community Two Ass'n*, 293 F.3d 1332, 1336-37 (11th Cir. 2002)(quoting 11 U.S.C. § 1109(b)). The right for a party in interest to be heard as set out in Chapter 11 also applies in a

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 891 46-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 891 46-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

1.  Russell Nype and Revenue Plus, LLC, the Creditors, the only pre-petition creditors of the Debtor who have filed (and not withdrawn) a Proof of Claim for more than $10,000,000;

2.  The Debtor;

3.  David Mitchell and the bankruptcy estate of Barnet Liberman, the two members of the Debtor; and

4.  Shelley Krohn, the Trustee, and her counsel.

**Creditors**:

What is clear from the facts is that the Creditors have the largest stake in the outcome of this bankruptcy case. They are owed more than $10,200,000 and the Property of the Debtor's bankruptcy estate appears to be just about sufficient to pay that claim.  Russell Nype is an experienced real estate manager and has been pushing the Trustee to employ professionals to sell the Property. He has been pushing the Trustee to actively work to sell the bankruptcy estate's largest assets. It has taken the Trustee over 30 months (from August 19, 2019 to March 4, 2022) to apply for the employment of a realtor.  See ECF 88. It has taken the Trustee even longer (until July 14, 2022) to employ a consultant to lobby the RTC.  The creditors are enraged that the Trustee has been so lackadaisical in administering this bankruptcy estate.  For this reason, the Creditors have lost faith in the Trustee's ability to administer this case. The sale of the Property after reorganization will reduce the Trustee's commission by approximately $1,500,000 and will make more funds available for the Creditors and Members.

. . .

---

Chapter 7 case. Id. at 1337 (citing *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 5 (1st Cir. 1999))

For that reason, all the parties mentioned are "parties in interest".

**Debtor**: The Debtor is a limited liability company which will not receive a discharge in a Chapter 7 case. The Debtor could receive a discharge in a Chapter 11 case. That benefit is of limited value because the debtor has ceased doing business and its only remaining asset (other than the funds held by the Trustee and the indirect interest in the Property) is its uncollectible[8] judgment against Mitchell and Liberman. At a minimum, conversion to Chapter 11 will not harm the Debtor.

**Members**: The members are also judgment debtors to the Debtor and to the Creditors. The sooner the Property is sold the sooner they will have their debts reduced. The sale of the Property after reorganization will reduce the Trustee's commission and will increase the likelihood of funds being paid to the Members.

**Trustee**: Under any Chapter 11 Plan the Trustee and her counsel will be paid the commission, fees and costs they have earned in administering the Debtor's Chapter 7 estate. Upon conversion to Chapter 11, the Trustee and her counsel will have a much more limited role during the short period until the Plan is confirmed and the trustee is discharged. The Trustee's commission for administering the Chapter 11 case will not necessarily be based on distribution of funds from the sale of the Property but upon the work performed (subject to the limits in Bankruptcy Code §326) In Chapter 11 cases, this Court has more discretion to base the Trustee's commission on services provided by the Trustee than solely on the amount of funds transferred.[9] If

---

[8] The Trustee and her special counsel have not been able to collect anything from David Mitchell. According to the docket in that case, the trustee in the Liberman bankruptcy has not been able to collect any assets.

[9] See *In re Salgado-Nava*, 473 B.R. 911, 921 (B.A.P. 9th Cir. 2012), which stated:

> On the other hand, if extraordinary circumstances exist, or if chapter 11 trustee fees are at issue, the bankruptcy court may be called upon in those cases to determine whether there exists a rational relationship between the amount of the commission and the type and level of services rendered. In the case of a chapter 11 trustee, this determination necessarily requires consideration of the § 330(a)(3) factors, and also ordinarily includes a lodestar analysis.

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 891 46-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

the Property is sold after the Plan is confirmed and Nype is the manager of the reorganized Debtor there will be no Trustee commission based on the $38,000,000 payment made to the secured creditor through the sales escrow. The savings to the bankruptcy estate will be substantial. The comparative liquidation analysis is attached as **Exhibit "B"**.

No matter what the actual sales price obtained for the Property, there will be substantially more proceeds available for the Creditors and the Members, after administrative expenses, if the Property is sold through a reorganized Debtor than through a Chapter 7 Trustee.

### Chapter 11 Trustee

Prior to the filing of this case, the managers of the debtor committed fraud and made fraudulent transfer as shown by the Judgments.  Bankruptcy Code §1107(a) provides:

> **(a)** At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>> **(1)** for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either **before or after the commencement of the case**, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>> **(2)** if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

---

*In re Scoggins,* 517 B.R. 206, 217 (Bankr. E.D. Cal. 2014) (cases in which there are significant disbursements without proportionate effort by the trustee … may lead to a maximum commission so high as to be not reasonable.)

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 891 46-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    In this case, the prior management (Mitchell and Liberman) has been proven to

2    be untrustworthy. See Judgments. Appointment of a Chapter 11 trustee is mandated.

