1  Jacob L. Houmand, Esq. (NV Bar No. 12781)
   Email: jhoumand@houmandlaw.com
2  Bradley G. Sims, Esq. (NV Bar No. 11713)
   Email: bsims@houmandlaw.com
3  HOUMAND LAW FIRM, LTD.
   9205 West Russell Road, Building 3, Suite 240
4  Las Vegas, NV 89148
   Telephone:    702/720-3370
5  Facsimile:    702/720-3371

| Electronically Filed On: *September 14, 2022* |

6  *General Bankruptcy Counsel for Shelley D. Krohn, Chapter 7 Trustee*

7

8            **UNITED STATES BANKRUPTCY COURT**

9                **DISTRICT OF NEVADA**

10  In re:                              Case No.  BK-S-19-15333-MKN
                                        Chapter 7
11  LAS VEGAS LAND PARTNERS, LLC,
                                        **TRUSTEE'S OMNIBUS OPPOSITION
12         Debtor.                      TO: (1) MOTION TO CONVERT
                                        CHAPTER 7 CASE TO CHAPTER 11
13                                      CASE; AND MOTION FOR ORDER: (1)
                                        APPROVING ADEQUACY OF
14                                      DISCLOSURES IN PROPOSED
                                        DISCLOSURE STATEMENT AND (2)
15                                      SETTING A CONFIRMATION
                                        HEARING,  RECORD DATE AND
16                                      DEADLINES FOR BALLOTING AND
                                        OPPOSITIONS TO CONFIRMATION**
17
                                        Date of Hearing:      September 28, 2022
18                                      Time of Hearing:      2:30 p.m.
                                        Place: Courtroom No. 2, Third Floor
19                                             Foley Federal Building
                                             300 Las Vegas Blvd., S.
20                                             Las Vegas, NV 89101
21
22                                      Judge:  Honorable Mike K. Nakagawa[1]

23         Shelley D. Krohn (the "Trustee"), the duly appointed Chapter 7 Trustee in the above-

24  captioned bankruptcy case, by and through her general bankruptcy counsel, Jacob L. Houmand,

25  _____

26  [1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11
    U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The
27  Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of
    Bankruptcy Procedure will be referred to as "FRBP."  The Local Rules of Practice for the United
28  States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

                              -1-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., hereby submits this *Omnibus Opposition to: (1) Motion to Convert Chapter 7 Case to Chapter 11 Case; and (2) Motion For Order: (1) Approving Adequacy Of Disclosures in Proposed Disclosure Statement and (2) Setting A Confirmation Hearing, Record Date and Deadlines For Balloting and Oppositions To Confirmation* (the "Opposition").

This Opposition is filed pursuant to 11 U.S.C. §§ 327 and 328 and Federal Rule of Bankruptcy Procedure 2014.  The Application is based on the following Memorandum of Points and Authorities, the *Declaration of Shelley D. Krohn In Support of Omnibus Opposition to: (1) Motion to Convert Chapter 7 Case to Chapter 11 Case; and (2) Motion For Order: (1) Approving Adequacy Of Disclosures in Proposed Disclosure Statement and (2) Setting A Confirmation Hearing, Record Date and Deadlines For Balloting and Oppositions To Confirmation* (the "Trustee Declaration"), the *Declaration of Jacob L. Houmand, Esq. In Support of Omnibus Opposition to: (1) Motion to Convert Chapter 7 Case to Chapter 11 Case; and (2) Motion For Order: (1) Approving Adequacy Of Disclosures in Proposed Disclosure Statement and (2) Setting A Confirmation Hearing, Record Date and Deadlines For Balloting and Oppositions To Confirmation* (the "Houmand Declaration"), both of which are filed separately and concurrently with this Court pursuant to Local Rule 9014(c)(2).

The Opposition is also based on the pleadings and papers on file herein and any argument that may be entertained at the hearing on the and the *Motion to Convert Chapter 7 Case to Chapter 11 Case* [ECF No. 125] (the "Motion to Convert") and the *Motion for Order: (1) Approving Adequacy of Disclosures in Proposed Disclosure Statement and (2) Setting a Confirmation Hearing, Record Date and Deadlines for Balloting and Oppositions to Confirmation* [ECF No. 127] (the "Motion to Approve Disclosure Statement" and together with the Motion to Convert, the "Motions").[2]

. . .

---

[2] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-captioned bankruptcy case, including adversary proceedings, pursuant to Rule of Evidence 201, incorporated by reference by FRBP 9017.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................... 7

II.  STATEMENT OF FACTS ..................................................................................... 9

BACKGROUND OF THE PROPERTY AND THE LEASE AGREEMENT WITH THE RTC ........................... 9

THE DEBTOR'S BANKRUPTCY FILING AND THE TRUSTEE'S EFFORTS TO LIQUIDATE THE PROPERTY
.................................................................................................................................................. 10

MR. NYPE AGREES TO NOT AMEND HIS CLAIM IN A MANNER THAT WOULD REDUCE THE
TRUSTEE'S COMMISSION .............................................................................................................. 15

THE TRUSTEE AND BROOKFIELD EVALUATE THE PURCHASE OFFER FROM THE RTC .................. 15

THE TRUSTEE EMPLOYS CUSHMAN AND A CONSULTANT ............................................................ 16

III.  LEGAL ARGUMENT ......................................................................................... 17

A.  CONVERSION DOES NOT PROVIDE THE GREATEST BENEFIT TO ALL PARTIES AND SHOULD
BE DENIED. .................................................................................................................................. 17

    i.  Conversion of the Bankruptcy Case Does Not Benefit the Debtor .................................. 18

    ii.  The Benefit of Conversion to the Creditor is Speculative .............................................. 20

    iii.  Conversion of the Debtor's Bankruptcy Case Will Not Benefit Its Members ................. 21

    iv.  Conversion of the Debtor's Bankruptcy Case Is Solely Intended to Deprive the Trustee
    of Her Commission ................................................................................................................ 22

B.  CONVERSION IS IMPROPER BECAUSE IT WILL NOT REHABILITATE THE DEBTOR'S FINANCES.
    22

C.  CONVERSION IS IMPROPER BECAUSE MR. NYPE'S PLAN IS PROPOSED IN BAD FAITH. ........ 27

D.  THE MOTION TO CONVERT IMPERMISSIBLY SEEKS TO CIRCUMVENT SECTION 324. ............ 28

E.  MR. NYPE HAS NOT CARRIED HIS BURDEN TO SHOW APPOINTMENT OF A CHAPTER 11
TRUSTEE IS PROPER. .................................................................................................................... 29

F.  IN THE ALTERNATIVE, THE DISCLOSURE STATEMENT DOES NOT CONTAIN SUFFICIENT
INFORMATION PURSUANT TO SECTION 1125. .............................................................................. 31

IV.   <u>CONCLUSION</u> .................................................................................................... 33

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango)*, 481 B.R. 51 (B.A.P. 9th Cir. 2012).................................................................................................... 28

Braunstein v. Waller, No. 11 C 7991, 2012 WL 1802145 (N.D. Ill. May 16, 2012)............. 26, 27

*Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177 (B.A.P. 9th Cir. 2003) ........ 31

*Dye v. Brown (In the Matter of AFI Holding, Inc.),* 530 F.3d 832 (9th Cir. 2008)...................... 29

*In  Re  Ryan*, 267  BR  635, (Bankr. N.D. Iowa 2001) ................................................................ 23

*In  Re Finney*, 992 F.2d 43 (4th Cir. 1993) ................................................................................ 23

*In re Am. Cap. Equip., LLC,* 688 F.3d 145 (3d Cir. 2012)........................................................ 28

*In re ARS Analytical, LLC*, 433 B.R. 848 (Bankr. D. N.M. 2010) ............................................ 25

*In re Brutsche*, 476 B.R. 298 (Bankr.D.N.M.2012) .................................................................. 25

*In re Creekside Senior Apartments, L.P.*, 489 B.R. 51 (6th Cir. BAP 2013) ............................ 25

*In re Creekside Sr. Apartments, L.P.,* 489 B.R. 51 (6th Cir. BAP 2013) .................................. 23

*In re CWNevada LLC*, 602 B.R. 717 (Bankr. D. Nev. 2019) .................................................... 30

*In re Decker*, 535 B.R. 828 (Bankr. D. Alaska 2015) .......................................................... 18, 23

*In re Draft Bars LLC*, No. 16-16656-MKN, 2018 WL 9988769 (Bankr. D. Nev. Mar. 29, 2018) 30

*In re Gunartt,* 355 Fed. Appx. 66 (7th Cir. 2009) .................................................................... 29

*In re Hardigan*, 517 B.R. 374 (S.D. Ga. 2014) ........................................................................ 23

