Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:    702/720-3370
Facsimile:    702/720-3371

*General Bankruptcy Counsel for Shelley D. Krohn, Chapter 7 Trustee*

*Electronically Filed On: September 14, 2022*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>LAS VEGAS LAND PARTNERS, LLC,<br><br>Debtor. | Case No. BK-S-19-15333-MKN<br>Chapter 7<br><br>**DECLARATION OF JACOB L. HOUMAND, ESQ. IN SUPPORT OF TRUSTEE'S OMNIBUS OPPOSITION TO: (1) MOTION TO CONVERT CHAPTER 7 CASE TO CHAPTER 11 CASE; AND MOTION FOR ORDER: (1) APPROVING ADEQUACY OF DISCLOSURES IN PROPOSED DISCLOSURE STATEMENT AND (2) SETTING A CONFIRMATION HEARING, RECORD DATE AND DEADLINES FOR BALLOTING AND OPPOSITIONS TO CONFIRMATION**<br><br>Date of Hearing:   September 28, 2022<br>Time of Hearing:   2:30 p.m.<br>Place: Courtroom No. 2, Third Floor<br>Foley Federal Building<br>300 Las Vegas Blvd., S.<br>Las Vegas, NV 89101<br><br>Judge: Honorable Mike K. Nakagawa |

I, Jacob L. Houmand, Esq., hereby declare as follows:

1.  I am over the age of 18 and mentally competent. Except where stated on information and belief, I have personal knowledge of the facts in this matter and if called upon to testify, could and would do so.

. . .

2. I make this declaration to support the *Omnibus Opposition to: (1) Motion to Convert Chapter 7 Case to Chapter 11 Case; and (2) Motion For Order: (1) Approving Adequacy Of Disclosures in Proposed Disclosure Statement and (2) Setting A Confirmation Hearing, Record Date and Deadlines For Balloting and Oppositions To Confirmation* (the "Opposition").[1]

3. I am an attorney licensed to practice law in the State of Nevada and admitted to practice before this Court. I am a shareholder with the Houmand Law Firm, Ltd. (the "Firm"), general bankruptcy counsel for Shelley D. Krohn (the "Trustee"), the Chapter 7 Trustee in the above-referenced bankruptcy case.

4. On January 28, 2020, the Court entered an *Order Granting Ex Parte Application to Employ Houmand Law Firm, Ltd., Nunc Pro Tunc to January 13, 2020, As General Bankruptcy Counsel for Shelley D. Krohn, Chapter 7 Trustee, Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 49].[2]

5. Since its employment as general bankruptcy counsel for the Trustee, the Firm has assisted the Trustee with the sale of the Property.

6. On April 17, 2020, the Trustee filed an *Application to Employ Colliers International As Real Estate Broker to Sell Certain Real Property and to Pay Commission Pursuant to 11 U.S.C. 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 53] that sought to employ Colliers International ("Colliers") to assist with the sale of the Property.

. . .

. . .

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules". Unless otherwise set forth herein, all defined terms shall have the same meaning ascribed to them in the Opposition.

[2] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

7. On April 20, 2020, Mr. Nype sent me an email objecting to the employment of Colliers. A true and correct copy of the April 20, 2020, email is attached hereto as **Exhibit "1"**.

8. On April 23, 2020, counsel for Brookfield advised me that Mr. Nype had contacted them seeking to discuss Brookfield's interest in purchasing the Debtor's interest in the Property. Per the email, Brookfield informed Mr. Nype that it would only discuss a sale of its interest with the Trustee and her counsel. A true and correct copy of the April 23, 2020 email is attached hereto as **Exhibit "2"**.

9. On or about April 29, 2020, I met with representatives of the RTC and Brookfield. The RTC indicated interest in purchasing the Property. The RTC further indicated that substantial due diligence would need to occur before any sale proposal could occur, and that the RTC could not pay more than the appraised value of the Property.

10. The RTC also indicated that it had experienced a sharp decline in revenue based upon the COVID-19 pandemic and would need to finalize its budget prior to making any offer.

11. On May 7, 2020, Mr. Nype sent an email to me further objecting to the hiring of Colliers. A true and correct copy of the May 7, 2020 email is attached hereto as **Exhibit "3"**.

12. On May 7, 2020, Mr. Nype sent another email to me objecting to the hiring of Colliers. A true and correct copy of the May 7, 2020 email is attached hereto as **Exhibit "4"**.

13. On May 13, 2020, the Trustee filed a *Notice of Withdrawal of Application to Employ Colliers International to Sell Certain Real Property and to Pay Commission Pursuant to 11 U.S.C. 327(a) and 328(a) and Federal Rule of Bankruptcy Procedure 2014* [ECF No. 61] because Brookfield was interested in a sale of the Property to the RTC, the RTC was open to discussing a purchase of the Property, and due to Mr. Nype having requested that the Trustee not employ a real estate broker until a potential sale had been discussed with the RTC.

14. Representatives from Brookfield and I then conferred with representatives from the RTC as to the credentials it would require from an appraiser to value the Property. Brookfield and the Trustee agreed to employ CBRE, Inc. ("CBRE") as its credentials matched those that would be required by the RTC to evaluate a sale.

