Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

| **Electronically Filed On: January 9, 2024** |

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

LAS VEGAS LAND PARTNERS, LLC,

               Debtor.

Case No.  BK-S-19-15333-MKN
Chapter 7

**MOTION TO APPROVE COMPROMISE
PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 AND
REQUEST FOR ATTORNEYS' FEES
AND EXPENSES**

Date of Hearing:        OST Requested
Time of Hearing:        OST Requested
Place: Courtroom No. 2, Third Floor
               Foley Federal Building
               300 Las Vegas Blvd., S.
               Las Vegas, NV 89101

Judge:  Honorable Mike K. Nakagawa[1]

     Shelley D. Krohn (the "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case, by and through her counsel, Jacob L. Houmand, Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., hereby submits this *Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Request for Attorneys' Fees and Expenses* (the "Motion").

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP."  The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules."

-1-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

The Motion is based on the following Memorandum of Points and Authorities, the *Declaration of Shelley D. Krohn In Support of the Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Request for Attorneys' Fees and Expenses* (the "<u>Trustee Declaration</u>"), and the *Declaration of Jacob L. Houmand, Esq. In Support of the Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Request for Attorneys' Fees and Expenses* (the "<u>Houmand Declaration</u>"), both of which are filed separately and concurrently with this Court pursuant to Local Rule 9014(c)(2).  The Motion is also based on the pleadings and papers on file herein, and any argument that may be entertained at the hearing on the Motion.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Shortly after filing a Motion to Sell (as defined below), the Trustee entered into negotiations with the Debtor's only non-administrative expense creditor, Russell Nype ("<u>Nype</u>"), to secure his support for the Motion to Sell. The Trustee, after much negotiation, was able to reach an agreement (the "<u>Agreement</u>") wherein Nype agreed to support the Motion to Sell, the Trustee and her professionals agreed to reduce their fees, the parties would provide each other mutual releases, the Trustee would assign the estate's interested in a judgment to Nype, and the Trustee would move expeditiously to close the Debtor's bankruptcy case. The terms of the Agreement were memorialized in two emails dated November 22, 2023 (collectively, the "<u>11.22.23 Emails</u>").  Specifically, on November 22, 2023, counsel for Nype sent counsel for the Trustee an email outlining the terms of a prior settlement offer from the Trustee.  That same day, counsel for the Trustee accepted those terms in an email.  The Trustee entered into the Agreement in good faith. Nype did not.

After reaching the Agreement, counsel for the Trustee sent a draft settlement agreement to counsel for Nype.  Counsel for the Trustee also informed the Court of the Agreement and the

---

[2] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case, including adversary proceedings, pursuant to Federal Rule of Evidence 201, incorporated by reference by FRBP 9017.

**HOUMAND LAW FIRM, LTD.**
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

intention to file a motion pursuant to FRBP 9019 at the initial hearing on the Motion to Sell held on November 29, 2023. After weeks of attempts to receive comments to the draft settlement agreement, Nype informed the Trustee that he refused to sign any document that contained mutual releases, a material term to the Agreement.  The Trustee also recently received copies of emails that were sent by Nype to regulators at the Federal Transit Administration ("FTA") – several of which were sent mere days after the terms of the Agreement were finalized – where he has attempted to derail the sale of the Property by alleging fraud on the part of the RTC.  It is believed that Nype was attempting to use allegations of fraud to force the RTC to pay a higher sum for the Property.  This is a clear breach of the principal term of the Agreement that Nype would support the sale of the Property on the terms set forth in the Motion to Sell.

Nype's conduct with respect to the Agreement presents a series of perplexing difficulties for the Trustee. The Trustee entered into the Agreement in good faith, expecting that Nype would do the same, and would thereafter support the Motion to Sell. That has not happened. Given Nype's ongoing efforts to defeat the Motion to Sell, it appears that the Nype's stated reasons for failing to sign the agreement were merely pretext. Nype never intended to support the Motion to Sell and acted in bad faith with respect to the Agreement. Nype has certainly not fulfilled his obligation under the Agreement to support the sale of the Property on the terms described in the Motion to Sell and has actively sought to undermine the sale of the Property.  Nype's actions have greatly complicated the sale of the Property and risked the possibility that the RTC will withdraw its offer to purchase the Property.

