Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:     702/720-3370
Facsimile:      702/720-3371

*Electronically Filed On: May 15, 2024*

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re:

LAS VEGAS LAND PARTNERS, LLC,

Debtor.

Case No.  BK-S-19-15333-MKN
Chapter 7

**MOTION TO APPROVE COMPROMISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Date of Hearing:     OST Requested
Time of Hearing:     OST Requested
Place: Courtroom No. 2, Third Floor
            Foley Federal Building
            300 Las Vegas Blvd., S.
            Las Vegas, NV 89101

Judge: Honorable Mike K. Nakagawa[1]

Shelley D. Krohn (the "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case, by and through her counsel, Jacob L. Houmand, Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., hereby submits this *Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion").

The Motion is based on the following Memorandum of Points and Authorities and the *Declaration of Shelley D. Krohn In Support of the Motion to Approve Compromise Pursuant to*

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

-1-

*Federal Rule of Bankruptcy Procedure 9019* (the "Trustee Declaration"), which is filed separately and concurrently with this Court pursuant to Local Rule 9014(c)(2). The Motion is also based on the pleadings and papers on file herein, and any argument that may be entertained at the hearing on the Motion.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The settlement that is the subject of this motion provides a global resolution of various disputes concerning the sale of the Property (as defined below) by the Trustee to the Regional Transportation Commission of Southern Nevada (the "RTC"). To resolve these disputes, the RTC has agreed to increase the amount it will pay for the Property. In turn, the Trustee, together with Russell Nype ("Mr. Nype"), Revenue Plus, LLC ("RP" and together with Mr. Nype, the "Nype Parties"), David Mitchell ("Mitchell"), Marc A. Pergament ("Trustee Pergament", and together with Mitchell, the "Equity Holders"), in his capacity as Chapter 7 Trustee for the bankruptcy estate of Barnet Louis Liberman, the Houmand Law Firm, Ltd. (the "HLF"), Cushman & Wakefield U.S., Inc. dba Cushman & Wakefield ("Cushman", and together with the Trustee, Nype Parties, the Equity Holders, the HLF, the "Parties") have entered into a Settlement Agreement (the "Settlement Agreement") that resolves the disputes between these parties concerning the sale of the Property and the distribution of the proceeds (the "Bankruptcy Proceeds") that will be received by the Trustee from that sale. This Motion seeks to approve the Settlement Agreement pursuant to FRBP 9019.

### II. JURISDICTION AND VENUE

The Court has jurisdiction over the bankruptcy case and the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9014.2, if the Court determines that absent consent of the parties the Court cannot enter final orders or judgment regarding the Motion consistent with

---

[2] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case, including adversary proceedings, pursuant to Federal Rule of Evidence 201, incorporated by reference by FRBP 9017.

-2-

Article III of the United States Constitution, the Trustee consents to entry of final orders and judgment by this Court. Venue before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in the Motion is FRBP 9019.

### III.  STATEMENT OF FACTS

1. Prior to the filing of the instant bankruptcy case, in an action in the District Court, Clark County, Nevada, Case No. A551073, styled *Las Vegas Land Partners, LLC v. Russell L. Nype and Revenue Plus, Inc.* (the "Original Action"), a judgment (the "Original Judgment") was entered on April 10, 2015, against Las Vegas Land Partners, LLC (the "Debtor") in favor of the Nype Parties, in the sum of $2,608,797.50, plus interest from the date of the Original Judgment.

2. In or around July 2016, the Nype Parties commenced a lawsuit against multiple defendants, including Mitchell and the Debtor, in District Court, Clark County, Nevada, Case No. A-16-740689-C, seeking, *inter alia*, to hold the defendants therein liable for constructive trust, fraudulent transfer, alter ego, civil conspiracy, and declaratory relief and to satisfy the Original Judgment (the "State Court Litigation").

3. On August 19, 2019, the Debtor filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1][3] in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

4. On August 19, 2019, the Trustee was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case [ECF No. 2].

5. On November 18, 2019, the Trustee intervened in the State Court Litigation and filed a complaint in intervention therein.