3                                 **RELIEF REQUESTED**

4

5    RUSSEL NYPE and REVENUE PLUS, LLC request that this case be converted to a

6    case under Chapter 11 to allow the Creditors to propose and confirm a plan of

7    reorganization as described in this motion.

8    RUSSEL NYPE and REVENUE PLUS, LLC further request that a Chapter 11 trustee

9    be appointed to serve in this case until the Plan can be confirmed.

10    DATED:  August 25, 2022

11                              SCHWARTZER & IMES LAW FIRM PC

12                              /s/ Lenard E. Schwartzer
                                Lenard E. Schwartzer, Esq.
13                              2850 South Jones Blvd., Suite 1
14                              Las Vegas, Nevada 89146-5640
                                *Attorneys for Russell Nype*
15                                *and Revenue Plus, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT A

LENARD E. SCHWARTZER (NV Bar No. 0399)
JASON A. IMES (NV Bar No. 7030)
Schwartzer & Imes Law Firm PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile:  (702) 892-0122
Email: efilings@sailawfirm.com
*Counsel for Russell Nype
  and Revenue Plus, LLC, Plan Proponents*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-19-15333-MKN |
| LAS VEGAS LAND PARTNERS, LLC, | Chapter 11 |
| Debtor. | Hearing Date: September 28, 2022<br>Hearing Time: 2:30 p.m. |

## [PROPOSED] CREDITORS' PLAN OF REORGANIZATION

## ARTICLE I

## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") is proposed by Russell Nype and Revenue Plus, LLC ("Plan Proponents" or "Nype"), the sole pre-petition creditors of this Debtor.  The Plan proposes to reorganize the Debtor as follows:

1. Appoint Russell Nype as Manager of the Debtor;

2. Appoint Russell Nype as Manager of the Debtor's 100% owned subsidiary, Wink One, LLC (Wink One");

3. Pay all administrative priority fees and costs incurred in this Chapter 7 bankruptcy case;

4. Assume the contracts of and continue to work with the realtor and consultant previously employed by the Chapter 7 Trustee, Shelley Krohn ("Trustee");

5. Sell the property interest of the Wink One consisting of forty percent (40%) tenant-in-common interest in the real property described as the city block

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

bounded by Casino Center, Bonneville, South 1st and Garces Streets, Las Vegas, Nevada [APN 139-34-301-008] (the "Property"), to Regional Transportation Commission of Southern Nevada (the "RTC") or a third party;

6. Pay the unsecured claim of Russell Nype and Revenue Plus, LLC (up to 100% plus accrued interest and costs); and

7. Distribute the balance of sales proceeds to members of the Debtor consisting of David Mitchell[1] and the Bankruptcy Estate of Barnet Louis Liberman ("Members").

This Plan provides for one class of creditor claims and one class of Members. Administrative creditors and other priority claims, if any, are unclassified and unimpaired because the Plan provides for the 100% payment of administrative and priority claims, if any, upon the Effective Date using the funds held by the Trustee.

All creditors and equity should refer this Plan and the Disclosure Statement for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II

### <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

2.01  <u>Priority</u>:      All allowed claims entitled to priority under § 507 of the Code including Trustee's commission and Trustee's counsel's fees and costs.

2.02  <u>Class 1</u>:      General Unsecured and Secured Creditors consisting of the claims of Russell Nype and Revenue Plus, LLC

2.03  <u>Class 2</u>:      Membership interests in the Debtor.

…

…

---

[1] Mitchell's interest in the Debtor is subject to a state court issued charging order in favor of Russell Nype and Revenue Plus, LLC

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified Claims:</u>  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes[2].

3.02    <u>United States Trustee Fees:</u>  All fees required to be paid by 28 U.S.C. §1930(a)(6)  (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Priority Claims | Unimpaired | These creditors are unimpaired by this Plan, and each holder of a Priority Claim will be paid in full, in cash, upon the later of the Effective Date of this Plan or the date on which such fees, costs and commissions are approved by a final non-appealable order, whichever is later. |
| Class 1 - General Unsecured Creditors | Impaired | Class 1 is impaired by this Plan. General Unsecured Creditors will be paid in full, including interest, but only from and to the extent of the proceeds from the sale of the Debtor's indirect interest in the Property. |
| Class 2- Members of the Debtor (Equity) | Unimpaired | Class 2 is unimpaired by this Plan. The members of the Debtor will retain their equity interest in the Debtor and will receive any assets remaining after the payment of Class 1 |

## ARTICLE V

---

[2] Since the Debtor is a pass-through entity for purposes of federal income tax there should be no priority tax claim.

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim:  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection.

5.02    Delay of Distribution on a Disputed Claim:  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03     Settlement of Disputed Claims: The Plan Proponents and the reorganized Debtor will have the power and authority to settle and compromise a disputed claim without court approval.