*In re Landmark Atlantic Hess Farm, LLC,* 448 B.R. 707 (Bankr. D. Md. 2011) ) ...................... 23

*In re Lobera,* 454 B.R. 824 (Bankr.D.N.M.2011)...................................................................... 18

*In re McTiernan,* 519 B.R. 860 (Bankr.D.Wyo.2014) .............................................................. 25

*In re Mod. Metal Prod. Co.*, 422 B.R. 118 (Bankr. N.D. Ill. 2009) .......................................... 19

*In re Morgan*, 375 B.R. 838 (Bankr. 8th Cir. 2007)................................................................ 29

*In re Paterno*, 511 B.R. 62 (Bankr. M.D.N.C. 2014) .............................................................. 23

*In re R & S St. Rose Lenders, LLC*, No. 11-14973-MKN, 2016 WL 3536533 (Bankr. D. Nev. May 18, 2016).................................................................................................................. 25

<div style="writing-mode: vertical">**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371</div>

*In re Reilly*, 71 B.R. 132 (Bankr. D. Mont. 1987) ............................................................ 31

*In re Stolrow's Inc.,* 84 B.R. 167 (B.A.P. 9th Cir. 1988) .................................................. 28

*In re V Co.*, 274 B.R. 721 (Bankr. N.D. Ohio 2002) ......................................................... 25

*In re Vallambrosa Holdings, L.L.C.*, 419 B.R. 81 (Bankr. S.D. Ga. 2009) ..................... 25

*In re W. States, Inc.*, 2018 WL 627465 (Bankr. D. Wyo. 2018) ...................................... 25

*In re Wallace*, 2010 WL 378351 (Bankr. D.Idaho Jan. 26, 2010) .................................. 25

*In re Watkins*, 132 B.R. 781 (Bankr. S. D. Fla. 1991) ..................................................... 27

*In re Woodruff,* 580 B.R. 291 (Bankr. M.D. Ga.2018) ..................................................... 26

*Keeley and Grabanski Land Partnership v. Keeley (In re Keeley & Grabanski Land P'ship)*, 455 B.R. 153 (B.A.P. 8th Cir. 2011) ................................................................................. 30

*Loop Corp. v. U.S. Trustee*, 379 F.3d 511 (8th Cir. 2004) ....................................... 23, 24

*Official Comm. of Unsecured Creditors v. Michelson (In re Michelson),* 141 B.R. 715 (Bankr. E.D. Cal. 1992) ................................................................................................................. 31

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza)*, 314 F.3d 1070, 1074 (9th Cir. 2002), *cert. denied*, 538 U.S. 1035, 123 S.Ct. 2097, 155 L.Ed.2d 1065 (2003) ...................... 28

*Proudfoot Consulting Co. v. Gordon (In re Gordon),* 465 B.R. 683, 692 (Bankr.N.D.Ga.2012) . 18

*Schlehuber v. Fremont Nat'l Bank & Trust Co. (In re Schlehuber),* 489 B.R. 5703 (8th Cir. BAP2013), *aff'd,* 558 Fed.Appx. 715 (8th Cir.2014) ..................................................... 18

*See In re AdBrite Corp.,* 290 B.R. 209 (Bankr.S.D.N.Y.2003) ...................................... 25

*Thompson v. Daluise (In Re Wet-Jet International, Inc.)*, 225 BR 142 (Bankr. D. Mass. 1999) ..................................................................................................................................... 27

*United Surety & Indemnity Co. v. Lopez-Munoz (In re Lopez-Munoz)*, 553 B.R. 179 (B.A.P. 1st Cir. 2016), aff'd sub nom. *In re Lopez-Munoz*, 866 F.3d 487 (1st Cir. 2017). ............................ 30

**Statutes**

11 U.S.C. § 1104(a) ................................................................................................... 30, 31

11 U.S.C. § 1104(c) ......................................................................................................... 30

11 U.S.C. § 1106(a)(4)(A) ............................................................................................... 30

11 U.S.C. § 1106(a)(5). .................................................................................................... 30

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

11 U.S.C. § 1112 ............................................................................................. 24

11 U.S.C. § 1112(b) ......................................................................... 23, 24, 30, 31

11 U.S.C. § 1112(b)(1) .................................................................................... 24

11 U.S.C. § 1112(b)(4)(A) ..................................................................... 25, 26, 27

11 U.S.C. § 1125 ......................................................................................... 31, 32

11 U.S.C. § 1125(a)(1) ..................................................................................... 31

11 U.S.C. § 1129 .............................................................................................. 31

11 U.S.C. § 1129(a)(3) ..................................................................................... 28

11 U.S.C. § 1129(a)(5)(A)(i) ........................................................................... 32

11 U.S.C. § 1129(a)(5)(A)(ii) .......................................................................... 32

11 U.S.C. § 324 .......................................................................................... 22, 29

11 U.S.C. § 324(a) ........................................................................................... 29

11 U.S.C. § 326 .......................................................................................... 20, 22

11 U.S.C. § 363(h) ........................................................................................... 19

11 U.S.C. § 704 ................................................................................................ 30

11 U.S.C. § 706(b) ............................................................................. 18, 22, 23, 27

**Other Authorities**

H.R.Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977) ................................... 18

S.Rep. No. 989, 95th Cong.2d Sess. at 94 (1978) ........................................... 18

**Treatises**

1978 U.S.C.C.A.N. 5787 ................................................................................. 18

1978 U.S.C.C.A.N. 5963 ................................................................................. 18

3 Collier on Bankruptcy ¶ 324, 02, at 324–3 (Alan N. Resnick & Henry J. Sommer eds., 15th
    ed. rev. 2006) ............................................................................................... 29

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

For three years the Trustee has been diligently working towards the liquidation of a real estate interest owned by Las Vegas Land Partners, LLC (the "Debtor") that is a forty percent (40%) tenant in common interest in real property described as: the city block bounded by Casino Center, Bonneville, South 1st and Garces Streets, Las Vegas, Nevada [APN 139-34-301-008] (the "Property"). The Trustee believes that the Property is the only asset that is likely to result in a meaningful recovery for the Debtor's bankruptcy estate.[3] The sale of the Property is a complex transaction because there is currently a ground lease to the Regional Transport Commission (the "RTC") that expires in January 2048.  The Property is also encumbered by a loan that had an initial principal balance of $25 million and an interest rate of 6.95%.  The ground lease payments from the RTC are paid directly to the lender and the balance of the loan will be accreting until there is an increase in ground lease rent in January 2023.  After January 2023, the ground lease payments from the RTC to the lender are sufficient to begin reducing the loan balance and the loan will be paid in full in April 2043.  The terms of the loan also have a provision that the Debtor must pay a "Yield Maintenance Premium" if the loan is paid off before its maturity date that is tied to treasury rates and is designed to ensure that the lender receives the full amount of interest owed under the loan.  Due to the partial interest of the Debtor in the Property, negative cash flow, and a secured debt with a significant prepayment penalty, the liquidation of the Property is a complex transaction that has required significant time and effort from the Trustee.

The Trustee, with great patience and effort, believes that she has finally reached a breakthrough with the Regional Transport Commission (the "RTC") for sale of the Property. After months of preparation with Cushman & Wakefield U.S., Inc. dba Cushman & Wakefield ("Cushman") and Alisa Nave, LLC (the "Nave Firm"), the Trustee's representatives have held meetings with senior executives at the RTC first on August 16, 2022, with a follow-up meeting on

---

[3] While the Trustee has a judgment against the Debtor's principals, it does not appear that the Debtor's bankruptcy estate will receive an additional recovery from this judgment due to collectability issues with the Debtor's principals.

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

September 7, 2022.  The RTC has begun the process of evaluating a sale with the Federal Transit Administration (the "FTA") by, among other things, ordering two appraisals of the Property and committing to bi-monthly meetings with Cushman to discuss a sale.

Despite this progress with the RTC, Russell Nype ("Mr. Nype") has filed the Motions that seek to convert the Debtor's bankruptcy case to Chapter 11, appoint a Chapter 11 Trustee, and place him in control of the Debtor and Wink One, LLC ("Wink One"), the Debtor's wholly owned subsidiary that owns the bankruptcy estate's interest in the Property.  The Motions are filed in bad faith. Any Chapter 11 plan of reorganization would be a liquidating plan because the only asset of the Debtor's bankruptcy estate is the Property, which is subject to a long-term lease. Mr. Nype appears to admit this fact because he proposes to continue the same liquidation plan currently being executed by the Trustee, hire the same professionals, and make payments to creditors in the manner dictated by Section 726.  The only difference between the liquidation plan as currently being executed by the Trustee and the one proposed by Mr. Nype is that Nype's plan does not pay the Trustee a commission for her three years spent administering the Debtor's bankruptcy case.[4]  In short, the Motions are a blatant attempt by Mr. Nype to take control of the Debtor's interest in the Property and sell it without having to pay the Trustee a commission less than a week after it became apparent that a sale to the RTC was likely.  A conversion of the Debtor's bankruptcy estate will only serve to create uncertainty with the RTC and delay the process by requiring the appointment of a new bankruptcy trustee that will have to review nearly three years of developments in the administration of the Debtor's bankruptcy case.