. . .

15. On September 1, 2020, the Trustee filed an *Ex Parte Application to Employ CBRE, Inc. as Appraiser and Pay Fee Pursuant to 11 U.S.C. 327(a), 328(a), and 330 and Federal Rules of Bankruptcy Procedure 2014 and 2016* [ECF No. 69].

16. On September 1, 2020, the Court entered an *Order Granting Ex Parte Application to Employ CBRE, Inc. as Appraiser and Pay Fee Pursuant to 11 U.S.C. 327(a), 328(a), and 330 and Federal Rules of Bankruptcy Procedure 2014 and 2016* [ECF No. 74].

17. On October 6, 2020, CBRE provided its appraisal, valuing the Property at approximately $72 million (the "CBRE Appraisal"). A true and correct copy of the CBRE Appraisal is attached to the Trustee Declaration as **Exhibit "2"**.

18. On October 8, 2020, Mr. Nype immediately sent a flurry of emails to CBRE stating that the value of the appraisal was too low based on failure to account of potential gaming revenue. A true and correct copy of the emails sent by Mr. Nype on October 6, 2020 are attached hereto as **Exhibit "5"**.

19. On October 9, 2020, a representative of Brookfield contacted me and requested that Mr. Nype not contact Brookfield or CBRE. A true and correct email of the email dated October 9, 2020 is attached hereto as **Exhibit "6"**.

20. On or about October 12, 2020, counsel for Brookfield sent an email to me complaining of Mr. Nype's interference with the appraisal process:

> Jacob-
>
> Hope you are doing well.
>
> I know that we spoke a couple months ago regarding Mr. Nype's conduct and his incessant emails in relation to the sale of the RTC property. As you are well aware, Mr. Nype's conduct has continued, and he has recently directed the majority of his correspondence to the appraisal that CBRE conducted on the property. In connection with his correspondence, he has had direct communications with CBRE and suggested that CBRE's appraised value of the property failed to take into account certain gaming variables that will increase the value of the property. As you are readily aware, CBRE is an extremely reputable organization in the real estate industry and was retained by Brookfield, RTC, and the Trustee to appraise the real property. As such, CBRE should not be subjected to Mr. Nype's repeated criticism with respect to its

-4-

appraisal. This continued interference with CBRE's appraisal must immediately stop as it could detrimentally impact CBRE's finalization of its report. Please take the necessary steps so that Mr. Nype will immediately cease this conduct. While Mr. Nype is a creditor in the bankruptcy estate, he does not currently possess ownership of any portion of the RTC property. He needs to understand that he is not in a position to dictate how the property is to be administered let alone establish the factors in determining the property's appraised value. Should you care to further discuss, please contact me at your earliest convenience.

21. A true and correct copy of the October 12, 2020 email from counsel for Brookfield is attached hereto as **Exhibit "7"**.

22. On October 14, 2020, in response to an email from me requesting that he refrain from contacting Brookfield and CBRE, Mr. Nype again demanded that the CBRE Appraisal include a supplement concerning gaming revenue. A true and correct copy of Mr. Nype's email dated October 14, 2020 is attached hereto as **Exhibit "8"**.

23. On October 14, 2020, after he was explicitly requested to stop emailing CBRE and Brookfield, Mr. Nype sent another email to me demanding that CBRE increase the value of the Property in the CBRE Appraisal. A true and correct copy of the email dated October 14, 2020 is attached hereto as **Exhibit "9"**.

24. On October 14, 2020, in response to Mr. Nype's email, counsel for Brookfield against sent an email to me demanding Mr. Nype cease communication with CBRE and Brookfield:

Jacob-

Mr. Nype's email is inconsistent with your email to me from yesterday, which expressly stated that Mr. Nype would not reach out directly to Brookfield or CBRE. As previously indicated, Mr. Nype did not retain CBRE to conduct the appraisal, and he does not currently possess title to any portion of the RTC property. CBRE has reached its conclusions independent from Mr. Nype or any other party, and it should remain that way. Please ensure that Mr. Nype ceases from contacting Brookfield or CBRE directly from this point forward. Thank you.

25. A true and correct copy of the October 14, 2020 email from Mr. Nype is attached hereto as **Exhibit "10"**.

26. On October 17, 2020, Mr. Nype sent an email to me, requesting to be put in charge of negotiations and complained about the process of the sale of the Property. A true and correct copy of the October 14, 2020 email from Mr. Nype is attached hereto as **Exhibit "11"**.

27. On October 27, 2020, Mr. Nype sent an email to me where he objected to Brookfield's request that he not participate in the discussions regarding the sale of the Property. A true and correct copy of the October 27, 2020 email from Mr. Nype is attached hereto as **Exhibit "12"**.

28. On November 4, 2020, Mr. Nype sent an email to me, again objecting to not being allowed to lead discussions regarding the sale of the Property. A true and correct copy of the October 27, 2020 email from Mr. Nype is attached hereto as **Exhibit "13"**.

29. It was routine for Mr. Nype to repeatedly send emails regarding the sale of the Property and leave condescending voicemails on my personal cell phone.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this 14th day of September, 2022.

*/s/ Jacob L. Houmand*
Jacob L. Houmand, Esq.