This Motion seeks to approve the Agreement as set forth in the 11.22.23 Emails and to seek attorneys' fees and expenses for Nype's breach of the Agreement.

## II.        JURISDICTION AND VENUE

The Court has jurisdiction over the bankruptcy case and the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Pursuant to Local Rule 9014.2, if the Court determines that absent consent of the parties the Court cannot enter final orders or judgment regarding the Motion consistent with Article III of the United States Constitution, the Trustee consents to entry of final orders and

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

-3-

judgment by this Court.  Venue before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in the Motion is FRBP 9019.

### III.    STATEMENT OF FACTS

1.      On August 19, 2019, Las Vegas Land Partners, LLC (the "Debtor") filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1].[3]

2.      On August 19, 2019, the Trustee was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case [ECF No. 2].

3.      On November 17, 2023, the Trustee filed a *Motion to Sell Free and Clear of Liens Under Section 363(f)and Approve Compensation In Favor of Cushman & Wakefield U.S. Inc. DBA Cushman & Wakefield and Reimbursement of Expenses to CGA Real Estate Services, LLC* [ECF No. 207] (the "Motion to Sell").

4.      The Motion to Sell seeks, among other things, to sell the interest of the Estate in real property described as: the city block bounded by Casino Center, Bonneville, South 1st and Garces Streets, Las Vegas, Nevada [APN 139-34-301-008] (the "Property").

5.      On November 17, 2023, the law firm of Johnson & Gubler, P.C. filed a *Notice of Appearance and Request for Special Notice* [ECF No. 216] on behalf of Nype.

6.      Prior to filing the Motion to Sell, the Trustee informed Nype of the details of the proposed sale of the Property to the RTC and attempted to negotiate a resolution to avoid protracted litigation.

7.      The Trustee and Nype were unable to reach an agreement prior to the filing of the Motion to Sell.

8.      After the Motion to Sell was filed, the Trustee continued negotiations with Nype.

9.      On November 22, 2023, counsel for Nype sent an email (the "Offer") which stated, in part:

> We have spoken with our client, Russell Nype regarding this proposal. Our client is willing to accept the proposal discussed by you and John Muije, which includes the following:

[3] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

- Mr. Nype would not oppose the sale of the property to the RTC on the terms set forth in the motion to sell.

- [The Houmand Law] firm, the Trustee, and Cushman & Wakefield would agree to a 10% reduction in our administrative claims.

- [The Houmand Law] firm would agree to a 10% reduction of its current fees of $225,000, which would result in a payment of $202,500. We would cap our fees at this amount and finish the administration of the case. As a result, the reduction would actually be over 10% for my firm because of the additional work to conclude the case. The reduction for Cushman would only be on the portion of the commission owed by the bankruptcy estate. The Trustee would seek a commission based on the $5.8 million gross payment from the sale of the property and the additional $221,000 that was recovered earlier in the case and not the assumption of any debt by the RTC. The 10% reduction for the trustee would be from this amount.

- The parties would provide one another with mutual releases.

- The Trustee would assign all rights of the estate in the judgment to Mr. Nype effective once the court approves our agreement. This will allow you to continue collection actions against the defendants while the Trustee can begin the process of closing the estate.

- The Trustee would request an interim distribution and would move as quickly as she can to have her final report approved. I am told that the process for submission of a final report would take approximately six months.

In return, Mr. Nype would support your Motion and not file an Opposition on Monday. Can you please confirm that this is still acceptable? I appreciate your attention and look forward to hearing from you. Thank you.

. . .

. . .

. . .

. . .

-5-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

10.     A true and correct copy of the Offer is attached to the Houmand Declaration as **Exhibit "1"**.[4]

11.     On November 22, 2023, counsel for the Trustee contacted counsel for Nype via telephone and confirmed acceptance of the settlement terms.  That same day, counsel for the Trustee sent an email (the "Acceptance") to Counsel for Nype, confirming the contents of their phone conversation and accepting the Offer. A true and correct copy of the Acceptance is attached to the Houmand Declaration as **Exhibit "2"**.