6. On or about January 16, 2020, a judgment was rendered in the underlying State Court Litigation on behalf of the Trustee and the Nype Parties (the "Judgment").

7. The Debtor is the sole member of Wink One, LLC ("Wink One"), which owns a forty percent (40%) tenant-in-common interest in the real property described as the city block bounded by Casino Center, Bonneville, South 1st and Garces Streets, Las Vegas, Nevada [APN

---

[3] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

-3-

139-34-301-008] (the "Property").

8. The remaining sixty percent (60%) tenant-in-common interest in the Property is owned by FC RTC 39, LLC and FC RTC 20, LLC (collectively, the "Forest City Entities").

9. The Property is leased to the RTC on a triple net ground lease (the "Lease") that expires on January 4, 2048. the Property is also secured by a loan (the "Loan") with a principal balance of approximately $29,930,378.84 in favor of CTL Lending Group, LLC (the "Lender") that matures on April 14, 2043.

10. On November 17, 2023, the Trustee filed a *Motion to Sell Free and Clear of Liens Under Section 363(f) and Approve Compensation In Favor of Cushman & Wakefield U.S. Inc. DBA Cushman & Wakefield and Reimbursement of Expenses to CGA Real Estate Services, LLC* [ECF No. 207] (the "Motion to Sell") that seeks to sell the Estate's interest in the Property to the RTC in exchange for the payment of $14,500,000[4] to the TIC Holders.

11. The Motion to Sell also seeks approval of a commission owed to Cushman, the broker employed by the Trustee to market and sell the Property.

12. On January 31, 2024, Trustee Pergament filed an opposition to the Motion to Sell [ECF No. 252] (the "Pergament Opposition").

13. On January 31, 2024, Mitchell filed an opposition to the Motion to Sell [ECF No. 253] (the "Mitchell Opposition" and together with the Pergament Opposition, the "Equity Holder Oppositions").

14. On January 31, 2024, the Nype Parties filed the *Nype Creditors' Opposition to Motion to Approve Sale* [ECF No. 255] (the "Nype Opposition" and together with the Equity Holder Oppositions, the "Oppositions").

15. The Nype Parties are the only creditors that have filed a proof of claim in the Debtor's bankruptcy case. The proof of claim filed by the Nype Parties in the Debtor's bankruptcy case totals $10,200,434.60.

. . .

---

[4] In addition to the $14,500,000 payment to the TIC Holders, the RTC would assume the outstanding balance of the Loan.

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

16. On February 28, 2024, the Court heard oral argument from the Parties on the Motion to Sell and the matter was taken under submission.

17. To resolve all objections to its purchase of the Property, the RTC has agreed to increase the amount it will pay to the TIC Holders from $14,500,000.00 to $20,000,000.00 (the "TIC Payment").

18. The Forest City Entities have also agreed to modify the division of any proceeds paid by the RTC in excess of the original $14,500,000 payment set forth in the Motion to Sell to increase the payment of proceeds to the Debtor's bankruptcy estate.

19. Specifically, the Forest City Entities have agreed to receive sixty percent of the first $14,500,000.00 of the TIC Payment, or $8,700,000.00, and an additional $500,000.00 of the increased payment from the RTC. This results in a total payment to the Forest City Entities of $9,200,000.00 before accounting for its portion of closing costs and commissions.

20. The agreement with the Forest City Entities concerning a modified distribution of sale proceeds has resulted in the Debtor's bankruptcy estate being entitled to receive forty percent of the first $14,500,000.00 of the TIC Payment, or $5,800,000.00, and an additional $5,000,000.00 of the increased payment from the RTC. This results in a total payment to the Debtor's bankruptcy estate of $10,800,000.00 (the "Bankruptcy Proceeds") before accounting for its portion of closing costs and commissions.

21. The Parties have entered into the Settlement Agreement that resolves the dispute concerning the purchase of the Property by the RTC. A true and correct copy of the Settlement Agreement is attached to the Trustee Declaration as **Exhibit "1"**.