5.06    Chapter 7 Administrative Claims:  All parties requesting treatment as Chapter 7 administrative priority creditors, except the previously employed Realtor and Consultant, shall file motions for payment of their administrative claims within 14 days of the entry of the order converting this case to a case under Chapter 11 or shall be forever barred from making such claim.

5.07    Chapter 11 Administrative Claims:  All parties, except the previously employed Realtor and Consultant, requesting treatment as Chapter 11 administrative priority creditors shall file motions for payment of their administrative claims within 14 of the Effective Date of the Plan or shall be forever barred from making such claim.

**ARTICLE VI**

**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01    Assumed Executory Contracts and Unexpired Leases:

(a)    The Debtor will assume the following executory contracts as of the Effective Date:

Realtor:  *Cushman & Wakefield U.S., Inc. dba Cushman & Wakefield*
Consultant:  *Alisa Nave, LLC*

(b)    The Debtor will be conclusively deemed to have rejected all pre-petition executory contracts and/or unexpired leases not expressly assumed under section

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

6.01(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c)     This Plan does not reject or otherwise amend the existing lease of the Property to the RTC.

(d)     This Plan does not reject or otherwise amend any existing agreement between the Debtor (or debtor's bankruptcy estate) and Forest City Realty Trust, LLC ("Forest City"), the owner of the remaining sixty percent (60%) tenant-in-common interest in the Property.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    The means for implementation of this Plan are:

(a) the funds held by the Trustee;

(b) funds provided by the Plan Proponents to pay any remaining claims of Chapter 7 administrative creditors on the Effective Date of the Plan; and

(c) the sale of the Debtor's indirect 40% interest in the Property owned by Wink One (most probably through the sale of the Property to the RTC).

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction:  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02    Effective Date of Plan:  The Effective Date of this Plan is the first business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

8.03   Severability:  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   Binding Effect:  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05   Captions:  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   Controlling Effect:   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07   Governance:   On the Effective Date, Russell Nype shall be the manager of the reorganized Debtor and shall remain its manager until the Property is sold and the sales proceeds from that sale are distributed by the reorganized Debtor.

8.08   Closing Case:  The case shall be closed upon the payment of all administrative claims and priority claims.

## ARTICLE IX

## DISCHARGE

Discharge:  The Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date.

Respectfully Submitted
Russell Nype
Revenue Plus, LLC


By: /s/ Russell Nype
Russell Nype, Manager
The Plan Proponents

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

Prepared by:

SCHWARTZER & IMES LAW FIRM PC


By: __/s/  Lenard E. Schwartzer_____
    Lenard E. Schwartzer, Esq.
    *Counsel for Russell Nype*
    *and Revenue Plus, LLC, Plan Proponents*

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT B

1  LENARD E. SCHWARTZER (NV Bar No. 0399)
   JASON A. IMES (NV Bar No. 7030)
2  Schwartzer & Imes Law Firm PC
   2850 South Jones Boulevard, Suite 1
3  Las Vegas, Nevada 89146-5308
   Telephone: (702) 228-7590
4  Facsimile:  (702) 892-0122
   Email: efilings@sailawfirm.com
5  *Counsel for Russell Nype*
6    *and Revenue Plus, LLC, Plan Proponents*

7                    **UNITED STATES BANKRUPTCY COURT**

8                         **DISTRICT OF NEVADA**

9   In re                          | Case No. BK-S-19-15333-MKN
10  LAS VEGAS LAND PARTNERS, LLC,   | Chapter 11
11
                         Debtor.    | Hearing Date: September 28, 2022
12                                    Hearing Time: 2:30 p.m.

13            **[PROPOSED] CREDITORS' DISCLOSURE STATEMENT**

14                        **TABLE OF CONTENTS**

15  I.    INTRODUCTION..................................................................................................1
16        A.    Purpose of This Document...................................................................2
17        B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing..............3
18        C.    Disclaimer ...................................................................................4
19  II.   BACKGROUND ...................................................................................4
20        A.    Description and History of the Debtor's Business...................................4
21        B.    Insiders of the Debtor.......................................................................5
22        C.    Property Value ...............................................................................5
23        D.    Management of the Debtor Before and During the Bankruptcy............................6
24        E.    Events Leading to Chapter 11 Filing .................................................6
25        F.    Significant Events During the Bankruptcy Case .................................6
26        G.    Projected Recovery of Avoidable Transfers.......................................8
27        H.    Claims Objections...........................................................................9
28        I.    Current and Historical Financial Conditions .......................................9

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

**III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF**

**CLAIMS AND EQUITY INTERESTS**.................................................................9

    A.    What is the Purpose of the Plan of Reorganization?................................9

    B.    Unclassified Claims ...............................................................................9

    C.    Means of Implementing the Plan ..........................................................11

    D.    Risk Factors ..........................................................................................13

    E.    Executory Contracts and Unexpired Leases .........................................13

    F.    Tax Consequences of Plan ....................................................................13

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**........................13