It is also important to note that the Trustee has repeatedly offered to sell the bankruptcy estate's interest to Mr. Nype.  To date, Mr. Nype has failed to submit an offer to the Trustee to purchase the bankruptcy estate's interest in the Property.  Instead, Mr. Nype has continually obstructed the Trustee's efforts to sell the Property by contacting executives at Brookfield Asset Management ("Brookfield"), the owner of the 60% tenant-in-common interest in the Property,

---

[4] In fact, the Motion to Approve Disclosure Statement contains a chart that details the additional distribution Mr. Nype will receive if the Trustee does not receive her commission.  *See* Motion to Approve Disclosure Statement, p. 45.

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

and other appraisals and brokers that the Trustee has consulted.  At numerous times, counsel for Brookfield has contacted counsel for the Trustee and informed him that Mr. Nype's "incessant emails" were obstructing the sale process for the Property.  For these reasons, the Motions should be denied in their entirety and the Trustee should be permitted to continue her efforts to market and sell the Property in the context of a Chapter 7 bankruptcy proceeding.

## II.    STATEMENT OF FACTS

**BACKGROUND OF THE PROPERTY AND THE LEASE AGREEMENT WITH THE RTC**

1.    On or about April 2, 2007, the RTC entered into a lease agreement (the "Lease") concerning the Property.  The term of the Lease is 40 years and expires on January 4, 2048.

2.    The Lease is an absolute net lease with a base annual rent of $1,250,000.

3.    The Lease contains mandatory CPI increases to the base rent in years 5, 10, 15, 20, 25, 30, and 35.

4.    On April 28, 2008, FC RTC 39, LLC and FC RTC 20, LLC (collectively, the "Forest City Entities") and Wink One entered into a tenancy-in-common agreement (the "TIC").

5.    Section 2 of the TIC provided that all income/revenue derived from the operation of the RTC Property would be shared by the co-owners in proportion to their respective interests in the RTC Property.  Section 9 of the TIC provides that co-owners have a right of first refusal.

6.    On April 28, 2008, the owners of the Property entered into a loan agreement (the "Loan Agreement") to obtain a loan (the "Loan") with CTL Lending Group, LLC ("CTL").  A true and correct copy of the Loan Agreement is attached to the Trustee Declaration as **Exhibit "1"**.

7.    The terms of the Loan Agreement are as follows: (a) principal amount of $25,000,000; and (b) interest rate of 6.95%.

8.    The Loan has a 35-year term and a stated maturity date of April 14, 2043.

9.    The Loan Agreement allows the borrower to prepay the loan in whole (but not in part) so long as the prepayment included a Yield Maintenance Premium.

10.    The Yield Maintenance Premium is defined as the greater of 1% of the principal amount of the loan being prepaid and the present value of the scheduled interest and principal

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

prepayments discounted at the "Reinvestment Yield", which is defined in the Loan Agreement.

11.    The Loan has a negative amortization until January 14, 2023. After this date, the ground lease payment owed by RTC is sufficient to begin to pay down the principal of the Loan.

12.    All rental payments from the RTC for the Property are made directly to CTL.

13.    The interest of the Forest City Entities in the Property was ultimately acquired by Brookfield.

**THE DEBTOR'S BANKRUPTCY FILING AND THE TRUSTEE'S EFFORTS TO LIQUIDATE THE PROPERTY**

14.    On August 19, 2019, the Debtor filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1].[5]

15.    On August 19, 2019, the Trustee was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case [ECF No. 2].

16.    On October 3, 2019, the Debtor filed its bankruptcy schedules [ECF No. 20].

17.    The Debtor's Schedule A/B did not identify any real or personal property. *See* Schedule A/B [ECF No. 20], pp. 3-5.

18.    The Trustee subsequently learned that the Debtor is the sole member of Wink One that, in turn, owns a forty percent (40%) tenant-in-common interest in the Property.[6]

. . .

---

[5] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

[6] *See B&M Land and Livestock, LLC*, 498 B.R. 262 (Bankr. D. Nev. 2013) (holding a Chapter 7 Trustee appointed in a case where a debtor has a membership interest in a single-member limited liability company automatically has the right to manage that company without the need to take further actions to comply with state law); *see also In re Cleveland*, 519 B.R. 304, 306 (D. Nev. 2014 ("Numerous bankruptcy courts have held, and the Court agrees, that where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee succeeds to all of the debtor's rights, including the right to control that entity, and a trustee need not take any further action to comply with state law before exercising such control."); *In re Albright*, 291 B.R. 538 (Bankr. D. Colo 2003) (holding that a debtor's bankruptcy filing, where the debtor was the only member of a limited liability company, effectively assigned her entire membership interest in the limited liability company to the bankruptcy estate, and the Chapter 7 Trustee obtained all of the rights to control management of the limited liability company).

19.     The remaining sixty percent (60%) ownership interest in the Property is owned by Brookfield.

20.     On April 17, 2020, the Trustee filed an *Application to Employ Colliers International As Real Estate Broker to Sell Certain Real Property and to Pay Commission Pursuant to 11 U.S.C. 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 53] that sought to employ Colliers International ("Colliers") to assist with the sale of the Property.

21.     On April 20, 2020, Mr. Nype sent an email to counsel for the Trustee objecting to the employment of Colliers.  A true and correct copy of the April 20, 2020, email is attached to the Houmand Declaration as **Exhibit "1"**.

22.     On April 23, 2020, counsel for Brookfield advised the Trustee that Mr. Nype had contacted them seeking to discuss Brookfield's interest in purchasing the Debtor's interest in the Property.  Per the email, Brookfield informed Mr. Nype that it would only discuss a sale of its interest with the Trustee and her counsel.  A true and correct copy of the April 23, 2020 email is attached to the Houmand Declaration as **Exhibit "2"**.

23.     On or about April 29, 2020, counsel for the Trustee met with representatives of the RTC and Brookfield. The RTC indicated interest in purchasing the Property. The RTC further indicated that substantial due diligence would need to occur before any sale proposal could occur, and that the RTC could not pay more than the appraised value of the Property.

24.     The RTC also indicated that it had experienced a sharp decline in revenue based upon the COVID-19 pandemic and would need to finalize its budget prior to making any offer.

25.     On May 7, 2020, Mr. Nype sent an email to Trustee's counsel further objecting to the hiring of Colliers.  A true and correct copy of the May 7, 2020 email is attached to the Houmand Declaration as **Exhibit "3"**.

26.     On May 7, 2020, Mr. Nype sent another email to Trustee's counsel objecting to the hiring of Colliers.  A true and correct copy of the May 7, 2020 email is attached to the Houmand Declaration as **Exhibit "4"**.

. . .

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

27.    On May 13, 2020, the Trustee filed a *Notice of Withdrawal of Application to Employ Colliers International to Sell Certain Real Property and to Pay Commission Pursuant to 11 U.S.C. 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 61] because Brookfield was interested in a sale of the Property to the RTC, the RTC was open to discussing a purchase of the Property, and due to Mr. Nype having requested that the Trustee not employ a real estate broker until a potential sale had been discussed with the RTC.

28.    Counsel for the Trustee and representatives from Brookfield then conferred with representatives from the RTC as to the credentials it would require from an appraiser to value the Property.  Brookfield and the Trustee agreed to employ CBRE, Inc. ("CBRE") as its credentials matched those that would be required by the RTC to evaluate a sale.

29.    On September 1, 2020, the Trustee filed an *Ex Parte Application to Employ CBRE, Inc. as Appraiser and Pay Fee Pursuant to 11 U.S.C. 327(a), 328(a), and 330 and Federal Rules of Bankruptcy Procedure 2014 and 2016* [ECF No. 69].

30.    On September 1, 2020, the Court entered an *Order Granting Ex Parte Application to Employ CBRE, Inc. as Appraiser and Pay Fee Pursuant to 11 U.S.C. 327(a), 328(a), and 330 and Federal Rules of Bankruptcy Procedure 2014 and 2016* [ECF No. 74].