12.     On November 24, 2023, counsel for the Trustee provided Counsel for Nype a copy of a proposed Notice of Settlement (the "Notice of Settlement") to be filed with the Court as well as a draft settlement agreement (the "Settlement Agreement") that incorporated the terms from the Offer.

13.     On November 28, 2023, counsel for the Trustee spoke to counsel for Nype via telephone. Counsel for Nype assured that the settlement was still valid.

14.     On November 28, 2023, the Trustee filed an *Omnibus Reply In Support of Motion to Sell Free and Clear of Liens Under Section 363(f)and Approve Compensation In Favor of Cushman & Wakefield U.S. Inc. DBA Cushman & Wakefield and Reimbursement of Expenses to CGA Real Estate Services, LLC* [ECF No. 222] (the "Reply").

15.     The Reply responded to arguments that had been raised by the equity holders of the Debtor, but also repeated the terms of the Agreement that were approved in the 11.22.23 Emails, i.e. the reduction of professional fees, Nype's support for the Motion, the assignment of the judgment, and the provision of mutual releases.  *See* Reply, pp. 5-6.

. . .

---

[4] While settlement communications are generally confidential under Federal Rule of Evidence 408, "It is well established that this rule does not exclude evidence related to a settlement when it is offered for the purposes of interpreting or enforcing the settlement." *Marshak v. Vidov (In re Vidov)*, 2014 WL 3766721, at *6 (9th Cir. BAP July 31, 2014), *citing* Advisory Committee Notes accompanying 2006 amendments to Evidence Rule 408; *Coakley & Williams v. Structural Concrete Equip.*, 973 F.2d 349, 353–54 (4th Cir.1992)); *and Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir.1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.").

16.  On November 29, 2023, the Court held an initial hearing on the Motion to Sell. At this hearing, Counsel for the Trustee represented that an agreement had been reached as to any opposition to the Motion to Sell by Nype and placed the terms on the record:

> The Court:  And then I have the reply brief that you filed that objects on grounds of standing as to the two of the parties that filed, I guess, written objections, but who are not on the telephone. And then I think in your reply, you mentioned that there were some additional negotiations between the trustee and the parties in connection with the matters raised by Mr. Nype, and there would be a separate motion to approve the settlement reach[ed] with Mr. Nype. So I think that's what I have in front of me.
>
> Mr. Houmand, did I miss anything?
>
> Mr. Houmand:  No, your honor.  Jacob Houmand, on behalf of the trustee.  The parties, after the motion was filed engaged in negotiations.  And by parties, I mean the trustee and Mr. Nype. And we were able to reach an agreement that essentially, in exchange for Mr. Nype supporting the motion today, the administrative professionals, the Trustee, my law firm, as well as Cushman & Wakefield, would agree to a 10 percent reduction in their respective administrative claims.
>
> The Court:  All right.
>
> Mr Houmand:  And then there would be mutual releases and assignment of a judgment in which the Trustee is a party to Mr. Nype and an effort to close the case as quickly as possible to make a distribution to Mr. Nype on behalf of claim.

*See* Official Transcript, pp. 4-5, attached to the Houmand Declaration as **Exhibit "3"**.

17.  Counsel for Nype did not raise any objection to the terms of the Agreement that were outlined in the Reply or placed on the record at the initial hearing on the Motion to Sell held on November 29, 2023, at 2:30 p.m.

18.  On December 2, 2023, Nype emailed Ray Tellis ("Tellis") of the FTA. In that email (the "December 2, 2023 Email"), Nype complains to Tellis regarding the purchase price of the Property and appears to request the intervention of the FTA in the sale process.

19.  Between November 29, 2023, and December 12, 2023, counsel for the Trustee made multiple phone calls to Counsel for Nype and received no response.

-7-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

20.   On December 12, 2023, in a phone call with Trustee's Counsel, counsel for Nype revealed, for the first time, that Nype did not want to sign the Settlement Agreement because it incorporated the previously agreed upon mutual release.