22. The principal terms of the Settlement Agreement are outlined below[5]:

. . .

. . .

---

[5] The description of the Settlement Agreement set forth herein and in the Trustee Declaration is a summary only and does not modify or otherwise affect the terms of the Settlement Agreement. To the extent of any conflict between the Settlement Agreement and the description set forth herein, the Settlement Agreement shall control. Capitalized terms used but not defined herein shall have the meaning set forth in the Settlement Agreement.

      a.      The RTC will pay the TIC Holders a total of $20,000,000. This amount shall not include any costs associated with the payoff, or assumption, of the Loan and any associated yield maintenance premium.

      b.      No party will oppose the sale of the Property to the RTC on the terms described in the Settlement Agreement and the Oppositions shall be withdrawn.

      c.      The Parties will execute the Stipulation Resolving the Motion to Sell, attached as Exhibit "1" to the Settlement Agreement no later than five (5) days after entry of an order approving the Settlement Agreement pursuant to FRBP 9019.

      d.      Cushman shall limit the portion of its commission that is owed by the TIC Holders to a total of $886,013.07.[6] Of this amount, the Debtor's bankruptcy estate shall be obligated to pay Cushman $354,405.23 from the Bankruptcy Proceeds. The remaining $531,607.84 shall be paid by the Forest City Entities.

      e.      The HLF shall limit its request for attorneys' fees and expenses pursuant to 11 U.S.C. §§ 330 and 331 to $308,000.00 (the "HLF Claim").

      f.      The Trustee shall calculate her commission pursuant to 11 U.S.C. § 326 based on the payment of the Bankruptcy Proceeds, and any other funds that have been recovered by the Trustee during her administration of the Debtor's bankruptcy case. The Trustee shall not calculate her commission based on the repayment, or assumption, of any portion of the Loan by the RTC.

      g.      The Nype Parties shall have and accept an allowed general unsecured claim of $8,000,000.00, which shall be paid from the Bankruptcy Proceeds in accordance with the priority scheme set forth under Section 726. The Nype Parties shall waive any right to receive a payment for interest on their $8,000,000.00 claim pursuant to 11 U.S.C. § 726(a)(5) and shall waive any secured claim in the Property, Wink One, the TIC Payment, or any other property of the Debtor's bankruptcy estate.

---

[6] This is the amount of the commission owed to Cushman based on the Motion to Sell that involved a $14.5 million payment to the TIC Holders. In other words, Cushman has agreed to not receive a commission on the increased payment from the RTC.

-6-

h. The Parties agree that the Bankruptcy Proceeds shall be disbursed in accordance with the priority scheme set forth in 11 U.S.C. § 726. Any surplus payment pursuant to 11 U.S.C. § 726(a)(6) shall be divided as follows: (a) 50% of the surplus payment shall be paid to Trustee Pergament; and (b) 50% of the surplus payment shall be paid to Mitchell.

i. The Trustee, on behalf of the Debtor's bankruptcy estate, shall assign the bankruptcy estate's interest in the Judgment to the Nype Parties effective upon entry of a final, non-appealable order by the Bankruptcy Court approving the Settlement Agreement.

j. The Trustee shall use her best efforts to obtain approval of an interim distribution of funds from the Sale of the Property to the Nype Parties and, if permissible, the Equity Holders.

k. The Parties shall provide each other releases as set forth in the Settlement Agreement. These releases include a waiver of any right to oppose the compensation of any administrative claimant in this bankruptcy case.

l. The releases and agreements to limit the compensation of administrative expense claimants contained within the Settlement Agreement are contingent upon payment of the TIC Payment by the RTC.