    A.    Who May Vote or Object.......................................................................14

    B.    Votes Necessary to Confirm the Plan ...................................................15

    C.    Liquidation Analysis .............................................................................16

    D.    Feasibility ..............................................................................................17

**V.    EFFECT OF CONFIRMATION OF PLAN** .................................................18

    A.    Discharge ...............................................................................................18

    B.    Modification of Plan .............................................................................18

    C.    Final Decree ..........................................................................................18

**EXHIBITS** ........................................................................................................20

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

**SCHWARTZER & IMES LAW FIRM PC**
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

I.      INTRODUCTION

**LAS VEGAS LAND PARTNERS LLC** (the "Debtor" or "LVLP") is a Nevada limited liability company formed by David Mitchell ("Mitchell") and Barnet Louis Liberman ("Liberman") to make real estate developments. Russell Nype and Revenue Plus LLC (collectively, the "Plan Proponents" or "Nype") are the sole pre-petition creditors of the Debtor as a result of judgments issued by the District Court, Clark County ("State Court") issued in Case No. 07-A-551073 (the "First Judgment"). The amount due on the First Judgment is now in excess of $5 million.

Pre-petition, Nype sued David Mitchell ("Michell"), Barnet Louis Liberman ("Liberman"), the Debtor and related entities alleging fraudulent transfers, conspiracy defraud and alter ego in the State Court as Case No. 16-A-740689. On August 19, 2019, shortly before the trial in this case, the Debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code which is this pending bankruptcy case.

On August 19, 2019, Debtor filed a petition for relief under Chapter 7. On the same day, Shelley Krohn ("Trustee") was appointed trustee in the Debtor's case. The Trustee employed John W. Muije & Associates ("Muije"), as special counsel to pursue in State Court the Debtor's claims against Mitchell, Liberman and the related entities. The prosecution of these claims resulted in a judgment that the related entities (including Wink One, LLC) were alter egos of the Debtor and monetary judgments against Mitchell and Liberman ("the Second Judgment") in favor of the Trustee and Nype.

Debtor is the 100% owner of Wink One, LLC, a Nevada limited liability company ("Wink One") which owns a forty percent (40%) tenant-in-common interest in the real property described as the city block bounded by Casino Center, Bonneville, South 1st and Garces Streets, Las Vegas, Nevada [APN 139-34-301-008] (the "Property"). This Property is co-owned with Brookfield Properties as successor to Forest City Realty Trust, LLC ("Brookfield"), the owner of the remaining sixty percent (60%) tenant-in-common interest in the Property. This property is subject to a long-

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Los Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

term lease to the Regional Transportation Commission of Southern Nevada (the "RTC"). The Property has been appraised for up to $72 million and is subject to a secured debt in excess of $38 million. Nype believes it is unlikely that there will be sufficient proceeds from the sale of the debtor's interest in the Property to pay Nype's claim in full.

The Plan Proponents are only pre-petition creditors of the Debtor who have filed and not withdrawn a proof of claim.

The Trustee has had three (3) years to sell the Debtor's interest in the Property. To date, she has been unsuccessful. The Plan Proponents assert that it is time to turn over the sales efforts to Nype because of (a) the Trustee's delay in or inability to liquidate the Debtor's interest in the Property within a reasonable period of time, and (b) to avoid a substantial trustee's commission on the sale the Property based on sale.

This is the Disclosure Statement (the "Disclosure Statement") in the Chapter 11 case of LVLP. This Disclosure Statement contains information about the Debtor and describes the CREDITORS' PLAN OF REORGANIZATION  (the "Plan") filed by the Plan Proponents. A full copy of the Plan is attached to this Disclosure Statement as **Exhibit "A."**  ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages _____ of this Disclosure Statement. All creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at 100 cents on the dollar.

A.    **Purpose of This Document**

This Disclosure Statement describes:

● The Debtor's assets and liabilities;

● The Debtor and significant events during the bankruptcy case;

. . .

. . .

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

- Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**1.      *Time and Place of the Hearing to Confirm the Plan***

The hearing at which the Court will determine whether confirm the Plan will take place on  [insert date] , at [insert time], at the United States Bankruptcy Court, Foley Federal Building, 300 Las Vegas Boulevard South, Las Vegas, Nevada. The hearing may be conducted by telephone or by video. Remote participation information may be found on the posted calendar on the court's website at www.nvb.uscourts.gov/calendars/court-calendars.

**2.      *Deadline For Voting to Accept or Reject the Plan***

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Schwartzer & Imes Law Firm

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 891 46-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

PC, 2850 South Jones Boulevard, Suite 1, Las Vegas, Nevada  89146-5640. See Section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received on or before **[insert date]** or it will not be counted.