31.    On October 6, 2020, CBRE provided its appraisal, valuing the Property at approximately $72 million (the "CBRE Appraisal").  A true and correct copy of the CBRE Appraisal is attached to the Trustee Declaration as **Exhibit "2"**.

32.    That same day, on October 8, 2020, Mr. Nype immediately sent a flurry of emails to CBRE that the value of the appraisal was too low based on failure to account of potential gaming revenue.  A true and correct copy of the emails sent by Mr. Nype on October 6, 2020 are attached to the Houmand Declaration as **Exhibit "5"**.

33.    On October 9, 2020, a representative of Brookfield contacted counsel for the Trustee requesting that Mr. Nype not contact Brookfield or CBRE.  A true and correct copy of the email dated October 9, 2020 is attached to the Houmand Declaration as **Exhibit "6"**.

34.    On or about October 12, 2020, counsel for Brookfield sent an email to counsel for the Trustee complaining of Mr. Nype's interference with the appraisal process:

-12-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Jacob-

Hope you are doing well.

I know that we spoke a couple months ago regarding Mr. Nype's conduct and his incessant emails in relation to the sale of the RTC property. As you are well aware, Mr. Nype's conduct has continued, and he has recently directed the majority of his correspondence to the appraisal that CBRE conducted on the property. In connection with his correspondence, he has had direct communications with CBRE and suggested that CBRE's appraised value of the property failed to take into account certain gaming variables that will increase the value of the property. As you are readily aware, CBRE is an extremely reputable organization in the real estate industry and was retained by Brookfield, RTC, and the Trustee to appraise the real property. As such, CBRE should not be subjected to Mr. Nype's repeated criticism with respect to its appraisal. This continued interference with CBRE's appraisal must immediately stop as it could detrimentally impact CBRE's finalization of its report. Please take the necessary steps so that Mr. Nype will immediately cease this conduct. While Mr. Nype is a creditor in the bankruptcy estate, he does not currently possess ownership of any portion of the RTC property. He needs to understand that he is not in a position to dictate how the property is to be administered let alone establish the factors in determining the property's appraised value. Should you care to further discuss, please contact me at your earliest convenience.

35.    A true and correct copy of the October 12, 2020 email from counsel for Brookfield is attached to the Houmand Declaration as **Exhibit "7"**.

36.    On October 14, 2020, in response to an email from Trustee's counsel requesting that he refrain from contacting Brookfield and CBRE, Mr. Nype again demanded that the CBRE Appraisal include a supplement concerning gaming revenue. A true and correct copy of Mr. Nype's email dated October 14, 2020 is attached to the Houmand Declaration as **Exhibit "8"**.

37.    On October 14, 2020, after he was explicitly requested to stop emailing CBRE and Brookfield, Mr. Nype sent another email demanding that CBRE increase its appraisal. A true and correct copy of the email dated October 14, 2020 is attached to the Houmand Declaration as **Exhibit "9"**.

38.    On October 14, 2020, in response to Mr. Nype's email, counsel for Brookfield against sent an email demanding Mr. Nype cease communication with CBRE and Brookfield:

-13-

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Jacob-

Mr. Nype's email is inconsistent with your email to me from yesterday, which expressly stated that Mr. Nype would not reach out directly to Brookfield or CBRE. As previously indicated, Mr. Nype did not retain CBRE to conduct the appraisal, and he does not currently possess title to any portion of the RTC property. CBRE has reached its conclusions independent from Mr. Nype or any other party, and it should remain that way. Please ensure that Mr. Nype ceases from contacting Brookfield or CBRE directly from this point forward. Thank you.

39.  A true and correct copy of the October 14, 2020 email from Mr. Nype is attached to the Houmand Declaration as **Exhibit "10"**.

40.  On October 17, 2020, Mr. Nype sent an email to Trustee's counsel, requesting to be put in charge of negotiations and complained about the process of the sale of the Property. A true and correct copy of the October 14, 2020 email from Mr. Nype is attached to the Houmand Declaration as **Exhibit "11"**.

41.  On October 27, 2020, Mr. Nype sent an email to counsel for the Trustee where he objected to Brookfield's request that he not participate in the discussions regarding the sale of the Property. A true and correct copy of the October 27, 2020 email from Mr. Nype is attached to the Houmand Declaration as **Exhibit "12"**.

42.  On November 4, 2020, Mr. Nype sent an email to counsel for the Trustee, again objecting to not being allowed to lead discussions regarding the sale of the Property. A true and correct copy of the October 27, 2020 email from Mr. Nype is attached to the Houmand Declaration as **Exhibit "13"**.

43.  After the RTC received a copy of the CBRE Appraisal, counsel for the Trustee and representatives from Brookfield participated in several conference calls with the RTC. Representatives from the RTC also discussed the possibility of assuming the Loan with CTL.

44.  On or about March 17, 2021, the RTC made an offer to purchase the Property by paying the Debtor's bankruptcy estate and Brookfield for $2,750,000 and assuming the obligations under the Loan.

. . .

**MR. NYPE AGREES TO NOT AMEND HIS CLAIM IN A MANNER THAT WOULD REDUCE THE TRUSTEE'S COMMISSION**

45.    On May 27, 2021, the Trustee filed a *Stipulation Regarding Proof of Claim 2-1 Filed by Russell L. Nype* [ECF No. 83] (the "Stipulation") that provided Mr. Nype would be precluded from withdrawing or amending proof of claim 2-1 in a manner that reduced the amount owed to Mr. Nype.

46.    The intention of the Stipulation was to prevent a scenario in which Mr. Nype amends his proof of claim in a manner that would reduce the commission owed to the Trustee. This is because the Trustee and Mr. Nype were negotiating a settlement with one of the Debtor's principals concerning the fraudulent transfer judgment that would have provided any surplus payment that would be owed to one of the Debtor's principals by virtue of Section 726(a)(6) be paid directly to Mr. Nype.  Since Mr. Nype was, at the time, the holder of approximately ninety-eight percent (98%) of the Debtor's creditor body, the Trustee did not want such a settlement to be approved and then have Mr. Nype withdraw his proof of claim to avoid having to pay the Trustee's commission.

47.    On May 27, 2021, the Court entered an *Order Approving Stipulation Regarding Proof of Claim 2-1 Filed by Russell L. Nype* [ECF No. 85].

**THE TRUSTEE AND BROOKFIELD EVALUATE THE PURCHASE OFFER FROM THE RTC**

48.    After the Trustee received the purchase offer from the RTC, she interviewed three separate brokers to determine whether it was the highest and best offer for the bankruptcy estate's interest in the Property.

49.    Specifically, the Trustee and representatives for Brookfield discussed the offer from the RTC and the CBRE Appraisal with CBRE, Colliers, and Hilco Real Estate, LLC.

50.    While the Trustee was evaluating the offer from the RTC with other brokers, she asked Mr. Nype whether he would be interested in purchasing the bankruptcy estate's interest in the Property.  Mr. Nype never made an offer to the Trustee to purchase the bankruptcy estate's interest in the Property.

. . .

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

**THE TRUSTEE EMPLOYS CUSHMAN AND A CONSULTANT**

51.     On or about October 12, 2021, Mr. Nype sent an email the Trustee where he protested the fact that she was interviewing several brokers and requested that the Trustee employ Cushman to sell the Property.

52.     After meeting with Cushman, the Trustee and Brookfield agreed to employ Cushman with a one-year listing agreement to see if they could successfully market the Property to the RTC.

53.     On March 4, 2022, the Trustee filed an *Application to Employ Cushman & Wakefield U.S., Inc. dba Cushman & Wakefield as Real Estate Broker Pursuant to 11 U.S.C. 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 88].

54.     On April 7, 2022, the Court entered an *Order Granting Application to Employ Cushman & Wakefield U.S., Inc. dba Cushman & Wakefield as Real Estate Broker Pursuant to 11 U.S.C. 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 104].

55.     Since its employment, Cushman has also reviewed significant documentation concerning the Property including, but not limited to, the operating agreement for Wink One, LLC, the TIC Management Agreement, the lease agreement with the RTC, the loan agreement with CTL Lending Group, LLC, and the appraisal prepared by the CBRE.

56.     This review led to the conclusion that a sale of the Property to the RTC would result in the highest recovery to the Debtor's bankruptcy estate and Brookfield.

57.     Following this conclusion, Cushman began developing a sale proposal to present to the RTC.  This process has included weekly conference calls with the Trustee and her counsel.

58.     Cushman has also had numerous conference calls with executives from Brookfield to develop a sale proposal to present to the RTC.

59.     Cushman also recommended to the Trustee that she employ Alisa Nave, LLC (the "Nave Firm") as a consultant to assist with the sale of the Property due to its extensive experience in government affairs and existing relationships with RTC commissioners.