21.   On December 12, 2023, Nype sent another email (the "December 12, 2023 Email") to Tellis, stating:

> Ray,
> I appreciate our call and your knowledge regarding required FTA processes for a bid from RTCSN, which I believe they have not done (the one appraisal they received was unprofessionally conceived, not representative of fair market values and I can prove it); MJ Maynard, RTCSN, does not want me to go to my contacts and bid purchasing this project with not allowing RTCSN to increase their current bid.
>
> Also I want to confirm with you my whistleblower status through my filings and conversations with your LA personnel, you directly and the people in The FTA Eastern Region. I am not an attorney, but I believe a fraud occurred regarding funding from FTA to RTCSN.
>
> I am sorry neither you nor MJ followed through with me as you told me she would.
>
> Best,
> Rusty
> Sent from my iPad

22.   On December 14, 2023, counsel for the Trustee sent an email (the "First December 14, 2023 Email") requesting an update on the Settlement Agreement. A true and correct copy of the First December 14, 2023 Email is attached to the Houmand Declaration as **Exhibit "4".**

23.   On December 14, 2023, Counsel for the Trustee sent another email (the "Second December 14, 2023 Email") providing a deadline for Nype to sign the Settlement Agreement. A true and correct copy of the Second December 14, 2023 Email is attached to the Houmand Declaration as **Exhibit "5".**

24.   On December 22, 2023, Tellis sent an email to Nype (the "December 22, 2023 Email") stating the following:

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Rusty, since my note to you below, I was able to undertake the
following:

1.    Reach Ms. Maynard to have her provide details for the
action RTCSN might take to acquire the property for the
Bonneville Transit Center (BTC).

2.    Review with staff the provided material to fully understand
the prevailing and historical circumstances.

3.    Advise Ms. Maynard of the federal requirements, if
applicable, of the Uniform Relocation Assistance and Real
Property Acquisition Policies Act of 1970 (the Uniform Act) when
real property will be acquired to support or locate a federally-
assisted transit project.

4.    Convene a call with Ms. Maynard and her relevant staff,
that also included my staff, to provide the necessary guidance
related to the Uniform Act.

At this time, the FTA does not have any further involvement in this
matter since there is no pending RTCSN request to FTA regarding
the BTC property.  If RTCSN decides to acquire the BTC property
with federal financial assistance/or for the federally-assisted
project, FTA will ensure compliance with applicable federal
requirements before providing approval.

Warm wishes for an enjoyable holiday season.

Ray

25.    On December 28, 2023, Nype sent an email (the "First December 28, 2023
Email") to Tellis, among others, which stated as follows:

Ray and Ms. Maynard,

Ray I disagree with some, a few, of your points here: the appraisal
used by RTCSN I will challenge as invalid to FTA, a court as
needed and by any professional.  You are accepting the premise of
The RTCSN process; you are wrong.

Next are you aware of the bankruptcy court opinion yesterday?
The judge realizes this process, the valuation are "dubious" and he
wants me the 100% creditor or The Estate to agree/endorse a
transaction.

I believe you and Ms. Maynard need to be directly involved NOW

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

if The RTCSN desires to own The Bonneville Transit Center. I raised $157 million for Downtown LV development, does anyone believe I can't raise $60 million to purchase Bonneville?

Thank you, I hope you both would call me. I am willing to come to LV, discuss with Board and determine whether there is a transaction with RTCSN, or not, early next week.

Russell Nype

26.     On December 28, 2023, Nype sent another email (the "Second December 28, 2023 Email") to Tellis, among others, which stated in relevant part:

For further perspective regarding "the RTCSN/Gilbert appraisal"; the current rate of borrowing at AA Bonds, per Mr. Traasdahl is between 2.9% on 10 year to 3.9% on 30 year Bonds making the 3.75% discount rate employed in Mr. Harper's appraisal at $73.1 million legitimately higher; not lower. Check FMS Bonds to make my statement definitive.

To bid at 40% below that appraisal at $44.5 million is significantly below market. To use an 8% discount rate (from Gilbert appraisal" is dishonest.

Mr. Tellis and Ms. Maynard let's determine whether I can endorse a legitimate bid or whether I need to consider a different course of action.

I wish to determine those choices next week.

Honesty, fairness and legitimate business practices mean a great deal to me.