23. The Parties have negotiated and reached the Settlement Agreement in good faith.

24. The Trustee now files this Motion to obtain court approval of the Settlement Agreement pursuant to FRBP 9019.

## IV.    LEGAL ARGUMENT

The Bankruptcy Court may approve a compromise or settlement between a debtor and another party pursuant to Fed. R. Bankr. P. 9019(a), which provides the following:

> Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

Compromise and settlement agreements have long been an inherent component of the bankruptcy process. The Ninth Circuit recognized that "[t]he bankruptcy court has great latitude

-7-

in approving compromise agreements." *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). Accordingly, in approving a settlement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised. *See United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986). The proponent of the settlement must also persuade the court that the settlement is in the best interests of the estate. *See Goodwin v. Mickey Thompson Entertainment Group. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 420–21 (B.A.P. 9th Cir. 2003). It is within the sound discretion of the bankruptcy court whether to accept or reject a compromise. *See In re Carson,* 82 B.R. 847 (Bankr. S.D. Ohio 1987).

The Ninth Circuit has identified the following factors for consideration in determining whether a settlement is reasonable, fair, and equitable:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d at 1381. The moving party is not required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. *See In re Pacific Gas & Electric Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). In considering the factors, "a precise determination of the likely outcome is not required, since an exact judicial determination of the values at issue would defeat the purpose of compromising the claim." *In re Telesphere Comm's, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (internal quotations omitted). Thus, rather than determining various issues of fact and law, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Lion Capital Group*, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985) (internal quotations omitted).

. . .

B.     **The Settlement Agreement Is Fair and Equitable**

    1.     <u>The Probability of Success in the Litigation</u>

The Trustee believes that she would be successful with respect to the Motion to Sell, even in the face of opposition from Nype and the Equity Holders. That said, the Nype Parties and the Equity Holders have vigorously opposed the Motion to Sell and this Court may decide that the sale of the Property to the RTC is not a proper exercise of the Trustee's business judgment. However, the Settlement Agreement results in a purchase price for the Property that is $5,500,000 more than the Motion to Sell. The RTC has indicated that it will not pay the higher amount unless there is a resolution of all the outstanding objections to Motion to Sell. Accordingly, while the Trustee believes that while she would be successful in the litigation concerning the Motion to Sell, the Estate is in a better position if the Settlement Agreement is approved. Accordingly, the Trustee believes that this factor weighs in favor of approval of the Settlement Agreement.

    2.     <u>The Difficulties in Matter of Collection</u>

There does not appear to be any issues in the matter of collection concerning the Motion to Sell. Therefore, this factor is neutral.

    3.     <u>The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay</u>

The Motion to Sell has already been briefed and is under submission. However, the Nype Parties have made it clear that they will appeal any adverse ruling on the Motion to Sell. It is likely that the Equity Holders may similarly file appeals if they receive an adverse ruling. The Settlement Agreement brings finality to the sale of the Property and provides for a swift administration of the balance of issues facing the Debtor's bankruptcy estate. Moreover, the Settlement Agreement increases the funds available to the Debtor's bankruptcy estate and is estimated to pay all creditors in full and provide a distribution to Equity Holders. Consequently, the Settlement Agreement leaves the Estate in a better position financially than the Motion to Sell in its current form. As such, the Trustee believes that this factor weighs heavily in favor of approval of the Settlement Agreement.

. . .

4. <u>The Paramount Interest of the Creditors</u>

The best interest of the Creditors is served by approving the Settlement Agreement. Generally, the paramount interest of the creditors "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that recovery occur in the least amount of time." *In re Marples*, 266 B.R. 202, 207 (Bankr. D. Idaho 2001). "This factor is thus interwoven with considerations of expense, delay, and risk." *Id.*

Here, the Settlement Agreement caps the fees for some of the Trustee's employed professionals, provides full payment for the general unsecured creditor of the Debtor, and is estimated to provide a payment to the Equity Holders. The Debtor's sole general unsecured creditor and its Equity Holders are parties to the Settlement Agreement and, on that basis, the Trustee submits that the Settlement Agreement is necessarily in the best interests of creditors and parties-in-interest.

## V.    CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order: (i) approving the Settlement Agreement attached as **Exhibit "1"** to the Trustee Declaration pursuant to FRBP 9019; and (ii) for such other and further relief as is just and proper.

Dated this 15th day of May, 2024.

**HOUMAND LAW FIRM, LTD.**

By: */s/ Jacob L. Houmand*
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:   702/720-3370
Facsimile:    702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*