3.    *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon Schwartzer & Imes Law Firm PC, 2850 South Jones Boulevard, Suite 1, Las Vegas, Nevada  89146-5640 on or before **[insert date].**

4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Schwartzer & Imes Law Firm PC, 2850 South Jones Boulevard, Suite 1, Las Vegas, Nevada  89146-5640.

**C.    Disclaimer**

***The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

**II.    BACKGROUND**

**A.    Description and History of the Debtor's Business**

The Debtor is a Nevada limited liability company.  It was formed on 2005 by Mitchell and Liberman.  The Debtor was formed for the purpose of developing the Property and other real estate projects.

In 2007, Debtor sued Nype in the State Court as Case No. 07-A-551073 and Nype filed a counterclaim against the Debtor. Eventually, after remand by the Nevada Supreme Court, on April 10, 2015, the State Court issued a judgment against Debtor in the amount of $2,608,797.50 plus interest from 2007, attorney's fees and costs. And, on November 1, 2018, an Amended and Final Judgment. More than $4,500,000.00 is owed

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

by the Debtor to Nype on the First Judgment.

Mitchell and Liberman intentionally stripped the Debtor of assets in order to avoid paying Nype.

On July 26, 2016, Nype sued Mitchell, Liberman, the Debtor and several related entities in the State Court as Case No. 16-A-740689. The Complaint in this case alleged (a) he was entitled to a constructive trust on the property of the Debtor and co-defendants, (b) he was entitled to avoid the fraudulent transfers of real property by the debtor and co-defendants, (c) that Mitchell and Liberman had conspired to defraud Nype, (d) that the fraudulent transfers were void, and (e) that the co-defendant's entities were alter egos of Debtor and their assets could be used to pay Nype. This litigation was ready for trial when the Debtor filed its bankruptcy petition.

On August 18, 2019, the Debtor filed a voluntary petition for relief under Chapter 7. The Trustee was immediately appointed trustee.

**B.    Insiders of the Debtor**

In a limited liability company, the equity interest holders are the members. Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code") include the members and the manager. The insiders of LVLP are as follows:

David Mitchell; and

Barnet Louis Liberman (and/or Marc A. Pergament, the trustee appointed in the Liberman's bankruptcy case).

**C.    Property Value**

<u>Cash</u>: The Trustee received $221,142.31 as a result of the actions of Muije. The Plan Proponents understand that the Trustee has paid:

       i.     A contingent fee to Muije of attorneys' fees in the amount of $73,714.00 in fees plus reimbursement of actual expenses in the amount of $29,730.23; and

      ii.    $5,000.00 to CBRE for its appraisal report.

. . .

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

The Trustee should have approximately $110,000.00 in funds.[1]

Property: The Plan Proponents estimate that the leased fee value of the Property is approximately $72 million estate based on the Appraisal Report dated October 6, 2020 prepared by CBRE - VALUATION & ADVISORY SERVICES. The Debtor holds a 40% tenant in common interest with the remaining sixty percent (60%) tenant-in-common interest in the Property is owned by Brookfield. Any sale of the fee interest in the Property will require the consent of Brookfield.

Other: The bankruptcy estate is entitled to 50% of any additional monies collected on the Second Judgment from Mitchell, the bankruptcy estate of Liberman or any of the related parties named in that judgment. It is unknown whether any additional funds will be collected on the Second Judgment because (i) the obligation owed by Liberman has been discharged in his bankruptcy and, according to the docket, no funds have been collected by the trustee in that case Counsel for Nype and (ii) the Trustee have been unable to recover any assets from Mitchell.

**D.    Management of the Debtor Before and During the Bankruptcy**

During the years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Mitchell and Liberman. Since August 19, 2019, the person in control of the Debtor is the Trustee.

**E.    Events Leading to Chapter 11 Filing**

The Plan Proponents assert that the bankruptcy case of the Debtor was filed by Mitchell and Liberman for the purpose of delaying the trial in State Court of Case No. 16-A-740689.

**F.    Significant Events During the Bankruptcy Case**

On October 24, 2019, the Trustee applied for authorization to employ Muije as special counsel to litigate the claims belonging to the bankruptcy estate in the pending

---

[1] An accounting from the Trustee has been requested and not provided.

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

State Court litigation. On October 31, 2019, the Bankruptcy Court authorized the Trustee to employ Muije, Nype's counsel in that litigation, as special counsel for the bankruptcy estate, to pursue the claims which belonged to the bankruptcy estate. It was agreed (a) Muije would represent the Trustee and continue to represent Nype in the litigation, (b) 50% of any funds collected (except a previously authorized discovery sanction) would be divided equally between the Trustee and Nype and (c) the Trustee, with Court authorization, would pay Muije a contingent fee equal to 33 1/3% of the funds collected for the bankruptcy estate and 50% of the costs incurred in the litigation. On December 12, 2019, the Trustee filed a Notice of Assets & Notice to File Claims Proof of Claim due by March 25, 2020.