60.     On July 14, 2022, the Trustee filed an *Application to Employ Alisa Nave, LLC As Consultant for Shelley D. Krohn, Chapter 7 Trustee, Pursuant to 11 U.S.C. 327(e) and 328(a)*

-16-

*and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 113]

61.     On July 28, 2022, the Court entered an *Order Granting Application to Employ Alisa Nave, LLC As Consultant for Shelley D. Krohn, Chapter 7 Trustee, Pursuant to 11 U.S.C. §§ 327(e) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 123].

62.     On August 16, 2022, representatives from Cushman traveled to Las Vegas, Nevada from New York and met with representatives from the RTC to discuss a sale of the Property. During this meeting, representatives from the RTC expressed an interest in purchasing the Property.

63.     On August 25, 2022, nine days after the meeting with the RTC, Mr. Nype filed the Motions wherein he requests that the Debtor's bankruptcy case be converted to Chapter 11 and he be placed as the manager for the Debtor and Wink One.

64.     Mr. Nype filed the Motions without discussing the same with the Trustee, Cushman, the Nave Firm, or counsel for the Trustee.

65.     On September 7, 2022, representatives from Cushman attended a conference call with representatives from the RTC where the parties agreed to a process to evaluate a sale price for the Property.

66.     Specifically, the RTC has also ordered two appraisals of the Property to evaluate a sale price for the Property, which is a requirement under its rules and regulations.

67.     The RTC has also informed the Trustee that they will be engaging representatives from the Federal Transit Administration with the sale process for the Property.

68.     Finally, representatives from the RTC have also agreed to have bi-monthly conference calls with Cushman so that the parties can discuss a sale of the Property.

### III.     LEGAL ARGUMENT

**A.     Conversion Does Not Provide the Greatest Benefit to All Parties and Should be Denied.**

Section 706(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." Under Section 706(b) then, any party in interest, including a debtor, may request

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

conversion of the case to chapter 11 at any time. "The decision whether to convert [a case under Section 706(b)] is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." H.R.Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong.2d Sess. at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787. Section 706(b) does not provide guidance regarding the factors a court should consider in resolving a conversion motion. *Schlehuber v. Fremont Nat'l Bank & Trust Co. (In re Schlehuber),* 489 B.R. 570, 573 (8th Cir. BAP2013), *aff'd,* 558 Fed.Appx. 715 (8th Cir.2014) (footnote omitted). "Since there are no specific grounds for conversion, a court 'should consider anything relevant that would further the goals of the Bankruptcy Code.' " *Proudfoot Consulting Co. v. Gordon (In re Gordon),* 465 B.R. 683, 692 (Bankr.N.D.Ga.2012) (quoting *In re Lobera,* 454 B.R. 824, 854 (Bankr.D.N.M.2011)), *see also In re Decker*, 535 B.R. 828, 839 (Bankr. D. Alaska 2015) ("[C]ourts may consider a multitude of factors, depending upon the circumstances of each case, to assess the benefits of conversion to all parties.").

Here, the evidence does not show conversion will produce the greatest benefit to all parties. The Motion to Convert lists several parties in interest and purports to examine how conversion will benefit those parties. The analysis contained in the Motion to Convert, however, is hopelessly flawed. A careful examination of the facts of the case shows clearly that conversion benefits only one party, Mr. Nype, and that even that benefit is highly speculative.

    *i.    Conversion of the Bankruptcy Case Does Not Benefit the Debtor*

There is no benefit to the Debtor for conversion of this case. The Debtor filed this case as a Chapter 7 and expressly chose to liquidate its assets under that bankruptcy chapter. As Mr. Nype readily admits, while the Debtor could obtain a discharge in a Chapter 11, that discharge would have no real benefit to the Debtor. Moreover, were the case to be converted, the Debtor would need to engage Chapter 11 counsel and incur fees and expenses for the Chapter 11 administration including, but not limited to, fees for its counsel, U.S. Trustee fees, and fees for preparation of monthly operating reports. The Debtor would need to weigh the possibility of electing subchapter V designation, and whether it would choose to propose its own plan for

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

reorganization. While Mr. Nype's motion contemplates the appointment of a Chapter 11 Trustee, no motion to appoint such a trustee is properly before the court. Further, while Mr. Nype assumes any chapter 11 trustee will act as his willing puppet, an appointed trustee is obligated to act in the best interests of the bankruptcy estate and may disagree with the appointment of someone with such clear contempt for the bankruptcy process to manage the Debtor.

Further, while Mr. Nype's plan calls for a continuation of the Trustee's exact plan for sale of the Property, there is ample reason to believe that placing Mr. Nype in control of the Debtor will disrupt the sale of the Property. The Debtor, through Wink One, holds a forty (40%) interest in the Property. The balance of the interest in the Property is held by Brookfield, who has repeatedly requested that Mr. Nype not be involved in the sale of the Property. While the Property may be sold without Brookfield's consent under 11 U.S.C. § 363(h), such a sale would require an adversary proceeding, which Brookfield is likely to contest. That process would only serve to further delay the sale of the Property. Furthermore, because a sale may involve the RTC assuming the Loan, it is unlikely that the RTC would be willing to consummate the sale without the express consent of Brookfield and Mr. Nype 's involvement has the potential to disrupt the transaction.

The Motion to Convert ignores the basic harm done to the Debtor by depriving the Debtor of its chosen manner of liquidation. "Congress has granted a clear right to debtors to decide which chapter their case should proceed under, and the Court is loathe to overturn that choice without a strong showing of an abuse of the system or clear detriment to parties in interest." *In re Mod. Metal Prod. Co.*, 422 B.R. 118, 124 (Bankr. N.D. Ill. 2009). Here, the Debtor filed its case with the assistance of counsel and elected to liquidate its assets under Chapter 7, and to have its assets administered by a Chapter 7 Trustee. The Debtor purposefully chose its chapter of bankruptcy, and the Motion to Convert seeks to deprive the Debtor of its choice with no discernible benefit to the Debtor. The Motion to Convert does not allege any abuse of the system by the Debtor in Chapter 7, and shows no clear detriment to any party in interest other than Mr. Nype's own annoyance at how the bankruptcy case has been administered.

. . .

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

ii.     *The Benefit of Conversion to the Creditor is Speculative*

In support of the Motion to Convert, Mr. Nype argues that creditors will benefit from conversion because Trustee has needlessly delayed the sale of the Property and conversion will obviate the need to pay the Trustee her compensation under Section 326. Mr. Nype asserts that creditors are enraged by the time it has taken to sell the Property and argues the delay is strictly attributable to a lack of diligence on the part of the Trustee. Mr. Nype contends that he will be able to move more quickly to sell the Property. Mr. Nype makes these arguments even though he proposes to retain the same professionals currently employed by the Trustee to sell the Property and pursue the exact same strategy for sale. Mr. Nype also estimates that by not paying the Trustee, an additional $1,650,000 will be available to pay his claim.

With regard to the time taken to sell the Property, Mr. Nype's memory is, at best, selective. The Trustee initially moved to hire a realtor on April 17, 2020 [ECF No. 53]. The Trustee withdrew that application at Mr. Nype's insistence that he did not want to pay a realtor's commission when a natural buyer existed in the RTC. The Trustee and Mr. Nype *both* agreed that the better course of action was to first approach the RTC and determine if an offer could be obtained without the expense of a realtor. The process of obtaining an offer from the RTC was lengthy and included the need for an appraisal. Mr. Nype's ongoing attempts to interfere with that appraisal further delayed the process (and raised the ire of other necessary parties to the sale). In spite of Mr. Nype's interference, the Trustee obtained an offer from the RTC to purchase the property. Using her best business judgment, the Trustee determined that the RTC's offer was low and thought that a broker should be engaged to market the Property. Mr. Nype's interference created difficulties in obtaining a realtor to properly market the Property on terms desirable to the Trustee. The Trustee interviewed multiple brokers and eventually employed Cushman. On the advice of Cushman, another presentation was made to the RTC and a consultant was employed to assist with that presentation. That presentation was successful and the RTC has indicated that it wishes to come to terms on a sale of the Property. The record is clear that the Trustee has moved prudently and deliberately in executing her duties to maximize the sale of the Property.  This is evidenced by the fact that Mr. Nype seeks to continue the same plan that is currently being

executed by the Trustee.