I hope we all can meet soon- I do mean soon.

Russell Nype

100% Creditor of LVLP LLC Estate: Estate Owns 40% of Bonneville Transit Center

27.     On December 28, 2023, Nype sent still another email (the "Third December 28, 2023 Email"), this time to Edward Carranza ("Carranza") of the FTA, among others, which stated in relevant part:

. . .

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Mr. Carranza,

This requires attention.  The FTA is being misrepresented to by

The RTCSN.

I know Mr. Tellis takes misrepresentation very seriously.

Thank you

Russell Nype

28.  The December 2, 2023 Email, the December 12, 2023 Email, the December 22, 2023 Email, the First December 28, 2023 Email, the Second December 28, 2023 Email, and the Third December 28, 2023 Email shall collectively be referred to herein as the "Nype Emails". True and correct copies of the Nype Emails are attached to the Houmand Declaration as **Exhibit "6"**.

29.  Although Nype is unwilling to sign the proposed Settlement Agreement, Nype has entered into a valid and enforceable settlement with the Trustee under Nevada Law.

30.  Nype, by attempting to disrupt the sale of the Property by contacting FTA officials, has breached the term of the Agreement that he would support of the sale of the Property on the terms set forth in the Motion to Sell.

31.  Nype's attempt to orchestrate an investigation of the sale of the Property by the FTA has complicated the sale of the Property as contemplated by the Motion to Sell.  Nype's efforts also risk the possibility that the RTC chooses to not purchase the Property.

32.  Through this Motion, the Trustee seeks Court approval of the Agreement pursuant to FRBP 9019.  The Trustee also reserves all of her rights related to a breach of the Agreement by Nype.

## IV.    LEGAL ARGUMENT

### A.    The Trustee and Nype Entered into an Agreement, and that Agreement is Enforceable.

A bankruptcy court, as a court of equity, has the power to summarily enforce settlements. *City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.),* 22 F.3d, 954, 958 (9th Cir.1994). Even when the case involves a federal cause of action, the

-11-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

construction and enforcement of settlement agreements are governed by state law. *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013). Nevada law requires an offer and acceptance, meeting of the minds, and consideration to constitute an enforceable contract. *May v. Anderson*, 121 Nev. 668, 672 (2005). A settlement agreement must meet two requirements to be enforced. *Fernandez v. Nevada*, 2012 WL 960907 (D. Nev. Feb. 9, 2012) *report and recommendation adopted*, 2012 WL 960619 (D. Nev. Mar. 20, 2012). First, it must be a complete agreement. *Id.* (citing *Callie*, 829 F.2d at 890). Second, both parties ***or their authorized attorneys*** must agree to the terms of the settlement. *Id.* (citing *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977)) (emphasis added).

Here, there is no dispute that material terms of an agreement were agreed to through the parties' respective authorized attorneys in the 11.22.23 Emails. Nype's counsel filed a notice of appearance on behalf of Nype before sending the Offer to counsel for the Trustee. The Trustee accepted the Offer sent by counsel for Nype. There is no dispute that the parties represented to the Court that they had reached the Agreement. The 11.22.23 Emails outline, in detail, the terms of the Agreement. These terms were also reiterated in the Reply and placed on the record at the initial hearing on the Motion to Sell that was heard on November 29, 2023, at 2:30 p.m. Specifically, Nype would support the sale of the Property "on the terms set forth in the motion to sell". In exchange, the Trustee and her professionals would agree to reductions in the professional fees such that the net payment to Nype as a creditor would be increased. All parties would provide one another mutual releases and the Trustee would assign the estate's interest in a judgment to Nype so that she could begin to close the bankruptcy case. Accordingly, under Nevada law, the parties have reached an agreement, and the Court may approve that agreement if it meets the relevant standard under FRBP 9019.

**B.    Nype Is Estopped from Denying the Existence of the Agreement.**

Judicial estoppel was summarized by the Ninth Circuit as follows:

> "Judicial estoppel is an equitable doctrine invoked by a court at its discretion." "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Although judicial estoppel is "probably not reducible to any general formulation of principle,... several factors typically inform the decision whether to apply the doctrine in a particular case." "First, a party's later position must be 'clearly inconsistent' with its earlier position." "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts."

*Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270–71 (9th Cir. 2013) (internal citations omitted); *Hamilton v. State Farm*, 270 F.3d 778, 782 (9th Cir. 2001).

In applying this doctrine, "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *New Hampshire v. Maine,* 532 U.S. 742, 753, 121 S. Ct. 1808, 1816 (2001) (internal quotation marks omitted). In doing so, the Ninth Circuit instructs this Court to employ the "ordinary interpretation" of the terms "mistake" and "inadvertence." *Ah Quin*, 733 F.3d at 277. Finally, the doctrine of judicial estoppel is concerned with the integrity of the courts, not the effect on parties. *Ah Quin*, 733 F.3d at 275 (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 360 (3d Cir. 1996) ("Judicial estoppel is intended to protect the courts rather than the litigants." (internal quotation marks omitted))).

Applying the standards here, Nype must be estopped from denying the existence of the Agreement. Nype agreed to the terms of the Agreement. Nype, through his counsel, thereafter, represented to the Court that he had reached the Agreement with the Trustee. The terms of the Agreement were clearly set forth in the Offer. It was not until after Nype had represented to the Court that he had entered into the Agreement, that he mentioned any issue with any of terms of the Agreement. Whether Nype signs a formal Settlement Agreement or not, he is bound by the terms of the Agreement he made and cannot deny that the existence of the Agreement.

-13-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

**C.     To the Degree the Court Finds it Appropriate, the Court May Approve the Agreement.**

The Bankruptcy Court may approve a compromise or settlement between a debtor and another party pursuant to FRBP 9019(a), which provides the following:

> Compromise.  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

Compromise and settlement agreements have long been an inherent component of the bankruptcy process. The Ninth Circuit recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). Accordingly, in approving a settlement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised. *See United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986). The proponent of the settlement must also persuade the court that the settlement is in the best interests of the estate. *See Goodwin v. Mickey Thompson Entertainment Group. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 420–21 (B.A.P. 9th Cir. 2003). It is within the sound discretion of the bankruptcy court whether to accept or reject a compromise. *See In re Carson,* 82 B.R. 847 (Bankr. S.D. Ohio 1987).

The Ninth Circuit has identified the following factors for consideration in determining whether a settlement is reasonable, fair, and equitable:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

-14-

*In re A & C Properties*, 784 F.2d at 1381. The moving party is not required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. *See In re Pacific Gas & Electric Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). In considering the factors, "a precise determination of the likely outcome is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." *In re Telesphere Comm's, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted). Thus, rather than determining various issues of fact and law, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Lion Capital Group*, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

### 1. The Probability of Success in the Litigation

The Trustee believes that she would be successful with respect to the Motion to Sell, even in the face of opposition from Nype. The Trustee solicited multiple rounds of offers from private investors before finally deciding to sell to the RTC. The purchase price offered by the RTC is roughly $8.5 million dollars higher than the offer of any private bidder. The Trustee in her business judgment believes that a private sale to the RTC will produce a greater return for the bankruptcy estate than a public auction. However, if Nype were to oppose the Motion to Sell, the court could find that the Trustee has not properly exercised her business judgment in the sale of the Property, which could delay and possibly cause a loss of the sale. Currently, no creditor has filed an opposition to the sale, and the Motion to Sell has still been delayed for many weeks. Any further delay risks the loss of this sale. Accordingly, this factor weighs in favor of approval of the Agreement.

### 2. The Difficulties in Matter of Collection

Neither the Agreement not the Motion to Sell contemplates any monetary contribution by Nype. Consequently, there would be no issue of collection. Therefore, this factor is neutral.

### 3. The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay

The Trustee believes that if Nype were to file an objection to the Motion to Sell, he could delay the approval of the sale of the Property. Such a delay would imperil the sale. Further the

costs of litigating the merits of the sale would reduce the recovery available to creditors. The Agreement allows the Motion to Sell to move forward unopposed. Therefore, this factor weighs in favor of approval of the Agreement.