On January 27, 2020, the Trustee, through her counsel, filed an Ex Parte Application to Employ HOUMAND LAW FIRM, Ltd. as General Bankruptcy Counsel Nunc Pro which was granted on January 28, 2020.

In March, 2020, Muije turned over $221,142.31 collected from Casino Coolidge, LLC, a subsidiary of the Debtor and one of the co-defendants in Case No. 16-A-740689. With Court authorization, the Trustee paid Muije $103,444,23 for his contingent fee and costs.

On September 1, 2020, the Trustee, through her counsel, filed an Ex Parte Application to Employ CBRE, Inc. as Appraiser and Pay Fee which was granted on the same day.

On December 23, 2020, the Trustee, through her counsel, filed an Ex Parte Application to Employ PAUL M. HEALEY as accountant which was granted on December 28, 2020.

On April 1, 2021, Liberman filed a petition for relief under Chapter 11 in the United States Bankruptcy Court for the Eastern District of New York (the "NY Bankruptcy Court") in Case No. 8-21-70611-reg.  On June 28, 2021, as a result of Nype's motion, the NY Bankruptcy court converted Liberman's case to a case under Chapter 7 and a trustee was appointed. Marc Pergament was and is the trustee in

Liberman's bankruptcy case. On November 22, 2021, Liberman was granted his discharge. As of this date, the Liberman bankruptcy estate has little or no funds.

On March 4, 2022, the Trustee, through her counsel, filed an Application to Employ CUSHMAN & WAKEFIELD U.S., INC. DBA CUSHMAN & WAKEFIELD ("C&W") as Real Estate Broker to sell the Property.  On April 7, 2022, this Application was granted. The following commission structure was approved: one percent (1%) of the total sales price of the Property. The commission shall be computed based on the total sales price, which shall include any mortgages, loans, or other obligations which may be assumed by a purchaser. The Debtor's bankruptcy estate shall be responsible for payment of forty percent (40%) of the commission and Forest City shall be responsible for payment of sixty percent (60%) of the commission. The term of the employment will expire on March 6, 2023.

On July 14, 2022, the Trustee, through her counsel, filed an Application to Employ ALISA NAVE, LLC ("Nave") as Consultant to lobby the Regional Transportation Commission to purchase the Property. On July 28, 2022, this Application was granted. The following fee structure was approved:

i.     Nave will be employed on an hourly basis with an hourly rate of $750.00;

ii.    Nave will be entitled to reimbursement of expenses; and

iii.   The fees and expenses incurred by Nave will be split between the Debtor's bankruptcy estate and Forest City in accordance with their ownership in the Property. As a result, the Debtor's bankruptcy estate will be responsible for forty percent (40%) of the fees and expenses incurred by Nave.

### G.     Projected Recovery of Avoidable Transfers

The Plan Proponents do not intend to pursue preference, fraudulent conveyance, or other avoidance actions because the time for bringing such actions has passed and such suits are now barred.

. . .

**H.    Claims Objections**

The Plan Proponents do not intend to object to claims. The Plan Proponents are the only creditors who have filed a proof of claim which has not been withdrawn. Hayes & Welsh filed a proof of claim but that claim has been withdrawn.

**I.    Current and Historical Financial Conditions**

Prior to bankruptcy, the Debtor was operated by Mitchell and Liberman. On August 19, 2019, the bankruptcy was filed and the Trustee took control of the Debtor. The Debtor has had no business operations in the last three (3) years.

The identity and balance owed of Debtor's pre-petition debts are as follows:

Plan Proponents$ 10,000,000 (approximately)[2]

The Debtor's post-petition debts consist of the amount owed to the Trustee's counsel and the commission owed to the Trustee for the funds disbursed by the Trustee. The Trustee holds the balance of the funds collected by Muije. To the knowledge of the Plan Proponents, no other funds have been received or disbursed by the Trustee since the filing of the petition in this case.

**III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.    What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.    Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the

---

[2] Creditors' Amended Proof of Claim filed June 28, 2022 states that the debt was $10,200,434.60 as of the date of the petition.  From this amount should be deducted $221,142.31collected from Casino Coolidge LLC which was turned over to Creditors.  If the estate is solvent, interest on this debt continues to accrue to date of payment.

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

*Administrative Expenses and Priority Tax Claims*

Administrative expenses are costs or expenses of administering the Debtor's case which are allowed under § 507(a)(2) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan unless a particular claimant agrees to a different treatment. Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it be paid on the effective date of the Plan. Because the Debtor is a pass-through entity for purposes of federal income tax, the Plan Proponents believe there are no priority tax claims. The Plan Proponents have repeatedly requested billing information from Trustee's counsel but have received no response.

. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of Administration of the Bankruptcy estate by the Trustee (mailing notices, etc.) | $5,000.00 | Paid in full on the Effective Date of the Plan or upon approval of such expenses by the Court, whichever is later. |
| Professional Fees (attorney and accountants), as approved by the Court. | $50,000.00 | Paid in full on the Effective Date of the Plan or upon approval of such fees and costs by the Court, whichever is later. |
| Trustee's Commission | $15,000.00 | Paid in full on Effective Date of the Plan or upon approval of such costs and commissions by the Court, whichever is later. |
| Office of the U.S. Trustee Fees | $650.00 | Paid in full as incurred |
| TOTAL | $70,650.00 | |

The Plan Proponents are unaware of any Priority Tax Claims.

Class 1.    *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

Class 2.    *Class of Members*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company ("LLC"), the equity interest holders are the members.

. . .

. . .

. . .

The following chart identifies the Plan's proposed treatment of Class 1 which contain general unsecured claims against the Debtor:

| Description | Impairment | Treatment |
|---|---|---|
| General Unsecured Class | Impaired | Class 1 is impaired by this Plan. General Unsecured Creditors will be paid in full, with interest but only from and to the extent of the proceeds from the sale of the Debtor's indirect interest in the Property |

The following chart sets forth the Plan's proposed treatment of the one class of equity interest holders:

| Description | Impairment | Treatment |
|---|---|---|
| Members of the Debtor (Equity) | Unimpaired | Class 2 is unimpaired by this Plan. The Members of the Debtor will retain their equity interest in the Debtor. Class 2 will be entitled to Debtor's assets after Class 1 has been paid in full. |

## C.    Means of Implementing the Plan

1.    *Source of Payments*

Payments and distributions under the Plan will be funded by:

(i)    the funds currently held by the Trustee;

(ii)    funds provided by the Plan Proponents to pay any remaining administrative or priority claims; and

(iii)    the proceeds from the sale of the Debtor's indirect interest in the Property.

2.    *Post-Confirmation Management*

The Post-Confirmation Manager of the Debtor shall be Russell Nype, one of the

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

Plan Proponents. As manager of the reorganized Debtor, Russell Nype will be compensated by the collection of funds payable to him as a creditor.

**D. Risk Factors**

The proposed Plan has the following risks:

Business Risk: There is an inherent risk in all commercial real estate that the value of the property is, in part, dependent on general economic conditions in the community. In the event that the Debtor's indirect interest in the Property sells for less than the amount of the claim of the Class 1 Creditors there will be no distribution to Class 2 Creditors. It is unlikely that the reorganized Debtor will be able to collect additional funds on the judgment against Mitchell and Liberman**.**

**E. Executory Contracts and Unexpired Leases**

There are no pre-petition executory contracts or unexpired leases.

The Plan Proponents propose that the reorganized Debtor assume the post-petition contracts with C&W and Nave.

**F. Tax Consequences of Plan**

***Creditors and Equity Interest Holders Concerned with how the Plan may affect their tax liability should consult with their own Accountants, Attorneys, and/or Advisors.***

The following are the anticipated tax consequences of the Plan:

1. There should be no tax consequences to the Debtor of the Plan because the Debtor is not an income tax-paying entity. The Debtor's income and/or losses are passed through to its members.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: The Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7

liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129 and, they are not the only requirements for confirmation.

The Plan Proponents assert that the Plan is confirmable because it is feasible and because payment of claims with a balloon payment are permitted.

## A. Who May Vote or Object

Any party in interest with a financial interest in the bankruptcy case may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes; and (2) impaired.

In this case, the Plan Proponent believes that Class 1 is impaired and that holders of claims and interests in this Class are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that Class 2 is unimpaired and that holders of interests in this Class, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What is an Allowed Claim or an Allowed Equity Interest?*

Since this case began as a Chapter 7 case, only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was March 25, 2020.

2. *What is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a Class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** entitled to Vote*

The holders of the following six (6)) types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been withdrawn or disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above) unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- claims for administrative expenses.

**B.    Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

. . .

. . .

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A Plan that binds nonaccepting classes is commonly referred to as a "cram down" Plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit "B."**

In a liquidation, the Property would be sold. Although the Trustee has had three (3) years to sell the Debtor's interest in the property it has not occurred. The Plan Proponents assert —

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

(i)     they are just as capable, if not more so, to sell the Debtor's interest in the Property;

(ii)    they are more motivated than the Trustee to sell the Debtor's interest in the Property because of their greater financial interest; and

(iii)   Under the Plan, there will be no Trustee's commission to be paid on the $38 million to be paid to the lender secured by the Property.

The liquidation analysis includes a comparison of the distributions under the Plan to the distributions under Chapter 7, assuming the same costs of sale. This comparison shows that Nype and the bankruptcy estate of Liberman benefit from a sale under a Chapter 11 Plan because of the difference in administrative costs.

### D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor's bankruptcy estate has enough cash on hand that, on the Effective Date of the Plan, all the claims and expenses that are entitled to be paid on that date can be paid. If necessary, the Plan Proponents will contribute the funds necessary to pay Administrative Claims and Priority Claims.