Mr. Nype's argument that he has suddenly lost faith in the Trustee is also insincere and belied by his near constant stream of emails and voicemails from the beginning of the Debtor's bankruptcy case.  Mr. Nype has not "become" enraged. Rather, he has always been angry about the presence of the Trustee, or anyone else who attempts to exert any amount of influence over the case. Mr. Nype has, from the very beginning, protested the Trustee's involvement in the case and has repeatedly demanded that she cede control of the negotiations regarding the Property to himself. Mr. Nype has consistently sought to undermine the Trustee by contacting professionals and other parties and has held himself out as having authority to negotiate on behalf of the estate. His persistent harassment of professionals and other parties did not cease even when asked to stop by those parties, the Trustee, and Mr. Nype's own legal counsel. The idea that Mr. Nype has suddenly, or even gradually, lost faith in the Trustee is simply inaccurate. He has never wanted anyone but himself to oversee managing the assets of the Debtor and has never respected or abided by the formalities of the bankruptcy process.

As stated above, despite Mr. Nype's ongoing interference with the sale of the Property, the Trustee has made progress and is on the verge of completing the sale. There is no reason to believe that Mr. Nype will realize a sale on a faster basis by proposing the same plan that is being pursued by the Trustee. Conversely, there is ample reason to believe conversion would disrupt the sale and threaten the creditor's recovery.

iii.    *Conversion of the Debtor's Bankruptcy Case Will Not Benefit Its Members*

Conversion of the case will further delay administration, inject uncertainty into the process, and place the sale of the Property at risk. As outlined above, while Mr. Nype paints a rosy and self-serving picture of the effect of conversion, that picture is highly speculative. Accordingly, the members of the Debtor will not be advantaged by the conversion of the Debtor's bankruptcy case to Chapter 11.

. . .

. . .

. . .

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

-21-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

iv.    *Conversion of the Debtor's Bankruptcy Case Is Solely Intended to Deprive the Trustee of Her Commission*

The Motion to Convert openly admits its purpose is to rob the Trustee of the commission she is entitled to under Section 326.  The explicit purpose of the Motion to Convert is to remove the Trustee, prevent her from being paid, and allow Mr. Nype to reap the benefits of her work. The very intention of the proposed conversion is a detriment to the Trustee who has devoted significant time and resources to the administration of this bankruptcy estate. The Motion to Convert, an express attempt to deprive the Trustee of compensation, is also contrary to the purpose and goals of the Bankruptcy Code. The bankruptcy system relies on the appointment of professionals who are willing to work on complex matters without guarantee of payment. Why would any capable person agree to work as a chapter 7 Bankruptcy Trustee if at the last minute a creditor could convert the case to prevent payment of their commission? The Trustee's compensation is governed by statute and is reviewable by this court. To the extent that Mr. Nype has an issue with the Trustee's compensation, he is free to raise that issue when such compensation is before the court. If the Court deems the compensation of the Trustee or her professionals improper, it has discretion to alter that compensation. Moreover, if Mr. Nype believed that the Trustee's efforts in administering the Debtor's bankruptcy case were improper then he could seek to remove her under Section 324.  He has failed to do so and, instead, seeks to convert the case to Chapter 11 so that he can be placed in charge of the process to sell the Property.  Simply put, Mr. Nype's desire to not see professionals paid under the bankruptcy code is not an adequate basis to convert a bankruptcy case.

**B.    Conversion Is Improper Because It Will Not Rehabilitate the Debtor's Finances.**

Courts have relied upon various factors in determining whether a Section 706(b) conversion would be appropriate, including: "(1) the debtor's ability to repay debt; (2) the absence of immediate grounds for reconversion; (3) the likelihood of confirmation of a Chapter 11 plan; and (4) whether the parties in interest would benefit from conversion." *Decker*, 548 B.R. at 817; *In re Hardigan*, 517 B.R. 374, 383 (S.D. Ga. 2014). In considering reconversion from Chapter 7 to Chapter 11, courts should consider the factors requiring conversion from

-22-

1    Chapter 11 to Chapter 7 under Section 1112(b) "because if cause exists to  reconvert  from

2    Chapter 11 . . . . conversion from Chapter 7 under Section 706(b) would be a futile and

3    wasted act". *In Re Ryan*, 267 BR 635, 637 (Bankr. N.D. Iowa 2001), citing *In Re Finney*,

4    992 F.2d 43, 45 (4th Cir. 1993).

5        Section 1112(b)(4)(A) provides that cause exists to dismiss or convert a case if the

6    proponent of dismissal establishes both (1) substantial or continuing loss to or diminution of the

7    estate post-petition, and (2) the absence of a reasonable likelihood of rehabilitation. Under the

8    first prong, substantial or continuing loss to or diminution of the estate, the "loss or decline in

9    value must be either *substantial* or *continuing,* but need not be both." *In re Paterno,* 511 B.R. 62,

10   66 (Bankr. M.D.N.C. 2014) (citing *In re Creekside Sr. Apartments, L.P.,* 489 B.R. 51, 61 (6th Cir.

11   BAP 2013) and *In re Landmark Atlantic Hess Farm, LLC,* 448 B.R. 707, 714 (Bankr. D. Md.

12   2011) ). As to the second prong, one court described "absence of a reasonable likelihood of

13   rehabilitation" as follows:

> 14        Rehabilitation is a more demanding standard than reorganization,
> 15    and is defined by whether the debtor will be able to reestablish his
>       business on a firm, sound basis ... Where a debtor proposes a plan
> 16    of pure liquidation, there is no likelihood of rehabilitation. Thus,
>       rehabilitation depends upon establishing a cash flow from which
> 17    current obligations can be satisfied. This prospect must be premised
>       on objective facts, not merely speculative data, and is determined
> 18    by the Court based on evidence presented at the hearing.

19

20   *In re Paterno*, 511 B.R. at 68–69 (quotation and citations omitted).

21        Courts have issued varied opinions on whether rehabilitation can be accomplished within

22   a liquidating Chapter 11 plan. The majority view is that rehabilitation requires more than just a

23   reorganization, but requires instead that the debtor reestablish its business operations. The most

24   frequently cited case for this position is *Loop Corp. v. U.S. Trustee*, 379 F.3d 511 (8th Cir. 2004).

25        In *Loop*, the debtor sold most of its businesses, and began negotiating a chapter 11

26   liquidation plan with its secured creditors and the creditors' committee. *Id.* at 513. After months of

27   negotiations, the U.S. Trustee sought to convert the case, citing the debtor's negative cash flow,

28   the liquidation plan as evidence of a lack of likelihood of rehabilitation, and mounting costs to the

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

estate. *Id.* at 514. The court found that the trustee met his burden by demonstrating that "the debtors had a negative cash flow and no intention of rehabilitating their business." *Id.* at 518. The debtor argued that a liquidating chapter 11 debtor will inevitably have a negative cash flow due to accruing chapter 11 administrative costs and, therefore, negative cash flow did not constitute diminution under Section 1112. *Id.* at 515. The Eighth Circuit rejected the argument and held "this negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate.'" *Id.* at 515-15. Under the "rehabilitation" element, the Eighth Circuit upheld the bankruptcy court's conclusion that "a liquidating debtor who had no intention of restoring its business had no reasonable likelihood of rehabilitation." The debtor contended that the bankruptcy court's holding amounted to a *per se* rule that liquidating debtors could not remain in chapter 11. *Id.* at 515–16. The debtor argued that a liquidating debtor by definition has negative cash flow and no prospect of rehabilitating its business. *Id.* at 515. Therefore, the only thing preventing conversion under such circumstances is the forbearance of creditors and the UST. *Id.* at 516. The court rejected this argument, however, noting that while it was sensitive to the debtor's concerns, the bankruptcy court's ruling was consistent with the plain language of Section 1112(b)(1). *Id.* at 515–16. Furthermore, the court noted while "it is difficult to imagine a liquidating debtor who will not meet the criteria for cause ... this concern may be alleviated if the bankruptcy court's discretion under [section] 1112(b) is understood to permit the court to deny both conversion and dismissal despite a showing of cause." *Id.* at 516. The court concluded that the bankruptcy court had not abused its discretion in granting the motion to convert. *Id.* at 519.

Since *Loop*, the majority view has been that rehabilitation must show that the Debtor will reestablish its business: "Rehabilitation signifies something more, such as 'to put back in good condition' or 'to re-establish on a firm, sound basis.' It contemplates the successful maintenance or reestablishment of a debtor's business operations." *In re W. States, Inc.*, 2018 WL 627465, at *6 (Bankr. D. Wyo. 2018) (quoting In re ARS Analytical, LLC, 433 B.R. 848, 862 (Bankr. D. N.M. 2010)). "The issue of rehabilitation for purposes of § 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re Wallace*, 2010 WL 378351 at *4 (Bankr.