        4.     The Paramount Interest of the Creditors

The best interest of the Creditors is served by approving the Agreement. Generally, the paramount interest of the creditors "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that recovery occur in the least amount of time." *In re Marples*, 266 B.R. 202, 207 (Bankr. D. Idaho 2001). "This factor is thus interwoven with considerations of expense, delay, and risk." *Id.* Here, the agreement caps the fees of the Trustee's employed professionals, increasing the distribution to creditors. The Agreement further allows the sale of the Property to proceed, which will liquidate the primary asset of the Debtor's bankruptcy estate and allow this long running case to finally be concluded. Therefore, this factor weighs in favor of approval of the Agreement.

**D.**    **Nype's Refusal to Sign the Settlement Agreement has Been in Bad Faith.**

Courts have long held that holding parties to the terms of valid settlement agreements "is critically important ... The interests of equity, judicial economy, and finality all militate strongly against efforts to renege on a settlement." *Harper v. Nev. Prop. 1*, 552 F. Supp. 3d 1033, 1045 (D.Nev. 2021). *See also Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (enforcing a settlement agreement "has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time-consuming litigation").

Given these important considerations, courts possess inherent power to sanction a party for bad faith conduct in executing or failing to execute a settlement agreement. *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1258 (10th Cir. 2015). The party moving for sanctions has the burden of demonstrating the non-moving party's conduct amounted to acting with bad faith or improper purpose. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). The Court's inherent power to impose sanctions may include monetary fines. *See, e.g., Slovak v. Golf Course Villas Homeowners' Assoc.*, 2020 U.S. Dist. LEXIS 33118 at *17 (D. Nev. Feb. 26, 2020) (citing *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472-73 (D.C. Cir. 1995)); awards of

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

attorneys' fees and expenses (*see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Roadway Express Inc. v. Piper*, 447 U.S. 752, 765 (1980)), and contempt sanctions (*Id.* at 764).

Here, Nype's refusal to sign the Settlement Agreement has been in bad faith. Nype agreed to the express terms of the Agreement, and then refused to sign the Settlement Agreement based on the inclusion of a term to which he agreed. Nype has failed to propose any redlines or alternative language to address any purported concerns. Moreover, Nype has actively sought to undermine the Motion to Sell by attempting to orchestrate an investigation of the sale by the FTA, in clear violation of the Agreement by Nype to support the Motion to Sell. Accordingly, the Court should therefore award the Trustee attorneys' fees and expenses incurred in enforcing the Agreement.

**E.    The Trustee Reserves the Right to Seek Damages for Nype's Breach of the Agreement.**

The Trustee believes that Nype has inarguably breached the Agreement. To succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages. *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement") (quoting *Malone v. Univ. of Kan. Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976) ). Legally, a defendant's material breach excuses performance by a plaintiff. It is well-settled under Nevada law that "[a] material breach by one party to a contract may excuse further performance by another party to the contract." *Crocket & Myers, Ltd. v. Napier, Fitzgerald & Kirby*, LLP, 440 F. Supp. 2d 1184, 1193 (D. Nev. 2006); *see also Young Elec. Sign Co. v. Fohrman*, 466 P.2d 846, 847 (Nev. 1970) (noting Plaintiff's contractual duty to Defendant "existed only if the [defendant] was not in material default"); *Bradley v. Nev.-Cal.-Ore. Ry.*, 178 P. 906, 908-09 (Nev. 1919) ("The party who commits the first breach of a contract cannot maintain an action against the other party for a subsequent failure to perform").

. . .

. ..

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

In addition to any other sanction or finding imposed by the Court, the Trustee seeks a finding by the Court that the Trustee has not waived any right to seek damages due to Nype's breach of the agreement.

## V.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order: (i) approving the Agreement pursuant to FRBP 9019; (ii) impose sanctions on Nype in the form of the Trustee's Attorney Fees and Costs associated with the preparation and filing of this Motion; (iii) enter an order preserving the Trustee's right to seek damages arising from the breach of the Agreement; and (iv) for such other and further relief as is just and proper.

Dated this 9th day of January, 2024.

HOUMAND LAW FIRM, LTD.

By: /s/ Jacob L. Houmand
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:   702/720-3370
Facsimile:    702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

-18-