#### 2.    *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. In this case, the Debtor's post-confirmation expenses will result from the sale of the Property and the proceeds of such sale will be sufficient to pay the realtor's commission and any fees owed to Nave.

While no party can foresee the future, it is unlikely that the sale of the Property can't be accomplished. In the meantime, the rent paid by the RTC is sufficient to pay

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

the costs relating to the Property including the debt secured by the Property.

## V.     EFFECT OF CONFIRMATION OF PLAN

### A.     Discharge

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan to the extent specified in Bankruptcy Code §1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt imposed by the Plan. The interests of Members in the debtor are not terminated. After the Effective Date of the Plan only the allowed claims and interests will be entitled to a distribution.

### B.     Modification of Plan

The Plan Proponents may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

### C.     Final Decree

Once the administrative claims and priority claims have been paid in full, and Russell Nype has been appointed Manager of the Debtor and Manager of Wink One, the bankruptcy estate will be deemed fully administered. The Plan Proponents or the reorganized Debtor, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

. . .

                                        Submitted by:
                                        Russell Nype
                                        Revenue Plus, LLC

                                        By:  /s/ Russell Nype
                                        _____
                                        Russell Nype, Manager
                                        The Plan Proponents

. . .
. . .

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

Prepared by:

SCHWARTZER & IMES LAW FIRM PC

By:___/s/___Lenard E. Schwartzer_____
      Lenard E. Schwartzer, Esq.
      *Counsel for Russell Nype*
       *and Revenue Plus, LLC, Plan Proponents*

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBITS

**Exhibit "A"** - Proposed Plan of Reorganization

**Exhibit "B"** - Liquidation Analysis

**Exhibit "A"**

**Proposed Plan of Reorganization**

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit "B"**

**Liquidation Analysis**

SCHWARTZER & IMES LAW FIRM PC
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122

| | | |
|---|---|---|
| | | *Plan Proponent's Estimated Liquidation Value of Assets* |

**A. Estimated distribution based on $72,000, 000
sales price for Property**

| Assets | Under Plan | Under Chapter 7 |
|---|---|---|
| a.   Cash on hand | $      110,000 | $      110,000 |
| b.   40% Interest in Property | $ 12,200,000[1] | $12,200,000 |
| ***Total Assets at Liquidation Value*** | $ 12,310,000 | $ 12,310,000 |
| **Less:**<br>Chapter 7 Trustee fees and expenses | $      110,000 | $ 1,650,000[2] |
| **Less:**<br>Chapter 11 Administrative expenses | $      0.00 | 0.00 |
| Principal balance for Claims | **$ 10,200,000** | **$10,200,000** |
| Post-petition Interest on Claims | **$  1,650,000** | **$   460,000** |
| Balance for Equity (Mitchell and Liberman) | **$     350,000** | **$      0.00** |

---

[1] This amount is calculated as follows:

| | |
|---|---|
| Appraised Value of Property: | $72,000,000 |
| Cost of Sale    (5%) | $ 3,500,000 |
| Secured Debt | $38,000,000 |
| Net Sales Proceeds | $30,500,000 |
| 40% | $12,200,000 |

[2] Trustee's Commission might be based on the $38,000,000 paid to the creditor secured by the Property owned by Wink One as well as the amount distributed to Nype as a creditor plus the attorney's fees incurred by the Trustee by her attorney for the additional legal work related to the sale.

**B. Estimated distribution based on $62,000,000 sales price for Property**

| Assets | Under Plan | Under Chapter 7 |
|---|---|---|
| a.  Cash on hand | $   110,000 | $      110,000 |
| b.  40% Interest in Property | $ 8,400,000[3] | $ 8,400,000 |
| ***Total Assets at Liquidation Value*** | $ 8,510,000 | $ 8,510,000 |
| **Less:** Chapter 7 Trustee fees and expenses | $   110,000 | $ 1,600,000[4] |
| **Less:** Chapter 11 Administrative expenses | $      0.00 | 0.00 |
| Principal balance for Claims | **$  8,400,000** | **$ 6,910,000** |
| Post-petition Interest on Claims | **$      0.00** | **$      0.00** |
| Balance for Equity (Mitchell and Liberman) | **$      0.00** | **$      0.00** |

---

[3] This amount is calculated as follows:

| | |
|---|---|
| Appraised Value of Property: | $62,000,000 |
| Cost of Sale      (5%) | $  3,000,000 |
| Secured Debt | $38,000,000 |
| Net Sales Proceeds | $21,000,000 |
| 40% | $  8,400,000 |

[4] Trustee's Commission might be based on the $38,000,000 paid to the creditor secured by the Property owned by Wink One as well as the amount distributed to Nype as a creditor plus the attorney's fees incurred by the Trustee by her attorney for the additional legal work related to the sale.

**SCHWARTZER & IMES LAW FIRM PC**
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5640
Tel: (702) 228-7590 · Fax: (702) 892-0122