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

D.Idaho Jan. 26, 2010) (quotations and citations omitted). "Rehabilitation is a different and much more demanding standard than reorganization." *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61 (6th Cir. BAP 2013) (citing *In re Brutsche*, 476 B.R. 298, 301 (Bankr.D.N.M.2012) (citing 7 COLLIER ON BANKRUPTCY at ¶ 1112.04[6][a][ii])). Rehabilitation means that that the debtor's business will be "put back in good condition" and "re-establish[ed] on a firm, sound basis." *In re V Co.*, 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002); see also *In re Vallambrosa Holdings, L.L.C.*, 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009) ("[R]ehabilitation in a Chapter 11 [case] . . . requires, at minimum, the prospect of re-establishment of a business."). "In this context, rehabilitation means to put back in good condition and reestablish on a sound basis." *See In re AdBrite Corp.,* 290 B.R. 209, 216 (Bankr.S.D.N.Y.2003).

Conversely, a minority of courts have determined that the term "rehabilitation" does not preclude a liquidating plan under chapter 11. *See, e.g., In re McTiernan,* 519 B.R. 860, 866 (Bankr.D.Wyo.2014) ("In determining whether the debtor can rehabilitate, the court does not find that an interpretation of 'rehabilitation' precludes liquidation under a chapter 11 bankruptcy case."). As this Court previously noted, there is no controlling authority in the Ninth Circuit regarding whether a liquidating plan can meet the statutory requirement of rehabilitation. *In re R & S St. Rose Lenders, LLC*, No. 11-14973-MKN, 2016 WL 3536533 at FN 11 (Bankr. D. Nev. May 18, 2016).

In this case, the Court should follow the majority position and determine that the Debtor is not eligible to be a Chapter 11 Debtor because were the Debtor to convert to Chapter 11, cause would exist to reconvert the Debtor to Chapter 7. If the case was converted, the estate would face diminution. While Mr. Nype paints an optimistic picture of a Chapter 11 case, the estate would face continuing diminution because the Debtor would need to engage Chapter 11 counsel and incur fees and expenses for the Chapter 11 administration, including, but not limited to, fees for its counsel, U.S. Trustee fees, and fees for preparation of monthly operating reports. These fees would all be ongoing through confirmation. As to rehabilitation, Mr. Nype openly admits that the purpose of conversion is not to rehabilitate the Debtor's finances, it is simply to remove the

Trustee and allow Mr. Nype to have control of the liquidation so that the Trustee's compensation can be used to increase his distribution. In short, the intention of Mr. Nype is to rehabilitate his own finances, not those of the Debtor.

In applying the majority position, the Court need not determine that there is no situation in which a liquidating plan can constitute a rehabilitation of the Debtor's finances. Rather, the Court should look to the specific facts of this case and stated intention of Mr. Nype. Cases in which courts have found cause under Section 1112(b)(4)(A) to deny a motion to convert a Chapter 7 case to Chapter 11 are instructive.

In *In re Woodruff*, a voluntary Chapter 7 debtor requested conversion to a Chapter 11 after inheritance of stock valued at $120,000.00. *In re Woodruff,* 580 B.R. 291 (Bankr. M.D. Ga.2018). The court concluded that allowing the debtor to propose a liquidating Chapter 11 plan would subject the estate to continuing diminution without a reasonable likelihood of rehabilitating the debtor's finances. The court pointed to the debtor's inconsistent future income prospects and concluded that reducing ongoing household expenses during the Chapter 11 case was "unlikely to offset the large administrative costs of a Chapter 11 filing." *Id*. at 300. The court also noted the debtor's motive for conversion – which was taking control of the estate from the trustee – and reasoned that a Chapter 11 "would accomplish nothing more than a liquidation of the estate's assets but would impose additional costs and delay on creditors." *Id.*

Similarly, in *Braunstein v. Waller*, the district court affirmed the bankruptcy court's denial of a voluntary Chapter 7 debtor's motion to convert to Chapter 11 that was filed after the Chapter 7 trustee filed a motion to approve bid procedures of certain property. *Braunstein v. Waller*, No. 11 C 7991, 2012 WL 1802145, at *1 (N.D. Ill. May 16, 2012). The court found that the record did not show that there was any business to reorganize, and that conversion would be an exercise in futility and risk the dissipation of assets of the estate. *Id.* at *2. Instead, the court noted that the bankruptcy court could legitimately conclude that a conversion would be a "waste of time and resources since the bankruptcy would inevitably be converted back into a Chapter 7 bankruptcy." *Id.*

. . .

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

In the case of *In re Watkins*, 132 B.R. 781 (Bankr. S. D. Fla. 1991), the Chapter 7 Trustee, after liquidating all other assets, identified a single remaining asset to be administered by the bankruptcy estate: a lump sum alimony award. *Id.* at 782. The Chapter 7 Trustee sought authority to convert the case to a Chapter 11 pursuant to Section 706(b). *Id.* The trustee proposed that once converted, a liquidating plan would be filed which would establish a private trust to maintain the collection and disbursement of the balance of the available funds over the life of the lump sum alimony award. *Id.* The Trustee asserted that the conversion would permit the case to be closed following an initial distribution under a Chapter 11 plan, as opposed to a Chapter 7, which would leave the case open until the final distribution had been made. *Id.* The Court held that conversion of the case for the purpose of liquidating the estate's only asset was not compatible with the purpose of a Chapter 11. *Id.* Conversion was denied on the basis that it would not aid the Debtor in reorganizing and would only serve to expedite the closing of the case.

Here, Mr. Nype does not seek conversion for any legitimate reorganization, and certainly not for any rehabilitation of the Debtor's finances. In viewing the plain stated motivations of Mr. Nype, the Court should determine that conversion of this case is improper because under Section 1112(b)(4)(A) cause would exist for the case to be reconverted. Accordingly, the Motion to Convert should be denied.

**C.    Conversion is Improper Because Mr. Nype's Plan is Proposed in Bad Faith.**

The party seeking conversion under Section 706(b) has the burden of proof to demonstrate the viability of a confirmable plan of reorganization in Chapter 11. *Thompson v. Daluise (In Re Wet-Jet International, Inc.)*, 225 BR 142, 153 (Bankr. D. Mass. 1999). In order to be confirmable, Section 1129(a)(3) requires a determination that "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Section 1129(a)(3) does not define good faith. *See Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza)*, 314 F.3d 1070, 1074 (9th Cir. 2002), *cert. denied*, 538 U.S. 1035, 123 S.Ct. 2097, 155 L.Ed.2d 1065 (2003); *Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango)*, 481 B.R. 51, 68 (B.A.P. 9th Cir. 2012). A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

-27-

Code. See *In re Sylmar Plaza*, 314 F.3d at 1074; *In re Windmill Durango*, 481 B.R. at 68. "Good faith" under Section 1129(a)(3) is determined on a case-by-case basis, taking into account the totality of the circumstances of the case. See *In re Sylmar Plaza,* 314 F.3d at 1074-75; *In re Windmill Durango*, 481 B.R. at 68; *In re Stolrow's Inc.,* 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988). The objectives and purposes of the Code include "preserving going concerns and maximizing property available to satisfy creditors," "giving debtors a fresh start in life," "discourag[ing] debtor misconduct," "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," and "achieving fundamental fairness and justice." *In re Am. Cap. Equip., LLC,* 688 F.3d 145, 156-57 (3d Cir. 2012) (internal citations and quotation marks omitted).

Here, the plan proposed by Mr. Nype is not confirmable because it is proposed in bad faith. The plan does not achieve a purpose consistent with the purposes of the Bankruptcy Code. The purpose of the conversion and the proposed plan is to displace the duly appointed chapter 7 Trustee, to divert her compensation to Mr. Nype, and to place Mr. Nype in charge of the Debtor's assets. This is not a proper purpose consistent with the Bankruptcy Code. Although Mr. Nype has constantly interfered with the Trustee's efforts to administer the Debtor's bankruptcy estate and has repeatedly disregarded the formalities of the Bankruptcy process, he argues that the court should place him in charge of the Debtor so that he may reap the benefits of the Trustee's work while not paying her. To allow Mr. Nype to enrich himself at the expense of a court appointed trustee runs counter to achieving fundamental fairness and justice, which is a purpose of the Bankruptcy Code. Consequently, Mr. Nype's proposed plan is proposed in bad faith and is not confirmable under Section 1129(a)(3).

**D.    The Motion to Convert Impermissibly Seeks to Circumvent Section 324.**

While presented as a motion seeking conversion, the purpose of the Motion to Convert is to remove the Trustee and place Mr. Nype in control of the Debtor while circumventing the requirements to remove a Trustee under Section 324(a). The Motion to Convert makes no secret of the fact that it has no aim other than to remove the Trustee so that Mr. Nype can run the negotiations to sell the Property. Mr. Nype's proposed plan is to retain Cushman and the Nave Firm and pursue the exact same course of action currently pursued by the Trustee.

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Removal of a Trustee, when properly sought, is governed by Section 324(a), which provides, "The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." Removal of a trustee is an extreme remedy. *In re Morgan*, 375 B.R. 838, 847 (Bankr. 8th Cir. 2007); *In re Gunartt,* 355 Fed. Appx. 66 (7th Cir. 2009). Removal is subject to the discretion of the bankruptcy court. *In re Morgan*, 375 B.R. at 847. The Bankruptcy Code does not define "cause" and "it is left for the courts to determine on a case by case basis." *Dye v. Brown (In the Matter of AFI Holding, Inc.),* 530 F.3d 832, 845 (9th Cir. 2008) (*quoting* 3 Collier on Bankruptcy ¶ 324, 02, at 324–3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006)). In *In the Matter of AFI Holding*, the Ninth Circuit provides an illustrative (but not exhaustive) list of examples of "cause" including "trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate." *Id.* The "party seeking removal" bears the burden of proof and meets this burden by providing evidence of "specific facts" warranting removal. *Id.*

Here, there are no facts that warrant removal. While Mr. Nype appears to assert incompetence or failure to perform duties, he does so without any evidence. While the progression of a Bankruptcy case may be frustrating, the evidence in this matter shows that the Trustee has acted reasonably in pursuing sale of a Property with a complex set of facts. Accordingly, Mr. Nype has not carried his burden to show that removal of the Trustee is proper.

**E.    Mr. Nype Has Not Carried His Burden to Show Appointment of a Chapter 11 Trustee is Proper.**

Under Section 1104(a) and Section 1104(c), a Chapter 11 trustee or an examiner can be appointed for cause, including fraud, dishonesty, incompetence or gross mismanagement, or if the court finds it to be in the interest of creditors. In addition to certain duties under Section 704, a Chapter 11 trustee is required to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business." *Id*. at § 1106(a)(3). Additionally, "as soon as practicable," a Chapter 11 trustee must: "(A) file a statement of any investigation conducted under paragraph (3)

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

of this subjection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate," and (B) "file a plan under section 1121 of the title, file a report of why the trustee will not file a plan, or recommend conversion of the case ... or dismissal of the case." *Id*. at § 1106(a)(4)(A) and § 1106(a)(5).

A Chapter 11 trustee may be appointed upon the request of a party in interest, or, may be appointed *sua sponte* by the bankruptcy court. *See In re CWNevada LLC*, 602 B.R. 717, 727 n.23 (Bankr. D. Nev. 2019). "The appointment of a trustee in a Chapter 11 case is an extraordinary remedy" because it is presumed that current management is in the best position to reorganize the debtor's financial affairs. *See Keeley and Grabanski Land Partnership v. Keeley (In re Keeley & Grabanski Land P'ship)*, 455 B.R. 153, 162 (B.A.P. 8th Cir. 2011). Some factors that are considered when courts decide whether or not to appoint a trustee are: "(1) the trustworthiness of the debtor, (2) the past and present performance of the debtor and the prospects for rehabilitation, (3) the confidence level of creditors and the business community in the debtor, and (4) whether the benefits of appointing a trustee outweigh the associated costs." See *United Surety & Indemnity Co. v. Lopez-Munoz (In re Lopez-Munoz)*, 553 B.R. 179, 195–96 (B.A.P. 1st Cir. 2016), aff'd sub nom. In re Lopez-Munoz, 866 F.3d 487 (1st Cir. 2017). The party seeking relief under Section 1112(b) or Section 1104(a) bears the burden of proof under a preponderance of the evidence standard. *In re Draft Bars LLC*, No. 16-16656-MKN, 2018 WL 9988769 at *3 (Bankr. D. Nev. Mar. 29, 2018)(internal citations omitted).

Here, Mr. Nype has not carried his burden to show that appointment of a chapter 11 trustee is proper. First and foremost, it does not appear that the request for appointment of a chapter 11 trustee is even properly before the Court. Mr. Nype's request for a trustee is not plainly displayed in the title of the Motion to Convert and is not present in the Notice of Motion to Convert as required by the Local Rules.[7] Further, no evidence is presented in support of the request for appointment of a chapter 11 trustee. For these reasons alone, Mr. Nype fails to carry

---

[7] Local Rule 9014(b)(1)(B) states that a notice of hearing must contain "[a] brief description of the relief sought".

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

his burden to show that appointment of a trustee is proper under Section 1112(b) or Section 1104(a). As the request is not properly before the Court and no evidence was presented in support of the request, the request should be denied.

**F.    In the Alternative, the Disclosure Statement Does Not Contain Sufficient Information Pursuant to Section 1125.**

In the alternative, the Trustee objects to Mr. Nype's disclosure statement. Section 1125 requires the disclosure statement to provide "adequate information" to the creditors in order for them to make an "informed judgement about the plan." 11 U.S.C. § 1125(a)(1). The adequacy of disclosure statement information has been evaluated using numerous factors, including the present condition of the debtor while in Chapter 11, the classes and claims within the reorganization plan, the estimated administrative expenses (including attorneys' fees), financial information and projections relevant to the decision to accept or reject the debtor's plan, and information relevant to the risks posed to creditors under the debtor's plan. *See In re Reilly*, 71 B.R. 132, 134-35 (Bankr. D. Mont. 1987). The plan proponent has the burden to show that its proposed disclosure statement contains adequate information. *Official Comm. of Unsecured Creditors v. Michelson (In re Michelson),* 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992). "[T]he determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court." *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003) (quotations and citations omitted).

Here, the disclosure provided by Mr. Nype is inadequate. First, while Mr. Nype discloses that he intends to be inserted as the manager of the Debtor, he does not provide the necessary disclosures under 11 U.S.C. § 1129 for an informed decision to be made regarding his appointment. Sections 1129(a)(5)(A)(i) and (ii) require that the Plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5)(A)(i), (ii).    The

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

-31-

Disclosure Statement does not identify Mr. Nype's connections to Brookfield, if any, or to any of the professionals to be employed by the bankruptcy estate in the hypothetical chapter 11. Because the Disclosure Statement fails to set forth not just the identity, but also the affiliations of Mr. Nype, the disclosure is insufficient.

Further, Section 1129(a)(5)(A)(i) states that Mr. Nype may not serve as the director of the Debtor if his appointment would be contrary to public policy. The Disclosure Statement does not disclose Mr. Nype's ongoing harassment of parties and professionals. The Disclosure Statement likewise omits Mr. Nype's efforts to influence the CBRE Appraisal. The omission of this information deprives hypothetical stakeholders of the information they need to make an informed decision to support a plan that places Mr. Nype as the director of the Debtor. Further, because of Mr. Nype's ongoing interference in the administration of the Chapter 7 estate, his appointment as manager of the Debtor is almost certainly against public policy and renders the Plan unconfirmable. As such, the Disclosure Statement should not be approved under Section 1125.

In addition to the inadequate disclosure of Mr. Nype's affiliations and interference in this case, the Disclosure Statement also fails to adequately set forth the barriers to a successful sale of the Property. The Disclosure Statement does not adequately describe the terms of the Loan Agreement and does not properly inform hypothetical stakeholders of the significant payment that would be required pursuant to clause outlining the Yield Maintenance Premium. The Disclosure Statement does not properly disclose the strong probability of a sale that involves assumption of the Loan. The Disclosure statement utterly mischaracterizes the administration of the estate to this point, and curiously omits that the Motions were filed shortly after the Trustee's successful meeting with representatives from the RTC. The Disclosure Statement also misstates the administrative expenses in the case. The Disclosure Statement allows for $50,000.00 which is significantly lower than the fees incurred to date.  The current attorneys' fees and expenses owed to Trustee's counsel are approximately $115,000[8] and the Nave Firm has also incurred fees and expenses related to its employment as a consultant.

---

[8] A significant portion of the attorneys' fees incurred by counsel for the Trustee have been in response to issues raised by Mr. Nype.

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Most importantly, the Disclosure Statement should not be approved because it seeks to advance confirmation of a Plan that is improper on its face. The Motion to Convert and the Motion to Approve the Disclosure Statement present a warped and untrue recitation of the history of this case in service of Mr. Nype's attempt to seize control of the Debtor's assets. For these reasons, the Motions should be denied in their entirety.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court enter an Order: (a) denying the Motion to Convert in its entirety; (b) denying the Motion to Approve Disclosure Statement in its entirety; and (c) for such other and further relief as is just and proper.

Dated this 14th day of September, 2022.

**HOUMAND LAW FIRM, LTD.**

By: */s/ Jacob L. Houmand*
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

-33-